ORIGINAL

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FILED
DEC 29 2006
U.S. COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, *Plaintiff,* v. THE UNITED STATES, *Defendant.* | 06-943 L No. ________ |

**COMPLAINT FOR DAMAGES FOR BREACH OF TRUST OBLIGATIONS**

## I. GENERAL NATURE OF THE ACTION

1. This action is an action for money damages against the United States, brought to redress gross breaches of trust by the United States, acting by and through Dirk Kempthorne, Secretary of the Interior ("Kempthorne"), Ross Swimmer, Special Trustee for American Indians ("Swimmer"), and Henry M. Paulson, Secretary of the Treasury ("Paulson"), and their predecessors in office and subordinates, as trustees and trustee-delegates of land, mineral resources and other assets held by them for the benefit of the Salt River Pima-Maricopa Indian Community ("Community"). As set forth more fully below, this case arises out of Defendant's continuing material breaches of statutory, regulatory, and fiduciary duties owed to the Community and the Community seeks damages for Defendant's mismanagement of the Community's trust property.

## II. THE PARTIES

2. Plaintiff is a federally recognized Indian tribe with nearly 6,000 enrolled members, located in Arizona. It is the beneficiary of real property and the proceeds therefrom,

held by the United States as trustee.

3. Defendant United States acts as trustee for certain tribal lands, monies, and other assets belonging to the Community. The United States has principally delegated its trust responsibilities to the Secretary of the Interior and the Secretary of the Treasury.

4. Mr. Kempthorne is the Secretary of the Interior, and chief officer of the Department of the Interior. As such, Secretary Kempthorne is charged by law with, *inter alia*, carrying out the duties and responsibilities of the United States as trustee for the plaintiff.

5. Mr. Swimmer is the Special Trustee for American Indians, a sub-cabinet level officer appointed by the President of the United States with the advice and consent of the Senate, who reports directly to the Secretary of the Interior. Some of Mr. Swimmer's duties are delineated in the Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4041-46 (2000).

6. Mr. Paulson is the Secretary of the Treasury, and as such is the custodian of trust funds. Secretary Paulson is, *inter alia*, responsible for maintaining records in connection with such funds.

## III. JURISDICTION

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1491 and 1505.

8. The United States has waived its sovereign immunity under 28 U.S.C. §§ 1491 and 1505. *See United States v. Mitchell*, 463 U.S. 206, 228 (1983) ("*Mitchell II*").

## IV. THE TRUST OBLIGATIONS OF THE UNITED STATES WITH RESPECT TO THE COMMUNITY

9. The tribal lands of the Community were established by Executive Order of June

14, 1879, which created the Salt River Pima-Maricopa Indian Reservation ("Community Reservation"). The Community Reservation currently consists of nearly 54,000 acres of land entirely within Arizona, and is bounded by Fountain Hills, Scottsdale, Mesa, Tempe, and metropolitan Phoenix. Since the 1940s, the Community has been organized and self-governing under the Indian Reorganization Act, 25 U.S.C. § 476.

10. Over time, the Community Reservation increased in size. In 1978, Congress ordered the Secretary of the Interior to acquire additional lands for the benefit of the Community, to resolve a dispute over ownership of land adjacent to the Salt River. Act of Sept. 30, 1978, Pub. L. No. 95-399, 92 Stat. 851 (1979). In 1988, Congress allowed the Community to acquire 594 acres south of the Community Reservation, as part of an agreement to exchange Community lands for state-owned lands, for the construction of a regional freeway. Act of Oct. 28, 1988, Pub. L. No. 100-544, 102 Stat. 2724 (1988). Finally, in 1996, Congress approved a settlement between the State of Arizona and the Community regarding rights to Saddleback Mountain, which "provide[d] for the taking into trust by the United States of the portion of the Saddleback Property purchased by the Community in order to make that portion a part of the [Community] Reservation." Saddleback Mountain-Arizona Settlement Act of 1995, Pub. L. No. 104-102, § 2(b)(3), 110 Stat. 50, 51 (1996).

11. The Community maintains 19,000 acres of the Community Reservation as a natural preserve, and cultivates 12,000 acres for a variety of crops. Non-Community individuals and businesses lease the western strip of the Community Reservation for commercial development, including, but not limited to, a 140-acre retail power center and a retail shopping center. Additionally, approximately one-half of the arable land within the Community is cultivated. Of the cultivated lands, the majority is leased to non-Indians.

12. A substantial portion of the funds held by the United States in trust for the Community is derived from income from tribal lands. Title to the land comprising the Community Reservation is held in trust by the United States, with the Community as beneficial owner of the land and associated natural resources.

13. Income is derived from, *inter alia*, the sale of the natural resources and the conveyance of certain interests in the Community's tribal trust land, including leases, easements, and rights of ways. These assets, and the income they produce, form a significant portion of the Community's tribal trust assets.

14. Additional assets held in trust by the United States for the Community's benefit include settlements and judgments on various claims brought by the Community against the United States. This includes claims brought under the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049 (covering claims accruing before August 13, 1946) and claims brought under the Indian Tucker Act, 28 U.S.C. § 1505 (covering claims accruing after August 13, 1946). The United States has undertaken to manage, invest, and distribute these judgment funds as trust assets for the benefit of the Community. By way of example, in 1982, the Community obtained a judgment of $13,000,000 against the United States, in an action arising out of land claims. *Salt River Pima-Maricopa Indian Cmty. v. United States*, 231 Ct. Cl. 1057, 1057 (1982). As trustee, the United States undertook to manage and invest the Community's settlement and judgment funds as tribal trust assets for the benefit of the Community.

15. Because the United States engages in pervasive management and control of the Community's tribal assets pursuant to federal statutes and regulations, as more fully described below, the government has assumed the fiduciary obligations of a trustee. *Mitchell II*, 463 U.S. at 225. As a trustee, the United States is charged with "'moral obligations of the highest



US2000 9675481.1

responsibility and trust' . . . and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" *Cobell v. Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (quoting *Seminole Nation v. United States*, 316 U.S. 286, 296 (1942)) ("*Cobell VI*").

16. The century-long trust relationship between the United States and the Community, and the resultant fiduciary responsibilities incumbent on the United States, are rooted in and derived from a number of statutes, regulations, and executive orders. *See, e.g.*, Indian Nonintercourse Act, 25 U.S.C. § 177; Indian Long-Term Leasing Act, 25 U.S.C. § 396; Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-96g; Federal Oil & Gas Royalty Management Act, 30 U.S.C. § 1701, *et seq.*; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101 – 08; Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 161a, 162a, 4001-61; 25 U.S.C. § 152; 25 U.S.C. §§ 157-58, 160; 25 U.S.C. §§ 155-55b; 25 U.S.C. §§ 161a, 161b, 162a, 413; 25 U.S.C. §§ 311-12, 318a, 319, 321, 323-28; 25 U.S.C. § 397; 25 U.S.C. § 398, 398a-98e; 25 U.S.C. § 399; 25 U.S.C. §§ 415-16j; 31 U.S.C. § 1321(a); 25 C.F.R. pt. 87; 25 C.F.R. pts. 150-51; 25 C.F.R. pt. 162; 25 C.F.R. pt. 166; 25 C.F.R. pt. 169; 25 C.F.R. pt. 211; 25 C.F.R. pt. 216; 25 C.F.R. pt. 225; 30 C.F.R. pt. 206; and 43 C.F.R. § 3590.2. The foregoing list is representative only, and does not exhaust the potential sources of fiduciary duties owed to the Community by the United States, as trustee for the Community's tribal resources.

17. Among other things, the Indian Trust Fund Management Reform Act of 1994 ("Trust Reform Act") created the Office of the Special Trustee for American Indians and reaffirmed and clarified the United States' preexisting fiduciary duties as derived from the relevant statutes, regulations and executive orders. *Cobell VI*, 240 F.3d at 1090, 1096. The Trust Reform Act was implemented to "'provide more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities,' and [to] ensure proper reform

measures are implemented." *Id.* at 1090 (quoting 25 U.S.C. § 4042(b)(1)). It was "a remedial statute designed to ensure more diligent fulfillment of the government's obligations. It recognized and reaffirmed what should be beyond dispute – that the government has longstanding and substantial trust obligations to Indians . . . ." *Id.* at 1098. The Trust Reform Act did not create the United States' fiduciary duties, and it does not, and was not intended to, serve as the sole source of those duties or of the Community's rights. *Id.* at 1100.

18. The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the "general contours" of those duties, but the details are filled in through reference to general trust law. *Id.* at 1098-99; *Mitchell II*, 463 U.S. at 226. Where Congress, as here, has used terms of art in defining the federal government's responsibilities with respect to tribal trust funds, "[c]ourts 'must infer that Congress intended to impose on trustees traditional fiduciary duties unless Congress has unequivocally expressed an intent to the contrary.'" *Cobell VI*, 240 F.3d at 1099 (quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 330 (1981)).

19. As trustee of the Community's tribal trust assets, the Defendant owes, and has owed, since the inception of the tribal trust program, certain traditional fiduciary duties and responsibilities to Indian tribes as trust beneficiaries. The duties Defendant owes to the Community, include, but are not limited to, the duty to:

a. Properly administer the trust;

b. Administer the trust solely in the interest of the Community;

c. Keep and render clear and accurate accounts with respect to the administration of the trust, by maintaining adequate books and records with respect to the trust

property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

d. Furnish complete and accurate information to the Community as to the nature and amount of trust assets, by performing a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Community to readily ascertain whether the trust has been and is being faithfully carried out;

e. Exercise the "highest responsibility," care, and skill in the administration of the trust;

f. Preserve the trust assets and protect them from loss, theft, or damage;

g. Keep the trust assets of the Community separate from other property not subject to the trust;

h. Properly collect and deposit the trust funds of the Community;

i. Make the assets of the trust productive for the benefit of the Community, by using reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law; and

j. Refrain from self-dealing or otherwise benefiting from management of trust property.

## V. BREACHES OF TRUST BY THE DEFENDANT

20. The United States has consistently and egregiously failed to comply with these and other fiduciary duties incumbent on a trustee and imposed on the United States by statute, and it continues to violate the Community's rights as beneficiary of the trust. These breaches of trust include, but are not limited to:

a. Failure to properly administer the trust for the benefit of the Community;

b. Failure to administer the trust solely in the interest of the Community;

c. Failure to keep and render clear and accurate accounts with respect to the administration of the trust;

d. Failure to furnish complete and accurate information to the Community as to the nature and amount of trust assets;

e. Failure to exercise the "highest responsibility," care, and skill in the administration of the trust;

f. Failure to preserve the trust assets and protect them from loss, theft, or damage;

g. Failure to keep the trust assets of the Community separate from other property not subject to the trust;

h. Failure to properly collect and deposit the trust funds of the Community;

i. Failure to make the assets of the trust productive for the benefit of the Community;

j. Failure to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law; and

k. Failure to refrain from self-dealing or otherwise benefiting from management of trust property.

21. By reason of the Defendant's egregious breaches of its fiduciary duties owed to the Community, the Plaintiff has been damaged in such amounts as may be proven at trial plus interest as allowed by law.

## COUNT I

**Damages Resulting from the United States' Breach of Fiduciary Duty with Respect to the Management of the Community's Surface and Mineral Estates.**

22. All allegations set forth in paragraphs 1-21 of this Complaint are incorporated by reference as if fully set forth herein.

23. The United States has maintained a comprehensive regulatory framework for the pervasive control over the management of the natural resources, including agricultural uses and mineral rights, on the Community's land held in trust by Defendant.

24. As trustee, the United States has entered into and approved leases and issued permits to third parties for agricultural purposes and the removal of mineral resources from the Community's trust property. Compensation for the lease interests and payments for the use and removal of such resources are to be paid to the United States as trustee for the Community. Such funds are required to be collected and deposited in the United States Treasury in trust for the benefit of the Community. The United States continues to hold funds belonging to the Community, including funds derived from the lease of land and removal of minerals, in trust for the benefit of the Community.

25. The United States, as trustee, has never provided the Community a complete and accurate accounting of the revenue the United States collected or was required to collect, under leases and permits. Nor has it provided the Community complete records of such leases and permits it is required to maintain as trustee.

26. As trustee, the United States was required to enter into and approve leases and issue permits for agricultural purposes and interests in mineral rights for not less than fair market value. However, upon information and belief, Defendant breached its fiduciary duty by failing to lease such property interests for fair market value and failing to collect fair and reasonable

compensation for the benefit of the Community. The Community has been damaged by the failure of Defendant to obtain for the benefit of the Community fair and reasonable compensation for its agricultural and mineral resources.

27. The Community is entitled to a money damage award against the United States arising from its mismanagement of the Community's agricultural and mineral resources in an amount to be proven at trial.

## COUNT II

**Damages Arising from the United States' Breach of Fiduciary Duty with Respect to the Management of the Community's Non-Mineral Estate.**

28. All allegations set forth in Paragraphs 1 through 27 of this Complaint are incorporated by reference as if full set forth herein.

29. The United States has maintained a comprehensive regulatory framework for the pervasive control over the management of non-mineral leases and agreements for interests in land on the Community Reservation held in trust by Defendant. This includes, but is not limited to, the negotiation of easements, rights of way, and land and building leases. *See Mitchell II*, 463 U.S. at 223.

30. The United States, as trustee, has never provided the Community a complete and accurate accounting of the revenue the United States collected or was required to collect, in granting easements and rights of way, and leasing tribal properties. Nor has it provided the Community complete records of such transactions which it is required to maintain as trustee.

31. As trustee, the United States was required to enter into and approve leases and grant easements and rights of way for not less than fair market value. However, upon information and belief, Defendant breached its fiduciary duty by failing to lease such property interests and grant easements and rights of way for fair market value, and to collect fair and

reasonable compensation for the benefit of the Community. The Community has been damaged by the failure of Defendant to obtain for the benefit of the Community fair and reasonable compensation for the use of its land.

32. The Community is entitled to a money damage award against the United States arising from its mismanagement of the Community's trust land in an amount to be proven at trial plus interest as allowed by law.

**COUNT III**

**Damages Arising from the United States' Breach of Fiduciary Duty with Respect to the Management of Judgment Funds.**

33. All allegations set forth in paragraphs 1 through 32 of this Complaint are incorporated by reference as if fully set forth herein.

34. Judgments obtained against the United States have been held in trust by the United States for the benefit of the Community. The United States, through statutes and regulations, maintains pervasive control over the management, distribution and investment of those funds. The United States is charged with exercising the highest fiduciary duty in managing these trust assets. *See Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 69 Fed. Cl. 639, 656 (2006).

35. At no time has the United States provided the Community a complete and accurate accounting of judgment funds held in trust for its benefit.

36. In breach of its fiduciary duty owed to the Community, the United States has failed to invest, and continues to fail to invest, the principal and earnings of judgment funds held in trust, in a timely manner. In addition, the United States has failed to invest trust funds to obtain the maximum investment returns possible, consistent with its obligations as a fiduciary.

37. These breaches of fiduciary duty owed by the United States to the Community have caused and continue to cause damage to the Community in an amount to be proven at trial plus interest as allowed by law.

## COUNT IV

### Damages Arising from the United States' Breach of Fiduciary Duty with Respect to Deposit and Investment of Trust Funds.

38. All allegations set forth in paragraphs 1 through 37 of this Complaint are incorporated by reference as if fully set forth herein.

39. The United States, as trustee, maintains pervasive control over the management and investment of funds held in trust for the benefit of the Community, including proceeds from leases, permits, easements and rights of way, judgment funds and general tribal funds as well as "Indian Moneys Proceeds of Labor" (IMPL) funds. The United States, accordingly, has undertaken the highest fiduciary obligations to invest trust funds with the care, skill, and caution that a prudent investor would exercise under the circumstances. In addition, it is and has been under an obligation to comply with federal statutes governing the investment of tribal trust assets, *see* 25 U.S.C. §§ 161a, 161b and 162a, applicable regulations, case law and the common law. *See Osage Tribes of Okla. v. United States*, 72 Fed. Cl. 629, 662 (2006).

40. The United States breached its fiduciary duty to the Community by holding amounts of trust funds in cash, in excess of liquidity needs. As a result of that breach, the Community has been damaged by reason of the loss of investment of trust funds at a higher rate of return.

41. The United States breached its fiduciary duty to the Community by failing to maximize trust income by prudent investment. *Cheyenne-Arapaho Tribes v. United States*, 512 F.2d 1390, 1394 (1975). The United States has, at times relevant herein, invested the

Community's trust funds at a low rate of interest. There were other investment vehicles available as permitted under 25 U.S.C. §§ 161a and 162a, including public-debt obligations of the United States and bonds, notes and other unconditionally guaranteed obligations, paying a higher rate of return. The United States was under a strict fiduciary duty to place trust funds in eligible investments maintaining higher yields. By reason of this breach of fiduciary duty, the Community has been damaged in an amount representing the difference between what interest the United States paid for such funds and the maximum the funds could have legally and practically earned if properly invested.

42. By reason of the United States' breach of fiduciary duty in its management and investment of trust funds, the Community is entitled to recover from the United States such damages as may be proven at trial plus interest as allowed by law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Community, prays the Court as follows:

1. For a determination that the Defendant is liable to the Community in damages for the injuries and losses caused as a result of Defendant's breaches of fiduciary duty;

2. For a determination of the amount of damages due the Community, plus interest as allowed by law;

3. That the costs of this action, including reasonable attorneys fees, be awarded to the Community;

4. For such other and further relief as the Court deems just and appropriate.

This the 29th day of December, 2006.

Respectfully submitted,

Keith Harper
Admitted to Practice in the Court of Federal Claims
Kilpatrick Stockton, LLP
607 14th Street, N.W.
Suite 900
Washington, DC 20005
(202)-508-5800
Fax: (202) 585-0007

Attorney for Plaintiff
Salt River Pima-Maricopa Indian Community