IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-943L<br>Judge Lawrence M. Baskir<br>Electronically Filed ________ |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

# JOINT PRELIMINARY STATUS REPORT

Pursuant to Appendix A of the Rules of the Court of Federal Claims (RCFC), Plaintiff Salt River Pima-Maricopa Indian Community ("Plaintiff") and Defendant United States of America (the "United States"), through the undersigned counsel, hereby submit this Joint Preliminary Status Report (JPSR) to the Court.

**Plaintiff's Introductory Statement:**

In submitting this Joint Preliminary Status Report, counsel for Plaintiff, the Salt River Pima-Maricopa Indian Community ("Plaintiff-Beneficiary"), advises that the parties are divided over how – or even whether – this litigation should proceed.

As outlined more fully below, Plaintiff-Beneficiary has filed a four-count Complaint in this action setting forth claims for money damages

arising from the United States' breach of trust duties that the Court and the United States Supreme Court have recognized as "money-mandating" and hence actionable based on the facts alleged and to be presented and proved. Plaintiff-Beneficiary therefore proposes that the Court adopt a scheduling order which would permit the parties a total of 13 months to complete fact and expert discovery before again appearing before the Court to discuss further proceedings, except where necessary to resolve discovery disputes. Plaintiff-Beneficiary submits that such an approach is fully consistent with Appendix A's stated intent to utilize case management procedures that "minimize the cost and delay of litigation," as well as with the Court's governing rules. *See, e.g.*, CFC Rule 1 ("These rules . . . shall be construed and administered to secure the just, speedy and inexpensive determination of *every* action") (emphasis added).

It is the United States' contrary position, however, that no such discovery should be allowed until after the Court rules on a Section 1500 issue which, in Plaintiff-Beneficiary's view, is not even appropriately raised (and which, based on prior rulings of this Court and the Federal Circuit, should be dismissed out-of-hand). Moreover, and as disclosed in Sections D and E below, the United States is urging that this litigation be stayed until after the equitable accounting action filed in the District Court has been

concluded – just one week after filing a Report in this other case asking the District Court to "remand" Plaintiff-Beneficiary's accounting claim to the Department of Interior and thereby indefinitely suspend any further litigation in the interim.

If the United States' position is adopted, all further court proceedings in both cases will come to a complete halt for many months or even years into the future, while the Department of Interior is left to conduct an accounting which it has unconscionably delayed for decades, and when it has stated time and again in its responsive pleadings that it does not even understand what the term "accounting" means. *See* Answer at ¶¶ 25, 30 and 35.

Delaying Plaintiff-Beneficiary's request for damages relief for such reasons would fly in the face of this Court's Rules and the "just and speedy" administration of justice to which litigants appearing in the Court of Federal Claims are entitled. Plaintiff-Beneficiary therefore requests that this litigation proceed in accordance with the Court's Rules and the case management procedures reflected in Appendix A and this Court's Special Procedures Order. The Court's Special Procedures Order ("SPO") embodies case management procedures aimed at the just and speedy administration of justice. The United States seeks to depart from these

procedures, without providing a justification for doing so. The unwarranted delay proposed by the United States in this matter should not be countenanced.

**<u>Defendant's Introductory Statement</u>:**

It is the Defendant's position that a JPSR should be utilized by the parties as a vehicle to briefly describe the "factual and legal issues, claims and defenses sufficient to acquaint the Court with the general nature of the case." SPO, 3. While the JPSR is the appropriate forum for the parties to *identify* potentially dispositive issues, claims and/or defenses, it should not however, be utilized at this preliminary stage in litigation as a tool to brief the Court with legal argument as to its jurisdiction over the claims. Briefing on these issues should properly occur at a specific time designated by this Court and in conjunction with the RCFC. As such, Defendant's contributions to this JPSR are limited to the identification and summary of the appropriate factual and legal issues Defendant believes to be necessary to inform the Court as to the nature of the parties' dispute (as set forth in more detail below).

On December 29, 2006, Plaintiff filed its Complaint in this Court against Defendant pursuant to the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. In the Complaint, Plaintiff alleges

broad claims for breach of trust by Defendant in its administration of Plaintiff's trust funds and non-monetary trust assets, such as real property. Plaintiff's claims can be classified as follows: (1) purported mismanagement of Plaintiff's surface and mineral estates (Count I); (2) purported mismanagement of Plaintiff's non-mineral estate (Count II); (3) purported mismanagement of Plaintiff's judgment funds (Count III); and (4) purported mismanagement related to the deposit and investment of Plaintiff's trust fund monies (Count IV).

In addition to this case, Plaintiff has also filed a case in the United States District Court for the District of Columbia against Defendant, specifically, the United States Departments of the Interior (Interior) and of the Treasury (Treasury), seeking "redress of breaches of trust" by Interior and Treasury in the management and accounting of Plaintiff's trust assets, including funds and lands, and further seeking to compel the agencies to provide a full and complete accounting of Plaintiff's trust assets, and to provide equitable restitution. *See* Appendix ("App.") at 1 (*Salt River Pima Maricopa Indian Community v. Kempthorne*, *et al.,* Case No. 06-CV-02241-JR (District Court for the District of Columbia), Complaint at paragraph 1.)

As set forth in its Answer filed in this case on March 27, 2007, and discussed in greater detail below, Defendant asserts various jurisdictional

defenses that would dispose of all or some of Plaintiff's claims in this litigation. Initially, Defendant intends to seek dismissal of the Complaint pursuant to 28 U.S.C. § 1500. *See* App. at 22. Depending on this Court's disposition of Defendant's motion to dismiss under 28 U.S.C. § 1500, Defendant plans to assert additional jurisdictional defenses, which must await Plaintiff's detailed specification of its claims and the factual and legal bases for those claims. Once Plaintiff's claims have been clearly defined and delineated, Defendant intends to raise other jurisdictional defenses, if warranted, including the applicable statute of limitations, the failure to state money-mandating claims, res judicata, and the exclusive jurisdiction of the Indian Claims Commission Act. *See* App. at 43 (*Salt River Pima-Maricopa Indian Community v. United States*, 231 Ct. Cl. 1057 (1982); App. at 44 (*Salt River Pima-Maricopa Indian Community v. United States*, 25 Cl. Ct. 201 (1992)). To the extent that the Court has jurisdiction over any of Plaintiff's claims, Defendant believes that those claims would be resolved by dispositive motions or trial. Defendant proposes that the scheduling of any additional fact discovery, expert witness discovery, and pre-trial and trial dates await the Court's ruling on the threshold jurisdictional issues.

**Parties' Report Pursuant to Appendix A.**

Counsel for the parties conducted the Early Meeting of Counsel on April 27, 2007, at the offices of Plaintiff's counsel. The following attorneys attended the meeting:

1. Counsel of Record for Plaintiff: Keith Harper
2. Other Participating Counsel for Plaintiff: G. William Austin, Catherine Munson and Mark Reeves
3. Counsel of Record for Defendant: Kevin Larsen
4. Other Government Counsel: John Martin, Anthony Hoang, Martin LaLonde, and Laura Maroldy for the United States Department of Justice; Elisabeth Brandon, Thomas Kearns, and Paul Smyth for the United States Department of the Interior, Office of the Solicitor; and Rachel Howard for the United States Department of the Treasury, Office of the Chief Counsel, Financial Management Service.

The parties discussed the several items contained in RCFC Appendix A, as well as specific items enumerated in this Court's Special Procedures Order ("SPO") dated February 22, 2007.

**A. Does the Court have jurisdiction over the action?**

**Plaintiff's Position:**

Jurisdiction exists pursuant to 28 U.S.C. §§ 1491 and 1505 and the numerous statutes, regulations, and executive orders delineating the United States' fiduciary responsibilities to tribal trust beneficiaries, including Plaintiff-Beneficiary. *See*, *e.g.*, *United States v. Mitchell*, 463 U.S. 206 (1983) ("*Mitchell II*"). The United States, however, has taken the untenable position that this Court lacks jurisdiction pursuant to 28 U.S.C. § 1500. At the April 27, 2007 conference of counsel, counsel for Plaintiff-Beneficiary were informed of the United States' intent to file a motion to dismiss on § 1500 grounds. Section 1500 is not a bar to this action.

Section 1500 deprives this Court of jurisdiction only if (1) at the time the plaintiff filed suit in this Court, it had a suit against the United States pending in another court *and* (2) the plaintiff asserted the "same claim" in both courts. *Breneman v. United States*, 57 Fed. Cl. 571, 575 (2003). Plaintiff-Beneficiary anticipates showing, *inter alia*, that its case before the United States District Court for the District of Washington, D.C. (the "D.C. District Court") was not pending at the time the instant action was filed in this Court and that, in any event, the two actions do not present the "same claim" in that Plaintiff-Beneficiary seeks different types of relief in each case

– here solely money damages and in the D.C. District Court strictly equitable relief. *See Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed. Cir. 1994) ("For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from ***the same operative facts***, and must seek ***the same relief***." (emphasis in original)).

To the extent the United States contends that the relief sought by Plaintiff-Beneficiary in this Court is identical to that sought in the D.C. District Court has been repeatedly raised and rejected in other, similar cases. *See*, *e.g.*, *Osage Tribe of Indians of Okla. v. United States*, 2005 WL 578171, *1, at *1-*2 (D.D.C. March 9, 2005) (noting that the D.C. District Court and the D.C. Court of Appeals share the "dubious distinction of having heard [and rejected] these same arguments on multiple occasions"). In *Osage*, the D.C. District Court held that the Osage Tribe's ongoing case seeking money damages in the Court of Federal Claims (CFC) neither deprived the district court of jurisdiction over Tribe's request for an accounting nor warranted a transfer to this Court. *Id.* Similarly, in the Osage Tribe's CFC case, Judge Hewitt determined that this Court enjoyed jurisdiction over the Tribe's claims for money damages, but lacked jurisdiction over its separate and distinct claims for a pre-liability accounting

and declaratory relief. *Osage Nation v. United States*, 57 Fed. Cl. 392, 393 n.2 (2003).

The *Cobell* litigation produced the same result. There, the D.C. District Court noted that courts have "'long recognized the distinction between an action at law for damages – which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation – and an equitable action for specific relief – which may include an order providing for … the recovery of specific … monies.'" *Cobell v. Babbitt*, 30 F. Supp. 2d 24, 41 (D.D.C. 1998) ("*Cobell I*") (quoting *Bowen v. Mass.*, 487 U.S. 879, 893 (1988)). Based upon the principles of distinction elucidated in *Bowen*, the D.C. District Court concluded that the *Cobell* plaintiffs' claim for an accounting was distinct from a claim for money damages. *Cobell I*, 30 F. Supp. 2d at 41. This approach of recognizing the accounting and other claims in Cobell as constituting "specific relief other than money damages" was expressly affirmed by the D.C. Circuit. *Cobell v. Norton*, 240 F.3d 1081. 1094-95 (D.C. Cir. 2001).

Given the overwhelming authority rejecting the United States' argument that the money damages relief sought by Plaintiff-Beneficiary in this Court is identical to that sought in Plaintiff-Beneficiary's purely

equitable claim in the D.C. District Court, the instant action is not barred by § 1500.

Plaintiff-Beneficiary also disagrees with the United States' erroneous declaration in this Section that Plaintiff-Beneficiary is somehow required to provide a more "detailed specification of its claims" and their factual and legal bases. The United States cites no authority in support of this assertion, presumably because none exists. Plaintiff-Beneficiary's Complaint lays out the operative facts and legal theories supporting relief, thereby satisfying CFC Rule 8(a)'s "short and plain statement" requirement. If the United States believes that Plaintiff-Beneficiary failed to adequately describe the grounds for its claims, the proper recourse would have been to file a motion for a more definite statement as allowed by CFC Rule 12(e). Having chosen not to file such a motion, the United States cannot now claim that Plaintiff-Beneficiary has failed to adequately describe its claims and use this purported failure to delay full discovery and derail the progress of this litigation.

**Defendant's Position:**

Plaintiff's claims suffer from several possible jurisdictional deficiencies that, when addressed by this Court, will either (a) dispose of the Complaint in its entirety; or (b) dispose or limit the scope of certain of

Plaintiff's claims. As stated in its Introductory Statement above, Defendant believes that this Joint Report is not the proper and appropriate vehicle for the parties to make legal arguments to the Court about its jurisdiction over Plaintiff's claims herein. Therefore, Defendant provides below only a summary of its legal positions so as to inform the Court of its views herein. Defendant will set forth in full its position in the appropriate jurisdictional motions.

Defendant intends to file a motion to dismiss for lack of subject matter jurisdiction as a result of the operation of 28 U.S.C. § 1500. Plaintiff filed this case and its companion case in the United States District Court on the same day, *i.e.*, December 29, 2006. The Complaints in both cases contain overlapping claims for monetary relief against the United States arising out of the same operative facts. Under 28 U.S.C. § 1500, the Court lacks subject matter jurisdiction over Plaintiff's suit. Defendant contemplates the need for certain limited factual discovery before it files its dismissal motion.

Also, Plaintiff's claims may be barred by application of the statute of limitations at 28 U.S.C. § 2501. In addition, the Court may lack jurisdiction under the Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505, over those claims for which Plaintiff is unable to identify a substantive source of law, such as a statute, treaty, or regulation, that establishes a

specific fiduciary money-mandating duty, or that was within the exclusive jurisdiction of the Indian Claims Commission. Further, depending on Plaintiff's description of its claims, Defendant intends to raise the defense of claim preclusion. Before Defendant can determine which, if any, of Plaintiff's claims are time-barred, lack jurisdictional basis, or are precluded by res judicata, and, based on its determination, file an appropriate dispositive motion, Defendant requires a detailed specification by Plaintiff of its claims in this case and, if necessary, limited discovery regarding the factual bases of the claims asserted by Plaintiff herein.

**B. Should the case be consolidated with any other case and, if so, why?**

**Plaintiff's Position:**

There is presently no need for this case to be consolidated with any other case. However, counsel for Plaintiff-Beneficiary represent three other tribal plaintiffs with pending claims before the Court of Federal Claims,[1] and it is likely that those cases will present substantial common issues of law and fact. While there is no reason for these cases to be consolidated for

[1] These cases are *Tohono O'odham Nation v. United States*, Case No. 1:06-cv-00944-EGB, *Passamaquoddy Tribe v. United States*, Case No. 1:06-cv-00942-LJB, and *Ak-Chin Indian Community v. United States*, Case No. 1:06-cv-00932-ECH.

the purposes of discovery, it may be necessary to revisit this issue with the Court as the cases develop.

**<u>Defendant's Position</u>:**

Defendant does not believe this case should be consolidated with any other case at this time.

**C. Should the trial of liability and damages be bifurcated, and if so, why?**

**<u>Plaintiff's Position</u>:**

Further proceedings will be required before Plaintiff-Beneficiary can make an informed decision as to the possible need for bifurcation in this case. It is possible that, as Plaintiff-Beneficiary's claims are further developed through discovery, the parties and/or the Court will conclude that bifurcation is advisable. Plaintiff-Beneficiary requests that the Court defer any decision on bifurcation at present and that the issue be revisited after the close of discovery.

**<u>Defendant's Position</u>:**

To the extent that the case is not disposed of in the entirety on jurisdictional grounds, Defendant believes that it would be appropriate to bifurcate trial of liability and damages in this case, given the potential legal and factual complexity of the trust asset and trust fund mismanagement issues and claims raised herein.

**D. Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?**

**Plaintiff's Position:**

Plaintiff-Beneficiary sees no reason to delay the resolution of claims in this Court that have already been identified and that are presently stated in Plaintiff-Beneficiary's Complaint pending the outcome of Plaintiff-Beneficiary's action before the D.C. District Court. To argue that the instant action should be stayed pending resolution of the Plaintiff-Beneficiary's action for an equitable accounting in the D.C. District Court action, the United States erroneously characterizes Plaintiff-Beneficiary's money damages claims here. In particular, the United States contends that there is a risk of "duplicative litigation" because this Court and the D.C. District Court purportedly may "be asked to address the nature and extent of Defendants' duty to account." As explicitly set forth in the Complaint, however, Plaintiff-Beneficiary is not seeking an accounting in this action and Plaintiff-Beneficiary's claims are not based upon the United States' duty to account. Rather, Plaintiff-Beneficiary is seeking money damages based upon the United States' breach of well-established money mandating fiduciary duties. There is simply no reason to delay these proceedings.

**<u>Defendant's Position</u>:**

These proceedings should be deferred, at least in part, until after resolution of Plaintiff's trust accounting-related claims now pending in the United States District Court. In its related District Court action, Plaintiff demands a complete and accurate historical accounting of trust funds and trust assets, and it explicitly seeks to challenge the adequacy of accounting work provided to it by Interior to date. *See* Complaint at 17-18, Prayer for Relief, 5. In the District Court case, Defendant, specifically, the Interior Department, intends to request a remand to the agency for a specified period of time, so that Interior can exercise its primary responsibility and discretion to define and complete the accounting for Plaintiff that Interior deems to be required under its statutory and regulatory mandates, and thereafter, consistent with that accounting, make a determination about the restatement of Plaintiff's account balances. Upon completion of that remand, the accounting, along with the supporting administrative record, will be presented to Plaintiff for its review.

If litigation were to proceed in this Court along a track parallel and simultaneous to the District Court litigation, there is a substantial risk of duplicative litigation, needless expenditure of judicial and the parties' limited resources, and inconsistent rulings by competing federal tribunals.

Both Courts could be asked to address the nature and extent of Defendant's accounting duty, as well as the financial transactions that underlie the District Court and CFC actions. This case and the companion case in the District Court are likely to involve facts that are related to underlying transactions and events associated with Defendant's management of Plaintiff's funds and assets and that form the bases for Plaintiff's accounting and damage claims in both cases. This factual overlap raises the significant risk that a judgment from this Court could be duplicative, inconsistent, or even contradictory to any ultimate determination made by the District Court. Accordingly, this Court should stay proceedings until after resolution of the District Court case.

Further, the appropriate sequencing of the resolution of Plaintiff's trust fund mismanagement claims calls for Plaintiff's trust accounting claims to be resolved in the District Court first, before the merits of those claims can be adjudicated by this Court. Any accounting produced pursuant to the District Court action would be likely to inform Plaintiff's claims and Defendant's defenses in the present action. The appropriate forum for compelling an accounting, in advance of a determination of liability for any mismanagement claims that could be revealed by an accounting, is the District Court, where Plaintiff's claim seeking an accounting from the

Department of the Interior, through its request for declaratory and injunctive relief, is currently pending.

**E. In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?**

**<u>Plaintiff's Position</u>:**

Plaintiff-Beneficiary does not intend to seek any remand or suspension.

**<u>Defendant's Position</u>:**

Defendant respectfully refers the Court to the position that it set forth in response to Question D above. As summarized above, Defendant intends to request a remand, for a specified time period, to the Interior Department in the related or companion case that Plaintiff has filed in the United States District Court, so that Interior can exercise its primary responsibility and discretion to define and complete the accounting for Plaintiff that Interior deems to be required under its statutory and regulatory mandates, and thereafter, consistent with that accounting, make a determination about the restatement of Plaintiff's account balances. Upon completion of that remand, Interior will present the accounting, along with the supporting administrative record, to Plaintiff and, if appropriate, to the District Court for review. Accordingly, this case should be stayed pending the completion of that remand. At a minimum, the Court should suspend all

proceedings in this case pending the Court's resolution of Defendant's intended motion to dismiss pursuant to 28 U.S.C. § 1500, except for certain limited discovery about the timing of Plaintiff's filing of this case and its related case in the District Court, which Defendant may need to undertake before it can file its motion.

**F. Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.**

**Plaintiff's Position:**

Plaintiff-Beneficiary does not anticipate joining any additional parties. During the Early Meeting of Counsel, Counsel for the United States indicated that depending upon the results of the accounting that Plaintiff-Beneficiary is seeking in the D.C. District Court, the United States may ultimately wish to join as yet undetermined third parties to seek indemnification for damages incurred by Plaintiff-Beneficiary.

**Defendant's Position:**

At this time, Defendant does not anticipate the joinder of any additional party.

**G. Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is the schedule for the intended filing?**

**<u>Plaintiff's Position</u>:**

Following discovery, counsel for Plaintiff-Beneficiary anticipates being in a position to move for summary judgment as to the existence of money mandating fiduciary duties and possibly as to liability. The existence and money mandating nature of many of the duties upon which Plaintiff-Beneficiary's claims are based are well-established. *See*, *e.g.*, *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 71 Fed. Cl. 172, 175, 178 (2006) (duty to collect proceeds from tribal mineral estates); *Mitchell II*, 463 U.S. at 223 (duty to manage and collect proceeds from rights-of-way); *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 69 Fed. Cl. 639, 656 (2006) (duty to manage and invest judgment funds); *Osage Tribe of Indians of Oklahoma v. United States*, 72 Fed. Cl. 629, 662 (2006) (duty to manage, deposit, and invest trust funds).

Counsel for the United States have indicated their intent to shortly file a dispositive motion, discussed in Section A, *supra*. The Court's Special Procedures Order, as revised August 17, 2006 (the "Court's Special Procedures"), instructs that this motion be filed after the Preliminary Status Conference is conducted. There is no reason to depart from these Court-ordered requirements. The filing of this motion would not and should not require any delay in discovery – particularly when even the United States

recognizes the need to conduct discovery before any such dispositive motion would be appropriate. *See* Defendant's Position below acknowledging this to be the case (although the United States nonetheless urges the Court to limit discovery at this stage to what the Defendant wants to accomplish in this regard, while staying any discovery on the part of Plaintiff-Beneficiary – a one-sided arrangement that would be wholly at odds with the Court's rules and fundamental fairness).

The United States has also indicated that it may eventually file an additional dispositive motion (*i.e.*, motion for summary judgment) addressing other issues including, but not necessarily limited to, (1) whether the duties allegedly violated by the United States are money mandating; (2) whether any of Plaintiff-Beneficiary's claims are barred by the relevant statutes of limitation; and (3) whether any of Plaintiff-Beneficiary's claims are barred by the doctrine of *res judicata*. The United States has taken the position that these issues are not yet ripe for presentation to the Court. With the exception of *res judicata*, Plaintiff-Beneficiary agrees. Once discovery has progressed to the point that the United States is prepared to file a motion on (1) and (2) above, it must, in accordance with the Court's Special Procedures, combine all such issues in a single motion rather than presenting them to the Court in a serial,

piecemeal fashion. As for *res judicata*, Plaintiff-Beneficiary sees no reason why this defense cannot be adjudicated when the United States presents its motion to dismiss based on Section 1500 as required by the Court's Special Procedures.[2]

**Defendant's Position:**

Defendant anticipates filing a motion to dismiss pursuant to 28 U.S.C. § 1500 as soon as the Court grants leave for such filing in accordance with the Special Procedures Order and after Defendant has conducted limited discovery related to the timing of Plaintiff's filing of this case and the related case in the District Court. Additionally, Defendant anticipates raising additional jurisdictional defenses in a single dispositive motion pursuant to RCFC 12(b) or 56 at a later point in this case, after Plaintiff has specifically defined its issues and claims herein.

Prior to Defendant raising these additional grounds for dismissal by motion, however, the Court should require Plaintiff to file a detailed statement of its claims, including specification of the particular rights-creating or duty-imposing sources of law underlying the claims, the precise

[2] In fact, the United States has included in the Appendix to the JPSR the cases upon which it presumably relies as a basis for its *res judicata* defense. It is readily apparent that the claims in those actions are not identical to the ones Plaintiff-Beneficiary asserts here. Thus, there is no reason for the United States to be permitted to delay in presenting the *res judicata* defense to the Court.

breach(es) of those duties that allegedly occurred, a concise statement of the alleged operative facts constituting the asserted breach(es) of duty, and the alleged damages resulting from such alleged breach(es). After Plaintiff has specified its claims, the Court should allow Defendant to engage in discovery to determine the basis, if any, for this Court's subject matter jurisdiction over the specified claims. The Court should allow 90 days for Defendant's discovery after Plaintiff has provided its statement of claims. Sixty days after completion of this discovery, Defendant would raise its remaining jurisdictional defenses by way of dispositive motion, if doing so would be appropriate.

## H. What are the relevant factual and legal issues?

**Plaintiff's Position:**

The relevant factual and legal issues as well as law supporting Plaintiff-Beneficiary's position are outlined in detail in Plaintiff-Beneficiary's complaint. As described therein, Plaintiff-Beneficiary has presented four counts alleging breaches of trust on the part of the United States. To prove its claims, Plaintiff-Beneficiary will establish (1) the existence of one or more trust duties; (2) that those duties are money mandating; (3) that the United States has breached those duties; and (4) that Plaintiff-Beneficiary has suffered damages as a result of the United States' breach of its duties.

Specifically, Plaintiff-Beneficiary plans to show that the United States has breached money mandating fiduciary duties and caused damage to Plaintiff-Beneficiary by, *inter alia*, failing to appropriately (1) manage and collect proceeds from Plaintiff-Beneficiary's surface and mineral estates; (2) manage and collect proceeds from Plaintiff-Beneficiary's non-mineral estate, including, but not limited to, easements, rights-of-way, and leases; (3) manage and invest Plaintiff-Beneficiary's judgment funds; and (4) manage, deposit, and invest Plaintiff-Beneficiary's trust funds. As discussed in Section G, *supra*, the existence and money mandating nature of these duties are well-established.

Consistent with its efforts to delay any consideration of the merits of Plaintiff-Beneficiary's claims, the United States has set forth only the factual and legal issues relevant to its jurisdictional defenses. However, most of these purported "issues" have already been adjudicated in other tribal trust litigation.

As discussed in Section A above, Plaintiff-Beneficiary's Complaint should not be dismissed pursuant to 28 U.S.C. § 1500. Plaintiff-Beneficiary's case before the D.C. District Court was not pending when the instant action was filed, and the two actions do not request the same relief. The United States' arguments on this point have been repeatedly raised

and rejected both in this Court and before the D.C. District Court. *See*, *e.g.*, *Osage Tribe*, 2005 WL 578171 at *1-2; *Osage Nation*, 57 Fed. Cl. at 393, n.2.

Similarly, the United States' statute of limitations argument, particularly its question regarding the accrual of Plaintiff-Beneficiary's claims, has been analyzed and rejected by this Court as well as the Court of Appeals for the Federal Circuit. The Federal Circuit held that the "plain language" of 28 U.S.C. § 2501 shows that Congress has "deferred the accrual of the Tribes' cause of action until an accounting is provided." *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339, 1346 (Fed. Cir. 2004). Because the United States continues in dereliction of its fiduciary duty to provide Plaintiff-Beneficiary with an accounting, Plaintiff-Beneficiary's claims have yet to accrue for the purposes of 28 U.S.C. § 2501. *See Chippewa Cree*, 69 Fed. Cl. at 664 (holding that, under the Federal Circuit's *Shoshone* opinion, the statute of limitations does not begin to run "*until the claimant is provided with a meaningful accounting*" and that the financial reports provided by the government did not constitute a "meaningful accounting" (emphasis in original)).

The United States' contention that the Tucker Act and Indian Tucker Act do not provide this Court with jurisdiction over Plaintiff-Beneficiary's claims is refuted by the case law cited in Section G, above. Those cases, and others like them, establish the existence of substantive, money mandating duties, the breach of which has been alleged in detail in Plaintiff-Beneficiary's Complaint. As to the United States' contention that Plaintiff-Beneficiary's claims were within the exclusive jurisdiction of the Indian Claims Commission, it is well-established that "claims that concern losses to or mismanagement of trust funds … are not barred by the ICC Act." *Osage Tribe*, 57 Fed. Cl. at 398.

The purported factual and legal issues identified by the United States have been previously adjudicated in the CFC and other courts. There is no reason for the Court to delay the progress of this litigation to reevaluate arguments that have already been considered and rejected on several occasions.

**Defendant's Position:**

In Defendant's view, it is presently premature to identify the factual and legal issues that the Court may have to address at trial on liability or damages, because the precise contours of those issues depend on

jurisdictional rulings by this Court. As to the Court's jurisdiction, Defendant sets forth the relevant factual and legal issues:

a. Whether the Complaint should be dismissed pursuant to 28 U.S.C. § 1500.

1. Whether Plaintiff's case in the United States District Court was pending when Plaintiff filed this case.

2. Whether the complaints in this case and the District Court case are based on the same or similar operative facts.

3. Whether the complaints in this case and the District Court case contain overlapping requests for relief.

b. Whether Plaintiff's claims are barred by the Statute of Limitations, 28 U.S.C. § 2501.

1. Whether Plaintiff's claims fall within Interior Department Appropriations Act language, which provides, in relevant part, that a Tribe's claims related to loss or mismanagement of its trust funds shall not begin to accrue until Interior provides an accounting from which the Tribe can determine its losses, *See* Pub. L. No. 108-447, 118 Stat. 2809, as construed by the Court of Appeals for the Federal Circuit in *Shoshone Indian Tribe v. United States*, 364 F.3d 1339, 1350-51 (Fed. Cir. 2004).

2. Whether Plaintiff's claims accrued more than six years prior to the filing of this case.

c. Whether the Court has jurisdiction over Plaintiff's claims under the Tucker Act or the Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505.

1. Whether Plaintiff's claims are based on substantive sources of law such as a statute, treaty, or regulation that establish specific fiduciary or other duties.

2. To the extent that Plaintiff's claims are based on specific duties established in substantive sources of law, whether a breach of those duties would mandate the payment of compensation.

3. Whether Plaintiff has sufficiently alleged that Defendant has failed faithfully to perform any specific money-mandating duties.

4. Whether Plaintiff's claims were within the exclusive jurisdiction of the Indian Claims Commission.

d. Whether Plaintiff's claims are barred by the doctrine of claim preclusion.

## I. What is the likelihood of settlement? Is alternative dispute resolution contemplated?

**Plaintiff's Position:**

At this early stage, it is difficult for counsel for Plaintiff-Beneficiary to accurately predict the likelihood of settlement. Counsel for Plaintiff-

Beneficiary would welcome the opportunity to engage in meaningful settlement negotiations at any time – with or without ADR. However, Plaintiff-Beneficiary believes that there is no need to stall the progress of this litigation to engage in settlement discussions and that such delays could promote unhelpful counter-incentives to resolution. Accordingly, while remaining open to settlement discussions, counsel for Plaintiff-Beneficiary believe that there is no reason to delay formal discovery to enable a prompt resolution of this litigation. So too, Plaintiff-Beneficiary opposes the adoption of any ADR procedure that may have the consequence, however unintended, of delaying progress in the litigation, or any such procedure that would cause Plaintiff-Beneficiary to incur ADR-related expense.

**Defendant's Position:**

The parties have discussed the possibility of settlement in this case. Defendant believes that the likelihood of settlement may increase after the exchange of information related to the tribal trust funds and assets. Defendant believes that it is possible to settle Plaintiff's trust fund and asset mismanagement claims through Alternative Dispute Resolution (ADR) processes if Plaintiff were agreeable to ADR. Defendant is considering undertaking measures short of ADR, such as informal productions of

documents and information, intended to foster good will between the parties, so that ADR and settlement may become a possibility in the future. Defendant believes that it may be unlikely for the parties to settle this case so long as the parties are actively litigating it.

**J. Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why?**

**Plaintiff's Position:**

Plaintiff-Beneficiary anticipates proceeding to trial for a determination of liability and/or damages. As noted in Section G above, Plaintiff-Beneficiary anticipates that the United States' liability will be resolved by dispositive motions. Plaintiff-Beneficiary does not request any expedited trial scheduling.

**Defendant's Position:**

At this point, it is unclear to Defendant whether this case will proceed to trial. As stated by Defendant in its responses to Questions A, B, D and G above, it is possible that this case may be resolved in whole or in part by dispositive motion. Moreover, as discussed in Defendant's response to Question I above, Defendant is open to exploring alternative methods of resolving, through settlement discussions or an ADR process, Plaintiff's issues and claims herein, without the need for protracted litigation. In the

event that this case does proceed to trial, however, Defendant does not anticipate that such a trial in this matter can be accomplished on an expedited basis. In any event, in the interest of judicial efficiency, economy, and conservation of resources, the Court should defer any scheduling of pre-trial proceedings or of the trial itself until after Plaintiff has provided its statement of claims, the parties have briefed the jurisdictional issues related to the specified claims, and the Court has ruled on those jurisdictional issues. As mentioned above, the jurisdictional issues include whether Plaintiff has sufficiently shown the existence of money-mandating duties and whether Plaintiff's claims are barred by the statute of limitations.

**K. Are there special issue regarding electronic case management needs?**

The parties do not foresee any special issues regarding electronic case management.

**L. Is there other information of which the court should be aware at this time?**

**<u>Plaintiff's Position</u>:**

Counsel for Plaintiff-Beneficiary plan to seek an order protecting Plaintiff-Beneficiary's sensitive financial data and other confidential information against unwarranted third party disclosure. Counsel for the

United States have stated their intent to seek a protective order prior to disclosing certain work paper inventories and other sensitive or confidential documents. Plaintiff-Beneficiary is aware that the United States routinely requests such orders in tribal trust litigation, and Plaintiff-Beneficiary will not oppose a *properly tailored* order. However, counsel for Plaintiff-Beneficiary would oppose the adoption of any form of "umbrella" protective order that is so broad in scope that it permits materials to be identified as "confidential" without making any showing of good cause for such protection as required by RCFC 26(c).

**<u>Defendant's Position</u>:**

Defendants note the following for the Court's information:

a. Plaintiff's counsel herein represent the Tribes in three other cases currently pending before this Court: *Ak-Chin Indian Community v. Kempthorne*, No.06cv00932-ECH; *Passamaquoddy Tribe of Maine v. Kempthorne*, No. 06cv00942-LJB; and *Tohono O'Odham Nation v. Kempthorne*, No. 06cv00944-EGB.

b. At present, Defendants are handling about 103 Tribal trust accounting and trust mismanagement cases that have been brought in the United States District Courts and the Court of Federal Claims. There are about 57 cases (including this one) in this Court; nine in various United

States District Courts in Oklahoma; and 37 cases in the United States District Court for the District of Columbia.

c. Defendants believe that a protective order will be necessary to enable Defendant to produce to Plaintiff certain documents and data that contain confidential information (*e.g.*, protected by the Privacy Act). Defendant notes that even documents that include the Salt River Tribe's information may also include protected confidential information of third parties. Defendant further notes that, in other Tribal trust accounting and trust mismanagement cases, the parties have entered into agreements, whereby, among other things, all documents that Defendant produces to Plaintiff are considered presumptively confidential and are subject to the protections of an appropriate protective order. When Plaintiff has sought to use in Court documents produced as presumptively confidential, the parties have consulted to determine whether the particular documents actually contain confidential information and, to the extent they do, whether the confidential information would be redacted or whether the document would be filed under seal. The parties in these other cases have followed this approach to expedite voluminous productions of documents.

Plaintiff suggests an alternative approach, whereby, prior to production of documents by Defendant to Plaintiff, Defendant would review

every document for confidential information and mark only those documents that actually contain confidential information that would be subject to an appropriate protective order. Defendant is not opposed to this approach, but Plaintiff and the Court should be aware that a requirement that Defendant review and determine the confidentiality of every document that Plaintiff seeks to have produced will require a significant effort and resources and a significant amount of time, depending on the volume of documents that Plaintiff seeks to have produced. In Defendant's experience with other trust accounting and trust mismanagement cases involving similar complex breach of trust claims, the cases have been paper-intensive, involving tens to hundreds of thousands of document images or pages. If this case involves a similar volume of document, which Defendant is currently expecting, Defendant will require significantly more time to complete its document productions to Plaintiff than Plaintiff has allowed in its recommended discovery schedule.

**M. Proposed Discovery Plan**

**Plaintiff's Proposal:**

The initial disclosures required by RCFC 26(a)(1) should be made within the time frame established by that rule. After the initial disclosures are made, Plaintiff-Beneficiary's proposed Case Management Order would

allow the parties 270 days to complete factual discovery. Plaintiff-Beneficiary would thereafter have 30 days to submit its expert disclosures pursuant to RCFC 26(a)(2), and the United States would then have 30 days from the date of Plaintiff-Beneficiary's disclosures within which to submit its own expert disclosures pursuant to RCFC 26(a)(2). From that point, the parties would be granted an additional 60 days to conduct discovery concerning the expert disclosures.

The presumptive limits on discovery outlined in the Court's Special Procedures and the RCFC should be set aside in this litigation. Due to the scope and nature of Plaintiff-Beneficiary's claims (*e.g.*, the United States concedes $480 million in total fund transactions between 1972 and 1992 alone; Plaintiff-Beneficiary believes that this number is understated) and the fact that almost all of the factual information necessary to support those claims is in the possession of the United States as trustee, Plaintiff-Beneficiary anticipates that additional interrogatories and depositions will be necessary to uncover all relevant information. Additionally, because the beneficiary of a trust is entitled to receive "'all information regarding the trust and its execution which may be useful to the beneficiary in protecting its rights'" under the trust, the United States' production of all relevant materials is required even if it exceeds the discovery obligations applicable

in ordinary civil proceedings. *White Mountain Apache Tribe of Arizona v. United States*, 26 Cl. Ct. 446, 448 (1992) (quoting G.T. Bogert, *Trusts*, § 141, at 494 (6th ed. 1987)); *see also Clifford v. United States*, 136 F.3d 144, 152 (D.C. Cir. 1998) (noting that a trust beneficiary is entitled to receive all "information necessary to protect his rights under the trust").

With respect to the United States' contrary proposal, there is no legitimate reason to delay discovery until after the equitable accounting action filed in the district court is resolved, or until after the Court has decided a Section 1500 issue that clearly is not a matter of first impression and that Plaintiff-Beneficiary believes is not even properly presented here owing to the sequence of Court filings. *See* Section A above. Plaintiff-Beneficiary notes that other tribes have been permitted to proceed to litigate their breach-of-trust claims in the Court of Claims while their accounting actions are pending in federal district court. *See, e.g., Osage Tribe of Indians of Okla. v. United States*, 75 Fed. Cl. 462 (2007). There is no reason to proceed any differently here.

So too, the United States' other jurisdictional arguments have been previously addressed and rejected. Asserting those same arguments yet again in this matter simply does not justify the postponement of discovery

that United States seeks and departure from the processes set forth in the Court's Special Procedures Order.

The United States' "discovery will be time-consuming and burdensome" arguments are equally unavailing. In arguing that months will be needed to identify and separate documents assertedly protected from disclosure per the attorney-client privilege, the United States ignores the fact that "the attorney-client privilege does not apply to prevent disclosure to beneficiaries of communications between a trustee and its counsel concerning management and administration of the trust." *Osage Nation v. United States*, 66 Fed. Cl. 244, 246 (2005) (internal quotation omitted). Consequently, any such documents that "were prepared by defendant in connection with its services as trustee . . . are not privileged as to the . . . trust beneficiaries." *Id*. at 249. And to protect against the inadvertent production of any truly privileged materials, the Court may enter a Protective Order providing that any such inadvertently-produced privileged information will not necessarily result in the waiver of the attorney-client privilege. In short, there are ways to deal with these issues in the context of the discovery process and without frustrating further progress in the litigation.

As for the United States' argument that significant time may be needed to review and compile all of the documents responsive to broad discovery, that concern obviously would be better addressed *after* discovery is underway and the Court is actually presented with the issue. Until then, the United States' concern is simply a matter of conjecture – a potential problem that may never in fact materialize. The administration of justice should not be thwarted by the kind of "What if's" the United States is raising prematurely at this early stage.

Plaintiff-Beneficiary further objects to the United States' proposed limitations on the initial phase of discovery. While the United States concedes that Plaintiff-Beneficiary is entitled to conduct discovery to develop its claims, it simultaneously and inconsistently proposes that Plaintiff-Beneficiary not be allowed to conduct depositions. As a fiduciary, the United States is obligated to disclose any information requested by Plaintiff-Beneficiary even outside of the discovery process. *See White Mtn. Apache Tribe of Ariz. v. United States*, 26 Cl. Ct. 446, 448 (1992) ("'The trustee is under a duty to furnish the beneficiary on demand all information regarding the trust and its execution which may be useful to the beneficiary in protecting its rights, and to give to the beneficiary facts which the trustee knows or ought to know would be important to the beneficiary.'" (quoting

G.T. Bogert, *Trusts* § 141 at 494 (6th ed. 1987))). There is therefore no sound basis for limiting discovery as requested by the United States.

**Defendant's Proposal:**

As mentioned above, Defendant believes that this case should be stayed at least in part, pending resolution of Plaintiff's accounting claims in the district court.

As to any issues that are not stayed in this litigation pending resolution of the district court case, however, this Court should allow only limited discovery related to the timing of Plaintiff's filing of its CFC and District Court complaints to proceed, and it should stay any other discovery, as well as the litigation of the rest of the case, until after the Court has resolved Defendant's jurisdictional challenges brought pursuant to 28 U.S.C. § 1500.

If the Court were to find that this case should not be dismissed pursuant to 28 U.S.C. § 1500, discovery should proceed in three phases. The first phase would consist of the factual discovery that Plaintiff needs to delineate and define the claims that it shall set forth in its statement of claims. Such discovery should be limited to document productions, interrogatories, and requests for admission.

Potentially relevant documents are located at multiple locations and federal records repositories around the country and may be located in hundreds, if not thousands, of boxes of retired federal records, as well as active government records. In order for Defendants to respond to Plaintiff's discovery requests, the parties would have to identify the boxes that might contain responsive documents; the Solicitor's Office of the Interior Department would have to conduct a pre-inspection privilege review of those boxes; Plaintiff would have to inspect the boxes and identify those documents it wishes to have produced; and Defendant would have to image, code, and conduct a post-inspection confidentiality and privilege review, before producing the images of the requested documents to Plaintiff. Based on Defendants' experience in other Tribal trust accounting and trust mismanagement cases, depending on the documents requested by Plaintiff, it will likely take longer than 270 days to complete this production process, particularly if, as Plaintiff has requested, Defendant is required to review all documents and identify those containing confidential information, before producing the documents to Plaintiff. Until Plaintiff propounds document or other discovery requests, Defendants are unable to provide a fully accurate estimate as to the amount of time that the Court should allow to complete discovery for this first phase of discovery. For

purposes of its proposed scheduling order, however, Defendant recommends 360 days for completion of the initial phase of discovery.

After Plaintiff files a more specific statement of its claims, the second phase of discovery would commence and be limited to fact discovery required for Defendant's jurisdictional challenges (*e.g.,* whether Plaintiff's claims accrued more than six years prior to the filing of this litigation). Although it is difficult to predict the extent of the required discovery prior to Plaintiff's submission of its statement of claims, as a preliminary matter, Defendant suggests that the second phase should proceed for 90 days. Within 60 days of the conclusion of this discovery, Defendant would file its dispositive motions raising any additional jurisdictional defenses.

Once these jurisdictional issues are resolved, the parties would confer regarding the scheduling of a final phase of discovery and propose a schedule to the Court. During this phase, the parties would conduct any remaining fact discovery, including fact or RCFC 30(b)(6) depositions, based on the specific claims (if any) that have survived Defendant's jurisdictional challenges. In addition, the parties would conduct expert witness discovery, and otherwise prepare the case for trial.

Defendant notes that Plaintiff's proposed time for Defendant to produce its expert witness disclosures is inadequate. In Defendant's

experience with other Tribal trust accounting and trust mismanagement cases involving similar complex breach of trust claims, Plaintiff's full articulation of its claims and their legal and factual bases has not occurred until its expert witness disclosure. Accordingly, once Defendant obtains Plaintiff's expert witness disclosures, it has found that it needs to conduct further research to identify and develop evidence from voluminous retired records in order to rebut Plaintiff's claims and support its own expert analyses. Without sufficient time to conduct this additional research, Defendant would be prejudiced in its ability to prepare a sufficient defense. Therefore, to foreclose this kind of prejudice to Defendant's ability to mount a fully adequate defense, Defendant's expert witness disclosures should be required no less than 120 days after Plaintiff's expert disclosure.

**The Appendix to the JPSR**: Judge Baskir Special Procedures Order requires the parties to include copies of material portions of any documents, not already filed, that are relevant to jurisdiction or to disputed facts alleged in the pleadings. These include material portions of contract documents, a summary of damage computation, and records of prior judicial or agency proceedings related to the claim (*e.g.*, tax decisions, and in contract cases, the claim and the contracting officer's final decision).

Include copies of specialized jurisdictional statutes. Leave of Court is necessary to file an Appendix exceeding 50 pages in length.

**Response**: Defendant has included for the Appendix (1) a copy of Plaintiff's Complaint filed in the D.C. District Court action; (2) a copy of 28 U.S.C. Section 1500; (3) *Salt River Pima-Maricopa Indian Community v. United States*, 231 Ct. Cl. 1057 (1982), and (4) *Salt River Pima-Maricopa Indian Community v. United States*, 26 Cl. Ct. 201 (1992). Plaintiff-Beneficiary does not object to the above materials being included in the Appendix.

Respectfully submitted this 11th day of May, 2007.

MATTHEW J. McKEOWN
Acting Assistant Attorney General

/s/ Keith Harper
KEITH M. HARPER
Kilpatrick Stockton, LLP
607 14th Street, N.W., Suite 900
Washington, DC 20005
Tel: (202) 508-5844
Fax: (202) 585-0007

Attorney for Plaintiff
The Salt River Pima-Maricopa
Indian Community

/s/ Kevin J. Larsen
KEVIN J. LARSEN
United States Department of
Justice
Environment Division
Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0258
Fax: (202) 353-2021

Attorney for Defendant
The United States of America

OF COUNSEL:

JOHN H. MARTIN
ANTHONY P. HOANG
United States Department of
Justice
Environment Division
Natural Resources Section
Washington, D.C. 20044-0663

PAUL SMYTH
TOM BARTMAN
Office of the Solicitor
Department of the Interior
Washington, D.C. 20240

RACHEL HOWARD
Office of the Chief Counsel
Financial Management Service

Department of the Treasury
Washington, D.C. 20270

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | Case No. 06-943L |
| v. | ) | Judge Lawrence M. Baskir |
| | ) | Electronically Filed ________ |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing JOINT PRELIMINARY STATUS REPORT was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Kevin J. Larsen, Esq.
United States Department of Justice
Environment Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

This 11th day of May, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN

D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com

Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiff*
The Salt River Pima-Maricopa
Indian Community