# EXHIBIT S

# In the United States Court of Federal Claims

FILED
MAR 1 9 2004
U.S. COURT OF FEDERAL CLAIMS

No. 02-24 L

(Filed: March 19, 2004)

THE PUEBLO OF LAGUNA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

* Motion for document preservation order;
* Authority to issue order; Inherent powers;
* Article I courts; Judicial power; Integrity
* of judicial process; 28 U.S.C. § 174; 28
* U.S.C. § 2503(c); RCFC 16(c); Require-
* ments for issuing preservation order; Past
* handling of tribal records indicative of risk
* of loss or destruction; Order issued
* requiring, *inter alia*, indexing and limited
* inspection of documents.

**ORDER**

*Alan R. Taradash*, Nordhaus, Haltom, Taylor, Taradash & Bladh, LLP, Albuquerque, New Mexico, for plaintiff.

*James M. Upton*, U.S. Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Thomas L. Sansonetti*, for defendant.

**ALLEGRA, Judge:**

In this case, the Pueblo of Laguna tribe seeks an accounting and to recover for monetary loss and damages relating to the government's alleged mismanagement of the tribe's trust funds and other properties, including royalties from the exploitation of uranium ore reserves on the tribe's New Mexico reservation. This case is one of several such cases before the court, including *Jicarilla Apache Nation v. United States*, No. 02-25L and *Delaware Tribe of Indians v. United States*, No. 02-26L, in which the parties are currently pursuing alternative dispute resolution on claims totaling more than $550 million. Before the court is plaintiff's motion for a document preservation order – an identical motion has been filed in the *Jicarilla Apache* case.

The Pueblo requests that the court issue an order directing various government agencies to take steps to ensure the preservation and availability of documents, in various media, potentially relating to its claims against the government. Failure to do so, plaintiff contends, will result in the destruction or loss of relevant documentation, as evidenced by the government's mishandling of Indian records in cases pending before the U.S. District Court for the District of

Columbia. For its part, defendant first argues that this court lacks jurisdiction to enter an order of the type requested by plaintiff. It also contends that the proposed order is unnecessary and would be overly burdensome, partly in light of existing record retention procedures at the government agencies most likely to be implicated by the tribe's claims.

At the outset, this court must address defendant's concerns regarding its authority to issue orders protecting potential evidence in this case. While defendant objects primarily to the form of the order requested by plaintiff – that of a preliminary injunction, rather than a protective order – it, nonetheless, argues that because this court is an Article I tribunal, it lacks the inherent powers afforded Article III courts to order the preservation of relevant evidence. This court disagrees.

"Certain implied powers must necessarily result to our Courts of justice from the nature of their institution," the Supreme Court has long recognized, "powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34 (1812); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *see also Chambers*, 501 U.S. at 43; *Shepherd v. American Broad. Cos.*, 62 F.3d 1469, 1474 (D.C. Cir. 1995). They take various forms – for example, the power to control admission to the bar; to discipline attorneys who appear before a court; to impose silence, respect and decorum in court proceedings; and to dismiss a case *sua sponte* for lack of prosecution. *See Chambers*, 501 U.S. at 44-45; *Link*, 370 U.S. at 630-32; *Ex parte Burr*, 9 Wheat. 529, 531 (1824); *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204 (1821); *see also* Robert J. Pushaw, "The Inherent Powers of Federal Courts and the Structural Constitution," 86 Iowa L. Rev. 735, 766-75 (2001) (describing these and other inherent powers).

Decisional law recognizes yet another inherent power: the ability to order evidence preserved. To be sure, the "case law imposes a 'duty to preserve material evidence . . . not only during litigation but also . . . [during] that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.'" *Renda Marine, Inc. v. United States*, 58 Fed. Cl. 57, 60 (2003) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001)).[1] That requirement here is reinforced by statute and regulation.[2] Notwith-

[1] *See also Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998); *see generally* Adam I. Cohen & David J. Lender, Electronic Discovery: Law and Practice (hereinafter "Electronic Discovery") §3.01 (2004).

[2] Various statutes and regulations independently obligate defendant to make and preserve various records to document its management of Indian trust assets. *See, e.g.*, 44 U.S.C. §§ 3101 (regarding preservation), 3309 (regarding disposal); 36 C.F.R. § 1228.30 (approval of

standing, courts have held that they have the inherent power to order that evidence be preserved and have, for good cause, required that specific procedures be adopted to ensure such preservation. *See, e.g., Illinois Tool Works, Inc. v. Metro Mark Prods. Ltd.*, 43 F. Supp. 2d 951, 954 (N.D. Ill. 1999); *In re Prudential Ins. Co. of America Sales Practice Litig.*, 169 F.R.D. 598, 600 (D.N.J. 1997); *see also* Manual for Complex Litigation (4th ed. 2004) (hereinafter "Manual for Complex Litigation") § 11.442 (noting that "[b]efore discovery starts, and perhaps before the initial conference, the court should consider whether to enter an order requiring the parties to preserve and retain documents, files, data, and records that may be relevant to the litigation"). According to one court, such preservation orders are "common in complex litigations," *HJB, Inc. v. American Home Prods. Corp.*, 1994 WL 31005, at *1 (N.D. Ill. Feb. 1, 1994), and are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication. *See Renda*, 58 Fed. Cl. at 62-63; *Wiginton v. Ellis*, 2003 WL 22439865, at * 2 (N.D. Ill. Oct. 27, 2003); *see also* Manual for Complex Litigation § 11.442, at 73 n.161 (listing other cases in which such orders have been entered); Kenneth J. Winters, "Advanced Discovery Issues: Discovery and Protection of Electronic Data," 2003 ALI-ABA 737, 746, 752-53 (2003).

Contrary to defendant's importunings, this court plainly has the authority to issue such orders. That this court was established under Article I, rather than Article III, of the Constitution is, in this context, a distinction without a difference. Several reasons compel this conclusion. First, the Supreme Court has held that Article I courts exercise the judicial power of the United States. *See Freytag v. Comm'r*, 501 U.S. 868, 889 (1991).[3] Indeed, in *Williams v. United States*, 289 U.S. 553, 564-65 (1933), the Court held that this court's antecedent, the Court of Claims, then an Article I court, exercised such judicial power by virtue of its ability to render final judgments.[4] Building on this foundation, the Federal Circuit has held that Article I courts

---

Comptroller General for destruction of certain records); 30 C.F.R. §§ 212.50 (record retention regarding oil and gas leases); 212.200 (record retention regarding minerals); *see also Cobell v. Norton*, 240 F.3d 1081, 1105 (D.C. Cir. 2001); *Pueblo of San Ildefonso v. United States*, 35 Fed. Cl. 777, 788 (1996) ("It is well settled that a trustee such as defendant is under a duty to keep and render clear and accurate accounts with respect to administration of the trust.").

[3] *See also Matter of Dep't of Defense Cable Television*, 35 Fed. Cl. 114, 116 (1996); *cf. Cofield v. United States*, 25 Cl. Ct. 465, 467 (1992).

[4] In so concluding, the court traced the legislative history of the court, giving particular emphasis to the Act of March 3, 1863, c. 92, 12 Stat. 765, which, for the first time, authorized the court to render final judgments. Commenting on the development of the court's jurisdiction through the passage of the Tucker Act in 1887, the Court concluded, in words seemingly applicable to this court:

possess inherent powers based on twin necessities: the "need to control proceedings before such court and the need to protect the exercise of judicial authority in connection with those proceedings." *In re Bailey*, 182 F.3d 860, 864 n.4 (Fed. Cir. 1999) (holding this as to the United States Court of Veterans Appeals).[5] To meet like needs, this court too must possess inherent powers, at least sufficient to protect the integrity of its judicial functions – and, in various settings, the Federal Circuit has so held.[6] Finally, indirect confirmation that this court possesses inherent powers may be found in the Federal Circuit's repeatedly holding that this court may resolve only "cases or controversies." *See Anderson v. United States*, 344 F.3d 1343, 1349-50 (Fed. Cir. 2003); *Glass v. United States*, 258 F.3d 1349, 1355-56 (Fed. Cir. 2001); *see also Smith v. United States*, 58 Fed. Cl. 374, 381 (2003); *CW Gov't Travel*, 46 Fed. Cl. at 557-58. This limitation again derives, at least partly, from the recognition that this court is truly a court, a concept that brings with it both limitations and imperatives.

At least once, when the shoe was on the other foot, defendant invoked this court's authority in seeking to enforce preservation orders against plaintiffs via sanctions for spoliation, seemingly unconcerned about whether this court was authorized to enter such orders *ab initio*. *See Columbia First Bank, FSB v. United States*, 54 Fed. Cl. 693, 702-04 (2002); *see also Coltec Indus., Inc. v. United States*, No. 01-72T (order of May 14, 2003) (preservation order issued at behest of government). Here, however, defendant asseverates that this court lacks the ability to enter such orders because it is one of "limited jurisdiction." But, at least in this context, the latter

---

> By these provisions it is made plain that the Court of Claims, originally nothing more than an administrative or advisory body, was converted into a court, in fact as well as in name, and given jurisdiction over controversies which were susceptible of judicial cognizance. It is only in that view that the appellate jurisdiction of this court in respect of the judgments of that court could be sustained, or concurrent jurisdiction appropriately be conferred upon the federal district courts. The Court of Claims, therefore, undoubtedly, in entertaining and deciding these controversies, exercises judicial power . . . .

*Williams*, 289 U.S. at 565.

[5] *See also Daccarett-Ghia v. Comm'r*, 70 F.3d 621, 624-25 (D.C. Cir. 1995) (same as to U.S. Tax Court); *Case v. Case*, 937 F.2d 1014, 1023 (5th Cir. 1991) (same as to bankruptcy courts); *see also Clapp v. Comm'r*, 875 F.2d 1396, 1399 (9th Cir. 1989).

[6] *See Becker v. United States*, 50 Fed. Appx. 996 (Fed. Cir. 2002) (inherent power to limit repetitious filings); *Cherokee Nation of Okl. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (inherent power to stay proceedings); *Clause E. Atkins Enters., Inc. v. United States*, 899 F.2d 1180, 1185 (Fed. Cir. 1990) (inherent power to dismiss for lack of prosecution); *see also CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 557-58 (2000) (because this court exercises the judicial power of the United States, it has the inherent power to invoke the mootness doctrine).

observation is little more than a truism, as universally applicable to lower federal courts as it is generally unhelpful in resolving any specific issue of jurisdiction or authority. The pertinent question, rather, is whether the applicable limitations confine this court from taking actions to preserve evidence relevant to a pending case. And the answer is – they do not.

Indeed, several provisions of federal law cut the ground from under defendant's feet. For example, in 28 U.S.C. § 174 (2000), Congress unambiguously indicated that this court exercises "judicial power," and, in 28 U.S.C. §1651(a) (2000), it included this court among those authorized by the All Writs Act to "issue all writs necessary or appropriate in aid of [its] jurisdiction and agreeable to the usages and principles of law." *See Branning v. United States*, 11 Cl. Ct. 136, 138 (1986) (holding the AWA applies to this court). On both counts, it thus appears that Congress intended this court to exercise powers in aid of its jurisdiction similar to those afforded other federal trial courts. In 28 U.S.C. § 2503(c) (2000), moreover, Congress authorized this court to "examine witnesses, receive evidence, and enter dispositive judgments." Maintaining the integrity of these functions, *a fortiori*, requires this court to be empowered to prevent abuses of its process, subsumed within is the ability to preserve relevant evidence – a power "necessary to the exercise of all others." *Hudson*, 7 Cranch at 34; *see also Chambers*, 501 U.S. at 43. A recent spoliation case explained the interrelationship of these concepts, indicating:

> [t]he destruction of evidence can lead to manifest unfairness and injustice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action and can increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence that may be less persuasive, less accessible or both.

*Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 285 (E.D. Va. 2001); *see also In re Prud. Ins. Co.*, 169 F.R.D. at 616 ("Document destruction inevitably hinders the administration of justice."). Finally, Congress has authorized this court to issue rules governing its proceedings. *See* 28 U.S.C. § 2503(b) (2000). One of these, RCFC 16(c), provides that the court "may take appropriate action" with respect to "the control and scheduling of discovery," "the need for adopting special procedures for managing potentially difficult or protracted actions" and any such "matters as may facilitate the just, speedy and inexpensive disposition of the action." RCFC 16(c)(6), (12) and (16). Various courts have invoked the identical provisions in the Federal Rules of Civil Procedure in issuing preservation orders. *See, e.g.*, *In re St. Jude Med., Inc.*, 2001 WL 1640056 (D. Minn. Aug. 21, 2001); *In re Del-Van Fin. Corp. Sec. Litig.*, 1991 WL 29140 (S.D.N.Y. Feb. 28, 1991); *In Re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 250 (D. Minn. 1989); *see also* Electronic Discovery § 2.03[B].[7]

---

[7] *Accord: In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 183 F.R.D. 33, 49 (D. Mass. 1998); *In re Centennial Techs. Litig.*, 20 F. Supp. 2d 119, 130 (D. Mass. 1997). The result in these cases should not be shocking because, alternatively, this court could, under RCFC 26(c), order defendant to respond to document production requests that would require it to provide copies of the relevant documents to plaintiff. That, of course, would be the surest way to preserve the documents in question – it also would be the most burdensome.

For all these reasons, and relying particularly on RCFC 16, this court concludes that it has the power to preserve evidence and issue orders in furtherance thereof. But, the question remains whether it should exercise that power here, particularly as plaintiff urges. "Because of their very potency," the Supreme Court has cautioned, "inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *see also Roadway Express*, 447 U.S. at 764. That restraint requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome. *See Walker v. Cash Flow Consultants, Inc.*, 200 F.R.D. 613, 617 (N.D. Ill. 2001); *Adobe Sys., Inc. v. Sun South Prod. Inc.*, 187 F.R.D. 636, 642-43 (S.D. Cal. 1999); *see also* Sedona Conf. Working Group on Electronic Document Retention and Production, "The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production," 4 Sedona Conf. J. 197, 217-18 (2003); Manual for Complex Litigation § 11.442, at 73 (court should determine if preservation order is "needed, the scope, duration, method of data preservation and other terms that will best preserve relevant matter without imposing undue burdens"). To meet the first prong of this test, the proponent ordinarily must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed – a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place. *See In re Potash*, 1994 WL 1108312, at *8 (D. Minn. Dec. 5, 1994). More than that, the proponent must show that the particular steps to be adopted will be effective, but not overbroad – the court will neither lightly exercise its inherent power to protect evidence nor indulge in an exercise in futility. *Id*; *see also Prudential Ins. Co.*, 169 F.R.D. at 616-17.[8]

---

[8] Other courts have held that the requirements for issuing an injunction must be satisfied before a preservation order may issue. *See, e.g., Madden v. Wyeth*, 2003 WL 21443404, at *1 (N.D. Tex. Apr. 16, 2003); *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*, 1995 WL 783610, at * 3-4 (D. Minn. Oct. 20, 1995); *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39, 42 (E.D. La. 1966). The court, however, believes that the more recent of these decisions ignore significant changes made to the Federal Rules of Civil Procedure since the 1960s, further establishing the case management powers of judges. In the court's view, a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery. *See Mercer v. Magnant*, 40 F.3d 893, 896 (7th Cir. 1994). While such pretrial and discovery orders take the basic form of an injunction (an order to do or not to do something), the decisional law suggests that, in issuing them, courts need not observe the rigors of the four-factor analysis ordinarily employed in issuing injunctions. *See Reich v. Muth*, 1993 WL 741997, at *1-2 (E.D. Va. July 28, 1993); *Fed. Election Comm'n v. GOPAC, Inc.*, 897 F. Supp. 615, 617-18 (D.D.C. 1995); *see also Casey v. Planned Parenthood of Southeastern Pa.*, 14 F.3d 848, 854 (3d Cir. 1994) (distinguishing such pretrial orders from injunctions for appeal purposes); *Matter of Establishment Inspection of Skill Corp.*, 846 F.2d 1127, 1129 (7th Cir. 1988) (same). In the court's view, the same ought to hold true for preservation orders. In particular, contrary to defendant's claim, the court sees no reason for it to consider whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction. In the court's view, such an approach would be decidedly to put the cart before the horse.

To support its claim that, absent a record retention order, relevant records likely will be lost or destroyed, plaintiff relies heavily on what has transpired in *Cobell v. Norton*, No. 96-1285, an action pending in the United States District Court for the District of Columbia that seeks an accounting for some 500,000 Indians and their heirs. In that case, Judge Lamberth has issued numerous opinions, from which the Pueblo has culled examples of the government's mishandling of Indian records, among them: many instances of the destruction of documents, including electronic records, containing, or possibly containing, Indian-related information; the unsatisfactory oversight of administrative procedures; the inability of management to respond effectively when made aware of violations; the general disrepair of many facilities in which Indian records have been stored; the insufficient implementation of regulations regarding Indian-record retention and the lack of suitable systems and methods for ensuring preservation; the lack of security for computers containing Indian data; and numerous examples of improper attempts to transfer Indian records.[9] Significantly, the opinions reflect that many of the weaknesses identified by the district court have continued notwithstanding efforts by the Department of Interior and other government agencies to make meaningful administrative changes. While not agreeing to each of these findings (and the overtones and undertones associated therewith), defendant does not contest that documents or data relevant to the *Cobell* litigation have been lost or destroyed.

While many of the agencies involved in *Cobell* are also involved here, defendant notes that a different set of records is at issue – indeed, both parties readily admit that the record retention orders issued by Judge Lamberth do not, as yet, cover these records.[10] Yet, in the

---

[9] *See, e.g., Cobell v. Norton*, 283 F. Supp. 2d 66, 159-60 (D.D.C. 2003), *stayed pending appeal*, 2004 WL 210700 (D.C. Cir. Jan. 28, 2004) (discussing failure to prevent destruction of or to take reasonable measures to preserve trust records); *Cobell v. Norton*, 201 F. Supp. 2d 145, 147-48 (D.D.C. 2002) (concerning record transfers and destruction).

[10] In discussing the findings in *Cobell*, the Pueblo notes that at least ten tribal breach of trust cases have been filed with the district court, rather than this court: *Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Norton*, No. 02-35 (D.D.C. filed Jan.7, 2002); *Standing Rock Sioux Tribe v. Norton*, No. 02-41 (D.D.C. filed Jan. 8, 2002); *Three Affiliated Tribes of the Fort Berthold Reservation v. Norton*, No. 02-253 (D.D.C. filed Feb. 8, 2002); *Shosone-Bannock Tribes of the Fort Hall Reservation v. Norton*, No. 02-254 (D.D.C. filed Feb. 8, 2002); *Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton*, No. 02-276 (D.D.C. filed Feb. 11, 2002); *Crow Tribe of Indians v. Norton*, No. 02-284 (D.D.C. filed Feb. 13, 2002); *Rosebud Sioux Tribe v. Norton*, No. 02-184 (D.D.C. filed Feb. 1, 2002); *Confederated Tribes of the Warm Springs Reservation v. United States*, No. 02-2040 (D.D.C. filed Oct. 18, 2002); *Santee Sioux Tribe v. Norton*, 03-1602 (D.D.C. filed July 28, 2003); *Yankton Sioux Tribe v. Norton*, No. 03-1603 (D.D.C. filed July 28, 2003). It is unclear how the district court has jurisdiction over these matters, which, though veiled as requests for injunctive relief, appear ultimately designed to obtain monetary relief. On this point, the Federal Circuit, in *Consolidated*

court's view, the failures evidenced in *Cobell* appear to be so pervasive and systematic as to provide ample support for the issuance of a document preservation order in this case. If nothing else such a preservation order will reemphasize that defendant needs to take extraordinary precautions, at least equivalent to those more recently adopted in *Cobell,* to prevent either the purposeful or inadvertent destruction or loss of records. Such an order also serves as fair warning that sanctions may be imposed should defendant instead fail adequately to protect records relevant to this action. From a procedural standpoint, indeed, such an order satisfies various preconditions not only to the possible application of the spoliation doctrine,[11] but also the imposition of sanctions under either RCFC 16(f) or 37(b).

---

*Edison Co. v. United States*, 247 F.3d 1378 (Fed. Cir. 2001) (en banc), instructed that "[a] party may not circumvent the [Court of Federal Claim's] exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." *Id.* at 1385 (quoting *Rogers v. Ink*, 766 F.2d 430, 434 (10th Cir. 1985)); *cf. Cobell v. Norton*, 240 F.3d 1081, 1094-95 (D.C. Cir. 2001). Moreover, the Administrative Procedure Act waives sovereign immunity for district court suits only if "there is no other adequate remedy." 5 U.S.C. § 704 (2000). Yet, to the extent that these other actions seek an accounting, that remedy is available here as a prelude to the award of monetary damages. *See, e.g., Minnesota Chippewa Tribe Red Lake Band v. United States*, 768 F.2d 338, 342 (Fed. Cir. 1985); *Klamath and Modoc Tribes v. United States*, 174 Ct. Cl. 483, 486-91 (1966) (construing 28 U.S.C. § 1505); *see also United States v. Mitchell*, 463 U.S. 206, 219-222 (1983). For now, this court is left to wonder from afar, but if these tribes eventually file suit in this court seeking monetary relief, the question whether the district court properly has jurisdiction over their existing cases could become critical. *See Christopher Village, L.P. v. United States*, 2004 WL 414638 (Fed. Cir. Mar. 8, 2004) (holding that where a district court lacks jurisdiction under the APA, this court is not subsequently bound by the district court's judgment).

[11] It has long been the rule that spoliators may not benefit from their wrongdoing under the regula *omnia presumuntur contra spoliatorem*. *See West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). While decisions in this court generally do not apply the spoliation doctrine absent a finding of bad faith, *see, e.g., Renda*, 58 Fed. Cl. at 60, the Federal Circuit, in *Confederated Tribes of Warm Springs Reservation v. United States*, 248 F.3d 1365, 1373-74 (Fed. Cir. 2001), suggested that the result may be different when the United States fails to preserve documents in its fiduciary role to a tribe. Indeed, *Warm Springs* strongly indicates that, the spoliation doctrine aside, adverse inferences might be drawn in this case were it shown that defendant inadvertently destroyed or otherwise lost documents critical to the determination of liability or damages herein. *Id.* at 1373 (noting that "[u]nder trust law principles, if a trustee fails to keep proper accounts, 'all doubts will be resolved against him and not in his favor'") (quoting William F. Fratcher, Scott on Trusts, § 172 (4th ed.1987)); *see also Shoshone Indian Tribe of Wind River Reservation v. United States*, 58 Fed. Cl. 77, 93-94 (2003).

But, should such an order include terms beyond simply requiring defendant to preserve any evidence relevant to this case? Plaintiff makes specific proposals in this regard. It would have this court prohibit generally the destruction of records relevant to this case absent its prior written concurrence or further order from this court. It would also have this court impose significant restrictions on the inter- and intra-agency transfer of such records, including the transfer of records from the Department of the Interior to the National Archives and Records Administration, by essentially requiring that plaintiff be offered an opportunity to examine such records prior to their movement.[12] Defendant offers only muted opposition to the proposed limitations on record destruction, owing to its belief that such records will not be destroyed under existing agency directives. Initially, however, it vigorously opposed the plaintiff's proposed limitations on record transfers, offering affidavits from officials at various of the potentially affected agencies, describing how plaintiff's inspection requirements would severely disrupt not only routine daily transfers of paper and electronic records, but also the planned consolidation of tribal records at a new Federal Records Center in Lenexa, Kansas.[13] In the past few days, however, defendant proposed its own inspection procedures – albeit without indicating whether, in its view, this court now has jurisdiction to issue such an order. Defendant's inspection regime differs from plaintiff's in several key regards; most notably, it only applies to inactive records at the Department of Interior's Southwest Regional Office and Southern Pueblos Agency that are scheduled for transfer to the Lenexa facility.

Based on its review of the *Cobell* opinions, the affidavits filed by the parties and a comparison of the parties' respective proposals on inspections, the court declines to adopt the broader steps proposed by plaintiff. As a threshold matter, the court sees little purpose in requiring defendant to obtain plaintiff's concurrence before destroying relevant documents. Assuming such a requirement were adopted, plaintiff would never receive such a request – such would be the case whether agency personnel comply with the existing policies precluding the destruction of document or inadvertently destroy records in contravention of those policies. In the court's view, the better course is to reemphasize that documents should not be destroyed and

---

[12] Initially, plaintiff proposed that no transfer of records occur without its concurrence or this court's order; in response to objections raised by defendant, plaintiff, more recently, has refined its request, focusing on limiting the transfer of records until it has been afforded a reasonable opportunity to inspect those records.

[13] These affidavits indicate, among other things, that the transfer protocol that plaintiff originally proposed would particularly impact agencies, such as the Treasury Department's Financial Management Services and Bureau of the Public Debt, that are not primarily charged with dealing with the tribe, but retain financial information regarding the Pueblo in their general financial records. Officials from these agencies indicate that compliance with the transfer protocol would be particularly burdensome, as it would apply to duplicate copies of records. They indicate that the drain of resources associated with preserving and making available these records could jeopardize the ability of these agencies to perform other critical functions.

create incentives to ensure that happens. Regarding the proposed transfer restrictions, the court finds that affording plaintiff a defined period within which to inspect every relevant record to be transferred would unduly burden the operations of various agencies not only by impacting the day-to-day movement of records, but also by injecting plaintiff into agency processes already designed to avoid the loss or destruction of records. While plaintiff has been willing to adjust its demands to minimize such burdens, the court remains concerned that adopting the broader inspection procedures plaintiff seeks might inadvertently lead to more, rather than less, records being lost or destroyed. Thus, as to plaintiff's broader transfer protocols, the court believes, for the moment, that the benefits associated with plaintiff's proposal are outweighed by the costs and burdens those steps would impose.

Nonetheless, the court sees no reason not to adopt, with minor modifications, the inspection protocol defendant now proposes for records to be transferred from Interior's Southwest Regional Office and Southern Pueblos Agency to the Lenexa facility. This protocol has procedures similar to those proposed by plaintiff, albeit on a broader scale. In lieu of the other measures proposed by plaintiff, the court will order defendant to: (i) preserve all the documents, data and tangible things in question (including those subject to the above inspection regime); (ii) index all the documents, data and tangible things reasonably anticipated to be subject to discovery in this case, including those subject to the inspection regime, to ensure some baseline by which to gauge defendant's compliance with this order and the effectiveness of the record retention policies adopted by the agencies; and (iii) report immediately any destruction or loss of records. In the court's view, the looming specter of sanctions – which the case law suggests may be severe, to and including the entry of a default judgment[14] – provides the incentive, albeit in a negative way, needed to effectuate this preservation plan. To be sure, this approach heavily relies upon the expectation that defendant – and not this court – is best situated to review the government's record retention processes and ensure their continued effectiveness. If, as may have occurred in *Cobell*, the government's conduct falls short of this expectation, the court will be forced to intercede and take such steps as are necessary to ensure the integrity of its processes – steps that may bypass preservation plans altogether and instead authorize expedited discovery. *See Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 651 (D. Minn. 2002) (ordering expedited discovery to preserve electronic records).

---

[14] *See Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 593 F. Supp. 1443, 1456 (C.D. Cal. 1984) (imposing monetary sanctions and default judgment as the result of violation of preservation order); *cf. In re Potosh*, 1994 WL 1108312, at *8 (refusing to enter a document preservation order based on the parties' awareness of the "dire consequences" attendant upon the failure to preserve documents).

Based on the foregoing, pursuant to RCFC 16(c) and 26(c), as well as this court's inherent power to regulate its proceedings and maintain the integrity of its functions, **IT IS ORDERED:**[15]

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation. Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection.**

(a) The Department of the Interior ("DOI") shall move inactive Pueblo of Laguna records from the BIA Southwest Regional Office to the Office of Trust Records ("OTR"), in Albuquerque, New Mexico, at which location said inactive records shall be made available to plaintiff for purposes of inspection. At least 10 calender days prior to movement of the inactive records, DOI will provide plaintiff with a move plan, which plan shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of custody; and the signature of the official responsible for the move. Compliance with the move plan may be monitored by plaintiff or its representative.

(b) After reviewing the inactive records at OTR and the Southern Pueblos Agency for privileged material, DOI shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) On or before April 2, 2004, DOI shall provide plaintiff with any and all existing indices of inactive records or record boxes located at the OTR, the Southwest Regional Office, or the Southern Pueblos Agency.

(ii) On or before May 3, 2004, plaintiff shall designate the boxes or records listed in the provided indices that plaintiff wishes to review for Pueblo of Laguna trust records.

---

[15] Portions of the provisions that follow are drawn from the sample preservation order contained in the Manual for Complex Litigation § 40.25.

(iii) Within 49 days from the date on which plaintiff designates which boxes at OTR it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at OTR for plaintiff's inspection.

(iv) Within 63 days from the date on which plaintiff designates which boxes at the Southern Pueblos Agency it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at the Southern Pueblos Agency for plaintiff's inspection.

(c) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from DOI that the designated record has become available for inspection, during which process plaintiff may identify relevant documents for production. This inspection period may be extended by the court for good cause shown. Defendant shall provide to plaintiff copies or electronic images of the documents identified by plaintiff pursuant to this provision within such time as is agreed to by the parties; barring such agreement, the parties shall each file with the court their proposed schedule for the production of such copies or images, with an explanation in support thereof.

(d) At such time as the inactive records identified by plaintiff have been copied or imaged by defendant, DOI may move those records from OTR and the Southern Pueblos Agency in accordance with its normal procedures and protocols for the movement of Indian trust records. In addition, DOI may move any boxes designated by plaintiff from OTR or the Southern Pueblos Agency that plaintiff has not reviewed within three months from the date on which DOI made those boxes available for plaintiff's inspection. DOI may, at any time, move boxes that have not been designated for inspection, according to normal procedures and protocols for the movement of Indian trust records. Nothing herein prevents plaintiff from also seeking to inspect relevant records from OTR, the BIA Southwest Regional Office, or the Southern Pueblos Agency in whatever location they may be found in the future.

3. **Indexation.**

(a) The parties shall meet and confer, as soon as practicable, and no later than April 19, 2004, to develop a plan for indexing documents, data and tangible things reasonably anticipated to be subject to discovery in this case. The resulting plan shall be submitted to this court as a proposed order under RCFC 16(e).

(b) The parties should attempt to reach agreement on all issues regarding the indexation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation obligation, identifying the types of material to be indexed, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;
(ii) the identification of persons responsible for carrying out the indexation;
(iii) whether indexation will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;
(iv) the timing of the indexation process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;
(v) the methods to index any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;
(vi) the anticipated costs of indexation and ways to reduce or share these costs; and
(vii) a mechanism to review and modify the indexation obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(c) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(b) of this order or on other material aspects of indexation, the parties shall file with the court, within seven days of the conference, a statement of the unresolved issues together with each party's proposal for their resolution of the issues

4. **Compliance.** Defendant shall establish a mechanism for monitoring compliance with this order and, on or before April 19, 2004, file a status report with the court describing that mechanism. Defendant's counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (*e.g.*, the destruction or loss of documents).

5. **Definitions.** For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail;

telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic tape; or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

6. **Further Instructions; Modification.** Either party may apply to the court for further instructions regarding, *inter alia*: (a) defendant's obligation to preserve specific categories of documents, data, or tangible things; (b) any aspect of the inspection or indexation tasks not herein clearly defined; and (c) allocating copying costs and maintaining the confidentiality of information contained in various records. Recognizing that the parties may perceive better ways of accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. **Sanctions.** Failure to comply with this order may lead to the imposition of sanctions, as described in greater detail above.

8. **Dissemination.** This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

Francis M. Allegra
Judge

# EXHIBIT T

# In the United States Court of Federal Claims

No. 02-25L

(Filed: March 19, 2004)

JICARILLA APACHE NATION, formerly JICARILLA APACHE TRIBE,

[Plain]tiff,

v.

THE UNITED STATES,

[Defen]dant.

FILED
MAR 19 2004
U.S. COURT OF FEDERAL CLAIMS

## ORDER

For the reasons discussed in the order issued today in *Pueblo of Laguna v. United States*, No. 02-24L, and pursuant to RCFC 16(c) and 26(c), as well as this court's inherent power to regulate its proceedings and maintain the integrity of its functions, IT IS ORDERED:

1. **General Obligation to Preserve.** During the pendency of this litigation or until further order of the court, defendant, its agencies, and its employees must take reasonable steps to preserve every document, data or tangible thing in its possession, custody or control, containing information that is relevant to, or may reasonably lead to the discovery of information relevant to, the subject matter involved in the pending litigation. Plaintiff is reminded that it also has a similar duty to preserve evidence relevant to this case.

2. **Document Inspection.**

   (a) The Department of the Interior ("DOI") shall move inactive Jicarilla Apache Nation records from the BIA Southwest Regional Office to the Office of Trust Records ("OTR"), in Albuquerque, New Mexico, at which location said inactive records shall be made available to plaintiff for purposes of inspection. At least 10 calendar days prior to movement of the inactive records, DOI will provide plaintiff with a move plan, which plan shall include: an implementation schedule; a description or inventory of the records being moved; the method of transportation; the chain of

custody; and the signature of the official responsible for the move. Compliance with the move plan may be monitored by plaintiff or its representative.

(b) After reviewing the inactive records at OTR and the Jicarilla Agency for privileged material, DOI shall make those records available for plaintiff's inspection, in accordance with the following schedule:

(i) On or before April 2, 2004, DOI shall provide plaintiff with any and all existing indices of inactive records or record boxes located at the OTR, the Southwest Regional Office, or the Jicarilla Agency.

On or before May 3, 2004, plaintiff shall designate the boxes or records listed in the provided indices that plaintiff wishes to review for Jicarilla Apache Nation trust records.

Within 49 days from the date on which plaintiff designates which boxes at OTR it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at OTR for plaintiff's inspection.

Within 63 days from the date on which plaintiff designates which boxes at the Jicarilla Agency it wishes to inspect, DOI will begin to make available, on a rolling basis, the boxes at the Jicarilla Agency for plaintiff's inspection.

(c) Plaintiff generally shall have 63 days within which to inspect a designated record upon receiving notification from DOI that the designated record has become available for inspection, during which process plaintiff may identify relevant documents for production. This inspection period may be extended by the court for good cause shown. Defendant shall provide to plaintiff copies or electronic images of the documents identified by plaintiff pursuant to this provision within such time as is agreed to by the parties; barring such agreement, the parties shall each file with the court their proposed schedule for the production of such copies or images, with an explanation in support thereof.

(d) At such time as the inactive records identified by plaintiff have been copied or imaged by defendant, DOI may move those records from OTR and the Jicarilla Agency in accordance with its normal procedures and protocols for the movement of Indian trust records. In addition, DOI may move any boxes designated by plaintiff from OTR or the Jicarilla Agency

that plaintiff has not reviewed within three months from the date on which DOI made those boxes available for plaintiff's inspection. DOI may, at any time, move boxes that have not been designated for inspection, according to normal procedures and protocols for the movement of Indian trust records. Nothing herein prevents plaintiff from also seeking to inspect relevant records from OTR, the BIA Southwest Regional Office, or the Jicarilla Agency in whatever location they may be found in the future.

3. Indexation.

(a) The parties shall meet and confer, as soon as practicable, and no later than April 19, 2004, to develop a plan for indexing documents, data and tangible things reasonably anticipated to be subject to discovery in this case. The resulting plan shall be submitted to this court as a proposed order under RCFC 16(e).

(b) The parties should attempt to reach agreement on all issues regarding the indexation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(i) the extent of the indexation obligation, identifying the types of material to be indexed, the subject matter, time frame, the authors and addressees, and key words to be used in identifying such materials;

(ii) the identification of persons responsible for carrying out the indexation;

whether indexation will require suspending or modifying any routine processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

the timing of the indexation process in relation to the movement of records, and inspection thereof, envisioned in paragraph 2, above;

the methods to index any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(vi) the anticipated costs of indexation and ways to reduce or share these costs; and

a mechanism to review and modify the indexation obligation as this case proceeds, eliminating or adding particular categories of documents, data, and tangible things.

(c) If, after conferring to develop an indexation plan, counsel do not reach agreement on the subjects listed under paragraph 3(b) of this order or on

other material aspects of indexation, the parties shall file with the court, within seven days of the conference, a statement of the unresolved issues together with each party's proposal for their resolution of the issues

4. Compliance. Defendant shall establish a mechanism for monitoring compliance with this order and, on or before April 19, 2004, file a status report with the court describing that mechanism. Defendant's counsel shall immediately notify this court if, at any time, they become aware of a violation of this order (e.g., the destruction or loss of documents).

5. Definitions. For purposes of this order:

(a) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers; checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video; phonographic tape; or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

(b) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under RCFC 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

6. Further Instructions; Modification. Either party may apply to the court for further instructions regarding, *inter alia*: (a) defendant's obligation to preserve specific categories of documents, data, or tangible things; (b) any aspect of the inspection or indexation tasks not herein clearly defined; and (c) allocating copying costs and maintaining the confidentiality of information contained in various records. Recognizing that the parties may perceive better ways of

accomplishing the purposes of this order, the court notes that joint motions to modify any of the procedures listed herein will likely be received favorably.

7. Sanctions. Failure to comply with this order may lead to the imposition of sanctions, as described in greater detail in the *Pueblo of Laguna* order, cited above.

8. Dissemination. This order shall be distributed by defendant to all relevant agencies, departments, offices, divisions, and individuals.

Francis M. Allegra
Judge