IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Case No. 06-943L<br>Judge Lawrence M. Baskir<br>**Electronically filed on February 14, 2008** |

**PLAINTIFF'S SUPPLEMENTAL BRIEF OPPOSING**
**DEFENDANT'S MOTION TO DISMISS PURSUANT TO 28 U.S.C. § 1500**

On December 10, 2007, this Court held an evidentiary hearing during which Alexis Applegate, the paralegal responsible for filing the instant action and the District Court action on behalf of Plaintiff the Salt River Pima-Maricopa Indian Community ("Salt River"), testified about the filings she completed on December 29, 2006. In light of the additional facts revealed by Ms. Applegate's testimony, this Court ordered that the parties submit supplemental briefing on Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500, to address the factual issue of which Complaint Ms. Applegate filed first -- the Complaint initiating this action (the "CFC Complaint") or the Complaint initiating the District Court action ("District Court Complaint").

Ms. Applegate's unequivocal testimony that she filed the instant action prior to filing the District Court Complaint is convincing, candid, appropriately detailed, and corroborated by other evidence in the record. Rather than contesting this evidence, Defendant attacks Ms. Applegate's credibility based on minor discrepancies and points to other evidence which appears at first blush to be inconsistent with her testimony, but is in reality, easily reconciled. Ms. Applegate has consistently testified in three actions as to the events surrounding the seven filings she completed on December 29, 2006, and the only Court to issue a ruling based on her testimony specifically found Ms. Applegate "to be a credible witness." *Ak-Chin Indian Community v. United States*, No. 06-932L, 2008 WL 241275, at *8 (Fed. Cl. Jan. 25, 2008). Because Defendant has not, and cannot, contest Ms. Applegate's testimony or the supporting evidence, Salt River has carried its burden to show that it filed the instant action prior to filing its District Court Complaint.

It is well-established that because jurisdiction is established at the time of filing, under § 1500, a later-filed district court action does not divest the Court of Federal Claims of jurisdiction that was earlier properly established. *See Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995); *Breneman v. United States*, 57 Fed. Cl. 571, 575 (2003), *aff'd,* 97 Fed. Appx. 392 (Fed. Cir. 2004); *Tecon Engineers, Inc. v. United States*, 343 F.2d 943,

949 (Fed. Cl. 1965). Accordingly, Defendant's Motion to Dismiss should be denied.[1]

## STATEMENT OF THE CASE

### A. Ms. Applegate Testified That She Filed Salt River's CFC Complaint Prior To Filing The District Court Complaint.

Ms. Applegate filed seven Complaints on December 29, 2006, including the Complaint initiating this action and the Complaint initiating Salt River's District Court action styled *Salt River Pima-Maricopa Indian Community v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02241-JR. (December 10, 2007 Hearing Transcript ("*Salt River* Hearing Tr.") 19:22-20:20; October 24, 2007 Hearing Transcript in *Ak-Chin Indian Community v. United States,* No. 06-932L, ("*Ak-Chin* Hearing Tr.") 17:19-19:15; Second Affidavit of Alexis Applegate ("Applegate Aff."), ¶¶ 3 and 4; Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories ("Response to Interrogatories"), Response No. 11.) Regarding the Salt River

[1] In a June 26, 2007 Order, this Court directed the parties' attention to *Fraiser v. United States*, 67 Fed. Appx. 594 (2003). In this unpublished decision, the Federal Circuit affirms the Court of Federal Claims' determination that 28 U.S.C. § 1500 divested the Court of jurisdiction in a case where the plaintiff filed a District Court complaint on the same day she filed a complaint in the Court of Federal Claims. This case does not justify this Court's departure from the rule articulated in *Breneman* that jurisdiction is established at the time the suit is filed and under § 1500, a later-filed District Court action does not divest the Court of Federal Claims of jurisdiction that was earlier properly established, even if the suits were filed on the same day. Most importantly, in contrast to what Salt River has demonstrated here, the *pro se* plaintiff in *Frasier* did not show, or even attempt to show, that she had filed her Court of Federal Claims Complaint prior to filing her District Court Complaint.

Complaints, Ms. Applegate testified unequivocally that she filed "the Complaint in this Court, the Court of Federal Claims, before [the] District Court." (*Salt River* Hearing Tr. 17:19-21.)

In addition to the actions Ms. Applegate filed on behalf of Salt River on December 29, 2006, Ms. Applegate filed Complaints in the United States Court of Federal Claims styled *Passamaquoddy Tribe v. United States*, No. 06-942L; *Tohono O'odham Nation v. United States*, 06-944L; and *Ak-Chin Indian Community v. United States,* No. 06-932L (collectively, the "Court of Federal Claims Actions"). (*Salt River* Hearing Tr. 20:2-21; Applegate Aff., ¶ 3; Response to Interrogatories, Response No. 11.) Ms. Applegate also filed Complaints in the District Court that day initiating the actions styled *Passamaquoddy Tribe of Maine v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02240-JR, and *Ak-Chin Indian Community v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02245-JR (collectively, the "District Court Actions"). (*Salt River* Hearing Tr. 20:2-21; Applegate Aff., ¶ 4; Response to Interrogatories, Response No. 11.) To accomplish all seven filings, Ms. Applegate made five separate trips to the clerks' offices of the Court of Federal Claims and District Court. (*Salt River* Hearing Tr. 20:2-21; *Ak-Chin* Hearing Tr. 17:19-19:15; February 1, 2008 Hearing Transcript in *Passamaquoddy Tribe v. United*

*States*, No. 06-942L ("*Passamaquoddy* Hearing Tr.") 14:9-15:14.) As to the order of all of the seven filings, Ms. Applegate has testified on numerous occasions that it is as follows:

> The first trip of the day, I walked here to the CFC to file three complaints – Passamaquoddy, Salt River and Tohono O'odham – then returned back to the office, at which point I discovered that the district court complaints in Passamaquoddy and Salt River were now ready. I took my first taxi to the district court and filed those two.
>
> I returned to the office, to find that the Ak-Chin CFC complaint was ready. I walked that over to here, came back to the office, to discover that the district court in Ak-Chin was ready. That is the one that I actually did two trips to the district court, seeing as the clerk was busy and didn't have time to complete what needed to be done for me in one trip.

(*Ak-Chin* Hearing Tr. 18:3-16; *see also id*. 18:17-19:15; 33:19-34-9; *Salt River* Hearing Tr. 20:2-21; *Passamaquoddy* Hearing Tr. 14:9-15:14.)

### B. Mr. Harper Instructed Ms. Applegate to File the CFC Complaints Prior to Filing the District Court Actions.

In addition to consistently testifying at three evidentiary hearings as to the order of the seven filings on December 29, 2006, Ms. Applegate has provided an appropriately detailed account of the events surrounding those filings, which is supported by contemporaneous evidence, beginning with the evening of December 28, 2006. Because the New Years holiday was the upcoming Monday, late in the evening of Thursday, December 28, 2006, Mr.

Harper e-mailed Ms. Applegate and asked her to call the District Court and the Court of Federal Claims to determine if either of the Courts was closing early on Friday, December 29, 2006. (Appendix ("Appx.") Ex. 1; *Salt River* Hearing Tr. 22:11-20, Ex. C; *Ak-Chin* Hearing Tr. 13:13-15; 26:1-27:23, Ex. C; *Passamaquoddy* Hearing Tr. 15:15-16:4; Ex. 1; Response to Interrogatories, Response No. 11.) In response to Mr. Harper's instruction, the following morning, Ms. Applegate called both clerk's offices. (*Salt River* Hearing Tr. 22:22-23:2; *Ak-Chin* Hearing Tr. 26:1-9; *Passamaquoddy* Hearing Tr. 15:15-17:3.) While the District Court clerk confirmed that there was no plan to close the District Court early, the clerk at the Court of Federal Claims "stated that he didn't know of a plan but he was not in charge of what the Chief Judge decided." (*Salt River* Hearing Tr. 22:22-23:2; *Ak-Chin* Hearing Tr. 26:1-9; *Passamaquoddy* Hearing Tr. 16:15-17:3.) Ms. Applegate provided this information to Mr. Harper on the morning of December 29, 2006, and because the clerk at the Court of Federal Claims could not guarantee that the Court would not close early, Mr. Harper told Ms. Applegate to file the Court of Federal Claims Actions as early as possible and prior to filing the District Court Actions. (*Salt River* Hearing Tr. 23:5-18; *Ak-Chin* Hearing Tr. 27:17-23; *Passamaquoddy* Hearing Tr. 17:4-10; Response to Interrogatories, Response No. 11; Applegate Aff., ¶ 7.)

In addition, because Mr. Harper and Ms. Applegate had successfully filed a Complaint in the action styled *Tohono O'odham Nation v. Dirk Kempthorne, Ross O. Swimmer and Henry M. Paulson*, Case No. 1:06-cv-02236-JR in the District Court the previous day, on December 28, 2006, and Mr. Harper practiced more regularly in the District Court, Mr. Harper was comfortable that he and Ms. Applegate understood the necessary procedures to perfect the filing of a Complaint in the District Court. (*Salt River* Hearing Tr. 23:6-17; *Ak-Chin* Hearing Tr. 27:17-23; *Passamaquoddy* Hearing Tr. 17:6-10; Response to Interrogatories, Response No. 11; Applegate Aff., ¶ 7 and Ex. C.) Mr. Harper and Ms. Applegate had not yet filed any Complaints initiating actions in the Court of Federal Claims, however, and Mr. Harper was not as familiar with the filing procedures in this Court. (*Salt River* Hearing Tr. 23:6-17; *Ak-Chin* Hearing Tr. 27:17-23; *Passamaquoddy* Hearing Tr. 17:6-10; Applegate Aff., ¶ 7; Response to Interrogatories, Response No. 11.) This additional uncertainty prompted Mr. Harper to instruct Ms. Applegate that she should file the Complaints initiating the Court of Federal Claims Actions as early as possible and before filing the Complaints she was planning to file in the District Court that day so that Mr. Harper and Ms. Applegate would have sufficient time to cure any potential problems occurring in connection with filing the Complaints in the Court of Federal Claims Actions. (*Salt River* Hearing Tr. 23:6-17; *Ak-*

*Chin* Hearing Tr. 27:17-28:6; *Passamaquoddy* Hearing Tr. 20:3-15; Applegate Aff., ¶ 7; Response to Interrogatories, Response No. 11.)

Mr. Harper also recalls that he orally instructed Ms. Applegate to file the Complaints initiating the Court of Federal Claims Actions at the earliest possible time on December 29, 2006, and prior to filing the Complaints initiating the District Court Actions. (Response to Interrogatories, Response No. 11.)[2] Ms. Applegate followed Mr. Harper's instructions and filed the Complaint initiating the Salt River Court of Federal Claims Action prior to filing the Complaint initiating the Salt River District Court Action. (*Salt River* Hearing Tr. 23: 18-20; Response to Interrogatories, Response No. 11; Applegate Aff., ¶ 8.) Ms. Applegate knows that she followed these instructions because if she had not followed them, she would have informed Mr. Harper and she knows that they had no such conversation. (*Salt River* Hearing Tr. 23:18-24:1; *Passamaquoddy* Hearing Tr. 17:11-17; Response to Interrogatories, Response No. 11.)

### C. Ms. Applegate Filed the Salt River, Passamaquoddy and Tohono O'odham Court of Federal Claims Complaints First.

[2] Mr. Harper did not give the instruction to file the Court of Federal Claims Actions prior to filing the District Court Actions out of a concern for issues related to 28 U.S.C. § 1500. (Response to Interrogatories, Response No. 11.)

On December 29, 2006, due to the large number of filings she anticipated completing that day, Ms. Applegate got into the office at 7:30 a.m. (*Salt River* Hearing Tr. 20:22-21:4; *Ak-Chin* Hearing Tr. 22:19-23:1; *Passamaquoddy* Hearing Tr. 18:11-18.) While the District Court Complaint for Salt River was in final form as of the evening of December 28, 2006, because Mr. Harper instructed her the next morning to file the CFC Complaints first, Ms. Applegate filed the *Salt River*, *Passamaquoddy* and *Tohono O'odham* CFC Complaints before she filed the District Court Complaints for Salt River and Passamaquoddy. (Appx. Ex. 2; *Salt River* Hearing Tr. 21:5-22:5, Ex. B; *Ak-Chin* Hearing Tr. 18:3-16; *Passamaquoddy* Hearing Tr. 19:1-22:19.)

While Ms. Applegate could not state precisely what time she filed the first round of Complaints at the Court of Federal Claims, since the Court of Federal Claims does not time-stamp Complaints, she knows that she filed them shortly after 9:30 a.m. (*Salt River* Hearing Tr. 17:22-19:3; *Ak-Chin* Hearing Tr. 20:9-14; *Passamaquoddy* Hearing Tr. 18:19-25). Ms. Applegate knows this because Katherine Bosken, an attorney at Kilpatrick Stockton LLP, sent Ms. Applegate a link to the final *Salt River* and *Tohono O'odham* Complaints at 9:26 a.m. (Appx. Ex. 3; *Salt River* Hearing Tr. 17:22-19:3; 40:13-15, Ex. A; *Ak-Chin* Hearing Tr. 20:9-21:18, Ex. A; *Passamaquoddy* Hearing Tr. 19:1-19, Ex. 3.) The *Passamaquoddy* CFC Complaint was prepared by Justin Guilder,

another Kilpatrick Stockton LLP attorney, and was completed simultaneously. (*Salt River* Hearing Tr. 18:21-19:3; *Ak-Chin* Hearing Tr. 21:11-18; *Passamaquoddy* Hearing Tr. 19:12-19.)

At 9:26 a.m., when Ms. Bosken sent the e-mail with the final *Salt River* and *Tohono O'odham* CFC Complaints, Mr. Guilder notified Ms. Applegate, who was standing near his office, that he had received the final versions of those CFC Complaints. (*Salt River* Hearing Tr. 47:10-48:1; *Passamaquoddy* Hearing Tr. 20:16-19.) Mr. Guilder printed out these Complaints, along with the *Passamaquoddy* CFC Complaint. (*Passamaquoddy* Hearing Tr. 20:18-20:21.) Mr. Harper signed each Complaint and several people made seven copies of each Complaint simultaneously, a process which took five to ten minutes. (*Salt River* Hearing Tr. 48:2-8; 48:14-23; 49:16-20; 51:10-17; *Passamaquoddy* Hearing Tr. 20:18-22.) The day before, Ms. Applegate already had prepared all other requisite documentation accompanying the CFC Complaints and District Court Complaints, including the checks for the filing fees and civil cover sheets. (*Salt River* Hearing Tr. 43:13-14; 51:2-9; *Passamaquoddy* Hearing Tr. 21:7-22.)

After collecting the materials, Ms. Applegate walked from Kilpatrick Stockton LLP's offices to the Court of Federal Claims to file this action, the *Passamaquoddy* CFC Complaint and the *Tohono O'odham* CFC Complaint.

(*Salt River* Hearing Tr. 16:10-15; 52:7-14; *Passamaquoddy* Hearing Tr. 21:23-22:4.) This walk only took about five minutes. (*Salt River* Hearing Tr. 16:10-15; 52:7-14; *Passamaquoddy* Hearing Tr. 22:5-7.)[3] When Ms. Applegate arrived at the Court of Federal Claims, she had no wait at security or at the clerk's desk. (*Salt River* Hearing Tr. 53:12-20; Response to Interrogatories, Response No. 2.) Ms. Applegate handed the clerk the requisite number of copies of the Complaints, as well as civil cover sheets and checks for the accompanying filing fees. (*Salt River* Hearing Tr. 53:12-20; *Passamaquoddy* Hearing Tr. 22:13-19; Response to Interrogatories, Response No. 2.)

Ms. Applegate testified that the Court of Federal Claims processed the Complaints very quickly, and specifically remembers thinking that she and Mr. Harper should not have been so worried about the filing process in that Court

[3] At the December 10, 2007 evidentiary hearing, Defendant's counsel presumed that Ms. Applegate traveled 0.40 miles to file the CFC Complaints. (*Salt River* Hearing Tr. 52:7-19.) Ms. Applegate rejected Defendant's counsel's statement that she traveled .40 miles explaining that it only took her five minutes to walk between Kilpatrick Stockton LLP's offices and the Court of Federal Claims. (*Salt River* Hearing Tr. 52:7-19.) Defendant's counsel's subsequent insistence that Ms. Applegate traveled 0.40 miles to and from the Court of Federal Claims, likely is due to the fact that, according to www.mapquest.com, the distance to ***drive*** from Kilpatrick Stockton LLP to the Court of Federal Claims is 0.42 miles. (Appx. Ex. 4). Because certain roads close to the Court of Federal Claims are closed to traffic, and others are one-way (*e.g.*, H Street) the route to walk to the Court of Federal Claims is far less circuitous than the route to drive to the Court of Federal Claims. To walk to the Court of Federal Claims, Ms. Applegate walked out of Kilpatrick Stockton LLP's offices, which is located on 14th Street between F and G, and walked up to G street. (*Passamaquoddy* Hearing Tr. 21:25-22:4.) She then walked up G Street to 15th Street and crossed over Pennsylvania Avenue to the Court of Federal Claims. (*Passamaquoddy* Hearing Tr. 21:25-22:4.)

because it was such an "easy process." (*Salt River* Hearing Tr. 55:2-8; *Passamaquoddy* Hearing Tr. 22:13-19.) Ms. Applegate walked back to the office with stamped copies of the Complaints and no other documents. (Response to Interrogatories, Response No. 2; *Passamaquoddy* Hearing Tr. 22:20-25:11.) Ms. Applegate explained that at the time she filed the CFC Complaints for Salt River, Tohono O'odham and Passamaquoddy, the *Ak-Chin* CFC Complaint had not yet been completed. (*Salt River* Hearing Tr. 19:4-14: *Ak-Chin* Hearing Tr. 21:19-22:12.) Ms. Applegate did not wait for the *Ak-Chin* CFC Complaint to be completed to go to the Court of Federal Claims to file all four CFC Complaints at the same time because she did not want to adversely impact the clients whose Complaints were ready to be filed by delaying those filings. (*Salt River* Hearing Tr. 19:15-21; *Ak-Chin* Hearing Tr. 20:3-8; *Passamaquoddy* Hearing Tr. 20:3-15.) Ms. Applegate and Mr. Harper wanted to ensure that they would have time to cure any problems with the filing of the CFC Complaints. (*Passamaquoddy* Hearing Tr. 19:20-20:2.)

### D. Ms. Applegate Filed Salt River's District Court Complaint Shortly After Filing Salt River's CFC Complaint.

When Ms. Applegate returned to Kilpatrick Stockton LLP's office after having filed the first round of CFC Complaints, the copies of the District Court Complaints for Salt River and Passamaquoddy "and whatnot" had already

been prepared for her, meaning that Ms. Applegate only had to retrieve these materials and take a cab to the District Court. (*Salt River* Hearing Tr. 55:9-56:1; *Ak-Chin* Hearing Tr. 18:3-16.) Ms. Applegate estimates that this cab ride took five to ten minutes based on how long it usually takes her to take a cab to the District Court, which she does often. (*Salt River* Hearing Tr. 56: 5-8; *Passamaquoddy* Hearing Tr. 25:25-26:11.) Ms. Applegate walked through security and did not have to wait in line to file the two Complaints. (*Salt River* Hearing Tr. 56:14-15; 57:2-19; *Ak-Chin* Hearing Tr. 38:10-39:5.) Ms. Applegate provided materials to the intake clerk, paid the filing fees and received receipts and file stamped copies of the *Salt River* and *Passamaquoddy* District Court Complaints. (*Salt River* Hearing Tr. 56:14-15; 57:2-19; *Ak-Chin* Hearing Tr. 38:10-39:5; *Passamaquoddy* Hearing Tr. 26:12-23.) Ms. Applegate estimates that she filed the District Court Complaints for Salt River and Passamaquoddy at 10:30 a.m. (*Salt River* Hearing Tr. 24:2-7;40:16-41:2-5; *Passamaquoddy* Hearing Tr. 26:24-27:4).[4] Ms. Applegate then took a cab back to the office, which took five to ten minutes. (*Salt River* Hearing Tr. 57:20-58:2; *Passamaquoddy* Hearing Tr. 27:5-10.)

---

[4] This estimation is based on how long it took Ms. Applegate to complete the tasks necessary for filing the *Salt River* and *Passamaquoddy* District Court Complaints. (*Salt River* Hearing Tr. 24:2-7; *Passamaquoddy* Hearing Tr. 26:24-27:4.)

When Ms. Applegate returned from having filed the District Court Complaints for Salt River and Passamaquoddy, she prepared the *Ak-Chin* CFC Complaint for filing. (*Salt River* Hearing Tr. 58:3-7.) An 11:41 a.m. e-mail from Mr. Guilder to Ed Roybal, Ak-Chin's other counsel, requesting information for the Ak-Chin CFC Complaint evidences that the Ak-Chin CFC Complaint was not yet complete at that time. (Appx. Ex. 5; *Salt River* Hearing Tr. 58:8-15, Ex. 5; *Ak-Chin* Hearing Tr. 41:8-13; 42:22-25, Ex. H; *Passamaquoddy* Hearing Tr. 27:11-20, Ex. 7.) Ms. Applegate remembers that the information Mr. Guilder sought was public information, however, and that he obtained it quickly. (*Salt River* Hearing Tr. 58:18-21; *Passamaquoddy* Hearing Tr. 27:11-24.) Because Ms. Applegate had prepared all of the other filing materials the day before, once the Ak-Chin CFC Complaint was completed, it only needed to be signed and copied. (*Salt River* Hearing 58:22-59:6; *Passamaquoddy* Hearing Tr. 27:25-28:4.) Ms. Applegate had several people helping her with these copies. (*Salt River* Hearing 64:2-6; *Passamaquoddy* Hearing Tr. 28:2-4.)

To file the Ak-Chin CFC Complaint, Ms. Applegate followed the same process as she did for the other three CFC Complaints. (*Passamaquoddy* Hearing Tr. 28:5-9.) She walked to the Court of Federal Claims, which took five minutes, encountered no lines at the Court of Federal Claims and

presented the Ak-Chin CFC Complaint, cover sheet and filing fee to the clerk. (*Salt River* Hearing Tr. 61:16-17:1; *Passamaquoddy* Hearing Tr. 28:5-9.) Ms. Applegate walked back to Kilpatrick Stockton LLP's office. (*Salt River* Hearing 62:5-8; *Passamaquoddy* Hearing Tr. 28:12-18.)

When Ms. Applegate returned to the office, the *Ak-Chin* District Court Complaint had been copied and was ready to be filed. (*Salt River* Hearing Tr. 62:9-17; *Passamaquoddy* Hearing Tr. 28:12-23.) Ms. Applegate took a cab back to the District Court to file the *Ak-Chin* District Court Complaint. (*Salt River* Hearing Tr. 64:7-10; *Passamaquoddy* Hearing Tr. 28:12-23.) Ms. Applegate remembers that the clerk's desk was very busy when she arrived. (*Ak-Chin* Hearing Tr. 34:1-8.) The filing clerk told Ms. Applegate that she did not have time to process the *Ak-Chin* District Court Complaint and instructed Ms. Applegate to leave the Complaint and the accompanying materials with the clerk. (*Salt River* Hearing Tr. 64:11-24; *Ak-Chin* Hearing Tr. 20:16-21; *Passamaquoddy* Hearing Tr. 28:12-23.) Ms. Applegate followed the clerk's instructions and took a cab back to her office. (*Salt River* Hearing Tr. 65:1-5; *Ak-Chin* Hearing Tr. 20:16-21; *Passamaquoddy* Hearing Tr. 28:23.)

After Ms. Applegate had returned to the office, at 12:41 p.m., Ms. Applegate sent G. William Austin, an attorney at Kilpatrick Stockton LLP, an e-mail explaining that all the Complaints had been filed, but she was waiting for

the summons. (Appx. Ex. 6; *Salt River* Hearing Tr. 26:21-28:9, Ex. H; *Ak-Chin* Hearing Tr. 43:12-20, Ex. J; *Passamaquoddy* Hearing Tr. 29:21-30:23, Ex. 8; Response to Interrogatories, Response Nos. 7 and 8.) Ms. Applegate knows that it was the *Ak-Chin* District Court Complaint she was waiting to be completed because the District Court assigned that action the highest civil action number of the three District Court actions she filed that day, and the District Court assigns civil action numbers sequentially, based on the order of filing. (*Salt River* Hearing Tr. 27:18- 28:9; *Passamaquoddy* Hearing Tr. 30:10-23.) Because Ms. Applegate neither needed nor ever received a summons in connection with filing the CFC Complaints and did not have to return to the Court to retrieve a summons in the *Salt River* District Court Action, this e-mail evidences that Ms. Applegate had filed Salt River's CFC Complaint and the District Court Complaint by 12:41 p.m. (*Id*.)[5]

After sending the 12:41 p.m. e-mail, Ms. Applegate returned to the District Court to complete the filing of the Ak-Chin District Court Complaint. (*Salt River* Hearing Tr. 26:21-28:9; *Ak-Chin* Hearing Tr. 45:11-18; 44:13-15; *Passamaquoddy* Hearing Tr. 31:11-16.) During this trip to the District Court, Ms. Applegate noticed that the District Court had "gotten significantly busier."

[5] Under the RCFC 4, Salt River was not required to effectuate service of the CFC Complaint on the United States. *See* RCFC 4 ("Service of the complaint upon the United States shall be made through the delivery by the clerk to the Attorney General . . . of copies of the complaint . . . the date of service shall be date of filing with the clerk.").

(*Ak-Chin* Hearing Tr. 46:17-23.) Ms. Applegate paid the cashier and received a file stamped copy of the Complaint, a receipt and executed summons. (*Salt River* Hearing Tr. 45:11-18; *Ak-Chin* Hearing Tr. 45:11-18.) Ms. Applegate knows that she completed this filing by 2:23 p.m. because at that time, she sent Mr. Austin another e-mail saying that she had returned from the Court and was getting ready to leave for the day. (Appx. Ex. 7; *Salt River* Hearing Tr. 28:19-29:1, Ex. I; *Ak-Chin* Hearing Tr: 47:6-19, Ex. K; *Passamaquoddy* Hearing Tr. 31:11-16, Ex. 9.) Ms. Applegate testified that before she sent the 2:23 p.m. e-mail, she already had returned to the office and left the District Court Complaints and summonses for the process servers to retrieve. (*Salt River* Hearing Tr. 28:19-29:1; *Ak-Chin* Hearing Tr. 47:6-48:14; *Passamaquoddy* Hearing Tr. 31:17-21.)[6]

## <u>ARGUMENT</u>

Defendant made several factual arguments in its prior briefing to this Court and in connection with the evidentiary hearing to support its position that Salt River's District Court Complaint was filed prior to the instant action. The

[6] Ms. Applegate's three trips to the District Court on December 29, 2006 are documented by the cab receipts from these trips. Ms. Applegate made the following distinct handwritten notations on each of the receipts: "A.M." "second trip" and "Ak-Chin." (Appx. 8-10; *Salt River* Hearing Tr. 25:13-26:20, Exs. E-G; *Ak-Chin* Hearing Tr. 34:10-37:12, Exs. E-G; *Passamaquoddy* Hearing Tr. 31:22-33-5, Exs. 10-12.) The cab receipt with the "A.M." notation is the cab receipt for Ms. Applegate's first trip to the District Court. *Id.* The receipt with the "second trip" notation reflects Ms. Applegate's second trip to the District Court and the receipt with the "Ak-Chin" notation reflects her third and final trip to the District Court. *Id.*

facts established by Ms. Applegate's testimony and supporting evidence defeat each of these arguments.

### A. Ms. Applegate Did Not See Mr. Harper's 8:59 a.m. E-mail on December 29, 2006 Because She Was Away From Her Desk Preparing Complaints for Filing.

Defendant argues that an e-mail Mr. Harper sent to Ms. Applegate at 8:59 a.m. on December 29, 2006, telling her to file the District Court Complaints while he made changes to the CFC Complaints, is dispositive of the timing issue. This argument is a complete "red herring." Ms. Applegate testified that she did not even see Mr. Harper's 8:59 a.m. e-mail on December 29th and thus could not have heeded this instruction. (Appx. Ex. 11; *Salt River* Hearing Tr. 24:12-25:8, Ex. D; *Ak-Chin* Hearing Tr. 28:7-10; 30:6-20, Ex. D; *Passamaquoddy* Hearing Tr. 17:18-18:10; Ex. 2.) Ms. Applegate explained that at the time Mr. Harper sent the e-mail, she was away from her desk preparing the Complaints for filing and she did not have a Blackberry at the time. (*Salt River* Hearing Tr. 24:12-25:8; *Ak-Chin* Hearing Tr. 28:7-10; 30:6-20; *Passamaquoddy* Hearing Tr. 17:18-18:10.) The first time Ms. Applegate remembers reading the e-mail was in connection with collecting materials to produce in discovery served in the *Ak-Chin* CFC action. (*Salt River* Hearing Tr. 24:21-25:8; *Ak-Chin* Hearing Tr. 30:6-20.)

Ms. Applegate further explained that after Mr. Harper sent her the 8:59 a.m. e-mail, Ms. Applegate informed Mr. Harper that she was unable to confirm that the Court of Federal Claims would not be closing early that day for the holiday. (*Salt River* Hearing Tr. 42:22-43:8; *Ak-Chin* Hearing Tr. 26:1-9; 30:6-20.) This uncertainty, coupled with Mr. Harper's never having filed a Complaint in the Court of Federal Claims, prompted Mr. Harper to orally direct Ms. Applegate to file the Court of Federal Claims actions prior to filing the District Court actions. (*Salt River* Hearing Tr. 42:22-43:8; *Ak-Chin* Hearing Tr. 27:12-28:6.) It is this instruction that Ms. Applegate followed. (*Salt River* Hearing Tr. 41:22-24; *Ak-Chin* Hearing Tr. 18:3-9.) In fact, during the December 10th evidentiary hearing, on cross-examination, Ms. Applegate was emphatic that she did not "remember hearing anything about the District Court being filed first, period." (*Salt River* Hearing Tr. 41:22-24.)

In *Ak-Chin Indian Community v. United States,* No. 06-932L, Judge Hewitt considered and rejected the same argument Defendant makes here, that based upon the 8:59 a.m. e-mail, Ms. Applegate's testimony cannot be believed. To reach the conclusion that the 8:59 e-mail is not dispositive of the timing issue, as Defendant contends, Judge Hewitt "credit[ed] Ms. Applegate's testimony describing her activities the morning of December 29, 2006, in

particular, that she was away from her desk and working to assemble the Complaints." *Ak-Chin*, 2008 WL 241275, at *5.

### B. Ms. Applegate Filed the Salt River CFC Complaint During the First of Her Two Trips to the CFC.

Defendant asserted in prior briefing that Ms. Applegate filed the Salt River CFC Complaint when she filed the Ak-Chin CFC Complaint, which was after 11:41 a.m. (Defendant's Motion to Dismiss "Def. Brf.", at p. 12.) Because Ms. Applegate filed the Salt River District Court action in the morning, Defendant argues that under this theory, Ms. Applegate filed Salt River's CFC Complaint after she filed Salt River's District Court action.

As Defendant acknowledges, however, this argument hinges on the "presumption" that Ms. Applegate filed all of the CFC Complaints during one trip to the Court of Federal Claims. (Def. Brf. at 12.) This purported presumption fails in the face of the overwhelming evidence before this Court that Ms. Applegate made two trips to the Court of Federal Claims on December 29, 2006. Ms. Applegate has testified at three separate evidentiary hearings that she made two trips to the Court of Federal Claims. (*Ak-Chin* Hearing Tr. 18:3-16; *see also id*. 18:17-19:15; 33:19-34-9; *Salt River* Hearing Tr. 20:2-21; *Passamaquoddy* Hearing Tr. 14:9-15:14.) This testimony is supported by Ms. Bosken's 9:26 a.m. e-mail transmitting final versions of the

*Tohono O'odham* and *Salt River* CFC Complaints. (Appx. Ex. 3; *Salt River* Hearing Tr. 17:22-19:3; 40:13-15, Ex. A; *Ak-Chin* Hearing Tr. 20:9-21:18, Ex. A; *Passamaquoddy* Hearing Tr. 19:1-19, Ex. 3.) Mr. Guilder finished the *Passamaquoddy* CFC Complaint at that same time, while the *Ak-Chin* CFC Complaint was still being worked on at 11:41 a.m. (Appx. Ex. 5; *Salt River* Hearing Tr. 18:21-19:3; 58:8-15, Ex. 5; *Ak-Chin* Hearing Tr. 21:11-18; 41:8-13; 42:22-25, Ex. H; *Passamaquoddy* Hearing Tr. 19:12-19;27:11-20, Ex. 7.) Ms. Applegate explained that she did not wait for the *Ak-Chin* CFC Complaint to be ready and file all four CFC Complaints at the same because she did not want to prejudice other tribal clients as a result of the *Ak-Chin* CFC Complaint being completed later. (*Salt River* Hearing Tr. 19:15-21; *Ak-Chin* Hearing Tr. 20:3-8; *Passamaquoddy* Hearing Tr. 19:20-20:2.) That Ms. Applegate decided not to wait for the Ak-Chin CFC Complaint to file the other three CFC Complaints also is consistent with Ms. Applegate's and Mr. Harper's memory that they were concerned about the filing procedures at the Court of Federal Claims and that the Court of Federal Claims might close early due to the upcoming holiday. (*Salt River* Hearing Tr. 23:6-17; *Ak-Chin* Hearing Tr. 27:17-23; *Passamaquoddy* Hearing Tr. 17:6-10; Applegate Aff., ¶ 7; Response to Interrogatories, Response No. 11.)

In further support of its theory, Defendant takes the position that Ms. Applegate's testimony that she made two trips to the Court of Federal Claims is not credible because Salt River's Interrogatory Responses did not reference Ms. Applegate's multiple trips to the Court of Federal Claims. Salt River did not reference Ms. Applegate's later trip to the Court of Federal Claims to file the Ak-Chin CFC Complaint in its Responses to Defendant's Interrogatories because the Interrogatories only sought information regarding the filings for Salt River, and not regarding Salt River's counsel's other tribal clients. What is more, Ms. Applegate's later and unrelated trip to the Court of Federal Claims to file the Ak-Chin CFC Complaint occurred after she completed the filing of the Salt River CFC Complaint and District Court Complaint. Therefore, the *Ak-Chin* CFC filing plainly is not relevant to the issue of whether Ms. Applegate filed Salt River's CFC Complaint prior to filing Salt River's District Court Complaint. *See Ak-Chin*, 2008 WL 241275, at *5 (holding that Ak-Chin's failure to mention unrelated trips to the District Court in its Interrogatory Responses did not detract from Ms. Applegate's credibility regarding the filings.)

### C. The April 23rd E-mails Are Consistent with Ms. Applegate's Testimony, Affidavit and Salt River's Interrogatory Responses.

Defendant also argues that two e-mails Ms. Applegate sent on April 23, 2007 demonstrate that Ms. Applegate is uncertain of which Salt River Complaint she filed first that day. (Def. Reply Brf. at 2.) To make this argument, Defendant misconstrues the e-mails and the context in which they were written.

The first e-mail reflects Ms. Applegate's response to Ms. Munson's question, nearly four months after the filings, of how to determine what time the Complaints on behalf of Salt River and Passamaquoddy were filed. (Appx. Ex. 12; *Salt River* Hearing Tr. Ex. L; *Ak-Chin* Hearing Tr. Ex. 8; *Passamaquoddy* Hearing Tr. Ex. 13.) Ms. Applegate responded that because the Complaints had no time-stamps, there is "no precise way" to determine what *time* she filed the Complaints in each court, which is fully consistent with her December 10, 2007 testimony. (*Ak-Chin* Hearing Tr. 20:9-14; 30:21-25; *Salt River* Hearing Tr. 24:2-7.) By arguing that this e-mail detracts from Ms. Applegate's credibility, Defendant is confusing the issue of what time the Complaints were actually filed -- which Ms. Applegate explained in the e-mail and to the Court that she does not know, because the Complaints are not time-stamped -- and the relative sequence of filings -- which Ms. Applegate does know, and which is legally dispositive. Ms. Applegate's statement that the Complaints have no time-stamps is a fact which is not in dispute and in no way undermines her

credibility. What Ms. Applegate remembers, and what matters, is which of the two Salt River Complaints Ms. Applegate filed first.

This e-mail also included the statement that: "As for the CFC, I know I went over and we were missing something so I had to come back to the office and get it, but I just don't know what time all of this happened." (Appx. Ex. 12; *Salt River* Hearing Tr., Ex. L; *Ak-Chin* Hearing Tr., Ex. 8; Passamaquoddy Hearing Tr., Ex. 13.) Defendant points to this statement to argue that Ms. Applegate's testimony is not credible because she did not testify that she was "missing something" when she filed the CFC Complaints on December 29, 2006. Ms. Applegate explained at the December 10, 2007 hearing, however, that after having sent this immediate response to Ms. Munson's informal inquiry within minutes of receiving the e-mail, Ms. Applegate realized she had confused the trips she made to the Court of Federal Claims on December 29, 2006 to file the tribal trust Complaints, with a separate and completely unrelated trip to the Court of Federal Claims days later – in January 2007, during which she learned that she was "missing something." (*Salt River* Hearing Tr. 36:13-37:2; *Passamaquoddy* Hearing Tr. 34:10-35:1.) Ms. Applegate made this later and unrelated trip to the Court of Federal Claims in January 2007 to submit admissions packets for Mr. Austin and another Kilpatrick Stockton LLP attorney. *Id.* During that trip, Ms. Applegate had to

return to the office because she was missing something. *Id.* Ms. Applegate's visit to the Court of Federal Claims during which she learned she was "missing something" had nothing to do with the December 29, 2006 filings. *Id.*

In the other April 23, 2007 e-mail pointed to by Defendant, Ms. Applegate follows up on Ms. Munson's inquiry by forwarding Ms. Applegate's December 29, 2006, 2:23 p.m. e-mail to Mr. Austin and stating that she "thinks she went to the CFC first, but [is] not certain about that." (Appx. Ex. 13; *Salt River* Hearing Tr. Ex. L; *Ak-Chin* Hearing Tr. Ex. 8; *Passamaquoddy* Tr. Ex. 14.) Ms. Applegate sent this e-mail and the other e-mail approximately 15 minutes after having received Ms. Munson's inquiry and prior to having reviewed all the relevant contemporaneous evidence relating to the December 29th filings to refresh her recollection, which is what she did before she executed her Affidavits in this case and before testifying on December 10, 2007. (*Salt River* Hearing Tr., at 35:18-36:21; 79:24-80:4.) Ms. Applegate's review of the relevant documentary evidence confirmed for Ms. Applegate that what she originally thought in fact was true -- she filed the Court of Federal Claims action first. (*Salt River* Hearing Tr. 37:3-21.)

Defendant also pointed to the April 23rd e-mails in the *Ak-Chin* case to argue that Ms. Applegate was unsure of the sequence of filings and lacked credibility. Judge Hewitt explicitly rejected this argument, pointing to the fact

that Ms. Applegate responded to Ms. Munson's inquiry within a matter of minutes and without having reviewed the contemporaneous evidence. *Ak-Chin*, 2008 WL 241275, at *5. Judge Hewitt also was persuaded by the fact that the e-mails only stated that Ms. Applegate could not determine what time the Complaints were filed. *Id.* It does not state that she was unable to determine the order of filing, which is what matters here. *See id.* With regard to Ms. Applegate's statement in her April 23, 2007 e-mail that she was "missing something," Judge Hewitt adopted Ms. Applegate's explanation and specifically found that Ms. Applegate's testimony regarding the sequence of filing has "remained consistent." *Id.* at *6.

### D. Salt River's Counsel Has Never Argued that Ms. Applegate Was Missing Something When She Filed the Ak-Chin CFC Complaint.

During Defendant's cross-examination of Ms. Applegate, Defendant's counsel suggested that a brief filed by Salt River's counsel in the *Ak-Chin* Court of Federal Claims matter is inconsistent with Ms. Applegate's testimony. This argument is a product of a misreading of Ak-Chin's brief and based on the false assertion that Ak-Chin took the position in the brief that Ms. Applegate was "missing something" when she filed the *Ak-Chin* CFC Complaint. Nothing could be further from the truth.

It is useful to understand the context in which Ak-Chin filed the brief at issue. Despite never having raised the issue during its cross-examination of Ms. Applegate at the *Ak-Chin* October 24, 2007 evidentiary hearing, or in its prior two briefs filed in the *Ak-Chin* action, in its Post-Evidentiary Hearing Brief filed in that case, Defendant relied upon Ms. Applegate's statement that she was "missing something" in the April 23rd e-mail to introduce a new theory about Ms. Applegate's filings on December 29, 2006. For the first time, Defendant argued that based on the April 23rd e-mail, Ms. Applegate's filing of the Court of Federal Claims Complaints for Salt River, Passamaquoddy and Tohono O'odham did not go "smoothly" as she had testified.

Because at the time there was no evidence in the record regarding Ms. Applegate's later and unrelated trip to the Court of Federal Claims during which she attempted to submit attorney admissions, but was "missing something," Ak-Chin was unable to offer a full explanation for the statement in the April 23rd e-mail in its Response to Defendant's Post-Evidentiary Hearing Brief. So instead, Ak-Chin relied upon Ms. Applegate's testimony that she went to the Court of Federal Claims twice on December 29, 2006, once to file the *Salt River*, *Passamaquoddy* and *Tohono O'odham* Complaints and later, because she had to file the *Ak-Chin* Complaint. In other words, Ms. Applegate

did not return to the Court of Federal Claims because she was "missing something." Ak-Chin's Response Brief thus explained:

> While Ms. Applegate initially recalled having to make a second trip to the Court of Federal Claims that day because she was "missing something" her first trip there, the reason Ms. Applegate was required to make a second trip to the Court of Federal Claims was because the Ak-Chin CFC Complaint was not ready when the other three Complaints were filed and it had to be delivered for filing later that same morning.

(Appx. Ex. 14; *Salt River* Hearing Tr. Ex. 9; *Passamaquoddy* Hearing Tr. Ex. 24, at p. 12-13).

Defendant contended during its cross-examination of Ms. Applegate at the December 10, 2007 Hearing, that this passage is inconsistent with Ms. Applegate's testimony about the CFC filings she completed on December 29, 2006 because it purportedly states that Ms. Applegate was "missing something" in connection with the filing of the *Ak-Chin* CFC Complaint. That simply is not correct. Ak-Chin's brief argued just the opposite - that Ms. Applegate was **not** "missing something" in connection with the Ak-Chin filing in the Court of Federal Claims or any other filing that day. Nor has Ms. Applegate ever testified that she was "missing something" in connection with her filings. In fact, while under cross-examination during the evidentiary hearing in this action and in *Passamaquoddy*, Ms. Applegate explained that the brief was consistent with her prior testimony that her reference in the e-mail to "missing

something" referred to her later unrelated trip to the Court of Federal Claims. (*Salt River* Hearing Tr. 71:6-23; *Passamaquoddy* Hearing Tr. 44:24-45:11.)

### E. The Receipt Numbers Associated With Complaints Filed in the Court of Federal Claims Do Not Reflect The Order of Filing of Those Complaints Within A Given Day.

During its cross-examination of Ms. Applegate on December 10, 2007, Defendant's counsel suggested for the first time that the receipt numbers associated with the Complaints Ms. Applegate filed in the Court of Federal Claims reflect the order of filing. This theory fails for several reasons.

First, the argument directly contradicts what the Court of Federal Claims' Chief Deputy Clerk, Lisa Reyes, stated to the Court in response to questions by the Court and Defendant's counsel at a December 12th status conference in this case, which this Court held to enable it to take "judicial notice of the procedures and practices that this Court uses for handling complaints." (December 12th Hearing Transcript ("December 12th Hearing Tr.") 3:11-12. At the status conference, Ms. Reyes explained how receipts for Complaints are issued and what significance, if any, is attached to receipt numbering for purposes of determining the timing of the filing of Complaints. In response to questions from the Court, Ms. Reyes explained that the receipt numbers assigned to Complaints do not reflect the time or order that Complaints are

filed within a given day. (December 12th Hearing Tr. 5:12-9:10.) The Court concluded its questioning of Ms. Reyes, as follows:

> Q. So it is a fair statement to say that you cannot tell what order a complaint came in on a particular day by looking at the docket number in relationship to other document numbers or by looking at the receipts?
>
> A. No, not for a normal complaint . . . .

(December 12th Hearing Tr. 9:1-10). The Court permitted counsel for the parties to question Ms. Reyes about the Court's procedures. Defendant's counsel questioned Ms. Reyes regarding the significance of the receipt numbers when a filer receives a receipt at the time of filing:

> Q. Now, if we know that all four of these complaints were filed over the counter on that day and that the filer took these receipts back with him, are you able to tell, out of those four complaints, which of the receipts would have issued first, which of the complaints might have been dropped off first?
>
> A. Well, I can tell which of the receipts would be issued first, but I can't tell which of the complaints would have been dropped off first.

(December 12th Hearing Tr. at 14:14-22.) When Defendant's counsel asked the same question again, Ms. Reyes gave Defendant's counsel the same answer: "[Y]ou can't really draw a correlation with what actually came in with what number was received directly." (December 12th Hearing Tr. at 18:21-23.)

In light of Ms. Reyes' unequivocal representations to this Court and counsel that the receipt numbers do not reflect the order of filing, Defendant's argument only succeeds if this Court rejects Ms. Reyes' description of the Court's filing processes. In fact, in *Ak-Chin*, Judge Hewitt cited to Ms. Reyes' testimony as a reason to conclude that the receipt numbers did **not** reflect the order in which Ms. Applegate completed the filings in the Court of Federal Claims. *Ak-Chin*, 2008 WL 241275, at *5.

Second, based on the undisputed evidence in the record, it would be impossible for Ms. Applegate to have filed the *Ak-Chin* Court of Federal Claims Complaint prior to filing the other three CFC Complaints, as Defendant now contends. The *Ak-Chin* CFC Complaint was not ready to be filed as of 11:41 a.m. and it is not disputed that Ms. Applegate sent an e-mail to Mr. Austin at 12:41 p.m. saying that all the Complaints had been filed, but that she was waiting for a summons for the *Ak-Chin* District Court action. (Appx. Ex. 6; *Salt River* Hearing Tr. 26:21-28:9, Ex. H; *Ak-Chin* Hearing Tr. 43:12-20, Ex. J; *Passamaquoddy* Hearing Tr. 29:21-30:23, Ex. 8; Response to Interrogatories, Response Nos. 7 and 8.) Therefore, Ms. Applegate filed the *Ak-Chin* CFC Complaint and dropped off the *Ak-Chin* District Court Complaint between 11:41 a.m. and 12:41 p.m.

Defendant is offering a scenario in which Ms. Applegate would have had to not only complete the filing of the Ak-Chin CFC Complaint and left the District Court Complaint with the District Court between 11:41 a.m. and 12:41 p.m., but also would have had to file the *Salt River*, *Passamaquoddy* and *Tohono O'odham* CFC Complaints within that time frame. That is, if the receipt numbers associated with the CFC Complaints reflect the order of filing, as Defendant now contends, then Ms. Applegate had to file the Ak-Chin CFC Complaint first, because it has the lowest number, then file the *Salt River*, *Passamaquoddy* and *Tohono O'odham* Complaints, which have much higher and sequential numbers, in a separate and much later trip to the Court of Federal Claims and taken a separate trip to the District Court to file the Ak-Chin Complaint -- all within one hour.

During cross-examination on December 10, 2007, Ms. Applegate specifically rejected the possibility that she filed the CFC Complaints in the order now proposed by Defendant. (*Salt River* Hearing Tr., 79:3-81:6.)[7] Ms. Applegate also testified at length about the tasks required to complete the filing of the Complaints for Ak-Chin in the Court of Federal Claims and for leaving the Complaint for Ak-Chin in the District Court and the time it took to complete

[7] Defendant even went so far as to suggest that Ms. Applegate did the filings alphabetically based on the name of each tribal trust plaintiff. (*Salt River* Hearing Tr., 78:14-18; 80:13-17). It is yet another theory bereft of evidentiary support.

those tasks. (*Salt River* Hearing Tr. 47-65). While Ms. Applegate's testimony makes it clear that she worked quickly and efficiently to accomplish the two filings between 11:41 a.m. and 12:41 p.m., it is also evident from her testimony that she would not have been able to complete an additional and separate trip to the Court of Federal Claims during that hour. Thus, Defendant's theory is not only unsupported, but it is also impossible to square with the evidence in the record.

Lastly, even if Ms. Reyes had testified that you could determine the sequence of filings of Complaints in the Court of Federal Claims based on the receipt numbers when a party receives a receipt at the time of filing, Ms. Applegate did not receive receipts at the Court of Federal Claims at the time she filed the *Salt River*, *Passamaquoddy* and *Tohono O'odham* Complaints. Rather, as evidenced by Salt River's Interrogatory Responses and Ms. Applegate's testimony, when Ms. Applegate filed the *Salt River*, *Passamaquoddy* and *Tohono O'odham* Complaints on December 29, 2006, she received from the clerk stamped copies of the Complaints, but no other documents. (Response to Interrogatories, Response No. 2; *Passamaquoddy* Hearing Tr. 22:23-25:11.) Ms. Applegate testified that she knows she did not receive receipts at the time of filing the Complaints because the original receipts associated with the *Salt River*, *Passamaquoddy* and *Tohono O'odham*

CFC actions had "post-it" notes on them reflecting judicial assignments. (Appx. Ex. 15 and 16; *Passamaquoddy* Hearing Tr. 22:23-25:11, Exs. 4, 6.) Ms. Reyes confirmed at the December 12th status conference that personnel at the Court of Federal Claims place post-it notes with the judge assignments on the receipts and Ms. Applegate knows that she first learned which judges had been assigned to CFC actions on January 3, 2007, when she received an ECF notice in *Ak-Chin*, *Passamaquoddy* and *Tohono O'odham*. (*Passamaquoddy* Hearing Tr. 22:23-25:1; December 12th Hearing Tr. 30:4-16.) Therefore, Ms. Applegate did not receive receipts for the *Salt River*, *Tohono O'odham* and *Salt River* CFC Complaints at the time she filed the Complaints. (*Passamaquoddy* Hearing Tr. 22:23-25:1; December 12th Hearing Tr. 30:4-16.)

This testimony is supported by a January 3, 2007 e-mail exchange in which Mr. Harper inquired as to whether the Court of Federal Claims Actions had been assigned judges yet. (Appx. Ex. 17; *Passamaquoddy* Hearing Tr. 24:12-22, Ex. 5). Ms. Applegate responded and informed Mr. Harper, who was out of the office, that he received notices that day that the Court of Federal Claims had assigned judges to the *Ak-Chin*, *Tohono O'odham* and *Passamaquoddy* actions. (*Passamaquoddy* Hearing Tr. 24:12-22, Ex. 5). Ms.

Applegate did not receive the judge assignment for this case until January 4, 2007. (*Passamaquoddy* Hearing Tr. 24:23-25:1.)

On December 10, 2007, Ms Applegate stated that she had received a receipt at the time she filed the *Passamaquoddy*, *Tohono O'odham* and *Salt River* CFC Complaints. But this was simply a momentary confusion on her part while on the stand. In fact, as Ms. Applegate explained at subsequent hearing in the *Passamaquoddy* case, her statement that she received a receipt at the time of filing was based upon her experience with the filing procedures in the District Court, which issues receipts at the time of filing. (*Passamaquoddy* Hearing Tr. 25:3-12.) Shortly after testifying on December 10, 2007, Ms. Applegate reviewed the receipts issued by the Court of Federal Claims in the actions she filed on December 29, 2006, discovered the January 3, 2007 e-mail exchange with Mr. Harper and learned that Ms. Reyes had explained that the Court of Federal Claims placed the post-it notes with judicial assignments on the receipts. Based on this information, Ms. Applegate knows that she did not receive receipts for the *Salt River*, *Tohono O'odham* and *Passamaquoddy* CFC Complaints until several days after the filings. (*Passamaquoddy* Hearing Tr. 58:3-12.)

### F. The District Court Docket Listing Supports Ms. Applegate's Testimony.

At a November 9, 2007 status conference in this action, this Court noted that based on the District Court log reflecting the filings in the District Court on December 29, 2006, the *Salt River* and *Passamaquoddy* District Court Complaints were the first two actions filed in the District Court that day and the *Ak-Chin* District Court action was the sixth action filed, out of a total of 32 filings that day. (November 9, 2007 Hearing Transcript ("Nov. 9th Hearing Tr."), 11:21-25; 16:14-21.) The Court inquired as to whether the District Court log could be reconciled with Ms. Applegate's account of the filings on December 29, 2006. In response to the Court's inquiry, Salt River's counsel observed filings at the District Court, spoke with District Court personnel and reviewed pleadings filed in the District Court that day, all of which support Ms. Applegate's testimony.

Because the Court specifically expressed an interest in learning whether it would be unusual for the first filing of the day to occur at the time Ms. Applegate estimated, which was 10:30 a.m., Salt River's counsel visited the District Court clerk's office on a randomly selected day to observe when the first Complaint was filed in that Court. On that day, Salt River's counsel observed that the first Complaint was not filed in the District Court until 11:40 a.m. (*Salt River* Hearing Tr. 86:14-87:3.) This observation suggests that it would not be unusual for the first filing of the day in the District Court to be at

or around 10:30 a.m., as Ms. Applegate testified. In addition, Salt River's counsel asked an in-take clerk at the District Court whether it would be unusual for the first filing of the day to be at 10:00 a.m. or so. The clerk responded that she could not generalize and that every day was different. (Notice of Evidence Submitted in Response to Court's Inquiry Regarding Defendant's Motion to Dismiss; *Salt River* Hearing Tr. 90:11-91:3.) The in-take clerk provided Defendant's counsel with the same response. (*Salt River* Hearing Tr. 91:11-14.)

At the November 9, 2007 hearing, the Court also observed that "two dozen cases were filed in the hours after *Ak-Chin*," which Ms. Applegate testified was filed in the early afternoon, and requested an "explanation for that." (Nov. 9th Hearing Tr., 12:5-9.) In other words, is it implausible that the sixth filing of the day, out of a total of 32 filings, could have been completed in the early afternoon?

Lawyers being lawyers, there is no reason to be surprised that filings occur disproportionately at the end of the day. Furthermore, it is more likely that a substantial number of filings generally are made late in the day due, in part, to the fact that the District Court has an after-hours "speedy filing box" allowing for filings to occur after the District Court closes at 4:00 p.m. *See* I.B.1 & 2. Clerk's Office General Information and Filing Procedures for the

United States District Court for the District of Columbia. According to the District Court's local rules, this after-hours box has an "electronic clock" "to time and date stamp all papers submitted" so that "all papers/CDs received before midnight will be filed as of that day." *Id.*

There were a significant number of after-hour filings on December 29th. The first after-hours filing of that day appears to be the 21st filing, which was a Notice of Removal time-stamped as having being received by the Court at 5:53 p.m., nearly two hours after the District Court had closed. (Appx. Ex. 18 and 19; Ex. 3 to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500; *Salt River* Hearing Tr., Ex. K (Notice of Removal filed in *Beynum v. Clay*, 1:06-cv-02260-RWR.)) The four subsequent filings (22nd filing through the 25th filing) also have time-stamps showing that the filings were left in the "speedy filing box" after the District Court had closed. (Appx. Ex. 19; *Salt River* Hearing Tr., Ex. K (*Ruffin v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02261-RWR; *Wilson-Greene v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02262-RJL; *Cruz-Packer v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02263-RWR; and *Davis v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02264-GK.)) Because the District Court assigns civil action numbers based upon the order the filings are received, the last twelve of the 32 filings on December 29th, also had to have been filed after the District Court had closed. *See* Federal Rule of

Civil Procedure 79(a) ("Actions shall be assigned consecutive file numbers . . . All papers filed with the clerk . . . shall be entered chronologically . . . .")

Moreover, the District Court made notations on the 16th through the 20th filings showing that these filings were received by the Court prior to December 29th. (Appx. Ex. 20; *Salt River* Hearing Tr. Ex. J (cover pages, reflecting notations *Coleman v. Lappin*, 1:06-cv-02255-RMC; *Wills v. Smith*, 1:06-cv-02256-RJL; *Harris v. Goins*, 1:06-cv-02257-CKK; *Harley v. U.S. Parole Comm'n*, 1:06-cv-02258-RMU; and *Stamps v. Secretary of Treasury*, 1:06-cv-2259-UNA.)) Based on these notations, the last "in person" filing on December 29, 2006 appears to have been the 15th filing processed that day. (Appx. Ex. 18; Ex. 3 to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500.) Thus, after Ms. Applegate filed the Ak-Chin District Court Complaint, only nine subsequent filings were processed before the District Court closed at 4:00 p.m. The Ak-Chin Complaint -- the sixth filing -- was filed a little earlier than mid-way through the filings completed during the District Court's hours. This evidence is consistent with the Ak-Chin District Court action having been filed in the early afternoon, as Ms. Applegate testified and as her e-mails demonstrate. *See Ak-Chin*, 2008 WL 241275, at *8-9 (citing to the above evidence to repudiate Defendant's argument that the District Court docket contradicts Ms. Applegate's testimony.)

## CONCLUSION

Salt River has shown with uncontroverted evidence that the District Court action was not pending at the time Salt River filed the CFC Complaint. None of the arguments Defendant raises now in any way contravenes the showing Salt River has made. Accordingly, Defendant's motion to dismiss under § 1500 should be denied for the reasons stated above.

This the 14th day of February, 2008.

Respectfully submitted,

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
Salt River Pima-Maricopa Indian Community

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 06-943L<br>Judge Lawrence M. Baskir<br>**Electronically filed on February 14, 2008** |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Supplemental Brief Opposing Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Kevin J. Larsen, Esq.
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

This 14th day of February, 2008.

/s/ Keith Harper

KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800
*Attorneys for Plaintiff*
Salt River Pima-Maricopa Indian Community