***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***
***v.***
***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX PART II**

**APPENDIX TO PLAINTIFF'S SUPPLEMENTAL BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS PURSUANT TO 28 U.S.C. § 1500**

| Tab # | Document Description |
|---|---|
| 1. | December 28, 2006, 9:44 P.M. Email from Keith Harper to Alexis Applegate and others |
| 2. | December 28, 2006, Final Version of Salt River District Court Complaint |
| 3. | December 29, 2006, 9:26 A.M. Email from Katherine Bosken to Alexis Applegate and others |
| 4. | Mapquest driving directions from Kilpatrick Stockton LLP to the Court of Federal Claims |
| 5. | December 29, 2006, 11:41 A.M. Email from Justin Guilder to Edward Roybal |
| 6. | December 29, 2006, 12:41 P.M. Email exchange between Alexis Applegate and Bill Austin |
| 7. | December 29, 2006, 2:23 P.M. e-mail from Alexis Applegate to Bill Austin |
| 8. | December 29, 2006 Taxi Cab receipt from Kilpatrick Stockton LLP to the United States District Court, "AM Trip" |
| 9. | December 29, 2006 Taxi Cab receipt from Kilpatrick Stockton LLP to the United States District Court, "2nd Trip" |
| 10. | December 29, 2006 Taxi Cab receipt from Kilpatrick Stockton LLP to the United States District Court, "Ak-Chin Trip" |
| 11. | December 29, 2006, 8:59 A.M. Email from Keith Harper to Alexis Applegate and others |
| 12. | April 23, 2007 Email exchange between Alexis Applegate and Catherine Munson |
| 13. | April 23, 2007 Email from Alexis Applegate to Catherine Munson |
| 14. | November 29, 2007 Plaintiff's Response to Defendant's Post-Evidentiary Hearing Brief in Support of Defendant's Motion to Dismiss |
| 15. | Court of Federal Claims receipt for filing of Complaint in *Passamaquoddy Tribe of Maine v. United States* |
| 16. | Court of Federal Claims receipt for filing of Complaint in *Salt River Pima-Maricopa Indian Community v. United States* |
| 17. | January 3, 2007 Email exchange between Keith Harper and Alexis Applegate regarding judicial assignments in the Court of Federal Claims |
| 18. | District Court Docket Listing of Complaints filed on December 29, 2006 |
| 19. | Notices of Removal filed after hours with the District Court on December 29, 2006 |
| 20. | Other Initial Filings and Complaints filed with the District Court on December 29, 2006 |

***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***
***v.***
***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX EXHIBIT 14**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-09321 (ECH) |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | **Electronically filed on November 29, 2007** |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S POST-EVIDENTIARY HEARING**
**<u>BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>**

There are certain underlying fundamental facts which the parties do not dispute. These facts corroborate Alexis Applegate's October 24, 2007 testimony and fully support the conclusion that Ms. Applegate filed the Ak-Chin Indian Community's ("Ak-Chin") Court of Federal Claims Complaint ("CFC Complaint") prior to filing Ak-Chin's District Court Complaint on December 29, 2006.

Both parties agree that Ms. Applegate filed seven Complaints on December 29, 2006, comprised of four Complaints filed in the Court of Federal Claims and three Complaints filed in the District Court. It is without dispute that the Complaints Ms. Applegate filed on behalf of the Salt River Pima-Maricopa Indian Community ("Salt River") and the Passamaquoddy Tribe ("Passamaquoddy") in the District Court were the first two filings in the District Court on December 29, 2006 and that the Ak-Chin District Court Complaint was filed later in the day. It also is not disputed that the District Court assigns civil action numbers sequentially based on the order of filing and that the Ak-Chin District Court Complaint was assigned the highest number of the three District Court Complaints Ms. Applegate filed that day. Likewise, the receipt

numbers on the receipts generated by the District Court to show that Ms. Applegate had paid the filing fees for each of the District Court Complaints demonstrate that the Passamaquoddy and Salt River District Court Complaints were filed earlier in the day, and separately from, the later-filed Ak-Chin District Court Complaint.

Ms. Applegate recalls that her last trip of the day in connection with filing a Complaint was to the District Court. The government has not contested this recollection, which is also supported by Ms. Applegate's December 29, 2006, 12:41 p.m. e-mail to Bill Austin explaining that she had finished the filings but had to retrieve a summons, a document only needed in the District Court. (Hearing Tr. Plaintiff's Ex. J.)[1] These undisputed facts lead to the inescapable conclusion that the last action Ms. Applegate filed on December 29, 2006 was the Ak-Chin District Court action, the action assigned the highest civil action number, which necessarily means that she filed Ak-Chin's District Court Complaint after she had filed the Ak-Chin CFC Complaint.

The government has not contested these fundamental facts. Instead, the government attacks Ms. Applegate's credibility based on minor discrepancies and points to other evidence which appears at first blush to be inconsistent with her testimony, but is in reality, easily reconciled. Because Ak-Chin has carried its burden to demonstrate that the last Complaint Ms. Applegate filed on December 29, 2006 was the Ak-Chin District Court Complaint, Defendant's Motion to Dismiss should be denied. *See Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995); *Breneman v. United States*, 57 Fed. Cl. 571, 575 (2003), *aff'd*, 97 Fed.

---

[1] Under the RCFC 4, Ak-Chin was not required to effectuate service of the CFC Complaint on the United States. *See* RCFC 4 ("Service of the complaint upon the United States shall be made through the delivery by the clerk to the Attorney General . . . of copies of the complaint . . . the date of service shall be date of filing with the clerk.").

Appx. 392 (Fed. Cir. 2004); *Tecon Engineers, Inc. v. United States*, 343 F.2d 943, 949 (Fed. Cl. 1965).

**ARGUMENT**

**A. The District Court Docket Listing and Receipts Corroborate Ms. Applegate's Testimony.**

In an effort to challenge Ms. Applegate's testimony regarding the sequence in which she filed the Ak-Chin CFC and District Court Complaints, the government points to the December 29th District Court docket listing and receipt numbers of the District Court receipts reflecting payment of the filing fees for the Ak-Chin District Court Complaint and the District Court Complaints filed by Ms. Applegate on behalf of Passamaquoddy and Salt River purportedly to show that the Ak-Chin District Court Complaint was "among the first" Complaints filed the day. (Def. Brf. 5.) As explained in more detail below, the Ak-Chin District Court Complaint was not one of the first District Court Complaints filed in person that day. Moreover, the docket listing and receipt numbers show that the District Court Complaints Ms. Applegate filed on behalf of Passamaquoddy and Salt River were the first two actions filed on December 29th and that she filed the Ak-Chin District Court Complaint later that day. These facts corroborate Ms. Applegate's testimony that she filed the Ak-Chin District Court Complaint separately and later in the day than the District Court Complaints she filed for Passamaquoddy and Salt River. (Hearing Tr. 18:3-16; 18:17-19:15; 33:19-34:9.)

The docket listings also show that the District Court processed an unusually high number of filings on December 29th. This evidence supports Ms. Applegate's testimony that the clerk told Ms. Applegate during her first attempt to file the Ak-Chin District Court Complaint that the clerk was "too busy to complete the filing" and that Ms. Applegate "would have to come back at a later time." (Hearing Tr. 14:18-24.) It further corroborates Ms. Applegate's observation, when

she returned to the District Court during her last trip to file the Ak-Chin District Court Complaint, that the District Court "had gotten significantly busier as the day progressed." (Hearing Tr. 46:17-23.)

A review of the docket listings for the month of December 2006 also show that the four-day week between Christmas and the end of the year was exceptionally busy. *See* District Court docket listings for the month of December 2006, attached hereto collectively as Exhibit A. A total of 89 suits were filed that week with an average of more than 22 per day. *Id.* December 29th was the busiest day that week. There were 32 filings that day, including the actions filed for Passamaquoddy, Salt River and Ak-Chin. *Id.* The week prior to Christmas had been significantly slower. A total of 60 suits were filed in that five-day period, resulting in a 12 per-day average for number of filings. *Id.* Similarly, the two-week period following December 29th only had an average of a little over 15 filings per day. *See* District Court docket listings for the month of January 2007, attached hereto collectively as Exhibit B. Based on the foregoing, December 29th was an unusually busy day for the District Court and this evidence is in full accord with Ms. Applegate's testimony.

The government argues that because the Ak-Chin District Court Complaint was the sixth filing on December 29th and a substantial number of filings were processed afterwards, the Ak-Chin District Court Complaint had to have been submitted to the District Court earlier than 12:41 p.m., the time when Ms. Applegate first left the Ak-Chin District Court Complaint with the District Court. (Hearing Tr. 43:12-23; 47:6-19.) This argument assumes that it is inherently implausible that the sixth filing of the day, out of a total of 32 filings, could have been completed



US2000 10461519.1

Case 1:06-cv-00932-ECH Document 43 Filed 11/29/2007 Page 5 of 17

in the early afternoon. There is no basis in the record or in common sense to support that assumption.[2]

Lawyers being lawyers, there is no reason to be surprised that filings occur disproportionately at the end of the day. Furthermore, it is more likely that a substantial number of filings generally are made late in the day due, in part, to the fact that the District Court has an after-hours "speedy filing box" allowing for filings to occur after the District Court closes at 4:00 p.m. *See* I.B.1 & 2. Clerk's Office General Information and Filing Procedures for the United States District Court for the District of Columbia. According to the District Court's local rules, this after-hours box has an "electronic clock" "to time and date stamp all papers submitted" so that "all papers/CDs received before midnight will be filed as of that day." *Id.* There were a significant number of after-hour filings on December 29th. The first after-hours filing of that day appears to be the 21st filing, which was a Notice of Removal time-stamped as having being received by the Court at 5:53 p.m., nearly two hours after the District Court had closed. *See* Exhibit 3 to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500; Notice of Removal filed in *Beynum v. Clay*, 1:06-cv-02260-RWR, attached hereto as Exhibit C. The four subsequent filings (22nd filing through the 25th filing) also have time-stamps showing that the filings were left in the "speedy filing box" after the District Court had closed. *See Ruffin v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02261-RWR; *Wilson-Greene v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02262-RJL; *Cruz-Packer v. Dep't of Youth Rehabilitation Services*, 1:06-cv-02263-RWR; and *Davis v. Dep't of Youth Rehabilitation Services*, 1:06-cv-

---

[2] In its Post-Hearing Brief, the government argues that there were "more than thirty-five Complaints" filed in the District Court on December 29, 2006, and cites to Exhibit 3 to Defendant's Motion to Dismiss for this factual assertion. (Def. Brf. 3.) Exhibit 3 to Defendant's Motion to Dismiss, however, shows that there were only 32 filings that day and many of these filings were not Complaints. As such, the government's assertion regarding the number of filings that day is incorrect, even based on the government's own evidence.

02264-GK, attached hereto collectively as Exhibit D. Because the District Court assigns civil action numbers based upon the order the filings are received, the last twelve of the 32 filings on December 29th, also had to have been filed after the District Court had closed. *See* Federal Rule of Civil Procedure 79(a) ("Actions shall be assigned consecutive file numbers . . . All papers filed with the clerk . . . shall be entered chronologically . . . .")

Moreover, the District Court made notations on the 16th through the 20th filings showing that these filings were received by the Court prior to December 29th. *See* Cover pages, reflecting notations, of *Coleman v. Lappin*, 1:06-cv-02255-RMC; *Wills v. Smith*, 1:06-cv-02256-RJL; *Harris v. Goins*, 1:06-cv-02257-CKK; *Harley v. U.S. Parole Comm'n*, 1:06-cv-02258-RMU; and *Stamps v. Secretary of Treasury*, 1:06-cv-2259-UNA, attached hereto collectively as Exhibit E. Based on these notations, the last "in person" filing on December 29, 2006 appears to have been the 15th filing processed that day. *See* Exhibit 3 to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500. Thus, it is likely that after Ms. Applegate filed the Ak-Chin Complaint, only nine subsequent filings were processed before the District Court closed at 4:00 p.m. The Ak-Chin Complaint -- the sixth filing -- was filed a little earlier than mid-way through the filings completed during the District Court's hours. This evidence is consistent with the Ak-Chin District Court action having been filed in the early afternoon, as Ms. Applegate testified and as her e-mails demonstrate. (Hearing Tr. 43:12-23; 47:6-19.)

### B. The "Undisputed Facts" Cited by the Government Ignore Ms. Applegate's Testimony and Other Documentary Evidence.

Although the government lists purported "undisputed facts" in support of its arguments, such facts are anything but undisputed in the government's favor and indeed, have been fully explained by Ms. Applegate's testimony and corroborating evidence. For example, the government argues that Mr. Harper's 8:59 a.m. e-mail to Ms. Applegate, telling her to file the

District Court Complaints while he made changes to the CFC Complaints, shows that Ms. Applegate in fact filed the Ak-Chin District Court Complaint prior to filing the Ak-Chin CFC Complaint. (Def. Brf. 6-7.) Ms. Applegate testified unequivocally that she did not see Mr. Harper's 8:59 a.m. e-mail until months later, when she collected documents in response to the government's document requests. (Hearing Tr. 28:7-10; 30:6-20.) Because she did not see the e-mail on December 29th, Ms. Applegate could not have followed this instruction. Moreover, the morning of December 29th, in response to Mr. Harper's e-mail request sent the previous evening, Ms. Applegate checked with the courts to see if they were closing early due to the upcoming New Year's holiday and President Ford's death. (Hearing Tr. 26:1-9.) Ms. Applegate was unable to confirm that the Court of Federal Claims would not be closing early. *Id.* This uncertainty, coupled with Mr. Harper never having filed a Complaint in the Court of Federal Claims, prompted Mr. Harper to orally instruct Ms. Applegate to file the Court of Federal Claims actions prior to filing the District Court actions. (Hearing Tr. 27:12-28:6.) Ms. Applegate is certain that she followed this instruction. (Hearing Tr. 18:3-9.)

The government also points to Mr. Guilder's 11:41 a.m. e-mail requesting information from Ak-Chin's counsel, Mr. Roybal, to argue that all that Ak-Chin has shown is that the CFC Complaint was filed at some "undetermined time" after 11:41 a.m. (Def. Brf. p. 7). That simply is not the case. Ms. Applegate testified that the Ak-Chin CFC Complaint was filed by 12:41 p.m. (Hearing Tr. 42: 10-25). This testimony is corroborated by her e-mail to Mr. Austin at 12:41 p.m. stating that all the Complaints had been filed, but that she was waiting for the summons, which Ms. Applegate explained was for the Ak-Chin District Court Complaint. *Id.* She further testified that Mr. Guilder obtained the requested information before he heard back from Mr. Roybal. *See id.*; Ak-Chin's Response to Interrogatory No. 8.

The government also relies upon the fact that certain federal defendants had been served with the District Court Complaint by 3:14 p.m. as purporting to show that the Ak-Chin District Court Complaint was filed earlier in the day than the Ak-Chin CFC Complaint. (Def. Brf. 7.) As explained by Ms. Applegate, however, the offices of the Interior Department are within a few blocks of Kilpatrick Stockton LLP's offices and Ms. Applegate had, earlier in the day, made arrangements with the process servers. (Hearing Tr. 47:20-48:14; 49:13-25.) Therefore, it is not surprising that service had been effectuated by 3:14 p.m., which is approximately one to two hours after the time Ms. Applegate had obtained the summons from the District Court and left the summonses and Complaints at Kilpatrick Stockton LLP's offices for the process servers to retrieve. (Hearing Tr. 47:6-19.)

**C. The Ak-Chin District Court Complaint Was Filed After the CFC Complaint.**

There are two quite different issues before the Court regarding the time at which the Ak-Chin District Court Complaint was filed. Ak-Chin prevails on both.

The first issue is the question of when a Complaint is deemed filed as a legal matter. In its Post-Hearing Brief, the government suggests that Ak-Chin contends that the filing of the Ak-Chin District Court Complaint was not complete until Ms. Applegate retrieved the summons. Ak-Chin has never made this argument. Rather, the filing of the Ak-Chin District Court Complaint was not complete until Ms. Applegate returned to the District Court to pay the cashier the filing fee, which occurred during Ms. Applegate's last trip to the District Court on December 29, 2006, when she also obtained the summons. *See, e.g., Lee v. U.S.*, 33 Fed. Cl. 374, 383 (1995) (holding that a payment of filing fees is required before a Complaint is filed); *Cofield v. U.S.*, 25 Cl. Ct. 465, 467 (1992) (same); *Anno v. U.S.*, 113 F. Supp. 673, 675-76 (Cl. Ct. 1953) (same); *Turkett v. United States*, 76 F. Supp. 769, 770 (D.N.Y. 1948) (holding that a prerequisite

to a filing is the payment of the clerk's fees); *Wanamaker v. Columbian Rope Co.*, 713 F. Supp. 533, 539 (N.D.N.Y. 1989) (holding that plaintiff's complaint was filed only after payment of the filing fee to the clerk of the court). Because Ms. Applegate did not pay the filing fee until her last trip to the District Court, which was between 12:41 p.m. and 2:23 p.m., and it is undisputed that the Ak-Chin CFC Complaint had been filed at that time, as a legal matter, the Ak-Chin Court of Federal Claims action was filed first.

The second independent issue is the factual matter of when Ms. Applegate left the District Court Complaint with the District Court. Because Ms. Applegate filed the Ak-Chin CFC Complaint before her first trip to the District Court to file the Ak-Chin District Court Complaint, Ak-Chin's CFC Complaint was filed first, regardless of the time at which Ms. Applegate paid the filing fee for the District Court Complaint. (Hearing Tr. 18:3-16; 18:17-19:15; 33:19-34-9.) Therefore, Ak-Chin prevails as a factual matter, even if the Court rejects the case law holding that a filing is not legally complete until payment of the filing fee.

The government further argues that Ms. Applegate's statement to Mr. Austin at 12:41 p.m. that "we have filed them" but that she "was waiting for the summons" demonstrates that the Ak-Chin District Court Complaint was filed by 12:41 p.m., as opposed to when Ms. Applegate later returned to the District Court to pay the filing fee. (Def. Brf. 8-9.) First, the government's argument is inherently flawed because it is based upon the unsound premise that Ms. Applegate's statement in her e-mail that she had "filed" the Complaints, even when she had not yet paid the filing fee for the Ak-Chin District Court Complaint, is legally dispositive of when the filing occurred.

Second, the government appears to be attempting to discredit Ms. Applegate's testimony that she made a second trip to the District Court to finish filing the Ak-Chin District Court



US2000 10461519.1

Complaint. That is, without even having raised the issue with Ms. Applegate on cross-examination during the October 24, 2007 evidentiary hearing, the government argues that Ms. Applegate's testimony that she went to the District Court twice to file the District Court Complaint is "unpersuasive" because, as of 12:41 p.m., on December 29, 2006, Ms. Applegate purportedly "did not express any uncertainty whatsoever about whether Plaintiff's Complaint was filed by that time." (Def. Brf. p. 9.) To the contrary, as evidenced by an e-mail produced to the government in discovery, Ms. Applegate knew that the Ak-Chin District Court filing was not yet complete because she also e-mailed Mr. Austin at 12:41 p.m. that: "We haven't completed them yet." *See* AKCHIN215, attached hereto as Exhibit F. This e-mail, as well as the contemporaneous e-mail Ms. Applegate sent to Mr. Austin at 12:41 p.m., is consistent with Ms. Applegate's testimony that she returned to the District Court to complete the filing of the Ak-Chin District Court Complaint, and during that trip, paid the cashier for filing the District Court Complaint. Her testimony also is supported by the cab receipts, docket listings, and Ak-Chin's Interrogatory Responses.

The government argues for the first time that Ms. Applegate made two trips to the District Court to file the District Court Complaints on behalf of Salt River and Passamaquoddy. The government fails to explain how this hypothetical impacts this Court's determination of which Complaint was filed first – the Ak-Chin CFC Complaint or the District Court Complaint. In any event, the argument completely disregards Ms. Applegate's testimony recounting the events of that day and the supporting evidence, in particular, the cab receipts demonstrating that Ms. Applegate made three trips to the District Court. (Hearing Tr. 34:10-37:12.)

### D. The April 23rd E-mails Are Consistent with Ms. Applegate's Testimony, Affidavit and Ak-Chin's Interrogatory Responses.

The government relies heavily upon an April 23, 2007 e-mail exchange between Ms. Applegate and Catherine Munson regarding the filings Ms. Applegate completed in Salt River and Passamaquoddy in an attempt to discredit Ms. Applegate's testimony regarding the Ak-Chin filings. (Def. Brf. 9-20.) The government's attempt to undermine Ms. Applegate's credibility with these e-mails fails for several reasons.

First, as Ms. Applegate explained during her testimony, the April 23rd e-mails did not address the filing of this action or the Ak-Chin District Court Complaint. (Hearing Tr. 70:11-71:22.) Rather, the question posed to Ms. Applegate was: "Do you know of a way to find out what time the SR and Passamaquoddy cases were filed in the CFC and DCt. on Dec. 29th?" Ms. Applegate's response to this question thus does not pertain to the filings of the Ak-Chin Complaints. Second, the government argues that Ms. Applegate cannot be believed regarding her testimony recounting the order of the filings because her e-mail says that "there is no precise way" to determine what time the Complaints were filed due to the fact that there were no time stamps on the Complaints. The government is confusing the issue of what time the Complaints were actually filed -- which Ms. Applegate explained in the e-mail and to the Court that she does not know, because the Complaints are not time-stamped -- and the relative sequence of filings -- which Ms. Applegate does know, and which is legally dispositive. Ms. Applegate's statement that the Complaints have no time-stamps is a fact which is not in dispute and in no way undermines her credibility. What Ms. Applegate remembers, and what matters, is which of the two Ak-Chin Complaints Ms. Applegate filed first.

The government also argues that Ms. Applegate's statement in the e-mail that she dropped off the District Court Complaint for filing, but does not know when the clerk filed it, is

significant in light of Ak-Chin's position that the filing of the Ak-Chin District Court Complaint occurred during Ms. Applegate's last trip to the District Court when she paid the filing fee. Ak-Chin has never contended, however, that Ms. Applegate knows when the clerk filed the Complaint. In fact, Ms. Applegate testified that she did not see the clerk file-stamp the District Court Complaint. (Hearing Tr. 46:1-8.) The government is confusing the factual issue of how Ms. Applegate completed the filing of the District Court Complaint with the issue of when the District Court Complaint was deemed filed as legal matter. Ms. Applegate's statement in the e-mail that she does not know when the clerk filed the Complaints does not contradict her recollection that she paid the filing fee during her last trip to the District Court or Ak-Chin's argument that the filing did not occur as a legal matter until Ms. Applegate paid that filing fee. In any event, Ms. Applegate remembers going to the Court of Federal Claims to file the Ak-Chin CFC Complaint prior to her first trip to the District Court to attempt to file the Ak-Chin District Court Complaint. (Hearing Tr. 18:3-6; 18:17-19:15; 33:19-34:9.) Thus, the fact that she states in the e-mail that she does not know when the District Court clerk filed the Ak-Chin District Court Complaint after she left it with the District Court is not relevant because it was necessarily after she had filed the Ak-Chin CFC Complaint.

Lastly, the government contends that the filings for the Salt River and Passamaquoddy CFC Complaints did not go as smoothly as Ms. Applegate had testified based on her statement in the April 23rd e-mail that she was "missing something" at the Court of Federal Claims. While Ms. Applegate initially recalled having to make a second trip to the Court of Federal Claims that day because she was "missing something" her first trip there, the reason Ms. Applegate was required to make a second trip to the Court of Federal Claims was because the Ak-Chin CFC Complaint was not ready when the other three Complaints were filed and it had to be delivered

for filing later that same morning. It also is significant that these e-mails reflect Ms. Applegate's response to Ms. Munson's question of how to determine what time the Complaints were filed, nearly four months after the filings. Ms. Applegate responded to Ms. Munson's inquiry within a matter of minutes and prior to having reviewed all the relevant contemporaneous evidence relating to the December 29th filings, which is what she did before she executed the Affidavit and testified on October 24, 2007. After having reviewed the relevant evidence, including the civil action numbers assigned to the District Court actions, Ms. Applegate's memory was refreshed and she was able to testify with certainty that the last Complaint she filed on December 29th was the Ak-Chin District Court Complaint, which necessarily means that she filed the Ak-Chin CFC Complaint prior to that filing.

### E. There Is No Evidence Disputing Ms. Applegate's Testimony Regarding the Timing of her Filing of the Ak-Chin CFC Complaint and her First Attempt to File the Ak-Chin District Court Complaint.

Despite having had the opportunity to put evidence into the record by cross-examining Ms. Applegate in Court regarding the time it took her to accomplish the filing of the Ak-Chin CFC Complaint and to make her first trip to the District Court to attempt to file the Ak-Chin District Court Complaint, government counsel chose not to question Ms. Applegate on this subject. Instead, in its Post-Hearing Brief, government counsel engages in rampant speculation about the time needed to accomplish each of these tasks. The government's recitation of the events occurring between 11:41 a.m. and 12:41 p.m. is not supported by any evidence and is based on nothing more than pure speculation. *See Loyal Tire & Auto Center, Inc. v. Town of Woodbury*, 445 F.3d 136, 147-48 (2d Cir. 2006) (finding that defendant's argument was not supported by record evidence and therefore was unpersuasive). That Ms. Applegate filed the Ak-Chin CFC Complaint between 11:41 a.m. and 12:41 p.m. is supported by Ms. Applegate's

sworn testimony and e-mails that she sent at the time she completed these tasks. There is nothing inherently or physically impossible about her having proceeded in that manner.

Lastly, the government continues to argue that Ak-Chin has "admitted" that the Ak-Chin District Court Complaint already was file-stamped when Ms. Applegate made her last trip to the District Court. (Def. Brf. 26.) To make its argument, the government points to Ak-Chin's Interrogatory Responses which state that Ms. Applegate retrieved a file-stamped copy of the District Court Complaint during her last trip to the District Court. In making this statement, Ak-Chin did not in any way acknowledge or concede that the clerk assigned the civil action number to the District Court action before Ms. Applegate returned to the District Court to complete the filing of the District Court Complaint. The government also points to a minor discrepancy between the Interrogatory Responses, which say that Ms. Applegate retrieved a file-stamped copy of the District Court Complaint before she paid the cashier, and Ms. Applegate's testimony that she received a file-stamped copy of the District Court Complaint after she paid the cashier. Ms. Applegate's testimony describing the filings corrected this minor error in the Interrogatory Responses. This discrepancy is of no consequence, in any event, because there is no dispute that Ms. Applegate paid the filing fee during this second trip, and as discussed above, the payment of a filing a fee is required for a filing to be complete. Ms. Applegate also testified that she filed the Complaint in the Court of Federal Claims before her first trip to the District Court to file the Ak-Chin District Court Complaint, and thus Ak-Chin's CFC Complaint was filed first, regardless of the time at which the filing of Ak-Chin's District Court Complaint was completed. (Hearing Tr. 18:3-16; 18:17-19:15; 33:19-34-9.)

**CONCLUSION**

For these reasons, the government's arguments do not controvert Ak-Chin's showing that the District Court action was not pending at the time Ak-Chin filed the CFC Complaint. Accordingly, for the reasons stated herein and in Ak-Chin's Opposition to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 and Plaintiff's Opening Post-Evidentiary Hearing Brief Opposing Defendant's Motion to Dismiss, Defendant's Motion to Dismiss should be denied.

This the 29th day of November, 2007.

Respectfully submitted,

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Ak-Chin Indian Community

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-09321 (ECH) |
| | ) | Judge Emily C. Hewitt |
| THE UNITED STATES, | ) | **Electronically filed on November 29, 2007** |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S POST-EVIDENTIARY HEARING BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Laura M.L. Maroldy, Esq.
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663

This 29th day of November, 2007.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005

Phone: (202) 508-5800
*Attorneys for Plaintiff*
The Ak-Chin Indian Community

***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***

***v.***

***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX EXHIBIT 15**

06-942

United States Court of Federal Claims
717 Madison Place, N.W.
Washington, DC 20005
(202) 357-6406

Name/Agency Kilpatrick Stockton

Address #426031

| Qty. | Fund | Price | Amount |
|---|---|---|---|
| | 085000 Attorney Admission Fee | | |
| | Mike | | 60.00 |
| | Judge Bush | | |
| | C. Millee (AAR) | | |
| | 510000 Fees for Judical Services | | 190.00 |
| | | | |
| | | | |

| Cash | Check | M.O. | OC | ML | TOTAL | 250.00 |
|---|---|---|---|---|---|---|
| | ✓ | | ✓ | | | |

Checks are accepted subject to collection and full credit will only be given when the check has been accepted by the financial institution on which it has been drawn.

| 065957 | Deputy Clerk Signature | Date |
|---|---|---|
| | Derek Will | 12/29/06 |

Reorder from A Plus Direct • 1-800-334-6329 • Item # AP-CRB-8/05

***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***
***v.***
***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX EXHIBIT 16**

United States Court of Federal Claims
717 Madison Place, N.W.
Washington, DC 20005
(202) 357-6406

Name/Agency Kilpatrick Stockton

Address #426030

| Qty. | Fund | Price | Amount |
|---|---|---|---|
| | 085000 Attorney Admission Fee | | |
| | 086900 Filing Fees | | 60 00 |
| | 322340 Sale of Publications | | |
| | 322350 Copy Fees | | |
| | Judge, Vern Baskir (Hon) | | 190 00 |
| Cash | Check ✓ | M.O. | OC ✓ | ML | TOTAL | 250 00 |

Checks are accepted subject to collection and full credit will only be given when the check has been accepted by the financial institution on which it has been drawn.

| | Deputy Clerk Signature | Date |
|---|---|---|
| 065958 | Derek Williams | 12/29/06 |

Reorder from A Plus Direct • 1-800-334-8329 • Item # AP-CRB-8/05

***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***
***v.***
***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX EXHIBIT 17**

**Applegate, Alexis**

From: Applegate, Alexis
Sent: Wednesday, January 03, 2007 5:21 PM
To: Harper, Keith
Subject: RE: Telephone Message

I don't think all of the notices have been sent yet... Can you forward me all of the e-notices that you got from the court and I will call in the morning. From the notices that Sandy could see on your email Ak-Chin got assigned to Hewitt, Passamaquoddy got assigned to Miller for ADR Pilot Proceeding (which I'm not sure what that means) and Bush for normal proceedings, TON was assigned to Allegra. My guess is that you have received more notices as the clerk went through all of the documents today... Just send them to me and we can get it figured out.

-----Original Message-----
From: Roy, Sandy
Sent: Wednesday, January 03, 2007 3:32 PM
To: Applegate, Alexis
Subject: FW: Telephone Message

Hi Alex - I am outta here at 4 today. Pls see para @ of K's email. I see stuff in his in-box

-----Original Message-----
From: Harper, Keith
Sent: Wednesday, January 03, 2007 3:30 PM
To: Roy, Sandy
Subject: Re: Telephone Message

ave we sent filed stamped copies of the complaint to all on the client tribes?

Can you check with Alexis if we have Judges assigned to our court of claims cases? Thanks. Also, can you check my in box, we received a whole slew of ECF material, do we have to respond to aany of that? Check with Alexis as well on that.

-----Original Message-----
From: Roy, Sandy
To: Harper, Keith
Sent: Wed Jan 03 15:25:43 2007
Subject: Telephone Message

Keith - if you feel like it, pls. call Kim Gottschalk at 303.447.8760. Told him you were attending meetings all day. I am leaving at 4 today.

<http://www.kilpatrickstockton.com/>

Sandra (Sandy) L. Roy
Assistant to Keith M. Harper and Justin M. Guilder Kilpatrick Stockton LLP Suite 900
607 14th Street, NW
Washington, DC 20005-2018
t 202 639 4705
f 202 508 5858

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is trictly limited to the recipient intended by the sender of this message. This ransmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or

attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 202 508 5800, and destroy the original transmission and its attachments without reading or saving in any manner.

***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***
***v.***
***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX EXHIBIT 18**

# Select A Case

| | | |
|---|---|---|
| 1:06-cv-02240-JR | PASSAMAQUODDY TRIBE OF MAINE v. KEMPTHORNE et al | filed 12/29/06 |
| 1:06-cv-02241-JR | SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY v. KEMPTHORNE et al | filed 12/29/06 |
| 1:06-cv-02242-JR | COEUR D' ALENE TRIBE v. KEMPTHORNE et al | filed 12/29/06 |
| 1:06-cv-02243-HHK | WEBB v. LAPPIN et al | filed 12/29/06 |
| 1:06-cv-02244-RJL | VERNER v. OFFICE OF PERSONNEL MANAGEMENT et al | filed 12/29/06 |
| 1:06-cv-02245-JR | AK-CHIN INDIAN COMMUNITY v. KEMPTHORNE et al | filed 12/29/06 |
| 1:06-cv-02246-CKK | GRIFFIN v. COASTAL INTERNATIONAL SECURITY INC. | filed 12/29/06 |
| 1:06-cv-02247-JR | SOKAOGON CHIPPEWA COMMUNITY v. KEMPTHORNE et al | filed 12/29/06 |
| 1:06-cv-02248-RWR | WATSON v. UNITED STATES DEPARTMENT OF JUSTICE | filed 12/29/06 |
| 1:06-cv-02249-JR | GILA RIVER INDIAN COMMUNITY v. KEMPTHORNE et al | filed 12/29/06 |
| 1:06-cv-02250-JR | NORTHERN CHEYENNE TRIBE OF INDIANS v. KEMPTHORNE et al | filed 12/29/06 |
| 1:06-cv-02251-RWR | MATERIA v. CHAO | filed 12/29/06 |

| | | | |
|---|---|---|---|
| 1:06-cv-02252-RJL | SWEENEY v. J.D. LONG MASONRY, INC. | filed 12/29/06 | |
| 1:06-cv-02253-RCL | PALIOTTO v. JOHNNY ROCKETS GROUP, INC. | filed 12/29/06 | |
| 1:06-cv-02254-JR | HAUDENOSAUNEE et al v. KEMPTHORNE et al | filed 12/29/06 | |
| 1:06-cv-02255-RMC | COLEMAN v. LAPPIN et al | filed 12/29/06 | |
| 1:06-cv-02256-RJL | WILLS v. SMITH | filed 12/29/06 | |
| 1:06-cv-02257-CKK | HARRIS v. GOINS | filed 12/29/06 | |
| 1:06-cv-02258-RMU | HARLEY v. U.S. PAROLE COMMISSION | filed 12/29/06 | |
| 1:06-cv-02259-UNA | STAMPS v. SECRETARY OF TREASURY | filed 12/29/06 | closed 12/29/06 |
| 1:06-cv-02260-RWR | BEYNUM v. CLAY et al | filed 12/29/06 | |
| 1:06-cv-02261-RWR | RUFFIN v. DEPARTMENT OF YOUTH REHABILITATION SERVICES et al | filed 12/29/06 | closed 04/13/07 |
| 1:06-cv-02262-RJL | WILSON-GREENE v. DEPARTMENT OF YOUTH REHABILITATION SERVICES et al | filed 12/29/06 | |
| 1:06-cv-02263-RWR | CRUZ-PACKER v. DEPARTMENT OF YOUTH REHABILITATION SERVICES et al | filed 12/29/06 | |
| 1:06-cv-02264-GK | DAVIS v. DEPARTMENT OF YOUTH REHABILITATION SERVICES et al | filed 12/29/06 | closed 03/22/07 |

| | | |
|---|---|---|
| 1:06-cv-02265-RMU | CARVAJAL v. DRUG ENFORCEMENT AGENCY et al | filed 12/29/06 |
| 1:06-cv-02266-HHK | WILLIAMS FUND PRIVATE EQUITY GROUP, INC. v. ENGEL | filed 12/29/06 |
| 1:06-cv-02267-RMU | ROY et al v. GOVERNMENT OF THE DISTRICT OF COLUMBIA | filed 12/29/06 |
| 1:06-cv-02268-JDB | BEAIRD et al v. GONZALES et al | filed 12/29/06 |
| 1:06-cv-02269-ESH | FALCK et al v. INTERNAL REVENUE SERVICE et al | filed 12/29/06 |
| 1:06-mc-00566-CKK | HUSSEIN | filed 12/29/06 |
| 1:07-mc-00010-GK | MUHAMMAD v. CIA AGENT et al. | filed 12/29/06 |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 05/11/2007 18:58:21 | | | |
| **PACER Login:** | | **Client Code:** | |
| **Description:** | Search | **Search Criteria:** | Filed From: 12/29/2006 Filed To: 12/29/2006 |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***
***v.***
***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX EXHIBIT 19**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Harold Beynum**<br>**1216 Missouri Ave., NW**<br>**Apt 1**<br>**Washington, DC 20001**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**J.A. Clay**<br>**Fifth District Station**<br>**1805 Bladensburg Rd., NE**<br>**Washington, DC 20002**<br>**and**<br><br>**D.C. Metropolitan Police Dept.**<br>**Fifth District Station**<br>**1805 Bladensburg Rd., NE**<br>**Washington, DC 20002**<br><br>**and**<br><br>**District of Columbia**<br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **Civil Action No.:** ____________ |

RECEIVED
U.S. DISTRICT COURT
2006 DEC 29 PM 5:53
MAYER-WHITTINGTON

**NOTICE OF REMOVAL**

The D.C. Metropolitan Police Department and the District of Columbia, are defendants in the case Beynum v. J.A. Clay *et al.*, Civil Action No. 06-8267, now pending in the Superior Court of the District of Columbia. Pursuant to 28 U.S.C. §§1441 and 1446, these defendants remove the above action from the Superior Court of the District of Columbia to this Honorable Court because the claims raised in plaintiff's complaint present federal questions appropriate for this Court.

Causes of action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" are removable without regard to the citizenship or residence of the parties. See 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1446, parties have 30 days after the receipt of the complaint, through service or otherwise, to file its removal of an action to the Untied States District Court. The herein named defendants received a copy of the Summons and Complaint on or about December 8, 2006. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders received by undersigned counsel in this matter are attached hereto and incorporated by reference herein.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 724-7854; (202) 727-6295
leah.taylor@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this day of December 2006, a copy of the foregoing Notice of Removal was mailed, postage prepaid to:

**Harold Beynum**
**1216 Missouri Ave., NW**
**Apt 1**
**Washington, DC 20001**

Lauren Pisano, Esq.
481 N. Frederick Avenue
#300
Gaithersburg, MD 20877

Leah Brownlee Taylor
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**Janice P. Ruffin**
**7710 Klovstad Drive**
**Ft. Washington, D.C. 20744**

**Plaintiff,**

**v.**

**Department of Youth**
**Rehabilitation Services**
**Youth Services Center**
**1000 Mt. Olivet Road, N.E.**
**Washington, D.C. 20002**

**Vincent Schiraldi, Director**
**10000 Mt. Olivet Road, N.E.**
**Washington, D.C. 20002**

**David Brown, Deputy Director,**
**8300 Riverton Court**
**Laurel, Maryland 20724**

**Mark Schindler, Chielf of Staff**
**8300 Riverton Court**
**Laurel, Maryland 20724**

**LaVern Evans, Superintendent**
**8300 Riverton Court**
**Laurel, Maryland 20724**

**Dexter Dunbar, Deputy Superintendent**
**of Treatment**
**8300 Riverton Court**
**Laurel, Maryland 20724**

**D.J. Thomas, Deputy Superintendent**
**of Operations**
**8300 Riverton Court**
**Laurel, Maryland 20724**

**Civil Action No.:** ____________

| | |
|---|---|
| **Fitzgerald Fant, Human Resources** | ) |
| **Manager** | ) |
| **/EEO Officer** | ) |
| **8300 Riverton Court** | ) |
| **Laurel, Maryland 20724** | ) |
| | ) |
| **Cathy Ohler, Human Resources Specialist** | ) |
| **Representative** | ) |
| **8300 Riverton Court** | ) |
| **Laurel, Maryland 20724** | ) |
| | ) |
| **Pili Robinson, Senior Consultant to the** | ) |
| **Department of Youth Rehabilitation** | ) |
| **The Missouri Youth Service Institute** | ) |
| **1906 Hayselton, Drive** | ) |
| **Jefferson City, MO 65109** | ) |
| **Defendants.** | ) |
| | ) |

**NOTICE OF REMOVAL**

The Department of Youth Rehabilitation Services, Vincent Schiraldi, David Brown, Mark Schindler, LaVern Evans, Dexter Dunbar, D.J. Thomas, Fitzgerald Fant, and Cathy Ohler are defendants in the case Janice Ruffin *v. District of Columbia, et al.*, Civil Action No. 06-8637, now pending in the Superior Court of the District of Columbia. Pursuant to 28 U.S.C. §§1441 and 1446, these defendants remove the above action from the Superior Court of the District of Columbia to this Honorable Court because the claims raised in plaintiff's complaint present federal questions appropriate for this Court.

Causes of action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" are removable without regard to the citizenship or residence of the parties. See 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1446, parties have 30 days after the receipt of the complaint, through service or otherwise, to file its removal of an action to the Untied States District Court. The herein named defendants received a copy

of the Summons and Complaint on or about December 11, 2006. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders received by undersigned counsel in this matter are attached hereto and incorporated by reference herein.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/ Leticia L. Valdes
LETICIA L. VALDES [0461327]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 442-9845; (202) 727-6295
Leticia.Valdes@dc.gov; leah.taylor@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December 2006, a copy of the foregoing Notice of Removal was mailed, postage prepaid to:

**Janice P. Ruffin**
**7710 Klovstad Drive**
**Ft. Washington, D.C. 20744**

**Andrew T. Wise, Esq.**
**Miller & Chevalier Chartered**
**655 15th Street, NW**
**Suite 900**
**Washington, Dc 2005**

Leticia L. Valdes
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Monika Wilson-Greene,**<br>**17007 Village Drive West**<br>**Upper Marlboro, Maryland**<br>**Plaintiff,**<br><br>**v.**<br><br>**Department of Youth Rehabilitation Services**<br>**Youth Services Center**<br>**1000 Mt. Olivet Road, N.E.**<br>**Washington, D.C. 20002**<br><br>**Vincent Schiraldi, Director**<br>**10000 Mt. Olivet Road, N.E.**<br>**Washington, D.C. 20002**<br><br>**David Brown, Deputy Director,**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724**<br><br>**Mark Schindler, Chief of Staff**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724**<br><br>**LaVern Evans, Superintendent**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724**<br><br>**Dexter Dunbar, Deputy Superintendent of Treatment**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724**<br><br>**D.J. Thomas, Deputy Superintendent of Operations**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724** | **Civil Action No.: _________________** |

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
2007 DEC 27 PM 5:52
NANCY M. MAYER-WHITTINGTON
CLERK

**Cathy Ohler, Human Resources Specialist)**
**Representative** )
**8300 Riverton Court** )
**Laurel, Maryland 20724** )
)
**Pili Robinson, Senior Consultant to the** )
**Department of Youth Rehabilitation** )
**The Missouri Youth Service Institute** )
**1906 Hayselton, Drive** )
**Jefferson City, MO 65109** )
**Defendants.** )
)

**NOTICE OF REMOVAL**

The Department of Youth Rehabilitation Services, Vincent Schiraldi, David Brown, Mark Schindler, LaVern Evans, Dexter Dunbar, D.J. Thomas, and Cathy Ohler are defendants in the case *Monika Wilson-Greene v. District of Columbia, et al.*, Civil Action No. 06-8420, now pending in the Superior Court of the District of Columbia. Pursuant to 28 U.S.C. §§1441 and 1446, these defendants remove the above action from the Superior Court of the District of Columbia to this Honorable Court because the claims raised in plaintiff's complaint present federal questions appropriate for this Court.

Causes of action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" are removable without regard to the citizenship or residence of the parties. See 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1446, parties have 30 days after the receipt of the complaint, through service or otherwise, to file its removal of an action to the Untied States District Court. The herein named defendants received a copy of the Summons and Complaint on or about December 13, 2006. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders received by undersigned counsel in this matter are attached hereto and incorporated by reference herein.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ Patricia A. Jones
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/ Leticia L. Valdes
LETICIA L. VALDES [0461327]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 442-9845; (202) 727-6295
Leticia.Valdes@dc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of December 2006, a copy of the foregoing Notice of Removal was mailed, postage prepaid to:

**Monika Wilson-Greene,**
**17007 Village Drive West**
**Upper Marlboro, Maryland**

**Andrew T. Wise, Esq.**
**Miller & Chevalier Chartered**
**655 15th Street, NW**
**Suite 900**
**Washington, Dc 2005**

Leticia L. Valdes
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Linda Cruz-Packer**<br>**4800 Megan Drive**<br>**Clinton, Maryland 20735**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Department of Youth Rehabilitation Services**<br>**Youth Services Center**<br>**1000 Mt. Olivet Road, N.E.**<br>**Washington, D.C. 20002**<br><br>**Vincent Schiraldi, Director**<br>**1000 Mt. Olivet Road, N.E.**<br>**Washington, D.C. 20002**<br><br>**David Brown, Deputy Director,**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724**<br><br>**Mark Schindler, Chief of Staff**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724**<br><br>**LaVern Evans, Superintendent**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724**<br><br>**Pili Robinson, Senior Consultant to the**<br>**Department of Youth Rehabilitation**<br>**The Missouri Youth Service Institute**<br>**1906 Hayselton, Drive**<br>**Jefferson City, MO 65109**<br><br>**Fitzgerald Fant, Human Resources Manager**<br>**/EEO Officer**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724** | ) | **Civil Action No.: ________________** |

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA
2006 DEC 29 PM 5:51
NANCY M. MAYER-WHITTINGTON
CLERK

**D.J. Thomas, Deputy Superintendent** )
**of Operations** )
**8300 Riverton Court** )
**Laurel, Maryland 20724** )

**Dexter Dunbar, Deputy Superintendent** )
**of Treatment** )
**8300 Riverton Court** )
**Laurel, Maryland 20724** )
)
)
**Defendants.** )
)

## NOTICE OF REMOVAL

The Department of Youth Rehabilitation Services, Vincent Schiraldi, David Brown, Mark Schindler, LaVern Evans, Dexter Dunbar, D.J. Thomas and Fitzgerald Fant, are defendants in the case Linda Cruz-Packer *v. District of Columbia, et al.*, Civil Action No. 06-8419, now pending in the Superior Court of the District of Columbia. Pursuant to 28 U.S.C. §§1441 and 1446, these defendants remove the above action from the Superior Court of the District of Columbia to this Honorable Court because the claims raised in plaintiff's complaint present federal questions appropriate for this Court.

Causes of action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" are removable without regard to the citizenship or residence of the parties. See 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1446, parties have 30 days after the receipt of the complaint, through service or otherwise, to file its removal of an action to the Untied States District Court. The herein named defendants received a copy of the Summons and Complaint on or about December 4, 2006. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders received by undersigned counsel in this matter are attached hereto and incorporated by reference herein.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 724-7854; (202) 727-6295
leah.taylor@dc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December 2006, a copy of the foregoing Notice of Removal was mailed, postage prepaid to:

**Linda Cruz-Packer**
**4800 Megan Drive**
**Clinton, Maryland 20735**

**Pili Robinson**
**Andrew T. Wise, Esq.**
**Miller & Chevalier Chartered**
**655 15th Street NW**
**Suite 900**
**Washington, DC 20005**

Leah Brownlee Taylor
Assistant Attorney General

RECEIVED
U.S. DISTRICT COURT
2006 DEC 27 AM 5:50
NANCY M. MAYER-WHITTINGTON
CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **Henry Davis**<br>**8001 Boundry Drive**<br>**Forestville, Maryland 20747** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **Department of Youth**<br>**Rehabilitation Services**<br>**Youth Services Center**<br>**1000 Mt. Olivet Road, N.E.**<br>**Washington, D.C. 20002** | ) | |
| **Vincent Schiraldi, Director**<br>**10000 Mt. Olivet Road, N.E.**<br>**Washington, D.C. 20002** | ) | **Civil Action No.: ____________** |
| **David Brown, Deputy Director,**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724** | ) | |
| **Mark Schindler, Chief of Staff**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724** | ) | |
| **LaVern Evans, Superintendent**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724** | ) | |
| **D.J. Thomas, Deputy Superintendent**<br>**of Operations**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724** | ) | |
| **Cathy Ohler, Human Resources Specialist**<br>**Representative**<br>**8300 Riverton Court**<br>**Laurel, Maryland 20724** | ) | |

**Pili Robinson, Senior Consultant to the )**
**Department of Youth Rehabilitation )**
**The Missouri Youth Service Institute )**
**1906 Hayselton, Drive )**
**Jefferson City, MO 65109 )**
**Defendants. )**
**______________________________ )**

## NOTICE OF REMOVAL

The Department of Youth Rehabilitation Services, Vincent Schiraldi, David Brown, Mark Schindler, LaVern Evans, D.J. Thomas, and Cathy Ohler are defendants in the case *Henry Davis v. Department of Youth Rehabilitation Services, et al.*, Civil Action No. 06-8581, now pending in the Superior Court of the District of Columbia. Pursuant to 28 U.S.C. §§1441 and 1446, these defendants remove the above action from the Superior Court of the District of Columbia to this Honorable Court because the claims raised in plaintiff's complaint present federal questions appropriate for this Court.

Causes of action "founded on a claim or right arising under the Constitution, treaties or laws of the United States" are removable without regard to the citizenship or residence of the parties. See 28 U.S.C. § 1441(b). Pursuant to 28 U.S.C. § 1446, parties have 30 days after the receipt of the complaint, through service or otherwise, to file its removal of an action to the Untied States District Court. The herein named defendants received a copy of the Summons and Complaint on or about December 4, 2006. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders received by undersigned counsel in this matter are attached hereto and incorporated by reference herein.

Respectfully submitted,

EUGENE A. ADAMS
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/
PATRICIA A. JONES [428132]
Chief, General Litigation, Section IV

/s/
LEAH BROWNLEE TAYLOR [488966]
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-7854; (202) 724-7854; (202) 727-6295
leah.taylor@dc.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29 day of December 2006, a copy of the foregoing Notice of Removal was mailed, postage prepaid to:

**Henry Davis**
**8001 Boundry Drive**
**Forestville, Maryland 20747**

**Pili Robinson**
**Andrew T. Wise, Esq.**
**Miller & Chevalier Chartered**
**655 15th Street NW**
**Suite 900**
**Washington, DC 20005**

Leah Brownlee Taylor
Assistant Attorney General

***SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY***
***v.***
***THE UNITED STATES OF AMERICA***

**CASE NO. 06-943L**

**APPENDIX EXHIBIT 20**

FILED
DEC 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
DISTRICT OF COLUMBIA CIRCUIT

MONROE L. COLEMAN
Reg. No. #01723-016
USP Terre Haute
P.O. Box 12015
Terre Haute, IN 47801

Plaintiff,

vs.

HARLEY LAPPINS, Director
Bureau of Prisons
Dept. of Justice
320 First Street, N.W.
Washington, D.C. 20530

and

ELIZABETH HERMAN, Supervisor
Office of Bar Counsel
Building B, Room 228
409 "E" Street, N.W.
Washington, D.C. 2001

Defendant.

and

FREEDOM OF INFORMATION ACT OFFICE
950 Penn. Avenue, N.W.
Washington, D.C. 20001

Defendant.

CASE NUMBER 1:06CV02255

JUDGE: Rosemary M. Collyer

DECK TYPE: FOIA/Privacy Act

DATE STAMP: 12/29/2006

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

RECEIVED
DEC 11 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## JURISDICTION

I Monroe L. Coleman, pro se, submits this action under the Freedom of Information Act, Title 5 U.S.C. §552, to order the defendants to produce certain records for inspection and copying, viz., Investigaating Report(s) submitted on or against former

Bureau of Prisons officer/employee Mrs. Kimberly Moore during her tenure at United States Penitentiary Big Sandy, located in Inez, Kentucky regardless if the reports concern the undersign which the undersign did file a "sexual harassment" aginst Kimberly Moore but any and all investigations that pertained to Mrs. Kimberly Moore while working for the Bureau of Prisons regarding her wrongful acts and those acts that led to her being terminated from working for the Bureau of Prisons. This request for information included: investigating report(s) as well as self written report(s), response(s), or/and the reason(s) for terminating Mrs. Kimberly Moore from her job as an employee of the Bureau of Prisons, and (2) any and all report(s) filed and/or investigation report(s), materials, data, grievance(s), disciplinary report written and filed by Mrs. KImberly Moore against the undersign as well as investigation done on Mrs. Kimberly by Bureau of Prisons staff/officer or employee(s).

The undersign requested information on or pertaining to Attorney, Michael Lasley, and former Attorney Natalie M. Combs. Each worked or handled the undersigned Criminal Case in the D.C. Superior Court in Criminal Case No. F-1258-85. The undersign requested any and all information regarding their education, employement status, pay, whether grievance(s) were filed by them or against them as they worked in their individual and official capacities, whether they have been under investigation(s). This Court has jurisdiction over this action pursuant to Title 5 U.S.C. Sec. 552a (4); Title 28 U.S.C. Sec. 1361; and the First

and Fifth Amendments.

1) Plaintiff is Monore L. Coleman, a District of Columbia prisoner, housed in United States Penitentiary Terre Haute, Terre Haute, IN 47801, but prior to the transfer to this housing he was housed in United States Penitentiary Big Sandy located in Inez, Kentucky. While housed in that prison he witnessed Mrs. Kimberly Moore participate or indulged on several occasions with another staff member other than her husband in violation of several Bureau of Prisons Procedures, policies, or regulations in Section 3420.09. Because of this undersign witnessing these wrongful or inappropriate acts committed by Mrs Kimberly Moore she was determined to harass, use continuous fonding of plaintiff body, or determined to desist plaintiff's Unicor employment. Thereafter, Mrs Kimberly Moore was involved in other wrongful and improper acts that led to her being placed under another investigation (which plaintiff filed sexual harassment complaint on Mrs Kimberly Moore) for violating Bureau of Prisons procedure Section 3420.09 based on involvement with inmate(s) other than her husband. It also should be noted that Mrs Kimberly Moore inappropriate actions or plaintiff's allegations were not taken seriously because it related to a white male staff or Bureau of Prisons employee, but immediately upon noticing, learning, or discovering that she was involving herself with inmate(s) and it is believed that one was black then the Bureau of Prisons placed her under an investigation which led to her termination. See Attachments filed by Plaintiff.

2) Attorney Michael Lasley was counsel for plaintiff in his

Criminal Case (F-1258-85) in the District of Columbia Superior Court. Plaintiff filed numerous pro se motions and made known to the above court counsel's ineffectiveness as well as in plaintiff's Criminal Drug Case (F-5575-83) that there was a conflict of interest between counsel and plaintiff.

The requested material and/or information plaintiff sought from the Freedom Of Information Agency Act 552a concerned relevant material or information that may be helpful to prove plaintiff's alleged allegations that Michael Lasley was ineffective in representing plaintiff in accord with the principle of the Sixth Amendment.

3) Former United States Attorney Natalie M. Combs resided over the Criminal Case No. F-1258-85, as the prosecutor. Ms. Combs had several witnesses or so-called victims who were in the same cellblock and living in the same unit at the D.C. Detention Center at the same time plaintiff was present. Plaintiff is trying to show illegal confrontations and show-ups committed by former attorney Combs which Lasley refused and denied to challenge her misconduct, along with Ms Natalie M. Combs making arrangement by giving or issuing a grand jury subpoena to one of the so-called victim Walter Gray who was a witness unable to identify plaintiff until Gray was wrongfully told to come to the office of the United States Attorney or Assistant United States Attorney office on the day which plaintiff was standing before another judge on a different matter than Criminal Case No. F-1258-85, where Gray entered that courtroom then proceeded to the location of Ms Combs stating "that's him, that's the person that robbed me."

Therefore, the information and material under the Freedom of Information is required to support wrongful acts or misbehavior committed by former prosecutor Ms Natalie M. Combs that led to this illegal detention of plaintiff.

4) Defendants are Harley Lappins, Director of the Bureau of Prisons; Elizabeth Herman, Supervisor of Office of Bar Counsel; and John/Jane Doe of Office of Freedom of Information Act, Director.

These agencies of the Executive Branch which has custody and control of the requested records; Defendant Harley Lappins is head of the D.C. Bureau of Prisons as Director; he is sued in his official capacity as custodian of the requested records, and as head of the agency wherein the requested records are located;

Elizabeth Herman, Office of Bar Counsel, is Supervisor.

These agencies of the Executive Branch which has custody and control of the requested records; Defendant Elizabeth Herman is head of the D.C. Office of Bar Counsel; she is sued in her official capacity as custodian of the requested records, and as head of the agency wherein the requested records are located;

John/Jane Doe, Office of the Freedom of Information Act, is Director.

These agencies of the Executive Branch which has custody and control of the requested records; Defendant John/Jane Doe is head of the Office of the Freedom of Information Act; he/she is sued in his/her official capacity as custodian of the requested records, and as head of the agency wherein the requested records are located.

Also, included in the requested Freedom of Information Act was regarding: Sandy McDuffie, Charles Pitts, and Mark Gaddus, along with Walter Gray. These were former prosecutor Natalie M. Combs witnesses or victims who were confined in the same cell-block at the same time on numerous occasions with plaintiff. The requested information, data, records, material, and dates are of importance in plaintiff presenting his claim before the United States District Court in the Sixth Circuit.

Respectfully submitted,

Monroe L. Coleman, pro se
Reg. No. #01723-016
USP Terre Haute
P.O. Box 12015
Terre Haute, IN 47801

CERTIFICATE OF SERVICE

I, Monroe L. Coleman, pro se, states that a true copy of the foregoing motion has been mailed to the named defendants on this 24th day of August, 2006.

Harley Lappins, Director
Bureau of Prisons
Dept. of Justice
320 First Street, N.W.
Washington, D.C. 20001

Elizabeth Herman, Supervisor
Office of Bar Counsel
Bldg. B, Room 228
409 "E" St., N.W.
Washington, D.C. 20001

Freedom of Information Act, Director/Supervisor
950 Penn. Avenue, N.W., Washington, D.C. 20001

Respectfully submitted,

Monroe L. Coleman, pro se

USP Terre Haute, #01723-016
P.O. Box 12015
Terre Haute, IN 47801

Rev. 7/06
CO Hab Corp
AO 241 amd.

FILED

DEC 2 9 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANTHONY L. WILLS
NAME (Under which you were convicted)

DCDC # 219-128
PRISON NUMBER

D.C. JAIL
PLACE OF CONFINEMENT/ADDRESS
1901 D. St. S.E.
WASHINGTON, D.C. 20003

ANTHONY L. WILLS )
(Full Name) Petitioner )

v. )

WARDEN WILLIAM J. SMITH )
(Name of Warden, Superintendent, Jailor, or authorized person having custody of petitioner) )
Respondent )

CASE NUMBER 1:06CV02256
JUDGE: Richard J. Leon
DECK TYPE: Habeas Corpus/2255
DATE STAMP: 12/[redacted]/2006 (29)

**PETITION FOR WRIT OF HABEAS CORPUS**
**BY A PERSON IN CUSTODY IN THE DISTRICT OF COLUMBIA**

**INSTRUCTIONS - PLEASE READ CAREFULLY**

1. This petition must be legibly handwritten or typed, and signed by the petitioner. Any false statement of material fact may serve as the basis for prosecution and conviction for perjury. All questions must be answered concisely in the proper space on the form.

3. Additional pages are not permitted except with respect to the facts which you rely upon to support your grounds for relief. No citation of authorities need be furnished. If briefs or arguments are submitted, they should be submitted in the form of a separate memorandum.

4. Upon receipt, your petition will be filed if it is in proper order and is accompanied by a $5.00 filing fee. Your check or money order should be made payable to: Clerk, U.S. District Court.

RECEIVED

DEC 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

5. If you cannot afford to pay the filing fee, you may request permission to proceed in forma pauperis, in which event you must execute the affidavit on the last page, setting forth information establishing your inability to pay the costs. If you wish to proceed in forma pauperis, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account in the institution.

6. Only sentences imposed by one court may be challenged in a single petition. If you seek to challenge sentences entered by different courts, you must file separate petitions as to each court.

7. When you have completed the form, send the original and one copy to:
   Clerk, United States District Court for the District of Columbia
   Room 1225
   333 Constitution Avenue, NW
   Washington, DC 20001

9. Petitions which do not conform to these instructions may be returned with a notation as to the deficiency.

**PETITION**

1. (a) Name and location of court which imposed the sentence (or detention) of conviction you are challenging: Superior Court for the District of Columbia

2. (a) Date of the sentence (or detention): January 5th, 1990

3. Length of sentence: 2 to 6 years and 20 months to 5 years

4. Nature of offense involved (all counts): Distribution of Heroin and Distribution of Cocaine.

5. (a) What was your plea? (Check one):
   - ☐ Not guilty
   - ☑ Guilty
   - ☐ Nolo Contendere (no contest)
   - ☐ Insanity

(b) If you entered a guilty plea to one count or charge, and a not guilty plea to another count or charge, give details: ______

6. Have you previously filed any petitions, applications, or motions with respect to this sentence in any court?
- ☐ Yes
- ☑ No

7. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of Court: ______
(2) Nature of the proceedings: ______
(3) Grounds raised: ______
(4) Did you receive an evidentiary hearing on your petition, application or motion?
- ☐ Yes
- ☑ No

(5) Result: ______
(6) Date of result: ______

(b) As to any second petition, application, or motion, give the same information:
(1) Name of Court: ______
(2) Nature of the proceedings: ______
(3) Grounds raised: ______
(4) Did you receive an evidentiary hearing on your petition, application or motion?
- ☐ Yes
- ☑ No

(5) Result: ______

(6) Date of result: ______

(c) As to any third petition, application, or motion, give the same information:

(1) Name of Court: ______

(2) Nature of the proceedings: ______

(3) Grounds raised: ______

(4) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes

☑ No

(5) Result: ______

(6) Date of result: ______

(d) Did you appeal to the highest court having jurisdiction for the result of action taken in any petition, application or motion?

(1) First petition, etc."

☐ Yes

☑ No

(2) Second petition, etc.:

☐ Yes

☑ No

(3) Third petition, etc.:

☐ Yes

☑ No

(e) If you did not appeal from the adverse action on any petition, application, or motion, explain briefly why you did not: I HAD NEVER KNOWN FROM THE BEGINNING THAT PAROLE WAS AN UNCONSTITIONAL PROVISION OF THE LAW, WHICH SHOULDN'T HAD BEEN "DELEGATED" TO AN EXECUTIVE BRANCH AND TRIAL COUNSEL SHOULD HAD CONTESTED THIS ABOVE ISSUE DURING THE SENTENCING HEARING.

8. State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

A. GROUND ONE:

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: MR. WILLS had plead Guilty to a "MisdEMEANOR" CHARGE iN THE SuperioR CouRT AND THE Judge had SENTENCEd MR. WiLLS to AN 100 days iN THE Custody OF THE ATTORNEY GENERAL. THE U.S. PAROLE COMMISSION has Lodged a deTAINER AGAINST MR. WiLLS THAT wiLL PREVENT him FROM BEING RELEASE from prison, ONCE THE ABOVE SENTENCE wiLL ExpiRE.

B. GROUND TWO:

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: MR. WiLLS ORiGiNAL SENTENCE has been "REVOKEd" by THE U.S. PAROLE COMMiSSION THREE (3) TiMES iN THE PAST, Had SERVEd APPROXiMATEd 38 MONTHS iN PRISON UNdER THE JuRisdiction OF PAROLE BOARD AND Had been dePRiVEd OF 5 YEARS OF STREET TiME CREdiTS. THE U.S. PAROLE COMMISSION SEEKS to ViOLATE MR. WiLLS FOR "NEW" CRiMiNAL CONduCT AND OTHER adMiNiSTRATiVE CHARGES AT a FUTURE REVOCATiON HEARiNG.

C. GROUND THREE:

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: MR. WiLLS SENTENCE Had ExpiRed as OF JANUARY 5, 2001, due to THE DEPARTMENT OF CORRECTION had aggREGATEd MR. WiLLS SENTENCE, as being UNLAWFULLY RAN CONSECUTiVE by PRISON OFFiCiALS. MR. WiLLS iS VERY AWARE THAT PAROLE WAS ONCE AbOLiSH by THE SupREME CouRT iN THE YEAR OF 1992.

D. GROUND FOUR:

(a) Supporting FACTS (Do not argue or cite law. Just state the specific facts that support your claim: MR. WILLS JUDGMENT AND COMMITMENT ORDER CONFIRM THAT HIS PAROLE TERM HAS BEEN "DELEGATED." TO A PAROLE COMMISSION, IN VIOLATION OF THE SEPARATION OF POWER DOCTRINE. FURTHERMORE, MR. WILLS SENTENCING JUDGE HAS NEVER ISSUE A JUDICIAL SUMMON OR ARREST WARRANT FOR MR. WILLS TO APPEAR IN HIS COURTROOM ON A PROBABLE CAUSE HEARING OR SHOW CAUSE HEARING, TO MAKE ANY FACT-FINDING ON A PAROLE VIOLATION AT ALL. THE LODGED DETAINER IS BEING "PROTECT" AS FRIVOLOUSLY APPLIED TO MR. WILLS.

"SEE ATTACHED MEMORANDUM AND AUTHORITY OF LAWS!"

9. If any of the grounds listed in 12A, B, C, or D were not previously presented in any other court, District of Columbia or Federal, state briefly what grounds were not so presented, and give your reasons for not presenting them: ALL ISSUES RAISE IN THIS CASE, WAS NEVER PRESENTED IN ANY OTHER COURT, BECAUSE MR. WILLS' IS NOW BEING ADVISED BY INMATE COUNSEL OF HIS CONSTITUTIONAL RIGHTS BEING VIOLATED BY THE U.S. PAROLE COMMISSION.

10. Do you have any petition or appeal pending in any other court, either, District of Columbia or Federal, as to the sentence (or detention) under attack?

☐ Yes
☑ No

(a) If so, give the name and location of the court and case number, if known: ____________

11. Do you have any future sentence to serve after you complete the sentence (or detention) under attack?

☑ Yes
☐ No

(a) If so, give name and location of court which imposed sentence to be served in the future: I AM PRESENTLY SERVING A 100 DAYS SENTENCE FOR THE SUPERIOR COURT RIGHT NOW.

(b) And give date and length of sentence to be served in future: ____________________

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

☐ Yes
☑ No

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

Anthony Bell
Petitioner's Signature

11-27-2006
Date

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**333 Constitution Avenue, N.W.**
**Washington, DC 20002**

**Anthony L. Wills DCDC 219-128**
**DC Department of Corrections DC Jail**

**Petitioner,**

**V.** **Civil Action No._______**

**Warden William J. Smith**
**D.C. Department Of Correction**
**1901 D Street SE**
**Washington, DC 20003, Respondent**

**U.S. Parole Commission, ET.AL.,**
**5550 Friendship Boulevard**
**Chevy Chase, Md. 20815-7286**

**MEMORANDUM AND AUTHORITY OF LAWS**
**IN SUPPORT OF PETITIONER'S WRIT OF HABEAS CORPUS**

The Petitioner now challenge the Constitutionality of The Parole Commission's authority having jurisdiction over his "Post Supervision Release Term" and the power to revoke his sentence again. The criminal procedure rule No. 32.1 grants authority to Magistrate Judge to hold a "Probable Cause Hearing" on D.C. Code Offenders and not parole officials. Regardless of Mr. Wills violating any condition of parole, his sentencing Judge will not take any further action against him.

**JURISDICTION**

**Jurisdiction is conferred upon this Honorable Court pursuit to Title 28 U.S.C. Section 2241 and 2243. As well as Title 18 U.S.C. § 1201.**

**FACTS OF THIS CASE**

06 2255

**Prior to the year of 1990, Mr. Wills received a sentence of 2 to 6 years for Distribution of Heroin and 20 months to 5 years for Distribution of Cocaine, which both**

FILED
DEC 2 9 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**sentences was imposed on January 5th, 1990 by a Superior Court Judge.**

**The Department of Correction had Improperly Aggregate Mr. Wills sentence to run "consecutive" and which had amount to a Full Term sentence of 11 years. This above sentence had "expired" as of January 5th, 2001. Prison officials had the wrong interpretation for a sentence to be ran consecutive. The date the Judge pronounce the sentence, both sentences must run "concurrent" with each other, not to be Aggregate. See U.S. v. Estrada, 680F.Supp 1312.**

**The Parole Commission has now taken the position to "Re-sentence" Mr. Wills to a 14 month prison term during the year of 2003, than revoked Mr. Wills parole term for another 12 moths and now forcing Mr. Wills to serve another prison term of 12 months. As of today, Mr. Wills has been "deprived" of approximately 5 years of "street time credits" by the U.S. Parole Commission and His State Sentence has been Revoked again.**

**The Parole Commission now holds Mr. Wills in custody for Administrative charges/sanctions for (a) Use of Dangerous and Habit Forming Drugs, (b) violation of special condition (Drug Aftercare) and ©) catching a new Theft 1 charge, that was Dismissed on July 14, 2006. Under Federal Law, Mr. Wills was only required to submit to only three(3) Drug Tests, before a violation can occur. See U.S. v. Menlendez-Santana, 353 F.3d.____.**

## ARGUMENTS

**The Burden of Proof is on the Government to Show cause that the Parole Commission has Not acted in capacity of an Article III Judges.**

**The Power to sentence a State or Federal Prisoner has always been invested in the hands of an Article III Judge and not The Parole Commission, see Zakari v. Reno, ___F.**

**Supp. 2d___ (E.D.VA.1999).**

**The Fourth Circuit Court Judges was squarely faced with the same above issue that "whether a Non-Judicial officer can set the Full Term of restitution and the Final Resolution of a person's sentence" "The Answer was NO". See U.S. v. Johnson, 48 F.3d** 806, 807-08 (4th cir.1995).

**In the Case at Bar, Congress had impermissibly granted "Judicial Power" to the Parole Commission to Re-Lock-Up D.C. Code Offenders,** Hold Revocation Hearings, **revoke a person's sentence, take street time credits,** convert Post Supervision into Jail Time Status, Set The Full Term Of Drug Testing, place Parolee in Drug Treatment Programs and Make the final resolution on someone's sentence. See D.C. Code 24-131, 24-406, 24-205 **and 24-133.**

**The Petition now challenge the U.S. Parole Commission's authority to "Revoke" his sentence, taken of street time credits and to willfully hold him in custody under the Attorney General, as well as Apply Parole Guidelines to his sentence. The power to revoke a sentence, always was vested in the hands of a sentencing Judge. See D.C. Code section 24-109 and D.C. Code 11-923 (authority to resolve cases and controversy). The D.C. Circuit Judges had already dealt with the situation where probation officials "continue" a Judges Court Order. See Taylor v. U.S. Probation Office, ET.AL. Appeal No. 03-5170, decided June 3, 2005.**

**Judge Gladys Keesler in this same Court-House, was squarely faced with the issue of whether a probation officer can "extend" a defendant's supervised release date beyond his "maximum" sentence. That answer was proving as being NO. See U.S. v. Taylor, criminal no. 97-0035, decided on February 4th, 2005.**

**The Fourth Circuit Judges was also squarely faced with the same above issue, in which, a defendant prison term and supervised release term cannot fall beyond his maximum sentence at all, because it violates the defendants substantial rights, under the Criminal Rule No. 11. See U.S. V. Throne, 153F.3d130.**

For this cause, the U.S. Parole Commission must cease taking a person "street time credits" and release all parolees whom sentence has already expired.

Furthermore, the provision of a Parole Board was unconstitutional in the beginning and should "Phase-Out".

It is well settled under Federal Law, that Parole has been declared "Abolished" by the Supreme Court Justice Judges and a District Court Judge in the year of 1992 and 1988. See U.S. v Mistretta, 488 U.S. 361, and U.S. v. Estrada, 680 F. Supp.1312, 1338.

**Congress had no Judicial or Legislative duty to over-turn the above Supreme Court's set precedent, by signing a "Bill" to have "extended" the Parole Commission authority further, to function in capacity as an Article III Judge. Parole Officials are an "Executive-Official" without Judicial Power and they are "Un-License - Judges" to hold anybody in jail.**

**For the above cause, there has been an "Encroachment " on the Judicial Branch and an intent violation of the separation of Power and Unusual Punishment", in violation of his 8th Amendment Rights.**

**After Mr. Wills serving his 100 days sentence on the misdemeanor charge, the lodged detainer will prevent him from being release and a parole hearing will take place. Mr. Wills remain in jail without an Official Judgment and Commitment Order, signed by his sentencing Judge. A prisoner cannot be put in jail without a court order, unless his court**

order clearly states that "the defendant is place in the custody of the "Attorney General". A Parole Commission's "Notice of Action" cannot be "Substitute" for a Judgment and Commitment Order at all.

The facts remains that, Parole Officials have strictly Limited power to make a "Recommendation Report" to a sentencing Judge only and have no power to "Revoke" a parolee sentence at all. A Magistrate Judge can only make a recommendation report himself. In this case, the Parole Commission has acted as a Prosecutor, Jury and Judge.

## CONCLUSION

The Petitioner Respectfully requests that This Honorable Court will rule on Congress "Delegation of Power" Facts and Vacate the petitioner's Parole sentence, as expediently require by Justice.

Respectfully Submitted

[signature]

Mr. Anthony Wills #219-128
D.C. Jail
1901 D Street, SE
Washington, DC 20003

Executed on the 27 day of

November, 2006

cc: Counsel for record

FILED
DEC 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

To: UNITED STATE DISTRICT COURT FOR THE DISTICT OF COLUMBIA

Dwight Harris
Arlington County Detention Facility
1435 North Courthouse Road
Arlington, Va. 22201

Vs

Alvin Goins Jr.
13401 Doncaster Lane
Sivler Spring, Md. 20904

CASE NUMBER 1:06CV02257
JUDGE: Colleen Kollar-Kotelly
DECK TYPE: Pro se General Civil
29
DATE STAMP: 12/[redacted]/2006

## Civil Complaint

This civil complaint is solely against Mr. Alvin Goins Jr. for breach of promise in two matters, one the agreement to sale me the dwelling of 4923 New Hampshire Ave. N.W. Washington D.C. 20011 and/ or two, the refusal to pay me for my services in remodeling and restoring of the condemned dwelling at 4923 New Hampshire Ave. N.W. Washington, D.C. 20011, in the year of 2004.

My complaint is as follow to this most honorable court:

In the month of March of the year 2004, while renting a condo unit from Mr. Alvin Goins Jr. in S.E. Washington, D.C. I was asked by Ms. Lucy Price , my mother who manages a number of housing projects for Mr. Alvin Goins Jr. if I would be interested in restoring the condemned property that Mr. Alvin Goins Jr. owned at 4923 New Hampshire Ave. N.W. Washington, D.C. The property was listed condemned by the Housing and Fire Department Authorities of the District of Columbia , because of a electrical fire that took place inside the property.

RECEIVED
NOV 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Ms. Lucy Price stated that Ms. Goins Jr. would rent me the property once I restored the dwelling and that Ms. Goins Jr. agreed that all money (s) invested towards the restorations from my remodeling services would be deducted from my rent or be paid to me after the completion of the job. Ms. Lucy Price, wouldn't allow me to do any restoration or remodeling to the dwelling without Mr. Alvin Goins Jr. approval at 4923 New Hampshire Ave. N.W. Washington, DC.

After the completion of restoring the dwelling at 4923 New Hampshire Ave, N.W. Washington, D.C. for occupancy Mr. Alvin Goins Jr. met me at the above said dwelling to discuss the terms of payment for my services and an agreement of me renting the house at that time Mr. Alving Goins Jr. was more submissive to selling me the property and asked me if I would be interested in buying the property of 4923 New Hampshire Ave. N.W. Washington, D.C., he also stated in this proposal that that all money (s) I've invested in restoring the house would go towards the purchase of the house and he also stated that all rent money paid to him would go towards the purchase of the house ( He stated the reason why he was selling me the house was because he liked me and that I deserved having my own house) I agreed to the above terms and he stated that he would write me a contract of sale of the property once he had straighten out a small matter concerning the property, which he did not state to me what the matters were but assured me that I was actually buying the property. (That same month I started paying Mr. Goins Jr. his rent with the option to buy) Unfortunately I was arrested and confined to the Department of Corrections, shortly there after and never received a written contract from Mr. Alvin Goins Jr. as he stated originally.

Ms. Lucy Price , while managing Mr. Goins Jr. business and properties and being very familiar with his business and the condition stated above , she continued to pay Mr. Goins Jr. on my behalf for the last two and a half years while I've been incarcerated with an overall impression that all rent money(s) were to go towards the purchase of buying the houseat 4923 New Hampshire Ave. N.W. Washington, D.C. as originally stated by Mr. Goins Jr. in 2004.

During my incarceration I have on a number of occasions tried to get Mr. Goins Jr. to comply with our original agreement in year 2004 , by writing me out a sales contract but to no avail. Ms. Lucy Price, have tried numerous time but to no avail, she even had a legal for sale contract written up but Mr. Alvin Goins Jr. refuced to sign the contract. Thereafter, Mr. Alvin Goins Jr., recognized that his problems of claiming to sale me the property was not simply going to go away so inturn he present a what I believed to be an * ilegal and unfinished memorandum of sales contract for the dwelling of 4923 New Hampshire Ave. N.W. Washington, D.C. dated July 6, 2006 , knowingly and acknowledging his agreement to selling me the above property.

**( I truly believe Mr. Goins Jr. who claimed to have a license Real Estate Broker Firm, true intention from the start knowing my lack of knowledge in Real Estate sales was to cunningly and fraudulently manipulate me and using my mother influence for his own self gratification to profit from my services and the money(s) I've paid him rent that were to go towards the purchase of the property. I believe he gave willingly false information on his ability to sale the house to me located at 4923 New Hampshire, Ave. N.W. Washington, D.C. as the rightful owner in 2004 I believe this will be revealed if this case goes to trial or in the discovery of evidence . )**

I mailed registered letter to Mr. Alvin Goins Jr. , on two separate occasions 9-28-06 and 10-16-06, to resolve the matter above before it became a civil matter that this court have to address but to no avail , he has refused once again to resolve this matter at hand. In good faith I also proposed to Mr. Goins , to pay me just for my services in restoring and remodeling the the dwelling at 4923 New Hampshire Ave, N.W. Washington, D.C. , along with the money(s) I have paid Mr. Goins for the past two and a half years , I didn't include the money that have been spent on work that needed to me done to the house since I've been incarcerated but he has again refused to reach an agreement with me. Mr. Alvin Goins Jr. believes that he do not have to stand my his word and agreement Because of my present disposition of being incarcerated . He also believes that I am not entitled to be compensated for my remodeling and restoration services.

I have suffer a great deal trying to come to terms with Mr. Goins Jr., physically and mentally , thinking of how I've been taken advantage of as a human being by this mischievous , fraudulent and cunning real estate broker .

I have experience an extreme amount of unwanted stress, anxiety and insomnia .

I have receipts, witnesses and documentation that's beyond reproach that I will present to this most honorable court supporting my civil complaint and to prove to this court that Mr. Goins original intentions was most likely to only profit through his hidden agenda of deception , trickery and dishonesty .

**I ASK THIS MOST HONORABLE COURT,** to order Mr. Alvin Goins Jr. to stand by his agreement of selling me the house at 4923 New Hampshire Ave. N.W. Washington, D.C. and that all money(s) both from paying rent with the option to buy while I've been incarcerated for the past two and a half , and along with the money(s) I initially invested in restoring and remodeling the house for livable occupancy.

In good faith to this most honorable court I am willing to settle this before it reaches the

trial stages , but if Mr. Alvin Goins Jr. continue to deny the fact of our agreements concerning both my remodeling services and investments, I motion this court to approve a jury trial and I am suing Mr. Alvin Goins Jr. if this case goes to trail in lieu of $ 500,000,00 **OR MORE,** for declarative, specific and compensatory damages.

**I RESPECTFULLY SUBMIT THIS CIVIL COMPLAINT TO THIS MOST HONORABLE COURT.**

**Mr. Dwight V. Harris**
**Arlington County detention Facility**
**1435 North Courthouse Rd.**
**Arlington, Va. 22201**

FILED
DEC 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARVEY R. HARLEY #185-026
DC Jail
1901 D St. S.E.
Washington, DC 20003
PETITIONER

U.S. PAROLE COMMISSION
RESPONDANT

CASE NUMBER 1:06CV02258
JUDGE: Ricardo M. Urbina
DECK TYPE: Habeas Corpus/2255
DATE STAMP: 12/29/2006

"EMERGENCY WRIT OF HEBEAS CORPUS"

COMES NOW PETITIONER, HARVEY R. HARLEY, PRO-SE, REQUESTING THIS HONORABLE COURT TO VACATE/DISMISS THE PAROLE VIOLATOR WARRANT ISSUED BY THE U.S. PAROLE COMMISSION, DATED MAY 15, 2006, TO DISMISS/VACATE THE RESULTS OF THE ILLEGAL "PROBABLE CAUSE HEARING" HELD JULY 28, 2006, AND TO VACATE/DISMISS THE RESULTS OF THE ILLEGAL "PAROLE REVOCATION HEARING" HELD ON SEPTEMBER 14, 2006, AS BOTH HEARINGS WERE DONE IN VIOLATION OF PETITIONERS CONSTITUTIONAL RIGHT OF DUE PROCESS OF THE LAW, AS MANDATED BY STATUTORY LAW AT 28 C.F.R. 2.101(A). PETITIONER REQUEST THIS HONORABLE COURT TO VACATE THE WARRANT, AND ORDER

RECEIVED
OCT 1 3 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

PETITIONER'S IMMEDIATE RELEASE FROM CUSTODY; AND TO ORDER PETITIONER'S IMMEDIATE REINSTATEMENT TO PAROLE.

## "ARGUEMENTS"

TITTLE 28.CFR 2.101(A), SPECIFICALLY MANDATES, AS A MATTER OF LAW, THAT PETITIONER HAS A STATUTORY RIGHT, UNDER DUE PROCESS OF THE LAW, TO BE SEEN BY THE U.S. PAROLE COMMISSION, OR ITS DESIGNATED EXAMINER, WITHIN 5-DAYS OF BEING TAKEN/ARRESTED ON PAROLE VIOLATOR WARRANT, AND TO HAVE HIS "FINAL REVOCATION HEARING" WITHIN 65-DAYS OF THE ARREST ON VIOLATOR WARRANT. (SEE EXHIBIT A) THE STATUTE IS CLEAR AND IT'S MEANING, UNDENIABLE. THE "TIME LIMITS" IMPOSED BY THIS MANDATE ARE NOT "OPTIONAL", NOR IS IT "DISCRETIONARY", BUT IS, AS A MATTER OF LAW, "MANDATORY". THE U.S. PAROLE COMMISSION IS "BOUND BY STATUTORY LAW", AND IT'S FAILURE TO COMPLY OR IGNORE THE LAW, IS UN-ACCEPTABLE, AND DENIES PETITIONER HIS RIGHT TO DUE PROCESS OF THE LAW. PETITIONER STATES THAT, FAILURE BY THE U.S. PAROLE COMMISSION TO HAVE HIS "PROBABLE CAUSE" HEARING, AS WELL AS THE "REVOCATION HEARING", WITHIN THE TIME CONSTRAINTS MANDATED AT 28 CFR 2.101(A), ARE IN FACT GROUNDS FOR THIS COURT TO DISMISS THE "WARRANT", AND ANY ILLEGAL HEARINGS AND THE RESULTS FROM THOSE HEARINGS, DATED JULY 28, 2006, AND SEPTEMBER 14, 2006, SHOULD ALSO BE DISMISSED/VOIDED AS THE HEARINGS WERE NOT LEGALY DONE WITHIN THE TIME LIMITS IMPOSED BY 28 CFR 2.101(A).

PETITIONER STATES THAT HE IS NOT REQUIRED TO SHOW "PREJUDICE", [BY 28 C.F.R. 101(A) (PAGE 173 U.S. PAROLE GUIDELINES AND RULES MANUAL - 2005) OR BY IT'S ACCOMPANING "NOTES AND PROCEDURES" AT 28 CFR 2.214-01 THRU 28 CFR 2.214-05] AS A RESULT OF NOT HAVING THE STATUTORILY MANDATED "PROBABLE CAUSE HEARING" WITHIN THE 5-DAY LIMITATION - JUNE 20, 2006 (EXCLUDING SATURDAY AND SUNDAY). FOR COMPARISON SEE 28 CFR 2.215-01 (A):

"IN CASES WHERE THE 90-DAY TIME LIMIT HAS NOT BEEN OBSERVED, THE EXAMINER SHOULD ASCERTAIN FROM THE RELEASEE, WHAT, IF ANY, PREJUDICE HAS BEEN CAUSED BY THE DELAY."

NEITHER, 28 CFR 2.101(A), NOR IT'S ACCOMPANING "NOTES AND PROCEDURES AT, 28 CFR 2.214-01 THRU 2.214-05, REQUIRE A SHOWING OF "PREJUDICE", AS 28 CFR 2.101(A) IS MANDATED AS STATUTORY LAW, AND MUST BE ADHERED TO. COMPARE TO U.S. RULES OF FEDERAL PROCEDURE, GOVERNING TIME LIMITS. IF A PARTY FAILS TO RESPOND WITHIN THE TIME LIMITS, HIS PETITION IS DISMISSED, WITHOUT A SHOWING OF GOOD CAUSE FOR NOT COMPLYING. IN THE INSTANT PETITION THERE IS NO REQUIREMENT TO SHOW PREJUDICE, AND THE U.S. PAROLE COMMISSION LOST AUTHORITY TO PROCEED WITH PROCEEDINGS, AS OF JUNE 20, 2006.

PETITIONER WAS ARRESTED ON THE PAROLE VIOLATOR WARRANT ON JUNE 13, 2006, (SEE EXIBIT B). PETITIONER WAS HELD AT "ALEXANDRIA ADULT DETENTION CENTER", WHICH IS IN THE "WASHINGTON METROPOLITAN D.C. AREA", AND DOES HAVE BOTH

"PROBABLE CAUSE HEARINGS" AND "REVOCATION HEARINGS" FOR D.C. PRISONERS, AS STATED IN 28 CFR 2.101(A). THE U.S. PAROLE COMMISSION WAS REQUIRED BY LAW TO CONDUCT THE PETITIONER'S "PROBABLE CAUSE HEARING" NO LATER THAN JUNE 20, 2006, AND HAVE PETITIONERS "REVOCATION HEARING" NO LATER THAN AUGUST 17, 2006, AS PER 28 CFR 2.101(A), OR DROP THE WARRANT AND RELEASE PETITIONER. PETITIONER WAS NOT AFFORDED HIS DUE PROCESS RIGHT TO A "PROBABLE CAUSE HEARING" WITHIN 5-DAYS, AND DID NOT HAVE HIS REVOCATION HEARING BY AUGUST 17, 2006, AS MANDATED BY 28 CFR 2.101(A). BEING IN THIS POSITION, THE ILLEGAL HEARINGS OF JULY 28, 2006 AND SEPTEMBER 14, 2006, WERE, AS A MATTER OF LAW, "ILLEGALLY CONDUCTED", AS THE "WARRANT" THEY WERE PREDICATED UPON WAS NO LONGER VALID, AS OF JUNE 21, 2006. PETITIONER OBJECTED TO BOTH HEARINGS TO THE PAROLE EXAMINERS, BUT TO NO AVAIL, BOTH EXAMINERS IGNORED MY OBJECTIONS. PAROLE EXAMINER OTIS THOMAS ALSO IGNORED MS. MONA ASINER, PUBLIC DEFENDER SERVICE, OBJECTIONS FOR SAME REASONS, AT THE ILLEGAL REVOCATION HEARING ON SEPTEMBER 14, 2006.

PETITIONER WROTE THE U.S. PAROLE COMMISSION ON AUGUST 28, 2006, TO PUT THEM ON "NOTICE" TO THE OBJECTIONS OF THE PROBABLE CAUSE HEARING OF JULY 28, 2006, AS WELL AS THE UPCOMING SEPTEMBER 14, 2006 REVOCATION HEARING. THE U.S. PAROLE COMMISSION FAILED TO ADDRESS THE ISSUES OR CORRECT THE PROBLEMS. THEY SIMPLY IGNORED PETITIONERS LETTER, AS THEY FEEL THEY AREN'T "ANSWERABLE TO ANYONE", AND CARRY ON AS THEY ARE "ABOVE THE LAW NOT GOVERNED BY THE

LAW. THIS COURT IS FULLY AWARE OF THE U.S. PAROLE COMM.'S ARROGANCE OF THE LAW, AND it's TIME THAT THIS AGENCY BE HELD ACCOUNTABLE TO THE LAWS WHICH GOVERN THEM.

"CONCLUSIONS"

PETITIONER CLAIMS THAT THE U.S. PAROLE COMMISSION'S FAILURE TO ABIDE BY THE STATUTORY LAW 28 C.F.R. 2.101(A), TO HAVE PETITIONER'S "PROBABLE CAUSE HEARING" WITHIN 5-DAYS OF JUNE 13, 2006, AS WELL AS THE "FINAL REVOCATION HEARING" BY AUGUST 17, 2006, RENDERS THE "PAROLE VIOLATOR WARRANT DATED MAY 15, 2006", INVALID, AND ANY HEARINGS PREDICATED UPON THAT WARRANT, ALSO INVALID.

"REMEDY"

PETITIONER BEGS THIS COURT TO ISSUE AN ORDER

1.) DISMISSAL OF PAROLE VIOLATOR WARRANT DATED MAY 15, 2006, W/PREJUDICE, DUE TO WARRANT VIOLATING PETITIONER'S RIGHT TO DUE PROCESS OF THE LAW;

2.) ORDER, PETITIONERS IMMEDIATE RELEASE FROM CUSTODY;

3.) ORDER, PETITIONERS IMMEDIATE REINSTATEMENT TO PAROLE AT SAME LEVEL OF SUPERVISION PRIOR TO MARCH 12, 2006.

SO, ORDERED.

DATE SUBMITTED:
OCTOBER 16, 2006

RESPECTFULLY SUBMITTED,

Harvey R. Harley #185-026
D.C. JAIL
1901 D ST S.E.
WASHINGTON, D.C.
20003

EXHIBIT A'

TITTLE 28 CFRs 2.101(A)

## § 2.101 PROBABLE CAUSE HEARING AND DETERMINATION.

(a) *Hearing*. A parolee who is retaken and held in custody in the District of Columbia on a warrant issued by the Commission, and who has not been convicted of a new crime, shall be given a probable cause hearing by an examiner of the Commission no later than five days from the date of such retaking. A parolee who is retaken and held in custody outside the District of Columbia, but within the Washington, D.C. metropolitan area, and who has not been convicted of a new crime, shall be given a probable cause hearing by an examiner of the Commission within five days of the parolee's arrival at a facility where probable cause hearings are conducted. The purpose of a probable cause hearing is to determine whether there is probable cause to believe that the parolee has violated parole as charged, and if so, whether a local or institutional revocation hearing should be conducted. If the examiner finds probable cause, the examiner shall schedule a final revocation hearing to be held within 65 days of such parolee's arrest.

June 13, 2006 – Aug. 17, 06

(b) *Notice and opportunity to postpone hearing*. Prior to the commencement of each docket of the probable cause hearings in the District of Columbia, a list of the parolees who are scheduled for probable cause hearings, together with a copy of the warrant application for each parolee, shall be sent to the D.C. Public Defender Service. At or before the probable cause hearing, the parolee (or the parolee's attorney) may submit a written request that the hearing be postponed for any period up to thirty days, and the Commission shall ordinarily grant such requests. Prior to the commencement of the probable cause hearing, the examiner shall advise the parolee that the parolee may accept representation by the attorney from the D.C. Public Defender Service who is assigned to that docket, waive the assistance of an attorney at the probable cause hearing, or have the probable cause hearing postponed in order to obtain another attorney and/or witnesses on his behalf. In addition, the parolee may request the Commission to require the attendance of adverse witnesses (*i.e.*, witnesses who have given information upon which revocation may be based) at a postponed probable cause hearing. Such adverse witnesses may be required to attend either a postponed probable cause hearing, or a combined postponed probable cause and local revocation hearing, provided the parolee meets the requirements of § 2.102(a) for a local revocation hearing. The parolee shall also be given notice of the time and place of any postponed probable cause hearing.

(c) *Review of the charges*. At the beginning of the probable cause hearing, the examiner shall ascertain that the notice required by § 2.99(b) has been given to the parolee. The examiner shall then review the violation charges with the parolee and shall apprise the parolee of the evidence that has been submitted in support of the charges. The examiner shall ascertain whether the parolee admits or denies each charge listed on the warrant application (or other notice of charges), and shall offer the parolee an opportunity to rebut or explain the allegations contained in the evidence giving rise to each charge. The examiner shall also receive the statements of any witnesses and documentary evidence that may be presented by the parolee. At a postponed probable cause hearing, the examiner shall also permit the parolee to confront and cross-examine any adverse witnesses in attendance, unless good cause is found for not allowing confrontation. Whenever a probable cause hearing is postponed to secure the appearance of adverse witnesses, the Commission will ordinarily order a combined probable cause and local revocation hearing as provided in paragraph (i) of this section.

(d) *Probable cause determination*. At the conclusion of the probable cause hearing, the examiner shall determine whether probable cause exists to believe that the parolee has violated parole as charged, and shall so inform the parolee. The examiner shall then take either of the following actions:

(1) If the examiner determines that no probable cause exists for any violation charge, the examiner shall order that the parolee be released from the custody of the warrant and either reinstated to parole, or discharged from supervision if the parolee's sentence has expired.

June 13th – Aug. 17th

(2) If the hearing examiner determines that probable cause exists on any violation charge, and the parolee has requested (and is eligible for) a local revocation hearing in the District of Columbia as provided by § 2:102(a), the examiner shall schedule a local revocation hearing for a date that is within 65 days of the parolee's arrest. After the probable cause hearing, the parolee (or the parolee's attorney) may submit a written request for a postponement. Such postponements will normally be granted if the request is received no later than fifteen days before the date of the revocation hearing. A request for a postponement that is received by the Commission less than fifteen days before the scheduled date of the revocation hearing will be granted only for a compelling reason. The parolee (or the parolee's attorney) may also



FILED
DEC 29 2006
06 2258 NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

EXHIBIT B

## WARRANT For Return Of Prisoner Released To Supervision

Name: Harley, Harvey
Reg. No. 36805-118

Institution: D.C. CCM
DCDC No. 185-026

### UNITED STATES MARSHAL'S RETURN TO UNITED STATES PAROLE COMMISSION

NOTE: Do not execute this warrant if the subject is being held in custody on other federal, state or local charges, unless otherwise ordered by the Commission. (See instructions on accompanying memorandum.)

EASTERN DISTRICT District of VIRGINIA ss:

Received this writ the 9TH day of JUNE, 20 06, and executed same by arresting the within-named HARLEY HARVEY

* this 13TH day of JUNE, 20 06, at U.S. DISTRICT CT. and committing him to ALEXANDRIA ADULT DET. CENTER.

JOHN HACKMAN ACTING U.S. MARSHAL
U.S. Marshal

[signature]
Deputy Marshal

Further executed same by committing him to DC JAIL

* at 5pm on July 26, 20 06 the institution designated by the Attorney General, with the copy of the warrant and warrant application.

George [signature]
U.S. Marshal

William [signature]
Deputy Marshal

NOTE: The original of this warrant is to be returned to the U.S. Parole Commission, 5550 Friendship Boulevard, Chevy Chase, Maryland 20815.

**ACKNOWLEDGEMENT OF SERVICE:**

I have received a copy of the warrant application dated MAY 15 2006

Harvey L. Harley
Prisoner's Signature

6-13-06
Date

*(If prisoner refuses to sign, Marshal should so indicate.)*

06 2258

FILED
DEC 29 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

** TOTAL PAGE.26 **

L 27 2006 07:57 FR U S MARSHALS SERVICE 2023071936 TO 913014925908 P.21/26