IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| THE SALT RIVER PIMA-<br>MARICOPA INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br><br><br>THE UNITED STATES,<br><br>Defendant. | Case No. 06-943L (LMB)<br><br>**(Electronically Filed February 28, 2008)** |

**<u>DEFENDANT'S POST-EVIDENTIARY HEARING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS BROUGHT PURSUANT TO 28 U.S.C. § 1500</u>**

RONALD J. TENPAS
ASSISTANT ATTORNEY GENERAL

Kevin J. Larsen
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: (202) 305-0258
Fax: (202) 353-2021

Attorneys for Defendant

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . iii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. The Documentary Evidence Admitted at the Evidentiary Hearing Demonstrates that the District Court Complaint was Filed Prior to the CFC Complaint on December 29. . . . . . . . . . . 7

1. The District Court action was just the second case filed by *any party* in the District Court on December 29, 2006 . . . . . . . . . . . . . 8

2. The CFC Complaint was still in draft form on the morning of December 29, 2006. . . . . . . 9

3. Filing receipts issued by the CFC Clerk's Office suggest that the CFC Complaint was filed *after* 11:41 a.m. on December 29. . . . . 10

B. Plaintiff's "Multiple-Trip" Theory for its December 29, 2006 Filings in the CFC is a Transparent Attempt to Conform the Facts of this Case to Plaintiff's *Post-hoc* Interpretation of 28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . . 16

1. Ms. Applegate's "multiple trip" theory was devised in rebuttal to the Government's argument that all of the CFC complaints had to have been filed together sometime after 11:41 a.m. . . . . . . . . . . . . . . . . 17

2. At the October 24, 2007 evidentiary hearing before the Honorable Emily C. Hewitt in the

*Ak-Chin* case, the Plaintiff argued that Ms. Applegate's April 23, 2007 e-mail had Nothing to do with the *Ak-Chin* case . . . . . . 19

3. In a November 29, 2007 post-evidentiary hearing brief filed in the *Ak-Chin* CFC case, the Plaintiff changed its story yet again and argued that the April 2007 e-mail in fact *does* pertain to the *Ak-Chin* CFC Complaint. . . . . 21

4. At the evidentiary hearing before this Court on December 10, 2007 Ms. Applegate testified as to yet *another* interpretation of the April 23, 2007 e-mail. . . . . . . . . . . . . . . . . . . . . 22

5. The Plaintiff's explanation as to the April 2007 e-mail has come *full-circle* . . . . . . . . . . . 23

6. The Plaintiff's "multiple-trip" theory does not comport with the totality of the evidence in this case . . . . . . . . . . . . . . . . . . . . 24

C. Ms. Applegate Disavows her Prior Testimony Regarding Receiving Filing Receipts . . . . . . . . 32

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . 37

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ak-Chin Indian Community v. United States,* 2008 WL 241275 (Fed. Cl.) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Breneman v. United States,* 57 Fed. Cl. 571 (2003) . . . . . . . . 5, 15,

*Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Tohono O'odham Nation v. United States,* 79 Fed. Cl. 645 (2007) . 7

*UNR Indus. v. United States,* 962 F.2d 1013 (Fed. Cir. 1992) . . . 5

## PENDING CASES

*Ak-Chin Indian Community v. United States,* No. 06-932L (Ct. Cl. Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . 2, 26

*Passamaquoddy Tribe of Maine v. Kempthorne,* No. 06-cv-942L (Ct. Cl. Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . 2

*Salt River Pima-Maricopa Indian Community v. Kempthorne, et. al.,* No. 06-cv-02241-JR (D.D.C. Dec. 29, 2006) . . . . . . . . . . 1

*Tohono O'odham Nation v. United States,* No. 06-cv-944L (Ct. Cl. Dec. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . 2

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1500 . . . . . . . . . . . . . . . . . . . . . . . . *passim*

RCFC 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-<br>MARICOPA INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br><br><br>THE UNITED STATES,<br><br>Defendant. | ) | Case No. 06-943L (LMB)<br><br>**(Electronically Filed February 28, 2008)** |

**DEFENDANT'S POST-EVIDENTIARY HEARING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS BROUGHT PURSUANT TO 28 U.S.C. § 1500**

**INTRODUCTION**

The Defendant filed its Motion to Dismiss ("Def's Mot.") (Docket No. 18) in this case pursuant to 28 U.S.C. § 1500 on August 23, 2007 alleging that this Court lacks subject matter jurisdiction over the Plaintiff's cause of action because the Plaintiff's litigation now pending in the United States District Court for the District of Columbia (*Salt River Pima-Maricopa Indian Community v. Dirk Kempthorne, et. al.*, No. 06-cv-02241-JR) (the "District Court Action") asserts the same claims and seeks the same relief against the United States based on the same operative facts. (*See generally*

Docket. No. 18). Since then, the parties have fully briefed the relevant factual and legal issues, and on December 10, 2007 they participated in an evidentiary hearing wherein the Plaintiff's principal witness, Ms. Alexis Applegate, a paralegal employed by the Kilpatrick Stockton, L.L.P. ("Kilpatrick Stockton") law firm testified regarding her recollection pertaining to the order of filing of the Plaintiff's complaints in both the District Court Action and the United States Court of Federal Claims ("CFC") on December 29, 2006.[1/]

Ms. Applegate's testimony before this Court on December 10, 2007 was not the only occasion on which she testified regarding the events surrounding the filing of the Plaintiff's Complaints. In fact, Ms. Applegate's employer, Kilpatrick Stockton, also represents Tribal Plaintiffs in two other matters presently pending before this Court which are the subject of similarly-situated motions to dismiss pursuant to 28 U.S.C. § 1500.[2/] In its

---

1/ Unless otherwise indicated, the exhibits relied upon by the Defendant ("Def's Exh.") herein are those exhibits that were provided to the Court and admitted into evidence at the December 10, 2007 Evidentiary Hearing.

2/ Kilpatrick Stockton also represents Tribal plaintiffs in *Ak-Chin Indian Community v. United States*, No. 06-cv-00932-ECH, *Passamaquoddy Tribe of Maine v. United States*, No. 06-cv-00942-LJB and the *Tohono O' Odham Nation v. United States*, No. 06-cv-00944-EGB (dismissed pursuant to 28 U.S.C. § 1500 on December 19, 2007). Ms. Applegate testified before the Hon. Emily C. Hewitt in the *Ak-Chin* matter on October 24, 2007 and before the Hon. Lynn J. Bush on February 1, 2008.

Supplemental Brief Opposing Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 ("Plf's. Supp. Opp. Brf.") (Docket No. 44), Plaintiff argues that Ms. Applegate's testimony in each of these cases was "unequivocal" (Plf's Supp. Opp. Brf. at 2), and that it was "convincing, candid, appropriately detailed, and corroborated by other evidence in the record." *Id.* at 2. The Plaintiff urges this Court to view Ms. Applegate's testimony through its own rose-colored, and very distorted prism. In reality, Ms. Applegate's testimony in each of the three instances, is marred with inconsistency. In fact, in recognition thereof, the Plaintiff has treated successive evidentiary hearings as an additional opportunity to *re-direct* Ms. Applegate's previously-elicited and inconsistent testimony.[3/]

The documents which comprise the factual record in this case, many of which were produced by the Plaintiff in discovery (e-mails, photocopies of filing receipts, and civil docket reports for both the United States District

---

[3/] On February 14, 2008, the Plaintiff filed a motion seeking to supplement the factual record ("Plf's Motion to Supp. Record") (Docket No. 43) in this case with the hearing transcript from the *Passamaquoddy* evidentiary hearing before the Hon. Lynn J. Bush on February 1, 2008. (Docket. No. 43). While Plaintiff urges this Court to adopt Ms. Applegate's *Passamaquoddy* testimony because it "expands the information previously presented to this Court . . . at the December 10, 2007 hearing" (Plf's Motion to Supp. Record at 2), in actuality, Plaintiff Motion is little more than a transparent attempt to rehabilitate Ms. Applegate's inconsistent testimony and to repair her tarnished credibility.

Court and the Court of Federal Claims) provide this Court with the best and most-accurate glimpse of the series of events that occurred on December 29, 2006 when the Plaintiff's complaints in the District Court Action and in the CFC were filed. These documents speak for themselves and need not be scrutinized for the presence of motive, opportunity and bias that oftentimes affect live witness testimony. These documents clearly suggest that the Plaintiff's District Court Action was pending when the Complaint was filed in this Court on December 29, 2006.

Moreover, it is evident and *undisputed* that Plaintiff's counsel at the Kilpatrick Stockton law firm, when they initiated these actions on the Plaintiff's behalf, were wholly unaware of 28 U.S.C. § 1500, including its applicability to this case. *See* Plf's Brief in Response to Defendant's Motion to Dismiss ("Plf's Opp. Brf.") (Docket No. 19) at 6. Curiously, however, the sequence by which Plaintiff asserts that Ms. Applegate filed the seven complaints in this Court and in the District Court on December 29, 2006 raises questions about whether such a sequence is simply an artificially-transparent attempt to conform the facts in this case to its *post-hoc*

interpretation of the requirements of 28 U.S.C. § 1500.[4]

For example, the Plaintiff argues that the December 29, 2006 filings involved multiple trips to each court (two trips to the Court of Federal Claims and three trips to the District Court).[5] *See* Plf's Opp. Brf. at 14; Plf's Supp. Opp. Brf. at 5. Plaintiff relies upon an e-mail which was produced after the close of discovery in this case in order to *prove* that the CFC filings on December 29, 2006 involved multiple trips. (*See* Plf's Opp. Brf. at 14 "As evidenced by Ms. Applegate's e-mail describing the December 29, 2006 filings, Ms. Applegate made more than one trip to the Court of Federal Claims that day.")[6] This "multiple trip" theory had its genesis in rebuttal to

---

[4] As the Defendant argued in its Motion to Dismiss, applying a *time of day* analysis to determine whether claims are "pending" for purposes of 28 U.S.C. § 1500 contradicts the clear and reasonable purpose of the statute, which is to prevent the United States from having to defend against the same claims in multiple fora. *See* Def's Mot. at 9-10; *see also UNR Indust. v. United States*, 962 F.2d 1013, 1018-19 (Fed. Cir. 1992) (the purpose of 28 U.S.C. § 1500 is to "force plaintiffs to choose between pursuing their claims in the Court of [Federal] Claims or in an other court," (citing the legislative history of the original version of § 1500, 81 Cong. Globe, 40th Cong., 2d Sess. 2769 (1868), and to "protect the United States from having to defend two lawsuits over the same matter simultaneously,").

[5] The sequence of the filings testified to by Ms. Applegate at each of the three evidentiary hearings is constructed in such a manner (however artificial it may be) so as to have each of the four Court of Federal Claims Complaints being filed earlier in the day than each of the three she filed in the United States District Court. *See Breneman v. U.S.,* 57 Fed. Cl. 571 (2003).

[6] As will be discussed in further detail below, the Plaintiff stakes out inconsistent positions as to the meaning of this very e-mail (SR00334). In sum, this document contrary to the Plaintiff's argument, confirms what the remaining documentary evidence in the record shows to be true; that Ms. Applegate did not make an early morning trip to the CFC

the Defendant's argument that the four complaints filed in the CFC by Kilpatrick Stockton on December 29, 2006 were accomplished in a *single trip* sometime after 11:41 a.m.[7] *See* Def's Mot. at 12. Not only is the Plaintiff's "multiple trip" theory artificial and illogical, it borders on impossible.

The Plaintiff has failed to carry its jurisdictional burden of proof in this case for the additional reason that the factual record in this case is replete with material inconsistencies. Much to the Plaintiff's chagrin, its numerous attempts to shore up and supplement the factual record cannot distract this Court from the fact that both Ms. Applegate and Kilpatrick Stockton have staked out materially-inconsistent positions regarding crucial pieces of evidence during the course of this litigation. Simply put, the facts in evidence do not support the Plaintiff's contention that there was no suit pending in the District Court when it filed its Complaint in this Court on December 29, 2006. Moreover, because it is clear that the Plaintiff's Complaint in this Court seeks the same relief based on the same operative

---

to file the Plaintiff's Complaint, but rather, brought all four CFC complaints for filing to the CFC Clerk's Office at the same time (sometime after 11:41 a.m.) on December 29.

[7] In its opening brief the Defendant argued that Kilpatrick Stockton filed the *Ak-Chin, Salt River Pima-Maricopa, Passamaquoddy Tribe of Maine* and *Tohono O' odham* Complaints in this Court in one single trip sometime after the *Ak-Chin* Complaint was finalized after 11:41 a.m. on December 29, 2006. *See* Def's Mot. at 12.

facts as the Complaint pending in the District Court, this case must be dismissed.[8]

## ARGUMENT

The Plaintiff bears the burden of establishing jurisdiction, *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988), which burden includes, in the context of 28 U.S.C. § 1500, establishing that the District Court case was not pending at the time Plaintiff filed its Complaint in this Court. Although, as discussed above, and in its Motion to Dismiss, the United States maintains that the question of which two filings was filed first on the same day does not matter for purposes of § 1500, the evidence shows that the Plaintiff has not met its burden to establish that it filed the Court of Federal Claims action on December 29 *before* it filed the District Court action that same day.

### A. The Documentary Evidence Admitted at the Evidentiary Hearing Demonstrates that the District Court Complaint was filed Prior to the CFC Complaint on December 29.

The Plaintiff urges this Court to place great weight on Ms. Applegate's

[8] This Court has already held that the claims asserted by the Ak-Chin Indian Community and the Tohono O' odham Nation were the "same" as those asserted in the United States District Court for purposes of 28 U.S.C. § 1500. *See Ak-Chin Indian Community v. United States*, 2008 WL 241275 (Fed. Cl.); *Tohono O' odham Nation v. United States*, 79 Fed. Cl. 645 (2007).

"convincing, candid and appropriately detailed" (Plf's Supp. Opp. Brf. at 2) testimony in this case as dispositive as to this Court's jurisdictional inquiry. While, Ms. Applegate's testimony - specifically her credibility - is no doubt a central issue for this Court to consider, the factual record in this case also contains documentary evidence, such as e-mail correspondence and miscellaneous court documents which are also highly probative to the jurisdictional question pending here. Many of these documents contradict Ms. Applegate's version of events and in fact clearly support the conclusion that the District Court Action was filed before the CFC case on the morning on December 29, 2006.

1. The District Court Action was just the second case filed by *any party* in the District Court on December 29, 2006.

A key and irrebuttable fact in this case as evidenced by the District Court's December 29, 2006 Docket Report, is that the Plaintiff's District Court Action was just the second case filed by *any* party in that Court on December 29, 2006. *See* Def's. Exh. #14; *see also* Salt River Evid. Hearing Trans. 29:14-17. In fact, Ms. Applegate filed the Plaintiff's District Court Action simultaneously with the District Court Complaint for the Passamaquoddy Tribe of Maine, which was the first case filed by *any party* in that Court on December 29. *See id; see also* Plf's Supp. Opp. Brf. at 5.

Moreover, Plaintiff's District Court Complaint was in final form and ready to be filed on the evening of December 28. *See* December 10, 2007 Evidentiary Hearing Transcript ("Salt River Evid. Hearing Trans.") 21:5-11.

2. The CFC Complaint was still in draft form on the morning of December 29, 2006.

Meanwhile, attorneys at Kilpatrick Stockton continued to work on the Court of Federal Claims Complaint during the morning hours of December 29. *See* Def's. Exh. 4 (a final draft of the Plaintiff's CFC Complaint was not circulated until 9:26 a.m.); Salt River Evid. Hearing Trans. 43:9-20. Even though a so-called "final draft" of the Plaintiff's CFC Complaint was e-mailed at 9:26 a.m. on December 29, it was not *final* for purposes of filing (as it still needed to be reviewed, signed, copied, assembled and taken to the Court for filing) *See id.* 44:15-18, 48:8-49:19, 51:10-17. Although the Plaintiff has since argued otherwise, an e-mail sent from Kilpatrick Stockton attorney Mr. Keith Harper to Ms. Applegate at 8:59 a.m. on December 29 specifically instructed Ms. Applegate to file the Complaint in the District Court (which unlike the CFC Complaint, was *ready* to be filed as of the previous evening) while changes were being made to the CFC Complaints. *See* Def's. Exh. 1. It is also undisputed that the *Ak-Chin* CFC Complaint was still being drafted

up until 11:41 a.m. on December 29.[9] *See* Def's. Exh. #5; Salt River Evid. Hearing Trans. 45:18-21.

3. Filing receipts issued by the CFC Clerk's Office suggest that the CFC Complaint was filed *after* 11:41 a.m. on December 29.

Filing receipts issued by the CFC on December 29, 2006 when Kilpatrick Stockton filed the Plaintiff's Complaint along with those for the *Ak-Chin, Passamaquoddy* and *Tohono O'odham* cases each contain a six-digit receipt number in the bottom left hand corner. *See* Def's. Exhs. # 7, 10, 11, 12. The receipts from the receipt book are in numeric sequence with the receipt numbers arranged from lowest to highest. *See* December 12, 2007 Status Conf. Transcript ("Salt River Status Conf. Trans.") 17:20-18:2. Moreover, receipts are always issued from the receipt book in numerical order from lowest to highest. *See id.* 29:1-8. The lowest receipt number of the four CFC Complaints filed by Ms. Applegate on December 29 was for the *Ak-Chin* CFC Complaint, that receipt number was 065946. *See* Def's. Exh. #10. The receipt number for the *Passamaquoddy* CFC filing was 065957. *See* Def's. Exh. #11. The receipt number evidencing the Plaintiff's filing in this case was 065958. *See* Def's. Exh. # 7. The receipt number for

[9] The *Ak-Chin* District Court Complaint was just the sixth case filed by *any party* in that Court on December 29, 2006. *See* Def's. Exh. #14.

the *Tohono O' odham* CFC filing was 065959. *See* Def's. Exh. # 12. The plain inference to be drawn from this is that the Complaint in this case was filed *after* the *Ak-Chin* Complaint in the CFC, and that the *Ak-Chin* CFC Complaint was filed *after* 11:41 a.m.

In addition to Docket Reports and filing receipts, the factual record also contains e-mail correspondence produced by Kilpatrick Stockton during the course of this litigation. For example, in April of 2007, after the 28 U.S.C. § 1500 jurisdictional issue had been brought to the Plaintiff's attention, Kilpatrick Stockton attorney Catherine Munson engaged in a series of e-mails with Ms. Applegate attempting to ascertain *when* the Plaintiff's Complaints were filed in the District Court and the CFC respectively. *See* Def's. Exhs. #8 and 13. In response, Ms. Applegate stated that she was "not certain" whether she went to the CFC or to the District Court first. *See* Def's. Exh. #13 (emphasis added). As to her trip to the CFC on December 29, Ms. Applegate stated that "I know I went over [to the CFC] and we were missing something so I had to come back to the office and get it, but I just don't know what time all of this happened." Def's. Exh. 8. It is undisputed, however, that Ms. Applegate completed the filing of all seven complaints in both the District Court and the CFC by 12:41 p.m. on

December 29. *See* Salt River Evid. Hearing Trans. 27:3-6.

Ms. Applegate testified that she arrived at the office early on the morning of December 29, approximately 7:30 a.m. *See* Salt River Evid. Hearing Trans. 20:22-23. She arrived early because "we had a lot to do that day." *Id.* 20:23-21:1. She stated "I had in my career not filed seven complaints in one day, so I wanted to insure that there was time enough to get everything done." *Id.* at 20:24-21:4. During the prior week, Ms. Applegate prepared the necessary civil cover sheets and arranged for checks to be cut for payment of the requisite filing fees at the courts. *See* Salt River Evid. Hearing Trans. 43:12-15. Ms. Applegate's testimony stressed that Kilpatrick Stockton's multiple representation of "several tribal clients" (*id.* 19:18-21), was the driving factor behind its motivation to file each complaint as soon as it was finalized.[10/] *Id.*

This motivation apparently did not apply with equal force to the firm's representation of its clients' interests with the District Court Complaints however. Despite the fact that the Plaintiff's District Court Complaint was

---

[10/] Ms. Applegate explained that she did not wait to file all of the CFC Complaints in a single filing after 11:41 a.m. on December 29 because Kilpatrick Stockton represented several tribal clients that she "did not want to adversely impact their [the Tribal clients'] interest in filing these complaints due to the fact that we had been delayed on another." Salt River Evid. Hearing Trans. 19:18-21.

ready for filing as of the evening of December 28, 2006, Ms. Applegate insists that she waited until well after 9:30 a.m. (if not later) on December 29, when the CFC Complaint was finalized, to file the Plaintiff's Complaint with this Court. *See* Salt River Evid. Hearing Trans. 19:10-21. This sequence of events is not only inconsistent with Ms. Applegate's stated interest in filing the complaints as they became ready, but it is also irreconcilable with the indisputable fact that the *Passamaquoddy* and *Salt River* District Court Complaints were the *first two cases filed by any party* on the morning of December 29.[11/] Def's. Exh. # 14.

The documents admitted at the evidentiary hearing in this case speak for themselves and provide this Court with concrete evidence as to the timing of the Complaints on December 29. Moreover, because these documents were created contemporaneously with the filing of the Plaintiff's Complaints, they reflect the initial inquiry regarding the order by which they were filed, unfettered by the influence of this jurisdictional litigation. It is

---

[11/] At the December 10, 2007 Evidentiary Hearing, counsel for the United States proffered evidence to this Court as to a conversation he had with personnel at the United States District Court Clerk's Office on November 14, 2007. Undersigned counsel spoke with Ms. Latanya Webb, the cashier for the District Court Clerk's Office. Ms Webb was the cashier on duty on December 29, 2006. Ms. Webb stated that while she did not remember anything specific about the Plaintiff's Complaint filed that day, she stated that it would be *unusual* for the first complaint of the day to have been filed several hours into the morning, close to the lunch hour. *See* Salt River Evid. Hearing Trans. 89:1-7.

clear that the Plaintiff's District Court Complaint was ready to be filed when Ms. Applegate arrived at the office at 7:30 a.m. on December 29, 2006[12/]; that the District Court Action was filed along with the first case by *any party* in that Court that day (*see* Def's. Exh. #14); that Kilpatrick Stockton was drafting the Plaintiff's CFC Complaint as of 9:25 a.m. on the morning of December 29, and did not complete its draft of the *Ak-Chin* CFC Complaint until at least 11:41 a.m. (*see* Def's. Exhs. 4, 5); and that Mr. Harper specifically anticipated that the District Court Action would be filed while changes were made to the CFC Complaints. (Def's. Exh. #1). Moreover, it is undisputed that the first filing receipt issued by the CFC Clerk's Office on December 29 for the four CFC Complaints filed by Ms. Applegate on December 29 was for the *Ak-Chin* action (065946) (which we know was not filed until sometime after 11:41 a.m. on December 29) *See* Def's. Exhs. # 5, 10. The filing receipts for the remaining three CFC Complaints filed by Ms. Applegate are sequentially-numbered 065957 (*Passamaquoddy),* 065958 (*Salt River*) and 065959 (*Tohono O' odham*). *See* Def's. Exhs. # 11, 7 and 12. Taken together, the only logical conclusion to be drawn from these

[12/] Ms. Applegate testified at the evidentiary hearing that she sent an e-mail to Blaine Young on the evening on December 28, 2006 forwarding the final version of the Plaintiff's District Court Complaint. *See* December 10, 2007 Evid. Hearing Trans. 21:5-11.

documents is that the Plaintiff's District Court Complaint was filed *before* the CFC Complaint on December 29.

### B. The Plaintiff's "Multiple Trip" Theory for its December 29, 2006 Filings in the CFC is a Transparent Attempt to Conform the Facts of this Case to Plaintiff's *Post-hoc* Interpretation of 28 U.S.C. § 1500.

In its Opposition Brief to the Defendant's Motion to Dismiss, the Plaintiff argues that a case is not "pending" for purposes of 28 U.S.C. § 1500 if it was filed in the Court of Federal Claims earlier on the same day as the complaint filed in the District Court. *See* Plf's. Opp. Brf. at 10 (citing *Breneman v. United States*, 57 Fed. Cl. 571, 575 (2003). Even though the Defendant disputes that this is a proper interpretation of the statute (*see* footnote 4, *supra*), it ultimately does not matter. This is because it is evident that the Plaintiff has manufactured its theory as to the sequence of its CFC filings on December 29 in order to pass muster under its understanding of the analysis enunciated in *Breneman.*[13/] Ms. Applegate testified that she filed the seven complaints on behalf of Kilpatrick Stockton's several tribal plaintiffs as follows on December 29, 2006:

---

[13/] The purported sequence of filings in this case is particularly peculiar in light of the fact that Plaintiff's counsel was heretofore unaware of the applicability of 28 U.S.C. § 1500 to this case. *See* Plaintiff's Responses and Objections to Defendant's First Set of Interrogatories, at 14. (Def's. Exh. #28).

> We prepared as I mentioned earlier, the *Salt River,* the *Tohono O' odham* and the *Passamaquoddy* CFC complaints first. I brought those over, I walked them over, filed them, obtained a receipt, and then walked back to the office. I arrived and the District Court complaints for *Salt River* and *Passamaquoddy* were ready. I took a cab over to the District Court, filed those with the intake clerk and took a cab back to the offices from the District Court at which point we prepared the *Ak-Chin* complaint for the CFC, walked that over and brought that back. Then we prepared the *Ak-Chin* District Court complaint. I took a cab over to the District Court to file the *Ak-Chin* complaint.

*See* Salt River Evid. Hearing Trans. 20:5-19. Ms. Applegate's testimony defies common sense, especially in light of the fact that the District Court Complaint was ready for filing *first* thing on December 29 while the CFC Complaint was not. Moreover, the April 23, 2007 e-mail (Def's Exh. #8) relied upon by Plaintiff to prove that Ms. Applegate filed the CFC Complaint early on the morning on December 29, and that she later returned to file the *Ak-Chin* CFC Complaint is simply unreliable due to the shear number of inconsistent positions Plaintiff has taken as to this *very same e-mail*. Instead the evidence shows that the Plaintiff's CFC Complaint could not have been filed first thing in the morning on December 29 as Plaintiff contends. This is because the filing receipt issued by the CFC Clerk's Office on December 29 for the *Ak-Chin* CFC Complaint (receipt number 065946) demonstrates that that receipt was written earlier than the receipt

for the Plaintiff's CFC Complaint (sometime after 11:41 a.m.). Therefore the Plaintiff has failed to carry its burden of proof in this case.

1. Ms. Applegate's "multiple-trip" theory was devised in rebuttal to the Government's argument that all of the CFC Complaints had to have been filed together sometime after 11:41 a.m.

In its Motion to Dismiss, the Government pointed out that the Plaintiff's District Court Complaint had to have been filed prior to the CFC Complaint on December 29. *See* Def's Mot. at 12. This contention was premised on the undisputed fact that: (1) the District Court Complaint was filed along with the first case filed by any party in the District Court that day (*Passamaquoddy*) (*see* Def's. Exh. # 14); and (2) that Kilpatrick Stockton was still drafting the CFC Complaint that morning (December 29). Def's. Exh. # 1; *see also* Def's. Exh. # 5 (the *Ak-Chin* CFC Complaint was not in final draft format until sometime after 11:41 a.m. on December 29). The Government argued that these facts supported the conclusion that the Plaintiff's CFC Complaint was filed sometime after 11:41 a.m. after the *Ak-Chin* CFC Complaint was complete. *See* Def's Mot. at 12.

In response, the Plaintiff asserted that the Government's argument hinged on the "presumption that Ms. Applegate filed all of the CFC Complaints during one trip to the Court of Federal Claims that day." Plf's

Opp. Brf. at 14. The Plaintiff then proffered, *for the first time*, its theory that Ms. Applegate *made more than one trip* to the CFC to file Complaints on December 29. "As evidenced by Ms. Applegate's e-mail describing the December 29, 2006 filings, Ms. Applegate made more than one trip to the Court of Federal Claims that day."[14/] *Id.* This so-called evidence (SR00334) (Def's. Exh. # 8) consists of Ms. Applegate's April 23, 2007 admission that "As for the CFC, I know I went over and we were missing something so I had to come back to the office and get it, but I just don't know what time all of this happened." Def's. Exh. # 8. Thus argued the Plaintiff, "[t]he evidence before the Court demonstrates that Ms. Applegate filed the Salt River CFC Complaint in the morning – prior to filing the District Court Action – and later returned to the Court of Federal Claims to file the Ak-Chin CFC Complaint." Plf's Opp. Brf. at 14. As this Court will see below, the Plaintiff has taken multiple and inconsistent positions during the course of this litigation regarding the meaning of Ms. Applegate's April 23, 2007 e-mail.

[14/] This e-mail was not timely produced to the Government in connection with its First Set of Requests for Production of Documents pursuant to the Rules of the United States Court of Federal Claims ("RCFC" 34). Rather, it was produced one day prior to the Plaintiff's filing of its Opposition Brief in this case (September 12, 2007) where the Plaintiff raised its "multiple-trip" theory for the first time. Interestingly, in its Supplemental Opposition Brief, the Plaintiff states that it did not disclose this multiple-trip theory to the Government earlier in this litigation, *e.g.* in connection with the Government's discovery requests, simply because the Government *never asked*. *See* Plf's Supp. Opp. Brf. at 22

These inconsistent positions undermine the legitimacy of the Plaintiff's argument (*see* Plf's Opp. Brf. at 14) regarding the sequencing of the filings on December 29.

2. <u>At the October 24, 2007 evidentiary hearing before the Honorable Emily C. Hewitt in the *Ak-Chin* case, the Plaintiff argued that Ms. Applegate's April 23, 2007 e-mail had nothing to do with the *Ak-Chin* case.</u>

Although the Plaintiff asserted in its Opposition Brief that Ms. Applegate's April 23, 2007 e-mail definitively proves that she made multiple trips to the Court of Federal Claims on December 29, 2006, and that the second trip was related solely to filing the *Ak-Chin* CFC Complaint (*see* Plf's Opp. Brf. at 14), this has not always been the Plaintiff's position. In fact, on the re-direct examination of Ms. Applegate at the evidentiary hearing before Judge Hewitt on October 24, 2007, Mr. Austin (co-counsel for the Plaintiff) went to great lengths to show that Ms. Applegate's April 23, 2007 e-mail in fact had *nothing* to do with the *Ak-Chin* case:

70:15 Q Directing your attention to the first page of the pages that she questioned you about, do you see the "re" clause that appears on the April 23, 2007, e-mail?
A Yes. It says: "Re: Complaints in Salt River and Passamaquaddy."
Q Is the e-mail exchange with Ms. Munson, then, an exchange that took place in regard to other cases than Ak-Chin?

THE COURT: You're still on direct, in terms of your questions. If you can point to a particular piece of testimony and clarify it, that's fine, but --
BY MR. AUSTIN:
Q Did this e-mail that Ms. Maroldy asked you - -
THE COURT: First, start way back. Do you know what this e-mail referred to?
MR. AUSTIN: I will try again. Thank you.
THE COURT: Okay.
BY MR. AUSTIN:
Q Do you know what this e-mail referred to?
A Yes, I believe so.
Q What was that?
A It was a request by Ms. Munson to see if there was a way for me to definitively figure out what time the Salt River and Passamaquaddy cases were filed.
Q Did the e-mail say anything about the Ak-Chin sequence filing?
MS. MAROLDY: Objection.
THE COURT: You may answer.
THE WITNESS: It does not. It does not say anything about the - -
THE COURT: Asked and answered. Go ahead. Your next question.

See Def's. Exh. #24 at 70:15-71:22. Thus, despite arguing in its Opposition Brief on September 13, 2007 that the so-called second trip to the CFC referenced in this same e-mail pertained to the purported delayed filing of the *Ak-Chin* CFC Complaint on December 29, 2006 (Plf's Opp. Brf. at 14), the Plaintiff just weeks later (as evidenced above) attempts to disavow its

applicability to the *Ak-Chin* case in its entirety. *See* Def's Exh. 14 at 70:15-71:22.

3. In a November 29, 2007 post-evidentiary hearing brief filed in the *Ak-Chin* CFC Case, the Plaintiff changed its story yet again and argues that the April 2007 e-mail in fact *does* pertain to the *Ak-Chin* CFC Complaint

The evidence in this case demonstrates definitively that the significance placed by the Plaintiff on Ms. Applegate's April 23, 2007 e-mail has changed multiple times during the course of this litigation. Another "morph" in the meaning of this e-mail occurred during post-evidentiary hearing briefing in the *Ak-Chin* CFC litigation. In a brief filed by Kilpatrick Stockton on November 29, 2007 in that case (Def's. Exh. 9), despite having made a contrary point on re-direct examination on October 24, 2007, counsel argued that the statement made by Ms. Applegate in her April 23, 2007 e-mail about "missing something" (Def's. Exh. #8) during her first trip to the Court of Federal Claims on December 29 indeed *did* pertain to the filing of the *Ak-Chin* CFC Complaint. *See* Def's. Exh. # 9 at 12-13 ("the reason Ms. Applegate was required to make a second trip to the Court of Federal Claims was because the Ak-Chin CFC Complaint was not ready when the other three Complaints were filed and it had to be delivered for

filing later that same morning.”).

4. <u>At the evidentiary hearing before this Court on December 10, 2007 Ms. Applegate testified as to yet *another* interpretation of the April 23, 2007 e-mail.</u>

At the evidentiary hearing before this Court on December 10, 2007, however, the Plaintiff offered a completely different interpretation of the meaning of the April 2007 e-mail. On direct-examination, Ms. Applegate was asked about the April 23, 2007 e-mail. *See* Salt River Evid. Hearing Trans. 35:18-37:8. Specifically, she was questioned about the passage “*As for the CFC, I know we went over and we were missing something so I had to come back to the office and get it. . .*” Def’s. Exh. # 8. Ms. Applegate answered that the “missing something” was actually confused with “admissions packets that I had to bring over in January 2007 for Mr. Austin and another Kilpatrick Stockton attorney in which I was missing an element of the packet and had to return.” Salt River Evid. Hearing Trans. 36:21-37:2. When questioned on cross-examination about why her testimony contradicted arguments made by Kilpatrick Stockton in the November 29, 2007 post-hearing brief in the *Ak-Chin* case (*see* Def’s. Exh. 9), Ms. Applegate offered no explanation. Instead she stated “I can only assume that I wasn’t clear on my explanation to those who drafted it [the *Ak-Chin*

brief]. *Id.* 68:23-24. She also conceded that "it [December 29, 2006] was a confusing day . . ." *Id.* 69:9.

5. The Plaintiff's explanation as to the April 2007 e-mail has come *full-circle*

Other than Ms. Applegate's testimony on this matter, which has been shown to be utterly inconsistent, the Plaintiff has not pointed to *any* definitive evidence supporting its "multiple-trip" filing theory. In fact, in its Supplemental Opposition Brief, filed just last month, the Plaintiff re-asserts its position that the "missing something" referenced in the April 23, 2007 e-mail between Ms. Applegate and Ms. Munson has nothing to do with proving that the Plaintiff made more than one trip to file complaints in the CFC on December 29 (apparently the Plaintiff relies solely on Ms. Applegate's testimony for this). Rather, the Plaintiff contends that this e-mail pertains to a "separate and completely unrelated trip to the Court of Federal Claims days later - in January 2007, during which she [Ms. Applegate] learned that she was "missing something." Plf's Supp. Opp. Brf. at 24. Apparently the Plaintiff has forgotten that it argued precisely to the contrary in its initial Opposition Brief in September 2007. *See* Plf's Opp. Brf. at 14 ("As evidenced by Ms. Applegate's e-mail describing the December 29, 2006 filings, Ms. Applegate made more than one trip to the Court of Federal

Claims that day.”). Neither the Plaintiff, nor Ms. Applegate, can have it both ways and still be deemed credible. And if this aspect of the Plaintiff’s version of events is not credible, its entire version of events is not believable in light of the indisputable evidence contained in the documents admitted in this case that demonstrate that the Plaintiff’s District Court Complaint was filed in the morning on December 29 *before* the CFC Complaint was filed.

6. The Plaintiff’s “multiple-trip” theory does not comport with the totality of the evidence in this case.

Even assuming *arguendo* that Ms. Applegate’s version of the sequencing of the December 29, 2006 filing events is not simply a fabrication built on an unreliable memory, it is difficult to ascertain, even under the most charitable of circumstances, how she could have filed the *Ak-Chin* CFC Complaint (which she alleges was the sixth of the seven total complaints filed that day sometime after 11:41 a.m.) *and* then had sufficient time to travel to and from the District Court by 12:41 p.m. *See* Salt River Evid. Hearing Trans. 27:3-6.

In sum, Ms. Applegate contends that she filed the *Passamaquoddy, Salt River* and *Tohono O’ odham* CFC Complaints “shortly after 9:30 a.m.” on December 29, 2006. *Id.* 17:22-24; 20:5-9. Thereafter, she returned to the offices of Kilpatrick Stockton to discover that the *Passamaquoddy* and

*Salt River* District Court Complaints were ready. *Id.* 20:10-11. Ms. Applegate took a cab to the District Court, filed those complaints and returned to the office. Salt River Evid. Hearing Trans. 20:11-13. Ms. Applegate estimates that she filed the *Passamaquoddy* and *Salt River* District Court Actions at approximately 10:30 a.m. *Id.* 24:4-5. Later, (sometime after 11:41 a.m.) the *Ak-Chin* CFC Complaint was finalized. *Id.* 19:10-12. After having the final *Ak-Chin* CFC Complaint signed, copied and assembled for filing, Ms. Applegate claims she walked to the CFC and filed that complaint and walked back to the office. *Id.* 20:14-15. Finally, Ms. Applegate alleges that she then "prepared the *Ak-Chin* District Court Complaint;" (*Id.* 20:16-17) she "took a cab over to the District Court to file the *Ak-Chin* Complaint." *(id.* 20:16-18); and because the intake clerk was busy at the time she dropped off the complaint, she "returned to the office to return later to complete the filing." *Id.* 20:18-21. Ms. Applegate asserts that she had completed filing all seven complaints on December 29 by 12:41 p.m. *See* Salt River Evid. Hearing Trans. 27:3-6.

According to Ms. Applegate's testimony, it was only after she returned to Kilpatrick Stockton's offices after walking to the Court with the Ak-Chin CFC Complaint, and filing it with the Clerk, that she learned that the Ak-Chin

District Court Complaint was ready for filing. *See* Salt River Evid. Hearing Trans. 20:5-21; *see also* October 24, 2007 Evidentiary Hearing Transcript in *Ak-Chin Indian Community v. United States*, No. 06-932-L ("Ak-Chin Evid. Hearing Trans.") (Def's. Exh. # 24) 34:2-5. It was at that point that Ms. Applegate again left her offices at 607 14th Street, and caught a taxi cab to the District Court, which is located at 333 Constitution Avenue, N.W., to file the Ak-Chin District Court Complaint. Salt River Evid. Hearing Trans. 20:17-19; Ak-Chin Evid. Hearing Trans. 34:3-9.

Also according to Ms. Applegate's testimony, after Ms. Applegate traveled to the District Court by cab with the Ak-Chin Complaint, she found the Courthouse crowded, and found that there was a line for filing at the Clerk's office. Ak-Chin Evid. Hearing Trans. 34:3-9 (conditions at Courthouse); 36:1-5 (travel by taxi cab); Salt River Evid. Hearing Trans. 20:18-21; *see also* Salt River Evid. Hearing Trans. 64: 13-16 (intake clerk at the District Court was too busy to complete the filing while Ms. Applegate waited). Ms. Applegate testified that she had a conversation with the intake clerk regarding the Ak-Chin Complaint, and left Plaintiff's Complaint with the intake clerk (Ak-Chin Evid. Hearing Trans. 15:11-18; and 34:3-9), left the Courthouse, and traveled back to her office at 607 14th Street by taxi.

Given the undisputed facts that the Ak-Chin's CFC Complaint was not finished until after 11:41 a.m., and that Ms. Applegate reported to Mr. Austin at 12:41 p.m. on December 29 that all the Complaints had been filed, for the District Court Complaint to have been filed *after* the CFC Complaint, all of the steps outlined above had to have been completed in less than an hour, between 11:41 a.m. and 12:41 p.m. Those steps included the lawyers' completing the Ak-Chin CFC Complaint, Ms. Applegate's copying and assembling it, Ms. Applegate's walking to this Court to file it, filing it with the Clerk, and walking back to her office; Ms. Applegate's then learning that the Ak-Chin District Court Complaint was ready for filing, picking up that Complaint, leaving her office again, traveling by cab to a crowded Clerk's office (Ak-Chin Evid. Hearing Trans. 34:3-9), talking to the intake clerk, coming back to her office by cab, getting back to her desk, and receiving and responding to the e-mail from Mr. Austin.

Defendant submits that this scenario is highly unlikely. Even if attorney Jason Guilder found within a very few minutes the information he lacked at 11:41 a.m. and therefore sought from Ak-Chin's counsel (Mr. Ed Roybal), the other steps outlined above would have taken more than an hour to complete, even under a scenario positing, *arguendo,*"warp speed" or

record time for completing each component step. Here, for illustration only, is how the necessary series of events might have unfolded if every single one was accomplished at "warp speed":

1. Attorney Guilder finds the missing information and it is added to the Complaint just four minutes after Mr. Guilder's 11:41 e-mail (Def's Exh. #5) to Mr. Roybal: 11:45 a.m.
2. Ms. Applegate copies and assembles the Ak-Chin CFC Complaint, and exits the building just twelve minutes after the lawyers have finished it: 11:57 a.m.
3. Ms. Applegate walks from her office at 607 14th Street, N.W., to the CFC at 717 Madison Place in just five minutes (Salt River Evid. Hearing Trans. 52:6-17: 12:02 p.m.
4. Ms. Applegate goes through security, files the CFC Complaint with the Clerk, and obtains the file-stamped copy, all in just five minutes: 12:07 p.m.
5. Ms. Applegate exits the Courthouse and walks back to her office in just five minutes: 12:12 p.m.
6. Ms. Applegate gets upstairs to the Kilpatrick Stockton floors; learns the Ak-Chin District Court Complaint is ready to be filed, and picks it

up, all just three minutes after arriving at the building: 12:15 p.m.

7. Ms. Applegate exits the building again, with the Ak-Chin District Court Complaint, just two minutes later: 12:17 p.m.

8. Ms. Applegate gets a taxi cab and travels in it across town at mid-day to the District Court, arriving at 333 Constitution Avenue, N.W., and paying the cab driver and receiving a receipt, all just twelve minutes after exiting her building: 12:29 p.m.

9. Ms. Applegate enters the crowded Courthouse; is processed through the security line; proceeds to the Clerk's Office and its intake line; has a conversation with the "frantic" intake clerk; leaves the Complaint with that clerk; and exits the Courthouse again, all in just five minutes after the cab dropped her off: 12:34 p.m.

10. Ms. Applegate catches a cab back to her office from the District Court at 333 Constitution Avenue, N.W., to her office at 607 14th St., N.W., pays the cab driver, and gets a receipt, all in just in twelve minutes: 12:46 p.m.

11. Ms. Applegate gets upstairs to her desk, opens an e-mail message from Mr. Austin, and responds, all in two minutes after arriving at the building: 12:48 p.m., *i.e.*, seven minutes after she sent Mr. Austin an

e-mail saying all of the Complaints were filed.

Plaintiff has presented no evidence of how long it actually took Mr. Guilder to obtain the information he needed for Ak-Chin's CFC Complaint. Yet in summary, even under a scenario in which Mr. Guilder found the information he needed for the Complaint within a few minutes after he sent the client's counsel an e-mail seeking it; and Ms. Applegate's subsequent round-trip travels to two courts, interactions with others, and related tasks and activities occur at unrealistic "warp speed" (for the sake of argument only), the District Court Complaint could not have been taken by Ms. Applegate to the District Court clerk only after she filed the Court of Federal Claims Complaint, as Ms. Applegate testified. As the hypothetical above illustrates, it is highly unlikely that Ms. Applegate could have accomplished all of those steps and have gotten back to her office in time to send Mr. Austin the 12:41 p.m. e-mail reporting that all of the Complaints had been filed. In other words, to be consistent with Ms. Applegate's 12:41 p.m. report to Mr. Austin on the date of filing ("we have filed them, but I am waiting for the summons"), Plaintiff's District Court Complaint had to have been filed *before* the CFC Complaint, whose completion and filing, it is undisputed, was delayed until some undetermined time after 11:41 a.m.

In sum, the principal piece of evidence (the April 23, 2007 e-mail between Ms. Applegate and Ms. Munson) upon which the Plaintiff relies to prove that it filed its CFC Complaint in the morning on December 29 before 11:41 a.m. has been tarnished beyond recognition by the Plaintiff's own doing. In fact, the only reasonable interpretation of this document (and supported by the existence of other documents in this case) is consistent with the Government's original argument - that Ms. Applegate took *all four* CFC Complaints to the Court of Federal Claims on December 29 at the same time sometime after 11:41 a.m. *See* Def's Mot. at 12. Ms. Applegate filed the *Ak-Chin* CFC Complaint first, receiving a filing receipt with the number 065946. (Def's Exh. # 10). Upon the realization that she "forgot something" (Def's Exh. #8) apparently needed for the *Passamaquoddy* or *Salt River* Complaints, Ms. Applegate returned to the office, retrieved it, and went back to file the *Passamaquoddy, Salt River* and *Tohono O' odham* CFC Complaints (receiving receipt numbers 065957, 065958 and 065959 respectively). Def's. Exhs. # 11, 7 and 12. This is the only plausible version of events. Thus is cannot be said that the Plaintiff has carried its burden of proof to show that its Complaint in this case, which seeks the *same relief* based on the *same facts* as the case now-pending in the District Court ought

not be dismissed.

### C. Ms. Applegate Disavows her Prior Testimony Regarding Receiving Filing Receipts.

After testifying at the evidentiary hearing in this case that she received a filing receipt from the CFC Clerk's Office for each of the CFC Complaints she filed in this Court on December 29, Ms. Applegate has now changed her story. *See* Salt River Evid. Hearing Trans. 20:7-9 ("I walked them over [the Complaints], filed them, obtained a receipt, and then walked back to the office."). Ms. Applegate verified on cross-examination that upon filing the Plaintiff's CFC Complaint and payment of the filing fee (with checks Kilpatrick Stockton prepared the day before), she received a file-stamped copy of the complaint, a *receipt*, and walked back to the office. *see* Salt River Evid. Hearing Trans. 53:15-20; 55:9-14; 61:23-62:8; *see also* audio tape recording from Salt River Evidentiary Hearing at 51:44-52:01 Ms. Applegate also confirmed that Def's. Exh. #7 (CFC Receipt Number 065958) was the receipt she received when she filed the Complaint in this Court. Salt River Evid. Hearing Trans. 54:8-14.

Now, Ms. Applegate contends (as she testified at the evidentiary hearing in front of Hon. Lynn J. Bush in the *Passamaquoddy* case) that she

*did not* in fact receive any receipt from the CFC Clerk's Office on December 29. *See* February 1, 2008 Passamaquoddy Evidentiary Hearing Transcript ("Passamaquoddy Evid. Hearing Trans.") 22:20-25. The Plaintiff contends that the source of Ms. Applegate's inconsistent testimony is due to "momentary confusion on her part while on the stand." Plf's Supp. Opp. Brf. at 35. Ms. Applegate admitted on cross-examination during that hearing that her previous testimony was based on an "assumption" rather than her actual recollection. *See* Passamaquoddy Evid. Hearing Trans. 59:2-6.

While it is likely that much of what Ms. Applegate has said while on the stand during the course of three evidentiary hearings is based largely on assumption rather than recollection, the Defendant submits that her inconsistent testimony in this instance merely an attempt to repair the damage done to her story at the evidentiary hearing in this case when Ms. Applegate was surprised by the Government's questions regarding the relevance of CFC filing receipts which she testified she received contemporaneous to the filing of the CFC Complaints.

This is because the factual record demonstrates that the order by which the CFC filing receipts were written is directly dispositive as to the time the complaints were filed. Thus, if this Court accepts Ms. Applegate's

initial testimony that she received the filing receipts from the CFC Clerk's Office contemporaneously with the filing of the complaints, then the Court must adopt the Government's argument that the *Ak-Chin* CFC Complaint was the first CFC case filed by Kilpatrick Stockton on December 29.[15]

In rebuttal to the Government's argument that the *Ak-Chin* CFC Complaint (receipt number 065946) had to have been the earliest of the CFC Complaints filed by Kilpatrick Stockton on December 29, the Plaintiff produced (after the close of discovery, and after the December 10 evidentiary hearing in this case) an e-mail dated January 3, 2007 from Ms. Applegate to Mr. Harper (SR00337) (attached hereto as Exh. A). The Plaintiff argues that this e-mail proves that Ms. Applegate did not receive the filing receipts from the CFC on December 29 as she had originally testified. The basis for Plaintiff's assertion is that the Court of Federal Claims e-mailed the assignment of Judges to the Plaintiff on January 3, 2007 through the Court's Electronic Case Filing ("ECF") system. This electronic notification of judicial assignments is irrelevant to the issue of whether Ms.

---

[15] Even though Deputy Court Clerk Lisa Reyes testified at the December 12 status conference that she could not definitively tell by looking at the four receipts which of the CFC complaints was filed first, she did state that the receipts are written nearly contemporaneously (within five minutes) to the filing of the Complaint (in situations where the filer waits for the receipts). *See* Salt River Status Conference Trans. at 19:8-16. And here, Kilpatrick Stockton paid the filing fee at the same time it filed the Compaints.

Applegate received filing receipts at the CFC Clerk's Office when she filed the CFC Complaints on December 29. Ms. Reyes testified on December 12 that judicial assignments are made by a different person in the office of the Clerk *after* the filing receipt is written. *See* Salt River Status Conference Hearing Trans. at 30:10-20. There is no evidence in the record that a judicial assignment must be made before a receipt is issued.

The Plaintiff also pins its argument that Ms. Applegate did not receive the filing receipts contemporaneously with filing the CFC Complaints on the fact that the receipts as produced from the Plaintiff to the Government had "post-it notes with judicial assignments on the receipts." Plf's Supp. Opp. Brf. at 35. As an initial matter, it is unclear who placed the post-it notes on the receipts or when the post-it notes were written or placed on the receipts (Ms. Reyes testified that the writing on the post-it note did not belong to Derek Williams, she did not specify whether she recognized the handwriting at all). *See* Salt River Status Conference Hearing Trans, *audio recording* at 30:10-13; 34:30-35:51. Moreover, there is no evidence in the record to contradict the possibility that the CFC Clerk's Office made the judicial assignments nearly contemporaneously with the writing of the filing receipts. Ms. Reyes testified that the judicial assignments are made *after*, but *very*

*quickly after* the filing receipt is issued. *See* Salt River Status Conference Trans. at 30:17-20. Thus it is possible that Ms. Applegate received the filing receipts within five minutes of filing the CFC Complaints *and* that the post-it notes were already attached to each receipt. In sum, the Plaintiff has not come forward with sufficient evidence to rebut Ms. Applegate's initial testimony that she received the CFC filing receipts at the time she filed the CFC Complaints.

At the December 12 status conference, Plaintiff's counsel Mr. Keith Harper suggested that December 29, 2006 was a very busy day at the Court of Federal Claims and that such frantic conditions could have contributed to filing receipts being issued out of order. *See id.* 10:4-7 (inquiring whether twenty-one complaints in a single day would be a lot to process). Later, Plaintiff's co-counsel, Ms. Munson attempted an evidentiary proffer of her earlier conversation with CFC cashier Mr. Derek Williams. Ms. Munson argued that the sequencing of receipts could "get out of order" (*Id*. 33:4) on "a particularly busy day." (*Id.* 33:5-6.). The attempted characterizations by counsel, however, do not comport with Ms. Applegate's repeated testimony that her CFC filing experiences went very smoothly and that it was a "very easy process." *See* Salt River Evid. Hearing Trans. 55:4-8. The numerous

changes in the Plaintiff's story cannot rebut the fact that the *Ak-Chin* CFC filing receipt was the *first* receipt written by the CFC Clerk's Office on December 29. Nor can the Plaintiff change the fact that the *Ak-Chin* CFC Complaint was filed sometime after 11:41 a.m. on December 29. It follows that the Plaintiff's Complaint was not filed in this Court until sometime *after* the *Ak-Chin* Complaint was filed.

## CONCLUSION

At bottom it is clear that the Plaintiff has not satisfied its burden of proof in this case. The documentary record demonstrates that the Plaintiff's District Court Complaint was the filed at the same time as the *first* case (*Passamaquoddy*) by any party in that Court on December 29, 2006 (Def's. Exh. # 14). The evidence also shows that Kilpatrick Stockton had not finished drafting the Plaintiff's CFC Complaint until approximately 9:30 a.m. on December 29. (Def's Exh. #5) It is undisputed that the *Ak-Chin* CFC Complaint was filed with the Court of Federal Claims sometime *after* 11:41 a.m. on December 29. It is also without doubt that the *Ak-Chin* CFC filing receipt (065946) is the *lowest* of the four receipt numbers issued by the CFC Clerk's Office that day. Salt River Status Conf. Trans. 17:20-18:2.

Ms. Applegate testified that she received the receipts

contemporaneously with the filing of the CFC Complaints (*See* Salt River Evid. Hearing Trans. 20:7-9), and it is undisputed that the Clerk's Office issues filing receipts with receipt numbers arranged from lowest to highest. *See* Salt River Status Conference Trans. 17:20-18:2. Applying this undisputed evidence to the additional facts in this case, namely, that the April 23, 2007 e-mail states that Ms. Applegate went to the CFC and was "missing something" (Def's Exh. #8) that she had to return to the office to retrieve, the explanation for the gap in receipt numbers is evident. Ms. Applegate filed the *Ak-Chin* CFC Complaint sometime after 11:41 a.m. on December 29; she returned to the office get the "missing something," and returned a short time later to file the remaining CFC Complaints, whose receipt numbers are sequential. Def's Exhs. # 11, 7, 12. Thus, the more reliable circumstantial evidence in this case is overwhelming that the four CFC Complaints filed by Ms. Applegate on December 29 were done so after 11:41 a.m. Moreover, as the Defendant has shown, it is highly unlikely that the *first* District Court complaint filed on December 29 would have been done so after 12 o'clock p.m.

The evidence in this case leads to the inescapable conclusion that the District Court complaint was filed before the Plaintiff's Complaint in this

Court on December 29, 2006, and as such, (even under Plaintiff's interpretation of the term "pending" in 28 U.S.C. § 1500), this Court lacks jurisdiction over the Plaintiff's claims.

Respectfully submitted this 28th day of February, 2008

RONALD J. TENPAS
Assistant Attorney General

*/s/ Kevin J. Larsen*
KEVIN J. LARSEN
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0258
Fax: (202) 353-2021

Attorney of Record for Defendant

OF COUNSEL:

JOHN H. MARTIN
United States Department of Justice
Environment and Natural Resources Division
1961 Stout Street, 8th Floor
Denver, CO 80294
Tel: (303) 844-1383
Fax: (303) 844-1350

THOMAS R. BARTMAN
Indian Trust Litigation Office
Office of the Solicitor
Department of the Interior

1849 C St., N.W.
Washington, D.C. 20240
Tel: (202) 208-5000
Fax: (202) 219-0559

TERESA DAWSON
Office of the Chief Counsel
Financial Management Service
United States Department of the Treasury
Washington, D.C. 20227