IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No. 06-943L<br>Judge Lawrence M. Baskir<br>**Electronically filed on March 6, 2008** |

**PLAINTIFF'S SUPPLEMENTAL REPLY BRIEF OPPOSING DEFENDANT'S MOTION TO DISMISS PURSUANT TO 28 U.S.C. § 1500**

KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
**Kilpatrick Stockton LLP**
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Salt River Pima-Maricopa Indian Community

**INTRODUCTION**

On the factual issue of which Complaint Plaintiff the Salt River Pima-Maricopa Indian Community ("Salt River") filed first -- its Court of Federal Claims ("CFC") Complaint or its District Court Complaint -- this Court has before it Alexis Applegate's live testimony regarding the sequence-of-filing given in three separate actions and her affidavits in those actions, Salt River's Interrogatory Responses, evidence produced through the discovery process, as well as extensive briefing by the parties. In each instance where the sequence-of-filing issue has been addressed, Ms. Applegate's sworn statements and Salt River's arguments have been consistent regarding the order of the seven Complaints Ms. Applegate filed that day. This account of the events of December 29, 2006 is corroborated by documentary evidence in the record.

Judge Hewitt also considered the factual issue of the order in which Ms. Applegate filed Complaints on December 29, 2006 in connection with a Motion to Dismiss Pursuant to 28 U.S.C. § 1500 which Defendant filed in *Ak-Chin Indian Community v. United States*, No. 06-932L. After conducting a lengthy and thoughtful analysis of Ms. Applegate's testimony and the supporting documentary evidence, which is also before this Court, Judge Hewitt found "Ms. Applegate to be a credible witness." *Ak-Chin Indian Community v. United States*, No. 06-932L, 2008 WL 241275, at * 9 (Fed. Cl. Jan. 25 2008). When reaching this conclusion and denying Defendant's motion, Judge Hewitt considered and rejected nearly all of the arguments Defendant reprises here in an attempt to discredit Ms. Applegate's testimony.

In the face of overwhelming evidence generated from three evidentiary hearings and Judge Hewitt's decision, Defendant resorts to accusing Ms. Applegate and Salt River's counsel of "manufacturing," "fabricating" and "concocting" Ms. Applegate's testimony as to the order of the seven filings she completed on December 29, 2006 to meet a purported "post-hoc interpretation of the requirements of 28 U.S.C. § 1500." (Defendant's Post-Evidentiary Hearing Brief In Support of Its Motion to Dismiss Brought Pursuant to 28 U.S.C. § 1500 ("Def. Post Hrg.

Brf.") 4-5.) At the same time it makes these unwarranted allegations, Defendant manufactures its own unsupported theory, ignores undisputed and substantial evidence in the record corroborating Ms. Applegate's testimony and points to evidence which at first may appear to be inconsistent, but as Judge Hewitt found, is easily explained by Ms. Applegate's testimony and other independent evidence in the record.

In short, Defendant's arguments do not controvert the substantial evidence in the record showing that Salt River's District Court action was not pending at the time Salt River filed its CFC Complaint. Therefore, Defendant's Motion to Dismiss should be denied. *See Hardwick Bros. Co. II v. United States*, 72 F.3d 883, 886 (Fed. Cir. 1995); *Ak-Chin*, 2008 WL 241275, at * 9; *Breneman v. United States*, 57 Fed. Cl. 571, 575 (2003), *aff'd*, 97 Fed. Appx. 392 (Fed. Cir. 2004); *Tecon Engineers, Inc. v. United States*, 343 F.2d 943, 949 (Fed. Cl. 1965).[1]

## ARGUMENT

### I. The Documentary Evidence in the Record Supports Ms. Applegate's Testimony.

Defendant points to evidence in the record which it contends is inconsistent with Ms. Applegate's testimony. In fact, each piece of evidence pointed to by Defendant either supports Ms. Applegate's testimony, or is easily reconciled by her testimony and other independent evidence.

[1] Defendant argues in its Post-Evidentiary Hearing Brief that Salt River's December 29, 2006 filings in this Court and the District Court should be treated as simultaneous for the purposes of § 1500 simply because they were filed on the same day and regardless of which Complaint Salt River in fact filed first. (Def. Post Hrg. Brf n. 4.) For the reasons stated in Salt River's Opposition Brief, this interpretation of 28 U.S.C. § 1500 is incorrect. In fact, in *Ak-Chin*, Defendant made the same argument it advances here. Judge Hewitt found that this argument was "without precedential authority" and denied Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 on the ground that Ak-Chin's District Court action was not pending at the time Ms. Applegate filed Ak-Chin's CFC Complaint on the same day. *Ak-Chin*, 2008 WL 241275, at n. 4.

### A. The District Court Docket Sheet Is Consistent with Ms. Applegate's Testimony.

Defendant points to the fact that the Salt River District Court Complaint was the second action filed in the District Court on December 29, 2006 and to Ms. Bosken's 9:26 a.m. e-mail conveying a final Salt River CFC Complaint as purportedly demonstrating that Ms. Applegate filed the District Court Complaint prior to filing the CFC Complaint. Defendant's argument fails to take into account the substantial evidence in the record that Mr. Harper instructed Ms. Applegate to file the CFC Complaints prior to filing the District Court Complaints. Its argument also hinges on the unfounded assumption that the first filing of the day in the District Court on December 29, 2006 had to have occurred prior to 10:30 a.m., when Ms. Applegate estimates she filed the Salt River District Court Complaint.

Ms. Applegate bases her estimate that she filed Salt River's District Court Complaint at 10:30 a.m. on the fact that she received final versions of the CFC Complaints for Salt River, Passamaquoddy and Tohono O'odham at 9:26 a.m., the time it took her to file those Complaints and to travel to the District Court. (*Salt River* Hearing Tr. 24:2-7; *Passamaquoddy* Hearing Tr. 26:24-27:4.) By 9:26 a.m., per Mr. Harper's e-mail instructions, Ms. Applegate already had called the Courts to see if they would be closing early due to the upcoming federal holiday and President Ford's death. (Appx. Ex. 1.) The District Court assured Ms. Applegate that it would not be closing early, while the clerk at the CFC told Ms. Applegate that it could not control what the Chief Judge may decide to do. (*Salt River* Hearing Tr. 22:22-23:2; *Ak-Chin* Hearing Tr. 26:1-9; *Passamaquoddy* Hearing Tr. 16:15-17:3.) Mr. Harper and Ms. Applegate had never filed a Complaint in the CFC and were not as familiar with that Court's processes, whereas they had filed the *Tohono O'odham* Complaint in the District Court the day before and practiced more regularly in the District Court. (*Salt River* Hearing Tr. 23:6-17; *Ak-Chin* Hearing Tr. 27:17-23; *Passamaquoddy* Hearing Tr. 17:6-10; Response to Interrogatories, Response No. 11; Applegate

Aff., ¶ 7 and Ex. C.) Therefore, Mr. Harper instructed Ms. Applegate to file the CFC Complaints as early as possible and before filing the District Court Complaints, so they would have sufficient time to remedy any problems with those filings if a problem were to arise. (*Salt River* Hearing Tr. 23:5-18; *Ak-Chin* Hearing Tr. 27:17-23; *Passamaquoddy* Hearing Tr. 17:4-10; Response to Interrogatories, Response No. 11; Applegate Aff., ¶ 7.) Mr. Harper also recalls these concerns, Ms. Applegate's calls to the courts and giving Ms. Applegate the oral instruction to file the CFC Complaints first. (Response to Interrogatories, Interrogatory No. 11.)

This instruction did not cause any of the District Court filings to be unduly delayed because three of the CFC Complaints were final by 9:26 a.m. (Appx. Ex. 3.) After Mr. Guilder received the 9:26 a.m. e-mail with the final versions of the CFC Complaints, Mr. Guilder printed the three CFC Complaints for Ms. Applegate and Ms. Applegate, with the assistance of other lawyers and support personnel, quickly made copies of the Complaints for filing. (*Passamaquoddy* Hearing Tr. 20:18-22.) Ms. Applegate walked a few blocks to the CFC to file the CFC Complaints for Salt River, Passamaquoddy and Tohono O'odham, which turned out to be a surprisingly quick and uneventful process, and walked back to the office. (*Salt River* Hearing Tr. 55:2-8.) When Ms. Applegate arrived back at the office, the *Salt River* and *Passamaquoddy* District Court Complaints were copied already and ready to go. (*Salt River* Hearing Tr. 55:9-56:1.) Ms. Applegate only needed to take a cab to the District Court. Based on the time it took Ms. Applegate to file the CFC Complaints shortly after 9:26 a.m. and then to travel to the District Court, Ms. Applegate estimates that she filed the *Salt River* and *Passamaquoddy* District Court Complaints at 10:30 a.m. (*Salt River* Hearing Tr. 24:2-7; *Passamaquoddy* Hearing Tr. 26:24-27:4.)[2]

---

[2] Ms. Applegate knows that she followed Mr. Harper's instructions to file the CFC Complaints first because if she had not followed them, she would have informed Mr. Harper and she knows

Ms. Applegate's estimate that she filed the *Passamaquoddy* and *Salt River* District Court Complaints at 10:30 a.m. is consistent with the two complaints being the first filed that day. Lawyers being lawyers, there is no reason to be surprised that the first filing of the day on December 29, 2006 did not occur earlier than 10:30 a.m. In fact, Salt River's counsel visited the District Court clerk's office on a randomly selected day to observe when the first Complaint was filed in that Court. On that day, Salt River's counsel observed that the first Complaint was not filed in the District Court until 11:40 a.m. (*Salt River* Hearing Tr. 86: 14-87:3.) Likewise, Ms. Applegate testified that during her six years as a paralegal, she has completed hundreds of filings in the District Court and she always made these filings in the afternoon "to give as much time as possible to work on the document." (*Salt River* Hearing Tr. 36:21-37:9.) The District Court Complaints Ms. Applegate filed for Passamaquoddy and Salt River were the first, and only, pleadings she has ever filed by 10:30 a.m. (*Id.*) Despite Defendant's suggestion to the contrary, there is nothing implausible about Ms. Applegate having filed the first two Complaints in the District Court at approximately 10:30 a.m.[3]

Defendant also makes much of the fact that Ms. Applegate filed the Salt River CFC Complaint prior to filing its District Court Complaint, when Salt River's District Court Complaint was in final form first. Defendant contends Ms. Applegate's actions are inconsistent with her testimony that she filed complaints as they became ready because she did not want to unduly prejudice tribal clients by delays in completing complaints for other tribes. Defendant

---

that they had no such conversation. (*Salt River* Hearing Tr. 23:18-24:1; *Passamaquoddy* Hearing Tr. 17:11-17; Response to Interrogatories, Response No. 11.)

[3] The timing of these filings is also consistent with what the intake clerk at the District Court told Salt River's counsel and Defendant's counsel – that you cannot make generalizations (such as the one Defendant is making here) about when the first Complaint of a day is filed. (*Salt River Hearing* Tr. 90:11-91:14.) Apparently, Defendant's counsel did not like this response and thus asked somebody else at the District Court if it would be unusual for the first filing to be "close to the lunch hour." (Def. Post Hrg. Brf. at n. 11.) Because 10:30 a.m. is not close to the lunch hour, Defendant's additional proffer is not relevant.

specifically argues that Ms. Applegate's "motivation apparently did not apply with equal force to the firm's representation of its clients' interests with the District Court Complaints." (Def. Post Hrg. Brf. 12.) This argument is flawed for several reasons.

First, Defendant fails to account for the fact that Ms. Applegate and Mr. Harper were most concerned that they were not familiar with the CFC's filing practices and there was the possibility that it may close early that day. This concern fully explains why Ms. Applegate filed Salt River's CFC Complaint first when the Salt River District Court Complaint also was ready to be filed. (*Salt River* Hearing Tr. 23:2-6. ("Q. If the District Court Complaint for Salt River was ready to be filed the evening of December 28, 2006, why did you file the Court of Federal Claims Complaints first? A. Because Mr. Harper instructed me to do it that way.")

Second, Defendant is taking Ms. Applegate's testimony out of context. Ms. Applegate's testimony that she filed the Complaints as they became ready referred to her filings in CFC, which entailed her filing the three CFC Complaints shortly after 9:26 a.m. and later returning to file the *Ak-Chin* CFC Complaint, which was not ready to be filed until after 11:41 a.m., as opposed to filing all four at the same time. (*Salt River* Hearing Tr. 19:15-21; *Ak-Chin* Hearing Tr. 20:3-8; *Passamaquoddy* Hearing Tr. 20:3-15.) Filing the Complaints in the CFC as they became ready is consistent with Ms. Applegate being concerned about the CFC's filing process and that Court potentially closing early that day. Put another way, since the motivation to file the CFC as early as possible was based on, *inter alia*, a concern that Salt River's counsel wanted time to cure any filing mistakes if one were made, it makes perfect sense that you file as soon as some CFC Complaints are ready, even if all are not.

Lastly, Defendant's argument that Ms. Applegate made no effort to file the District Court Complaints as they became ready ignores the undisputed evidence in the form of the District Court log, Ms. Applegate's taxi cab receipts from her trips to the District Court, the District

Court receipts and Ms. Applegate's testimony showing that Ms. Applegate made several trips to the District Court as well. (Appx. Exs. 8-10, 18.) Like the filings Ms. Applegate did in the CFC, Ms. Applegate did not wait for all three District Court Complaints to be ready and file them at the same time. Rather, she filed the *Salt River* and *Passamaquoddy* District Court Complaints first and once it was ready, later returned to the District Court to file the *Ak-Chin* District Court Complaint.[4]

**B. The E-mails Relied Upon by Defendant Do Not Detract from Ms. Applegate's Credibility.**

Defendant further attempts to attack Ms. Applegate's credibility by again pointing to Mr. Harper's December 29, 2006 8:59 a.m. e-mail and the April 23, 2007 e-mails exchanged between Ms. Applegate and Ms. Munson. (Appx. Exs. 11-13.) These e-mails are easily reconciled with Ms. Applegate's testimony. In fact, in *Ak-Chin*, Judge Hewitt considered and rejected the very same arguments Defendant makes here.

Defendant argues that an e-mail Mr. Harper sent Ms. Applegate at 8:59 a.m. on December 29, 2006 telling her to file the District Court Complaints while he made changes to the CFC Complaints is dispositive of the timing issue. Ms. Applegate testified on several occasions, however, that Ms. Applegate was away from her desk getting the complaints ready for filing at the time Mr. Harper sent the e-mail. (*Salt River* Hearing Tr. 24:12-25:8; *Ak-Chin* Hearing Tr. 28:7-10; 30:6-20; *Passamaquoddy* Hearing Tr. 17:18-18:10.) The first time Ms. Applegate remembers seeing the e-mail was in connection with collecting documents for discovery this past Spring. (*Salt River* Hearing Tr. 24:21-25:8; *Ak-Chin* Hearing Tr. 30:6-20.) Ms. Applegate

---

[4] In any event, it is difficult to imagine how Ms. Applegate prejudiced Salt River and Passamaquoddy by filing their District Court Complaints at 10:30 a.m., as Defendant suggests, when Ms. Applegate had confirmation that the Court would not be closing early and was comfortable with its filing practices. Indeed, Ms. Applegate completed the *Salt River* and *Passamaquodd*y District Court filings so early that these Complaints were to first two filings on December 29, 2006.

further explained that after Mr. Harper sent this e-mail, she told him what he she had learned about the Courts closing early. (*Salt River* Hearing Tr. 42:22-43:8; *Ak-Chin* Hearing Tr. 26:1-9; 30:6-20.) It was at that time that Mr. Harper instructed Ms. Applegate to file the CFC Complaints first. (*Id*.)

Judge Hewitt considered this same argument by Defendant in the *Ak-Chin* case. In rejecting the argument, Judge Hewitt pointed to the fact that Mr. Harper recalled orally instructing Ms. Applegate to file the CFC Complaints first. *Ak-Chin*, 2008 WL 241275, at *5; *see also* Response to Interrogatories, Response No. 11. In addition, Judge Hewitt deemed it "important" that Ms. Applegate testified that she did not see the e-mail on the morning of December 29, 2006. *Id.* For those reasons, the Court "credit[ed] Ms. Applegate's testimony describing her activities on the morning of December 29, 2006, in particular that she was away from her desk and working to assemble the complaints." *Id.*

Similarly, Defendant made the same arguments it makes here in *Ak-Chin* regarding two April 23, 2007 e-mail exchanges between Ms. Munson and Ms. Applegate. Judge Hewitt considered and rejected each of those arguments as well.

First, Defendant attacks Ms. Applegate's credibility by claiming an April 23, 2007 e-mail in which Ms. Applegate stated she "thinks she went to the CFC first, but [is] not certain about that" somehow leads to the "logical conclusion" that Ms. Applegate filed Salt River's District Court Complaint first. (Appx. Ex. 13; Def. Post Hrg. Brf. at 14-15.) Ms. Applegate sent this e-mail in response to Ms. Munson's question, nearly four months after the filings, of how to determine what time the Complaints on behalf of Salt River and Passamaquoddy were filed. (Appx. Ex. 12.) Importantly, Ms. Applegate responded to Ms. Munson's question within 15 minutes and prior to reviewing all of the contemporaneous evidence relating to the December 29th filings, which is what Ms. Applegate did before executing the Affidavits and testifying in

this action. (*Salt River* Hearing Tr. 37:3-21.) Ms. Applegate's review of this evidence in fact confirmed that what she originally thought was true – that she had filed the CFC Complaint first. (*Id*.) If anything, this e-mail bolsters Ms. Applegate's credibility because it shows that before conducting any internal investigation, Ms. Applegate independently remembered going to the CFC first.

Defendant also argued in *Ak-Chin* that this April 23, 2007 e-mail demonstrates that Ms. Applegate was unsure of which complaints she filed first on December 29, 2006. Judge Hewitt agreed with Ak-Chin, however, that the e-mail "reflects Ms. Applegate's response to Ms. Munson's question, nearly four months after the filings." *Ak-Chin*, 2008 WL 241275, at *5. Judge Hewitt further agreed with Ak-Chin that it was significant that before Ms. Applegate sent these e-mails, "she had not had the opportunity to refresh as recollection as she did before her October 24, 2007 testimony." *Id.*

Defendant also points to a separate April 23rd e-mail, which Ms. Applegate further sent in response to Ms. Munson's inquiry. This e-mail included the statement that: "As for the CFC, I know I went over and were missing something so I had to come back to the office and get it, but I just don't know what time all of this happened." (Appx. Ex. 12.) Defendant contends that this e-mail cannot be reconciled with the undisputed fact that Ms. Applegate completed all of the CFC filings and dropped of the *Ak-Chin* District Court Complaint by 12:41 p.m. (Def. Post Hrg. Brf. 11.)[5]

---

[5] Defendant's argument here that Ms. Applegate could not have completed the filings by 12:41 p.m. if she had to return again to the CFC because she forgot something directly contradicts Defendant's theory it claims to be the only "plausible version of events" -- that Ms. Applegate went to the CFC, realized she forgot something, filed the *Ak-Chin* CFC Complaint, returned to her office and then returned to file the remaining three CFC Complaints. (Def. Post Hrg. Brf. 31.) What is clear, is that Defendant is trying anything and everything, even arguments that contradict its own "only plausible version of events", to cast doubt on Ms. Applegate's credibility.

Ms. Applegate explained at the December 10, 2007 hearing, however, that after having sent this immediate response to Ms. Munson's informal inquiry within minutes of receiving the e-mail, Ms. Applegate realized she had confused the trips she made to the CFC on December 29, 2006 with a separate and completely unrelated trip to the CFC during which she learned she was missing something. (*Salt River* Hearing Tr. 36:13-37:2; *Passamaquoddy* Hearing Tr. 34:10-35:1.) Ms. Applegate made this later and unrelated trip to the CFC in January 2007 to submit admissions packets for Mr. Austin and another Kilpatrick Stockton attorney. (*Id*.) Therefore, the visit to the CFC during which Ms. Applegate learned she was "missing something" did not transpire on December 29, 2006. (*Id*.)

Defendant also attempted to cast doubt on Ms. Applegate's credibility based on this e-mail in the *Ak-Chin* case. In response, Judge Hewitt noted that Ms. Applegate's "testimony has remained consistent regarding the sequence of filing." *Ak-Chin*, 2008 WL 241275, at *6. Judge Hewitt then adopted Ms. Applegate's explanation at the *Salt River* Hearing that the reference to "missing something" referred to a later and unrelated trip to the CFC. *Id.*

## II. Defendant's Theory Based on the Receipt Numbers Issued by the Court of Federal Claims Is Without Evidentiary Foundation.

In a further attempt to cast doubt on Ms. Applegate's credibility, Defendant manufactures its own theory. Defendant takes the untenable position that the receipt numbers associated with the Complaints Ms. Applegate filed in the CFC on December 29, 2006 reflect the order in which Ms. Applegate filed the Complaints. Based on this false premise, Defendant resurrects its theory, which Judge Hewitt previously rejected, that Ms. Applegate went to the CFC to file all four CFC Complaints after 11:14 a.m. (based on Justin Guilder's 11:41 a.m. e-mail to Edward Roybal showing that the *Ak-Chin* CFC Complaint was not yet final), realized that she was missing something, filed the *Ak-Chin* CFC Complaint, returned to Kilpatrick Stockton LLP's offices, and then returned to the CFC to file the three remaining CFC Complaints by 12:41 p.m. (Def. Post

Hrg. Brf. 31.) Without even accounting for Ms. Applegate having to file the three District Court Complaints, Defendant argues that its theory "is the only plausible version of events." (*Id.*) In reality, Defendant has presented a theory that is impossible to square with the evidence in the record.

**A. The Receipts Issued by the CFC In Connection with the Filing of a Complaint Do Not Reflect the Order of the Filing of those Complaints.**

First, Defendant's argument is based on the false premise that receipts issued by the CFC in connection with the filing of Complaints reflect the order of filing within any given day. Ms. Lisa Reyes, the CFC Chief Deputy Clerk, explained at the December 12, 2007 Status Conference that you cannot determine by looking at the receipt numbers the order a particular complaint was filed, even when the filer of the Complaint receives a receipt at the time of filing. (December 12th Hearing Tr. 9:1-10; 14:14-22; 18:21-23.) Ms. Reyes also explained that an unusual number of filings within a given day may cause a "back-log" which would account for receipt numbers associated with Complaints being out of order. (December 12th Hearing Tr. 8:1-25; 22:3-19.) When asked if 21 Complaints in a single day -- the number of Complaints filed in the CFC on December 29, 2006 -- would be considered a significant number of Complaints, Ms. Reyes responded: "For us, yes." (December 12th Hearing Tr. 10:4-8.)

Moreover, even if Ms. Reyes had testified that the CFC receipts associated with Complaints reflect the order of the filing of the Complaints within a given day when a filer receives a receipt at the time of filing, Ms. Applegate has testified -- and Salt River's Interrogatory Responses make clear -- that Ms. Applegate did not receive a receipt at the time she filed the CFC Complaints for Salt River, Passamaquoddy and Tohono O'odham. (Response to Interrogatories, Interrogatory No. 2; *Passamaquoddy* Hearing Tr. 22:23-25:11.) Ms. Applegate testified that she knows she did not receive receipts at the time she filed those three CFC Complaints because the receipts have post-its on them reflecting judicial assignments.

(Appx. 15 and 16; *Id*.) Ms. Applegate knows that her team did not learn which judges had been assigned to the CFC actions until January 3, 2008, based on e-mail exchanges of that date wherein Mr. Harper asks if they had received judicial assignments yet and Ms. Applegate informs Mr. Harper that they received their first assignments that day. (Appx. Ex. 17; *Passamaquoddy* Hearing Tr. 24:12-22.) Ms. Reyes also confirmed at the December 12, 2007 Status Conference that the CFC places the post-its with the judicial assignments on the receipts. (December 12th Hearing Tr. 30:4-16.)

In response to this substantial evidence, Defendant contends that Ms. Applegate must have received receipts with the post-its reflecting judicial assignments at the time she filed the CFC Complaints. This argument makes no sense in light of Ms. Applegate's testimony and Mr. Harper's January 3, 2008 e-mail showing that as of that date, Kilpatrick Stockton LLP had not yet received anything from the CFC showing that a judicial assignment had been made. (*Passamaquoddy* Hearing Tr. 24:12-25:1.)

Defendant further argues that Ms. Reyes' statement that December 29, 2006 was an usually busy day for the CFC, which could have caused the receipts to be out of order, cannot be reconciled with Ms. Applegate's recollection that the filings at the CFC went quickly. Ms. Reyes' testimony makes clear, however, that the process which causes the receipts to be out of order due to a back-log of complaints occurs after the filer has left the Complaints to be filed. (December 12th Hearing Tr. 27:15-17;8:1-25; 22:3-19.) Therefore, Ms. Applegate's testimony that the CFC filings went quickly is consistent with her testimony that she did not wait for a receipt to be issued.

### B. Defendant's Theory Is Impossible to Square with the Evidence in the Record.

Second, Defendant's theory cannot account for Ms. Applegate's filing of the District Court actions, in particular her filing of the *Ak-Chin* District Court Complaint. In devising its

theory, Defendant fails to take a position as to whether Ms. Applegate filed the *Ak-Chin* District Court Complaint before, or after, Ms. Applegate filed the four CFC Complaints. Upon review of the evidence, it is apparent that Defendant chose not to stake out a position on when Ms. Applegate filed the *Ak-Chin* District Court Complaint under its theory because -- whether she did it before or after -- Defendant's theory cannot be reconciled with undisputed evidence in the record.

Defendant cannot argue under its theory that Ms. Applegate filed the *Ak-Chin* CFC Complaint and then returned to file the other three CFC Complaints ***before*** she filed the *Ak-Chin* District Court Complaint because she would not have had time to complete all of these filings within one hour. That is, based on contemporaneous e-mails, it is not disputed that the *Ak-Chin* CFC Complaint was not complete as of 11:41 a.m. and that by 12:41 p.m. Ms. Applegate had left all the Complaints with the CFC and District Court, but was waiting for a summons for the *Ak-Chin* District Court Complaint. (Appx. Exs. 5 and 6; *Salt River* Hearing Tr. 26:21-28:9; *Ak-Chin* Hearing Tr. 43:12-20; *Passamaquoddy* Hearing Tr. 29:21-30:23.) Therefore, if Ms. Applegate filed the *Ak-Chin* District Court Complaint after she filed the Ak-Chin CFC Complaint, she had to do so by 12:41 pm. Defendant is offering a scenario in which Ms. Applegate would have had to not only complete the filing of the *Ak-Chin* CFC Complaint and left the *Ak-Chin* District Court Complaint with the District Court between 11:41 a.m. and 12:41 p.m., but also would have had to file the *Salt River*, *Passamaquoddy* and *Tohono O'odham* Complaints in an additional trip to the CFC due the fact that she purportedly was missing something.

During cross-examination on December 10, 2007, Ms. Applegate testified at length about the tasks required to complete the filing of the Complaints in the CFC and District Court and the time it took to complete those tasks. (*Salt River* Hearing Tr. 47-65.) While Ms. Applegate's testimony makes it clear that she worked quickly and efficiently to accomplish the filings of the

*Ak-Chin* CFC Complaint and *Ak-Chin* District Court Complaint between 11:41 a.m. and 12:41 p.m., it is also is evident from her testimony that she would not have been able to complete an additional and separate trip to the CFC during that hour, which is what Defendant's theory requires her to do. (*Id.*) Thus, Defendant's theory is not only unsupported, but it is also impossible to square with the evidence in the record.

Indeed, in its latest brief, Defendant takes the position that it was impossible for Ms. Applegate to complete the filing of the *Ak-Chin* CFC Complaint and the *Ak-Chin* District Court Complaint between 11:41 a.m. and 12:41 p.m. (Def. Post Hrg. Brf. 27-30.) Based on its own theory, however, during that hour Ms. Applegate also would have to return to the office to retrieve whatever she was missing and go back to the CFC to file three additional CFC Complaints. Defendant's purported only "plausible version of events" fails on its own.

Defendant cannot argue that Ms. Applegate completed the *Ak-Chin* CFC filing ***after*** she filed the *Ak-Chin* District Court Complaint either. That theory requires this Court to reject Judge Hewitt's principal holding in *Ak-Chin*. That is, Judge Hewitt denied Defendant's Motion to Dismiss based on her finding that Ms. Applegate filed the Ak-Chin CFC Complaint ***before*** Ms. Applegate filed the *Ak-Chin* District Court Complaint.

Judge Hewitt's finding in *Ak-Chin* that Ms. Applegate filed the *Ak-Chin* CFC Complaint before she filed the *Ak-Chin* District Court Complaint is based upon substantial evidence in the record. Defendant has never disputed Ms. Applegate's recollection that her last trip of the day in connection with filing a Complaint was to the District Court. Ms. Applegate's recollection is based, in part, on her remembering giving a security guard at the District Court a high five when she completed all of her filings that day. (*Ak-Chin* Hearing Tr. 12; 15-16.) This recollection is also supported by Ms. Applegate's December 29, 2006, 12:41 p.m. e-mail to Bill Austin explaining that she had finished the filings but had to retrieve a summons, a document only

needed in the District Court. (Appx. Ex. 6.)[6] Moreover, the District Court docket shows that the *Ak-Chin* District Court Complaint was the last District Complaint that Ms. Applegate filed on December 29, 2006. (Appx. Ex. 18.) These undisputed facts lead to the inescapable conclusion that the last action Ms. Applegate filed on December 29, 2006 was the *Ak-Chin* District Court action, the action assigned the highest civil action number, which necessarily means that she filed Ak-Chin's District Court Complaint after she had filed the *Ak-Chin* CFC Complaint.

In sum, Defendant's theory is so tenuous that it requires this Court to reject: (1) Ms. Reyes' statements to this Court at the December 12, 2007 Status Conference that the receipts issued by the CFC do not reflect the order of filing of Complaints; (2) Defendant's own argument that Ms. Applegate could not have completed multiple filings between 11:41 a.m. and 12:41 p.m. or Judge Hewitt's holding that the *Ak-Chin* District Court action was not pending when Ms. Applegate filed the *Ak-Chin* CFC Complaint; (3) Ms. Applegate's live testimony in this action, *Ak-Chin* and *Passamaquoddy* as to the order of the seven filings; and (4) Salt River's Interrogatory Responses and the Interrogatory Responses filed by Ak-Chin and Passamaquoddy, all of which Mr. Harper verified. Defendant's "only plausible version of events" is baseless.

Defendant further fails to explain one obvious logical error in its theory. That is, Defendant contends that based on the receipt numbers, Ms. Applegate went to the CFC to file all four CFC Complaints at the same time, but learned she was missing something, filed the *Ak-Chin* CFC Complaint and then returned later to file the CFC Complaints for Salt River, Passamaquoddy and Tohono O'odham. Defendant fails to explain, however, why Ms. Applegate would be able to file the *Ak-Chin* CFC Complaint, but not the other three CFC Complaints. What could Ms. Applegate possibly have needed for the *Salt River*, *Passamaquoddy* and *Tohono*

[6] Under the RCFC 4, Salt River was not required to effectuate service of the CFC Complaint on the United States. *See* RCFC 4 ("Service of the complaint upon the United States shall be made through the delivery by the clerk to the Attorney General . . . of copies of the complaint . . . the date of service shall be date of filing with the clerk.").

*O'odham* CFC Complaints, but not for the *Ak-Chin* CFC Complaint? Considering that the only documents needed to file Complaints in the CFC consist of seven copies of the Complaints, a cover sheet and filing fee, all of which Ms. Applegate had prepared the day before, Defendant's theory simply does not make sense. (*Salt River* Hearing Tr. 43:13-14; 51:2-9; *Passamaquoddy* Hearing Tr. 21:7-22.)

Lastly, Defendant's theory has been squarely rejected. At the hearing in this action, Ms. Applegate specifically denounced the possibility that she filed the CFC Complaints in the order now proposed by Defendant. (*Salt River* Hearing Tr. 79:3-81:6.) In addition, in *Ak-Chin*, Judge Hewitt refused to adopt Defendant's theory that the order of filings can be linked to the CFC receipts. In rejecting this argument, Judge Hewitt pointed to Ms. Reyes' unequivocal testimony that the CFC receipts do not reflect the order of the filing of Complaints on any given day. *Ak-Chin*, 2008 WL 241275, at *7.

## III. There Is No Evidence Disputing Ms. Applegate's Testimony Regarding the Timing of her Filing of the Ak-Chin Complaints.

Despite having had the opportunity to put evidence into the record by cross-examining Ms. Applegate in Court regarding the time it took her to accomplish the filing of the *Ak-Chin* CFC Complaint and to make her first trip to the District Court to attempt to file the *Ak-Chin* District Court Complaint, Defendant's counsel chose not to question Ms. Applegate on this subject. Instead, Defendant's counsel questioned Ms. Applegate about how long it took her to file every other complaint she filed that day. Nonetheless, in its latest brief, Defendant engages in rampant speculation about the time it took Ms. Applegate to file the *Ak-Chin* CFC Complaint and District Court Complaint to argue she could not have completed those filings in one hour. Defendant's recitation of the events occurring between 11:41 a.m. and 12:41 p.m. is not supported by any evidence and is based on nothing more than pure speculation, so much so that Defendant admits that it is only "hypothetical." (Def. Post Hrg. Brf. 30). When Defendant made

this same "warp speed" argument in the *Ak-Chin* matter, Judge Hewitt aptly described it as "simply not supported by the record and [] speculative." *Ak-Chin*, 2008 WL 241275, at *8.

That Ms. Applegate filed the *Ak-Chin* CFC Complaint and *Ak-Chin* District Court Complaint between 11:41 a.m. and 12:41 p.m. is supported by Ms. Applegate's sworn testimony and e-mails that she sent at the time she completed these tasks. There is nothing inherently or physically impossible about her having proceeded in that manner.

Moreover, while Defendant's counsel failed to cross-examine Ms. Applegate about how long it took her to complete the filing of the *Ak-Chin* CFC Complaint and the *Ak-Chin* District Court Complaint, he did cross-examine her about how long it took her to complete some of the tasks for her earlier filings in the CFC and District Court. Based on the time it took Ms. Applegate to complete the tasks necessary for those filings, it is apparent that Ms. Applegate was able to complete the filing of the *Ak-Chin* CFC Complaint and *Ak-Chin* District Court Complaint between 11:41 a.m. and 12:41 p.m. as she testified. (*Salt River* Hearing Tr. 49:8-20; 52:13-14; 55:2-8; 56:5-8.) While Defendant's counsel did not elicit time estimates for each and every task Ms. Applegate completed in connection with the filings, it is clear that based on the tasks addressed -- namely, that it only took five to ten minutes to get the Complaints ready for filing, five minutes to walk to the CFC and five to ten minutes to take a cab to the District court -- that it was not impossible for Ms. Applegate to complete the filings as she testified. (*Id*.) For these reasons, contrary to what Defendant argues again here, Judge Hewitt found that Ms. Applegate's recitation of events was not "implausible or inconsistent with the record." *Ak-Chin*, 2008 WL 241275, at *9.

In any event, these filings occurred after Ms. Applegate had completed the filings of the Salt River Complaints in both courts. Therefore, this argument has little bearing on the issue before this Court.

**IV. Defendant's Accusations that Plaintiff "Manufactured" a "Multiple-Trip Theory" Are Baseless.**

Defendant brazenly accuses Salt River's counsel of "manufactur[ing] its theory as to the sequence of the CFC filings on December 29, 2006 in order to pass muster under its understanding of the analysis enunciated in *Breneman*." (Def. Post Hrg. Brf. at p. 15.) As the record demonstrates, Defendant's accusations are utterly inappropriate and completely unfounded.

Defendant bases its argument that Salt River's counsel has concocted the events of December 29, 2006, in part, on the false premise that Salt River is relying upon an April 23rd e-mail to demonstrate that Ms. Applegate made two trips to the CFC. This simply is not true. Salt River relies upon Ms. Applegate's live testimony in ***three*** separate actions that she made two trips to the CFC. Salt River only pointed to Ms. Applegate's April 23rd e-mail explaining that she had to go to the CFC twice as confirmation that Ms. Applegate's recollection that she made two trips on the to file the CFC Complaints was correct. As explained earlier, Ms. Applegate's reference in that e-mail to "missing something," had nothing to do with the December 29th filings, but instead related to the trip she made to the CFC clerk's office in January 2007 to submit applications for Mr. Austin and another Kilpatrick Stockton LLP lawyer to be admitted to practice in the CFC.

Defendant also reprises its argument that Salt River's counsel took an inconsistent position in the *Ak-Chin* case by arguing that Ms. Applegate was "missing something" in connection with the *Ak-Chin* CFC filing. This accusation is a product of a misreading of Ak-Chin's Reply Brief which in fact argued that Ms. Applegate was **<u>not</u>** "missing something" in connection with the Ak-Chin filing in the CFC or any other filing that day. (Appx. Ex. 14.) In its Supplemental Brief Opposing Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 ("Plaintiff's Supp. Brf."), Salt River fully explains the argument Ak-Chin made and it will not

reiterate it here. (Plaintiff's Supp. Brf. 26-28.) It is important to note, however, that Defendant raised this same argument in *Ak-Chin* and as evidenced by Judge Hewitt's ruling in Ak-Chin's favor, Defendant's argument did not persuade her.

Defendant also bases its theory that Salt River's counsel has fabricated the order of the seven filings in large part on its argument that Ms. Applegate's filing of the CFC Complaints before the District Court Complaints "is particularly peculiar" given that Salt River's counsel was unaware of 28 U.S.C. § 1500 at the time of the filing of the Complaints. (Def. Post Hrg. Brf. n. 13.) While it is true that Salt River's counsel candidly admit that he was not aware of 28 U.S.C. § 1500 at the time of the filing, Defendant's argument fails in light of substantial evidence in the record that Mr. Harper instructed Ms. Applegate to file the CFC Complaints prior to filing the District Court Complaints due to a concern that the CFC would be closing early and not ever having filed a Complaint there.

Again, by distorting Salt River's arguments in this case, Defendant has resurrected the same arguments that Judge Hewitt thoughtfully considered and rejected in *Ak-Chin*. With the same evidence before her that has been submitted in this case, Judge Hewitt held as follows:

> The Court finds Ms. Applegate to be a credible witness. Plaintiff's time-line for the filing for the filing of plaintiff's Court of Federal Claims complaint and District Court complaint is not implausible or inconsistent with the record. Possible discrepancies between statements in e-mail and answers to interrogatories and testimonial evidence were explained.

*Ak-Chin*, 2008 WL 241275, at *9.

## V. There Is Overwhelming Evidence In the Record that Ms. Applegate Filed Salt River's CFC Complaint Prior to Filing the District Court Complaint.

The evidence in the record demonstrating that Ms. Applegate filed Salt River's CFC Complaint prior to filing its District Court Complaint is substantial. This evidence consists of Ms. Applegate's Affidavits, Salt River's Interrogatory Responses, Ms. Applegate's live testimony on October 24, 2007, December 10, 2007 and February 1, 2008, e-mails Ms.

Applegate sent at the time of the filings, as well as other evidence generated from the filings. Defendant has not directly contested this evidence, some of which is as follows:

- Mr. Harper sent an e-mail at 9:44 p.m. on Thursday, December 28, 2006, asking Ms. Applegate to determine if the Courts were closing early the next day because of President's Ford's death and December 29, 2006 was the Friday before New Year's. (Appx. Ex. 1.)

- Mr. Harper and Ms. Applegate had filed an action in the District Court initiating an action on behalf of Tohono O'odham on December 28, 2006. (*Salt River* Hearing Tr. 23:6-17; *Ak-Chin* Hearing Tr. 27:17-23; *Passamaquoddy* Hearing Tr. 17:6-10; Response to Interrogatories, Response No. 11; Applegate Aff., ¶ 7 and Ex. C.)

- Ms. Applegate learned that the District Court would not close early, but the CFC did not guaranty that it would not. This uncertainty, coupled with their never having filed a complaint in the CFC, but having filed one in the District Court, prompted Mr. Harper to instruct Ms. Applegate to file the CFC Complaints first. (*Salt River* Hearing Tr. 22:22-23:2; *Ak-Chin* Hearing Tr. 26:1-9; *Passamaquoddy* Hearing Tr. 16:15-17:3.)

- Mr. Harper recalls orally instructing Ms. Applegate to file the CFC Complaint prior to filing the District Court action. (Responses to Interrogatories, Response No. 11.).

- Ms. Bosken conveyed final versions of Salt River's CFC Complaint at 9:26 a.m. (Appx. Ex. 3.)

- Ms. Applegate consistently represented that she followed Mr. Harper's instructions to file the Salt River CFC Complaint prior to filing the Salt River District Court action, through her Affidavits, Salt River's Interrogatory Response and her testimony in the three actions.

Defendant's numerous false and desperate accusations that Salt River fabricated its story, which in and of themselves contradict each other, are insufficient to controvert Salt River's showing that its District Court action was not pending at the time Salt River filed its CFC Complaint.

## **CONCLUSION**

Accordingly, for the reasons stated herein and in Salt River's Opposition to Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 and Plaintiff's Supplement Brief Opposing Defendant's Motion to Dismiss, Defendant's Motion to Dismiss should be denied.

Respectfully submitted this 6th day of March, 2008.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail cmunson@kilpatrickstockton.com
**Kilpatrick Stockton LLP**
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
Salt River Pima-Maricopa Indian Community

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Plaintiff's Supplemental Reply Brief Opposing Defendant's Motion to Dismiss Pursuant to 28 U.S.C. § 1500 was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Kevin J. Larsen, Esq.
Natural Resources Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663

This 6th day of March, 2008.

/s/ Keith Harper

KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
E-mail: cmunson@kilpatrickstockton.com
**Kilpatrick Stockton LLP**
607 14th Street, N.W.
Washington, D.C. 20005
Tel: (202) 508-5800
Fax: (202) 505-5858

*Attorneys for Plaintiff*
The Salt River Pima-Maricopa Indian Community