IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06-943L |
| v. | ) | Judge Lawrence M. Baskir |
| | ) | Electronically Filed 05/22/08 |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**JOINT STATUS REPORT**

Plaintiff Salt River Pima-Maricopa Indian Community ("the Community") and Defendant United States (collectively, "the parties"), through the undersigned counsel, hereby submit this Joint Status Report pursuant to the Court's order dated April 24, 2008.

## I. BACKGROUND AND SUMMARY OF PRIOR DEVELOPMENTS.

Seventeen months ago, the Community filed a four-count Complaint in this action setting forth claims for money damages arising from the United States' breach of trust duties. The Complaint filed on December 29, 2006 alleged the breach of money-mandating fiduciary duties causing damage to the Community by Defendant's failing to appropriately (1) manage and collect proceeds from the Community's surface and mineral estates; (2) manage and collect proceeds from the Community's non-

mineral estates including, but not limited to, easements, rights-of-way and leases; (3) manage and invest the Community's judgment funds; and (4) manage, deposit and invest the Community's trust funds.

The United States filed an answer denying liability on March 27, 2007. Among the defenses raised in its responsive pleadings, Defendant asserted that this action was barred under 28 U.S.C. § 1500 by the Community's having filed an action for an equitable accounting in the United States District Court for the District of Columbia on the same day that this action was initiated.

## A. Plaintiff's Introductory Statement

### 1. **The Joint Preliminary Status Report Reflecting the Parties' Conflicting Case Management Views.**

Following the Early Meeting of Counsel on April 27, 2007, the parties submitted a 44-page Joint Preliminary Status Report ("JPSR") on May 11, 2007. The JPSR revealed that the parties were sharply divided at that time over how the litigation should proceed.

The Community proposed in the JPSR filed a year ago that the Court issue a case management order which would permit the parties a total of 13 months to complete fact and expert discovery before again appearing before the Court to discuss further proceedings (except where necessary to resolve discovery disputes). Then, as now, the Community believed such

an approach to be fully consistent with the stated intent of Appendix A of the CFC Rules to utilize case management procedures that "minimize the cost and delay of litigation," as well as with the Court's other governing rules. *See, e.g.,* Ct. Fed. C. R. 1 ("These rules . . . shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"). *See* JPSR at 2-3 and 34-38.

It was the United States' contrary position, however, that no such discovery should be allowed until after the Court had ruled on the Section 1500 issue. *See* JPSR at 39. Moreover, even in the event the action was not dismissed on those grounds, the United States urged that discovery thereafter be permitted in only a "phased" manner. *See* JPSR at 39-42.

Following a 360-day "Phase One" period for limited fact discovery under Defendant's proposed plan, the Community would then be required to file "a more specific statement of its claims." *See* JPSR at 41. A "Phase Two" discovery period of 90 days would then follow under Defendant's proposition, permitting the United States to conduct any further fact discovery it might deem necessary to support additional jurisdictional challenges (*e.g*., statute of limitations, etc.) to be presented within 60 days of the close of this second phase of pre-trial discovery. *See id*.

Under Defendant's proposed plan, expert discovery would be permitted to take place only after the Community had made a more specific statement of its trust mismanagement claims, and only then in the event that any of Plaintiff's claims survive the additional dispositive motions Defendant would be permitted to file after the "Phase Two" discovery comes to a close. And even in the final "Phase Three" period for expert discovery, Defendant would not be required to disclose its experts and their opinions until at least 120 days after the Community's expert disclosures are made. See JPSR at 41-42.

**2. <u>The June 25, 2007 Preliminary Status Conference.</u>**

Eleven months ago, the Court addressed the parties' competing discovery plans during a one-hour telephone conference with counsel for the Community and the United States.

Regarding the government's proposal calling for three different phases of discovery, the Court observed: "[I]t seems to me the first phase of discovery would necessarily encompass the other two phases." (6/25/07 Tr. at 37). Moreover, when government counsel then suggested that the "phased" approach made sense because "from our experience . . . it's not until late in the game that we really get the specifics of what the claims are," (*Id*. at 38), the Court pointed out that: "Of course, the tribe itself

doesn't know what particular claims it wants to make until it gets the other information as well." (*Id*. at 39.)

However, this key difference in the parties' respective approaches to discovery in this case were not resolved during the preliminary status conference. *See id.* at 39 ("[w]e'll have to chew on this one"). Instead, the Order issued on June 26, 2007 allowed discovery for the limited purpose of deciding the United States' jurisdictional challenge under 28 U.S.C. § 1500. Specifically, the Defendant was permitted to serve written discovery on the Community for the purpose of obtaining further information regarding the sequence in which the same-day filings in this Court and the District Court had been made on December 29, 2006. A schedule for the filing and briefing of Defendant's motion to dismiss on Section 1500 grounds was also established. Per the Court's Order of eleven months ago, all other proceedings were held in abeyance until the § 1500 issue is decided. *See* 6/26/07 Order at 1.

### 3. **<u>The Section 1500 Proceedings That Have Now Been Resolved.</u>**

In accordance with the June 26, 2007 Order, the discovery conducted in this case following the Preliminary Status Conference was limited to the Section 1500 issue.

Defendant served interrogatories and requests for production on July 2, 2007, which the Community timely answered on August 2, 2007. More than 200 pages of responsive material were produced to Defendant's counsel, along with the sworn declaration of the KS paralegal (Alexis Applegate) who made both of the case filings on the date in question. Ms. Applegate also later testified at the evidentiary hearing the Court conducted on December 10, 2007 to consider the sequence-of-filing issue. She provided similar testimony during the evidentiary hearings conducted in two other tribal trust cases also involving same-day filings in this Court and the District Court – in Ak-Chin (06-932L) and Passamaquoddy (06-942L).

On April 24, 2008, this Court denied the United States' motion to dismiss on 28 U.S.C. § 1500 grounds. After carefully reviewing the evidence of record regarding the sequence-of-filing issue, including information derived from the discovery the Court had permitted Defendant to conduct and Ms. Applegate's testimony on the subject, the Court concluded: "Plaintiff has proved by a preponderance of the evidence that the CFC complaint was the first of the *Salt River* Complaints filed on December 29, 2006 . . . Section 1500 therefore does not apply and does not preclude our jurisdiction over Plaintiff's claims." See 4/24/08 Opinion and Order at 18.

With the United States' threshold jurisdictional challenge resolved in the Community's favor, the parties are in agreement that the necessary "next step" in this case is the Court to enter an additional case management order permitting discovery as to their claims and defenses. Both sides also concur that a period for factual discovery should be next in order.

These areas of agreement were confirmed during a meeting of counsel for the parties which took place on May 14, 2008.

During that same May 14 meeting, however, other areas of continuing disagreement were identified. For example, the parties remain divided over whether the further discovery in this case should proceed in a single, "non-phased" fashion as the Community proposes, or whether it should be divided instead into three separate phases as the United States urges.

Then too, Defendant has renewed the proposal that the Community be required to make a "detailed statement" of its trust mismanagement claims and that it do so *before* expert discovery is allowed – thereby seeking to impose an additional requirement on this tribal litigant that is nowhere to be found in the CFC Rules and that will only serve to add to the length of this already protracted litigation.

The parties' remaining differences in approach to these and other case management issues are addressed below and in Section II of this Joint Status Report. In addition, further developments regarding other issues inquired about by the Court during the June 25, 2007 Preliminary Status Conference are addressed in Section III, and this Report concludes (in Section IV) with the joint request of counsel for the parties for an "in-person" conference with the Court to consider the parties' respective proposals for discovery and resolve their remaining differences.

#### 4. **Plaintiff's Comment Regarding Defendant's Separate "Introductory Statement."**

Counsel for the Community had prepared the foregoing "Background and Summary" sections of this Report with the expectation that it would serve as the parties' *joint* statement concerning prior developments in this case. After the close of business on May 21, 2008, however, Plaintiff's counsel was advised that due to "several items that Defendant could not sign on to as a joint statement," counsel for the United States would be making a separate "Defendant's Introductory Statement." It is that submission which follows in Section I.B. below.

Although styled as an "Introductory Statement," it is actually a detailed recitation of Defendant's case management contentions that are repeated in a later section of the Joint Status Report (under the Section II

heading "The Parties' Proposals for Further Proceedings in this Case"). These same contentions also were included in the JPSR the parties filed with the Court a year ago, and they were responded to point-by-point by Plaintiff in that prior submission to the Court.

Rather than re-state all of the Community's point-by-point responses here (and wind up creating a "Joint Status Report" far longer than the 44-page submission jointly made by counsel in May 2007), counsel for Plaintiff offers the following prefatory comment regarding the approach to case management that the United States continues to advocate. And that is that much of what Defendant is asking the Court to schedule and otherwise address at this stage of the litigation is *premature*.

There is no reason to establish a schedule for the filing of dispositive motions which Defendant may or may not be in a position to assert more than a year from now when – by the government's own admission – discovery must first be conducted to determine whether the facts supporting any such motions even exist. If in the course of pre-trial discovery, Defendant develops evidence of record which it believes in good faith may support one or more of the defenses to liability it has asserted, it can so advise the Court after discovery is completed and the Court holds the "Post-Discovery Conference" contemplated under Appendix "A" to the

CFC's Rules. That would be the appropriate time for Defendant to request a schedule for presenting its Rule 56 motion – not now. That is precisely what the case management procedures embodied in Appendix "A" call for. And that is what the Community's proposed case management order would put in place in this case by creating a 15-month period for completing discovery that could conceivably put one or both of the parties in a position to identify issues to be resolved by dispositive motion rather than by trial.

But until discovery is completed and the evidence of record necessary to support any such dispositive motion actually exists, a case management order along the lines of what Defendant is proposing is completely unnecessary. In addition, the Community fundamentally disagrees with the approach Defendant proposes; but there is no need for this Court to resolve those issues now rather than after discovery when the parties will be far better informed of the record evidence. Put simply, Defendant is asking the Court to make what at this point in time are unfounded assumptions about how this case may be expected to proceed a year or two from now. There is no need for the Court to accept the invitation to speculate about such matters when the CFC's case management procedures recognize that the better, more sensible approach

is to identify and schedule such issues for further proceedings only ***after*** both factual and expert discovery have been completed.[1]

Nor can Defendant's contrary approach to case management be justified based on any sort of preliminary assessment of the Community's claims or the government's so-called "jurisdictional defenses." As addressed in greater detail in Section II.A.2 below, Plaintiff's trust fund and asset mismanagement claims do not present novel legal concepts. To the contrary, the existence and money-mandating nature of the trust duties claimed to have been breached by the United States as the Community's trustee are well-established.

[1] Indeed, during the May 14 meeting, Defendant's counsel argued that in light of a Petition for Certiorari filed by the government in *United States v. Navajo Nation*, No. 07-1410, the law governing the Community's claims may well change in a year's time. This possibility noted by Defendant itself illustrates precisely why it makes no sense to lock into a process where neither the Court nor parties know the legal landscape or what discovery will uncover. It will be in a far better position to evaluate where things are at the close of the initial discovery period during the post-discovery conference provided for in Appendix A. At that point, we will know if there have been any legal developments. We will know what the evidence developed during discovery shows. The parties and the Court will be in a far superior position to decide what the appropriate next step should be. It may well be that it is appropriate at that juncture for the parties to file dispositive motions. But it is not likely Defendant will be the only one to do so. The Community very well may be in a position to file a motion for summary judgment at that time. But the most important point is that there is no reason that, at this early stage, this Court should tie itself and the parties to a procedure two years hence that may or may not fit the posture of this case at that future date.

So too, most of the legal issues relevant to Defendant's asserted defenses have already been adjudicated in other tribal trust litigation and resolved in the tribal plaintiffs' favor. *See, e.g.*, *Chippewa Cree Tribe v. United States*, 69 Fed. Cl. 639, 664 (2006) (holding that under the Federal Circuit's *Shoshone* opinion, the statute of limitations does not begin to run "*until the claimant is provided with a meaningful accounting*" and that the financial reports provided by the government did not constitute a "meaningful accounting" (emphasis in original)); *Osage Tribe v. United States*, 57 Fed. Cl. 392, 398 (2003) (rejecting the United States' contention that the plaintiff tribe's claims were within the exclusive jurisdiction of the Indian Claims Commission by concluding it to be well-established that "claims that concern 'losses to or mismanagement of trust funds,' . . . are not bound by the ICC Act") (citation omitted).

In short, there is no reason for the Court to adopt Defendant's "phased" discovery concept or similar elements of the United States' case management plan. Proceeding with discovery on a piecemeal basis will only delay the effort of the Court and the parties to get to the point in this litigation where informed decisions can be made about the factual and legal issues that are presented and the best way to resolve them. And scheduling dispositive motions in anticipation of the outcome of discovery

not yet initiated (or worse still, based on what Defendant hopes might result from the requiring a more detailed statement of Plaintiff's claims) is clearly putting the cart before the horse. For these and other reasons outlined in Section II.A below, Defendant's case management approach represents a significant departure from this Court's authorized procedures and it should not be adopted here.

## B. Defendant's Introductory Statement[2]

It is the Defendant's position that a JSR should be utilized by the parties as a vehicle to briefly describe the "factual and legal issues, claims and defenses sufficient to acquaint the Court with the general nature of the case." SPO, 3. While the JSR is the appropriate forum for the parties to identify potentially dispositive issues, claims and/or defenses, it should not however, be utilized at this preliminary stage in litigation as a tool to brief

[2] Although Plaintiff is correct that it circulated a draft of this report with a "Background and Summary" section styled as a "joint" statement, the joint background section contained argument such as "although the United States is urging *inexplicably* – as it did in the JPSR filed a year ago…" (emphasis in original). That statement, coupled with other characterizations of Defendant's positions crossed the line, in Defendant's view, from a joint statement of procedural background into advocacy regarding Defendant's case management proposals. As a compromise, Defendant proposed that each party simply present its own introductory statement, and asked Plaintiff to contact Defendant's counsel if it had any questions or concerns about the proposed change. Defendant was not aware that Plaintiff had any concerns about the proposal until it received Plaintiff's newly-proposed language in Section I.A.4, above, shortly before the filing deadline.

the Court with legal argument as to proposed schedules or the Court's jurisdiction over the claims. Briefing on these issues should properly occur at a specific time designated by this Court and in conjunction with the RCFC. As such, Defendant's contributions to this JSR are limited to the identification and summary of the appropriate factual and legal issues necessary to inform the Court as to the nature of the parties' dispute over jurisdictional and case management issues as set forth in more detail below.

On December 29, 2006, Plaintiff filed its Complaint in this Court against Defendant pursuant to the Tucker Act, 18 U.S.C. § 1491, and the Indian Tucker Act, 28 U.S.C. § 1505. In the Complaint, Plaintiff alleges broad claims for breach of trust by Defendant in its administration of Plaintiff's trust funds and non-monetary trust assets, such as real property. Plaintiff's claims can be classified as follows:(1) purported mismanagement of Plaintiff's surface and mineral estates (Count I); (2) purported mismanagement of Plaintiff's non-mineral estate (Count II); (3) purported mismanagement of Plaintiff's judgment funds (Count III); and (4) purported mismanagement related to the deposit and investment of Plaintiff's trust fund monies (Count IV).

In addition to this case, Plaintiff has also filed a case in the United States District Court for the District of Columbia against Defendant, specifically, the United States Departments of the Interior (Interior) and of the Treasury (Treasury), seeking "redress of breaches of trust" by Interior and Treasury in the management and accounting of Plaintiff's trust assets, including funds and lands, and in the investment of trust funds, and further seeking to compel the agencies to provide a full and complete accounting of Plaintiff's trust assets, and to provide equitable restitution. *See Salt River Pima Maricopa Indian Community v. Kempthorne, et al.*, Case No. 06-CV-02241-JR (District Court for the District of Columbia), Complaint at ¶¶ 1, 20.

As set forth in its Answer filed in this case on March 27, 2007, and discussed in greater detail below, Defendant asserts various jurisdictional defenses that would dispose of all or some of Plaintiff's claims in this litigation. Following the Court's April 24, 2008 Order denying Defendant's Motion to Dismiss pursuant to 28 U.S.C. § 1500, the parties met on May 14, 2008 to discuss case management issues for purposes of filing this JSR. In that meeting the parties recognized that their proposed discovery plans contained some common elements on which the parties could agree, and others in which the parties remained in disagreement.

At the May 14 meeting, the parties identified the following principal differences in their case management proposals: 1) a detailed specification of claims by Plaintiff prior to Defendant's jurisdictional motions; 2) the length of time between Plaintiff's expert disclosures and Defendant's expert disclosures; and 3) the overall timing of expert disclosures.

First, Plaintiff continues to resist Defendant's proposal that Plaintiff provide a more detailed specification of its claims prior to Defendant's filing of motions to dismiss on jurisdictional grounds. In focusing on its obligations under Rule 8 and a motion for more definite statement, Plaintiff sidesteps the key issue, namely that Rule 8 refers only to the Plaintiff's pleading burden in the context of framing a responsive pleading. *See* Fed. R. Civ. P. 12(e) ("a party may move for more definite statement of a pleading to which a responsive pleading is allowed, but which is so vague and ambiguous that the party cannot reasonably prepare a response."). Here, Defendant's proposal for a detailed specification of claims is grounded in the ideals of judicial efficiency and economy in that Defendant's proposal would allow the Court to ensure that jurisdiction has been established before engaging in protracted litigation involving claims that would eventually be dismissed. Moreover, it is Plaintiff's burden to establish that jurisdiction with specificity.

Once Plaintiff's claims have been clearly defined, Defendant intends to raise other jurisdictional defenses, if warranted, including the applicable statute of limitations, the failure to state money-mandating claims, res judicata, and the exclusive jurisdiction of the Indian Claims Commission Act. To the extent that the Court has jurisdiction over any of Plaintiff's claims, Defendant believes that those narrowed claims would then be more easily resolved by dispositive motions or trial, maximizing the efficient use both the parties' and the Court's resources.

Second, with regard to the timing of Defendant's expert disclosures, Defendant proposes additional time for their experts to respond to Plaintiff's expert disclosures whenever those disclosures occur. Under either party's case management proposal, Plaintiff's expert will have the benefit of 9-12 months of discovery in which to formulate expert opinions and reports. Plaintiff would have Defendant's experts respond to that report and provide their own reports in a mere 30 days. In Defendant's experience in tribal trust cases, given the complexity of the financial and historical facets of these cases, Defendant's experts will need at least 120 days to properly respond to Plaintiff's expert disclosures because of the need to organize and analyze information on government actions spanning decades.

Finally, Plaintiff is proposing that expert discovery begin immediately, well before the Court has had any opportunity to narrow Plaintiff's claims through appropriate motions to dismiss. This approach will force both parties to incur massive costs with experts analyzing claims that may not be a part of the litigation once Defendant's jurisdictional motions are decided. For example, much if not all of Plaintiff's Claim 1 would appear to be barred by *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 364 F.3d 1339 (Fed. Cir. 2004). As a matter of judicial and economic efficiency it is preferable for formal expert discovery to take place after the Court has decided the jurisdictional motions. Nothing in Defendant's proposed order prevents the Plaintiff from engaging an expert's help to assist in preparing its detailed specification of claims during the initial discovery period, Defendant seeks only to defer the time and expense of formal expert disclosure and reports, at least for the Defendant, until after the jurisdictional motions have been decided. Should the Court not adopt Defendant's proposal, Defendant's alternative would be to engage in jurisdictional motion practice during the initial discovery period, thus raising the likelihood of Plaintiff invoking RCFC 56(f), which would amount to essentially the same process as Defendant's original proposal.

## II. <u>THE PARTIES' PROPOSALS FOR FURTHER PROCEEDINGS IN THIS CASE.</u>

In accordance with the Court's April 24, 2008 Order, the Community and the United States set forth their respective case management proposals below. The parties' proposed orders reflecting these approaches are being provided. See Exhibit A (Plaintiff's Proposed Order Governing Pre-Trial Discovery) and Exhibit B (the United States' proposed Order) attached hereto.

### A. <u>The Community's Proposal for a Single 15-Month Period for the Completion of Fact and Expert Discovery.</u>

Now that the Section 1500 issue has been resolved in the Community's favor, there is no reason to delay moving ahead with a period of general discovery as Appendix A of the CFC Rules contemplates. In accordance with the case management procedures set forth in Appendix A, the Community submits that the appropriate "next step" in this case is the adoption of a discovery plan which includes the scheduling of fact discovery, the disclosure of expert reports, and depositions or any other discovery thereafter to be made of the parties' experts. *See* Appendix A, Section III.5 (identifying the key elements of the parties' discovery plans) and Section IV.8 ("Scheduling Order").

The objective in taking this next step in the litigation is to complete all such discovery – "including discovery of any experts" – so that the Court then can conduct the post-discovery conference provided for an Appendix A to determine how the case should best proceed. *See* Appendix A, Section VI.II ("Post-Discovery Conference").

It is at this later conference that counsel will be called upon to (i) address the factual and legal issues in dispute, (ii) discuss the evidence and decisional law that each side offers in its position, and (iii) identify the best means of resolving the dispute – *i.e.*, whether by summary judgment or trial. See Appendix A, Section VI.11. Depending on what procedures the Court determines at that time to be the most appropriate to resolve the case, subsequent proceedings may include the scheduling of Rule 56 motions and briefs (and not Defendant's one-sided dispositive motion phase); and setting the dates for pre-trial and trial proceedings for those claims identified at that later date to present triable issues. (*See* Appendix A, Section VI.14-18).

At this stage of the case, however, any determination regarding such case management issues would clearly be premature – rather, the matter to be addressed and decided at this time is how to go about accomplishing

the discovery necessary to put the Court and the parties in the position they will need to be in to best address and resolve these other issues.

### 1. Elements of the Community's Proposed Discovery Plan.

Accordingly, the Community's proposal calls for a 15-month period to allow both sides to complete both factual and expert discovery. Pursuant to this schedule, the parties would be allowed 330 days to conduct factual discovery.[3]

The Community then would have 30 days to make its expert disclosures pursuant to RCFC 26(a)(2), and the United States would then have 30 days from the date of the Community's disclosures within which to

---

[3] For reasons recited in the JPSR (*see* pp. 35-36), the presumptive limits on discovery imposed under the Court's Special Procedures and the CFC's Rules should be set aside. Due to the nature and scope of Plaintiff-Beneficiary's claims and the fact that almost all of the factual information necessary to support those claims is in the possession of the United States as trustee, the Community anticipates that additional interrogatories and depositions will be necessary to uncover all relevant information. Additionally, because the beneficiary of a trust is entitled to receive "all information regarding the trust and its execution which may be useful to the beneficiary in protecting its rights," the United States' production of all relevant materials is required even if it exceeds the discovery obligations applicable in ordinary civil proceedings. *White Mountain Apache Tribe of Arizona v. United States*, 26 Cl. Ct. 446, 448 (1992) (quoting G.T. Bogert, Trusts § 141, at 494 (6th ed. 1987)). Accordingly, Plaintiff's proposal would remove such limits, including the limits on the number of depositions to be taken by each side and on the number of interrogatories. *See* Plaintiff's Proposed Order Governing Pre-Trial Discovery (Exhibit A) at ¶ 1.

make its expert disclosures. At that point, both sides would be allowed an additional 60 days to conduct discovery regarding the expert disclosures.

The Community believes this "single-phase" discovery plan (unchanged from what it presented in the JPSR submitted to the Court a year ago) is fully consistent with the case management procedures reflected in Appendix A of this Court's Rules. As the Court is aware, the procedures set forth in Appendix A are the product of "the collective experience of the court and the members of its bar" and are considered to be "most beneficial in securing the prompt and expeditious resolution of claims and disputes." *See* 2002 Rule Committee Notes to Appendix A. As these procedures contemplate, it is first necessary to complete discovery – expert as well as factual – before the parties will be in the position to identify the key issues and narrow the scope of this litigation in any truly meaningful fashion. *See id*. Moreover, only after both factual and expert discovery are completed will the Court be in the position it needs to be in to determine what further proceedings may be appropriate to conclude this case in a fashion consistent with the efficient administration of justice.[4]

[4] As the 2002 Rule Committee Notes recognize, the case management procedures adopted by the Court in Appendix A may be modified depending upon the needs in the particular case, but only "when such modification will promote the efficient administration of justice." For the reasons below, Plaintiff submits that the "phased" discovery proposed by

Adopting the Community's "next step" proposal will allow for the full range of factual and expert discovery to be completed in advance of the Court's post-discovery conference. As the Court recognized when the subject of Defendant's "phased" discovery approach was addressed during the June 25, 2007 Preliminary Status Conference, the period of general discovery proposed by Plaintiff would permit the government to engage in the discovery necessary to try to develop support for its defenses – just as it will allow the Community the opportunity to develop support for its trust mismanagement and damages claims. *See* 6/25/07 Tr. at 37 (recognizing that phases "two" and "three" of Defendant's proposed discovery plan would "necessarily [be] encompass[ed]" in the single discovery period proposed by the Community). So too, by completing expert discovery before the parties further appear before the Court at the post-discovery conference, both sides should have a more complete picture of the strengths and weaknesses of their respective positions and be in a better position to discuss what types of proceedings may be needed from that point to address and resolve the legal and factual issues then remaining.

---

the United States does not represent a departure from Appendix A's case management procedures that would "promote the efficient administration of justice." To the contrary, the adoption of Defendant's proposal would – at a minimum – more than double the length of discovery and impose additional requirements on this tribal litigant nowhere to be found in the relevant Rules.

The Community's approach to discovery is described in greater detail in the JPSR (at 34-39). This same approach was discussed during the May 14, 2008 meeting of counsel for the parties. However, it is Plaintiff's understanding that the United States continues to advocate the "phased" concept of discovery outlined in Defendant's portion of the JPSR (*see* 41-42). The Court's resolution of this key difference in case management approach is therefore required.

**2. The Community's Reasons for Opposing the Adoption of Defendant's Contrary Discovery Proposal.**

The Community's objections to the elements of Defendant's proposed "phased" discovery plan (including the request that a more detailed specification be made of Plaintiff's claims) are set forth in the JPSR at 34-39. These concerns were re-visited with Defendant's counsel during the meeting on May 14, 2008 and they are summarized below in an effort to assist the Court in framing and resolving the parties' differences.

***First***, deferring expert discovery until "phase three" – as the United States proposes – would prevent the Court and the parties from having a complete picture of the Community's claims (or the government's defenses, for that matter) until after the third and final stage of discovery is concluded years in the future.

Until such time as the parties' expert disclosures are made, the Court and the parties will not have the information needed to make a complete evaluation of Plaintiff's claims or the government's defenses. Keeping the Court and the parties "in the dark" until after phase three discovery has been completed two or three years from now would also thwart any meaningful effort on the part of this Court to put in place a case management plan for other proceedings that is tailored to achieve a prompt and fair resolution.

For example, expert testimony would appear to be critical to Plaintiff-Beneficiary's claim that the United States has failed to prudently manage and/or invest the Community's trust funds. Without knowing what the opinions of the Community's investment consultants are with respect to the government's conduct as trustee, or having the disclosures of Defendant's expert opinions to consider on this subject, even the most preliminary assessment of the strengths and weaknesses of Plaintiff- Beneficiary's contention would be impossible. So too, the Court would not be in the position it needs to be to determine whether any of the factual or legal issues associated with the Community's fund management/investment claim may be appropriately resolved by summary judgment or necessitate the scheduling of trial proceedings. Indeed, such a determination will not

be possible until after "phase three" discovery has been completed per Defendant's proposal – years into the future and long after the Court has been called upon to make other case management choices that Appendix A recognizes should only be made ***after*** all discovery in the case has been completed.

***Second***, requiring Plaintiff to provide a more particularized statement of its claims immediately following "Phase One" – another key feature of Defendant's proposal – is completely unwarranted. The United States has cited no authority in the JPSR as support for such a case management requirement – presumably because none exists.

If Defendant believes it is in need of additional information regarding any of the mismanagement claims set forth in the Complaint the Community filed seventeen months ago, it can serve contention-seeking interrogatories in an effort to add to its understanding of the factual and legal bases of the Community's claims (although the fact that the fiduciary may have to look to its trust beneficiary for the identification of the executive orders, treatises, statutes and/or regulations forming Defendant's trust duties suggests the extent to which such duties may have been ignored or otherwise abrogated). Thus, there is no justification for the

broad array of disclosure requirements Defendant seeks to impose on Plaintiff in the name of case management.

The Community's Complaint laid out the operative facts and legal authority supporting the Community's request for relief, thereby satisfying CFC Rule 8(a)'s "short and plain statement" requirement. If the United States had believed the Community failed to adequately describe the grounds for its claims, the proper recourse would have been to file a motion for a more definite statement as allowed by CFC Rule 12(e). Having chosen not to do so, however, the United States cannot now claim that the Community has failed to adequately describe its claims and then use the purported failure to delay the completion of discovery and derail the progress of this litigation.

On this subject, the Community wishes to direct the Court's attention to the Order entered in *Passamaquoddy Tribe v. United States*, No. 06-942L on July 20, 2007. In this other tribal trust litigation in which similar claims of fund and asset mismanagement have been presented, the United States contended in the JPSR – just as it is contending here – that the plaintiff Tribe should be required to file a more detailed statement of its claims after preliminary discovery had been completed. There, as here, the Tribe opposed the imposition of such an unwarranted requirement and

Judge Bush agreed. The Order entered following the Joint Preliminary Conference in *Passamaquoddy* included the "deni[al] [of] defendant's request that plaintiff file a more detailed statement of its claims." *See* 7/20/07 Order at 1 (attached hereto as Exhibit C).[5]

[5] Defendant cites to three Court of Federal Claims actions as purporting to support its position that this Court should adopt its case management plan. *See* Section B. I. In none of those cases, however, did the Court embrace the proposal Defendant submits here. For example, in *Round Valley Indian Tribes v. United States*, Case No. 06-900L (Ct. Fed. Cl.), upon plaintiff's objection, the Court did not require that plaintiff set forth in detail the facts constituting Defendant's breaches of duty without having had the benefit of expert discovery, as Defendant requests the Community be required to do here. *See* United States' Proposed Order, Ex. B, paragraphs 4-7. Moreover, unlike the Community, the plaintiff in *Round Valley* did not object to preparing a more general statement of its claims. (*Round Valley*, JPSR, Section G (September 28, 2007)). Similarly, in *Warm Springs*, the "statement of claims" is far less detailed and is required only ***after*** an exchange of "expert reports" and extensive "document and data production efforts." Moreover, the *Warm Springs* case stood in a wholly distinguishable procedural posture. The general statement required there was to facilitate ADR – not as an unheard of proposal that will merely advantage one-side and delay proceedings. Lastly, in *Osage*, the procedure pointed to by Defendant as supporting its proposal here was completely inapposite. The Court in that case did not require a detailed statement of claims at all. Rather, after considering and denying Defendant's motion to dismiss part of plaintiff's claims, the Court determined that the "legal issues and facts regarding plaintiff's investment claim ha[d] not been sufficiently briefed." *Osage Tribe of Okla. v. United States*, 68 Fed. Cl. 322, 335 (Fed. Cl. 2005). For that reason, the Court simply requested additional briefing by both the plaintiff and Defendant. *Id.* at 336. In short, Defendant points to not a single instance when a Court does what they ask this Court to do here – impose on an objecting plaintiff a requirement not required by any rule prior to essential elements of discovery are completed.

The Community urges the Court to reach the same conclusion here. Requiring the Community to file a more detailed statement of its claims following the completion of "Phase One" discovery – but before phases "two" or "three" (including expert discovery) are even underway – would improperly erect yet another barrier to the Community's recovery in this case. This should not be allowed.

There is nothing novel or unique with respect to the Community's claims that would necessitate imposing such an *ad hoc* requirement in the name of case management. Indeed, following the completion of discovery, counsel for the Community anticipates being in a position to move for summary judgment as to the existence of money-mandating fiduciary duties and possibly as to liability. The existence and money-mandating nature of many of the duties upon which the Community's claims are based are well-established. *See, e.g.*, *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 71 Fed. Cl. 172 (2006) (duty to collect proceeds from tribal mineral estates); *United States v. Mitchell*, 463 U.S. at 206, 223 (1983) (duty to manage and collect proceeds from rights-of-way); *Chippewa Cree Tribe of the Rocky Boy's Reservation v. United States*, 69 Fed. Cl. at 656 (2006) (duty to manage and invest judgment funds); *Osage Tribe of Indians of Oklahoma v. United States*, 72 Fed. Cl. 629, 662 (2006)

(duty to manage, deposit and invest trust funds). Defendant's proposal to require a "more detailed statement" of the Community's claims therefore should be rejected as unnecessary and contrary to law.

Moreover, the Defendant fails to explain why it should be entitled to discovery during the one-year period preceding the Community being required to prepare a "more detailed statement" of its claims. Defendant is not required to take any action after that one-year time frame, and as such, should not get the benefit of discovery during that time period if this Court were contemplating adopting the government's approach. If the Community is required to prepare a detailed statement of claims, the Community should be allowed to focus its efforts on collecting information to develop its claims and prepare that statement, rather than also having to respond to discovery. This schedule is completely in-line with Defendant's request that it be provided with one-sided discovery to prepare for its motions to dismiss on jurisdictional grounds.

***Third***, Defendant's three "phased" discovery concept represents a significant departure from the case management procedures contained in Appendix A of the CFC Rules. As previously noted, Appendix A contemplates that all discovery – expert as well as factual – is to be completed before the Court holds the Post-Discovery Conference

contemplated under Section VI.11 of the Appendix procedures for the purpose of determining how to proceed in the litigation from that point to its conclusion.

By urging a departure from this approach and seeking to divide discovery into three different phases that will only exacerbate the already protracted nature of this litigation, Defendant's proposal is clearly contrary to the "efficient administration of justice" that Appendix A's procedures have been designed to achieve. Moreover, Defendant's proposal is wholly one-sided. Repeatedly, it permits Defendant to move forward on discovery and filing of motions, while not permitting the Community to do the same. There is no justification for this inequitable approach which will only lead to more delays. In marked contrast, it is the Community's approach which comports with Appendix A's case management procedures. Plaintiff's Proposed Order Governing Pre-Trial Discovery therefore should be entered in this case.

**B. Defendant's Proposal.**

The United States' Proposed Case Management Order is attached as Exhibit B to this Report. Defendant's proposal is outlined below.

**1. Defendant's Case Management Proposal Promotes Efficiency.**

Defendant proposes the following case management schedule:

1) 360 days of fact discovery.[6] Defendant proposes an initial 360-day period of fact discovery (including depositions but excluding expert discovery). Defendant agrees with Plaintiff's point in note 1, *supra,* that in a case of this magnitude and complexity the presumptive limits on discovery contained should be expanded to some degree. In addition, nothing in Defendant's proposal would limit the ability of Plaintiff to consult with their expert during this phase of discovery to more clearly identify the specific factual bases of Plaintiff's claims. Defendant simply proposes deferring *formal* expert discovery until after Plaintiff has satisfied its burden to establish jurisdiction in this Court.[7]

[6] Defendant anticipates a longer fact discovery period than Plaintiff because discovery in this case will likely be remarkably voluminous, with the attendant logistical burdens posed by inspection and copying of potentially thousands of boxes at scattered locations around the country. The burdens will be increased because much of the discovery is reasonably expected to involve inactive government records that are not necessarily organized in the fashion most conducive to the needs and compressed time frames of litigation.

[7] Defendant does not expect that its jurisdictional motions will involve expert opinion testimony. Rather, Defendant seeks only to clearly frame the legal jurisdictional issues for the Court prior to engaging in further protracted litigation on claims that are not properly before the Court.

2) Plaintiff's Detailed Specification of Claims.[8] Within 90 days of the close of the initial discovery period, Plaintiff will file a detailed specification of claims which will specify, among other things, the specific substantive sources of law, such as a statute, treaty, or regulation that establish specific fiduciary or other duties; whether Defendant has failed to perform any specific money-mandating duties, and, if so, what those specific duties are; and whether Plaintiff's claims were within the exclusive jurisdiction of the Indian Claims Commission. Further, the specification shall identify with specificity the leases and permits for which Plaintiff alleges it has not received a complete and accurate accounting, and identify with specificity property interests, leases, and permits that were not leased for fair market value, and for which Plaintiff alleges Defendant failed to collect fair and reasonable compensation. In addition, the specification shall identify with specificity the easements, rights of way, and leases of tribal property (identifying the date of the

[8] It is Defendant's understanding that the Salt River Pima-Maricopa Indian Community is a Compacted Tribe, and would therefore possess many of its own records regarding realty issues. To the extent Plaintiff has in its sole possession documents that contain the specific factual information underlying Plaintiff's claims, that would heighten the need for Plaintiff to provide Defendant and the Court with discovery and a detailed statement of claims prior to Defendant's filing of jurisdictional motions.

agreement, a description of the property at issue, as well as the specific easement, right of way, and/or lease agreement) which were entered into for less than fair market value and for which Plaintiff alleges that Defendant failed to collect fair and reasonable compensation.

3) Jurisdictional Discovery. After Plaintiff files its detailed claim specification, the parties will have 90 days to engage in discovery related strictly to the planned motions to dismiss on jurisdictional grounds.

4) Defendant's Jurisdictional Motions. Defendant will file any jurisdictional motions within 90 days of the close of jurisdictional discovery.

5) Case Management conference. Defendant proposes that after the jurisdictional motions are decided, the Court shall conduct a joint status conference with the parties and schedule further proceedings in this case, as appropriate, including but not limited to the scheduling of any remaining fact discovery, fact or RCFC 30(b)(6) depositions on any factual claims that survive Defendant's jurisdictional challenges, expert witness discovery, and a trial schedule.

Simply put, Plaintiff's claims suffer from several possible jurisdictional deficiencies that, when addressed by this Court, will either (a) dispose of the Complaint in its entirety; or (b) dispose or limit the scope of certain of Plaintiff's claims. Consequently, Defendant's proposed discovery schedule maximizes judicial efficiency by saving detailed expert discovery and analysis for those claims for which Plaintiff has established jurisdiction. This will allow the parties and the Court to focus their efforts on only those claims that are properly before the Court.

Although Plaintiff focuses on Rule 8 and its notice pleading obligations, Defendant is not seeking a more definite statement for purposes of framing an answer. Rather, Defendant's proposal for a detailed specification of claims is grounded in the ideals of efficient case management to allow the Court and the parties to identify up front the specific leases, resources, easements, and other assets that Plaintiffs are claiming have been impaired by Defendant's alleged mismanagement, and to ensure that Plaintiff has met its burden to establish jurisdiction before engaging in expensive, time-consuming litigation.

On the bare allegations of Plaintiff's complaint it appears that Plaintiff may be claiming damages for every lease for every asset the tribe has ever held, as well as every investment decision ever made by the trustee going

back over 100 years. As a result, it will benefit all parties to the litigation to establish as soon as possible precisely which claims merit further attention in this Court. Such an approach will give the Court an early opportunity to separate the wheat from the chaff of Plaintiff's claims, without needless expense of time and resources on claims that would eventually be dismissed in any event. Such an approach is hardly novel in the Court of Federal Claims, having been adopted in several tribal case management orders. *See Confederated Tribes of the Warms Springs Reservation of Oregon v. United States*, Case No. 02-126L (Ct. Fed. Cl.), Order filed Jan. 22, 2008 (Dkt. # 116); *Round Valley Indian Tribes v. United States*, Case No. 06-900L (Ct. Fed. Cl.), Order filed Oct. 1, 2007 at ¶ 9 (Dkt. # 22); *see also Osage Tribe of Indians of Okla. v. United States*, 68 Fed. Cl. 322, 336 (Fed. Cl. 2005) (ordering Plaintiff to file a brief clarifying the specific legal grounds for its investment claims and allowing Defendant to file a motion to dismiss based on that detailed specification).

**2. Defendant's Potential Jurisdictional Issues.**

As stated in its Introductory Statement above, Defendant believes that this Joint Report is not the proper and appropriate vehicle for the parties to make legal arguments to the Court about its jurisdiction over Plaintiff's claims herein. Therefore, Defendant provides below only a

summary of its legal positions so as to inform the Court of its views. Defendant will set forth in full its position in the appropriate jurisdictional motions.

Plaintiff's claims may be barred by application of the statute of limitations at 28 U.S.C. § 2501 and the Indian Claims Commission Act. In addition, the Court may lack jurisdiction under the Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505, over those claims for which Plaintiff is unable to identify a substantive source of law, such as a statute, treaty, or regulation, that establishes a specific fiduciary money-mandating duty, or that was within the exclusive jurisdiction of the Indian Claims Commission. Further, depending on Plaintiff's description of its claims, Defendant intends to raise the defense of claim preclusion. Before Defendant can determine which, if any, of Plaintiff's claims are time-barred, lack jurisdictional basis, or are precluded by res judicata, and, based on its determination, file an appropriate dispositive motion, Defendant requires a detailed specification by Plaintiff of its claims in this case and, if necessary, limited discovery regarding the factual bases of the claims asserted by Plaintiff. The parties and the Court will benefit from an early investigation of the jurisdictional basis for Plaintiff's claims to identify those which do not merit further investigation.

## III. STATUS REPORT REGARDING OTHER ISSUES ADDRESSED IN THE PRELIMINARY STATUS CONFERENCE/THE JPSR.

The following issues were discussed by counsel for the parties during their May 14, 2008 meeting. The updates provided below are intended to assist the Court in resolving the parties' differences in case management approach.

### A. Update Regarding the Community's District Court Action for An Equitable Accounting.

During the June 25, 2007 Preliminary Status Conference, the Court inquired about the status of the Community's action filed in the District Court to seek an equitable accounting with respect to the funds and assets the United States has been holding in trust over the past century for the Community (Tr. at 13). The Court was advised that the government was seeking a remand of the Community's equitable accounting claim to the Department of the Interior and a stay of the District Court litigation. (Tr. at 13-15.) Upon being informed of this development, the Court expressed the concern that "if Judge Robertson is actively considering a remand to the Agency for an accounting in lieu of formal discovery and litigation of the case and we do the contrary it seems to me we'd be stepping on each other's toes and undercutting what the District Court is doing." (Tr. at 16.)

**1. Plaintiff's Update.**

In Plaintiff's view, there is no reason for the Court to be concerned about the potential for such "inconsistency" in how this case for money damages and the Community's equitable accounting claim in the District Court are permitted to proceed. As addressed at length in the JPSR and in the Community's briefing of the Section 1500 issue, this is an entirely different matter than the District Court litigation. As explicitly set forth in the Complaint initiating this action, the Community is not seeking an accounting in this Court – and its claims for money damages are not based upon the United States' duty to account. Rather, the Community is seeking money damages based upon the United States' breach of well-established money-mandating fiduciary duties. Insofar as the equitable accounting action pending in the district Court entails the use of different proceedings to assist Judge Robertson in resolving the Community's claims for declaratory and injunctive relief in the other matters, they should warrant no concern here or justify any delay of the proceedings in this Court.

Nor is there any longer a possibility that the Community's accounting case in the District Court might be "remanded" to the Department of Interior in lieu of further litigation in this other forum. While Judge Robertson proceeded to allow the government to move for a remand and a stay in all

37 of the tribal trust accounting cases assigned to His Honor, these requests were denied on December 19, 2007. In declining to allow the government the "time out" from litigation it was seeking, moreover, Judge Robertson confirmed that "it is the court's obligation to define the trustee's legal duties and resolve the various charges raised in plaintiffs' complaints." 527 F. Supp. 2d 130, 135 (D.D.C. 2007). The District Court further found no legitimate reason to delay the determination of "threshold questions of duty and breach" – particularly when the accounting plan the government claimed to be committed to developing was "its response to trust-related concerns the department has been aware of for at least twenty years." (*Id*. at 135-36.)

So here, there is no reason to delay this Court's moving forward with the litigation of the Community's trust mismanagement claims now that the government's threshold § 1500 challenge has been resolved. As Judge Robertson recognized in denying defendant's remand-and-stay request in the District Court, it is the court's obligation "to define the trustee's legal duties and resolve the various charges . . . ." (*See* 527 F. Supp. 2d at 135.) To resolve the issues of trust duty and breach presented in this case, pre-trial discovery is clearly the appropriate "next step." And for the reasons outlined in Section II.A of this Report, the Community believes the 13-

month period it has proposed for fact and expert discovery is the appropriate way of moving this litigation forward so that findings with respect to the existence of Defendant's trust duties and the breach of those duties may then be made.

**2. Defendant's Update.**

If litigation were to proceed in this Court along a track parallel and simultaneous to Plaintiff's District Court litigation, there is a substantial risk of duplicative litigation, needless expenditure of judicial and the parties' limited resources, and inconsistent rulings by competing federal tribunals. Both Courts could be asked to address the nature and extent of Defendant's accounting duty, as well as the financial transactions that underlie the District Court and CFC actions. This case and the companion case in the District Court are likely to involve facts that are related to underlying transactions and events associated with Defendant's management of Plaintiff's funds and assets and that form the bases for Plaintiff's accounting and damage claims in both cases. This factual overlap raises the significant risk that a judgment from this Court could be duplicative, inconsistent with, or even contradictory to, any ultimate determination made by the District Court. Defendant believes that the

Court's ruling on the Defendant's jurisdictional motions may eliminate any potential for conflict.

In the interest of addressing all contingencies, however, the Court should permit both parties to bring potential conflicts to the attention of both courts, and permit the parties to request that the "two courts . . . use traditional principles of comity, collateral estoppel, and res judicata to sort out any duplication." *The Tohono O'odham Nation v. United States*, 79 Fed. Cl. 645, 659 n.16 (Fed.Cl. 2007). It is possible that conflicts could arise, for example, with regard to overlapping discovery applicable to both cases. It is also likely that the two Courts will address identical legal questions on the merits of Plaintiff's claim. Hence Defendant proposes that the Court defer setting the issues for trial until either after it has decided the Defendant's dispositive motions, or in the alternative, at or near the close of discovery, so that it may fix an appropriate trial unit.

**B. Settlement Negotiations Discussions in Other Tribal Trust Cases.**

During the Preliminary Status Conference, Defendant's counsel advised the Court that a total of 50 trust mismanagement suits had been filed by tribes against the United States in this Court, and that 37 accounting actions had been bought in the United States District Court for the District of Columbia (and all 37 actions had been assigned to Judge

Robertson) (6/25/07 Tr. at 8-10.) The Court was further informed that "the government is in active settlement discussions with many of the tribes . . . ." (*Id*. at 10). With respect to those matters, government counsel described the "active settlement discussions" as including "informal discovery . . . and what would be the best and most efficient way to settle or resolve the tribe's various claims." (*Id*. at 12.)

**1. Plaintiff's Update.**

In the view of the Community, defense counsel's remarks were intended to convey the impression that informal settlement discussions offer a more promising avenue for the resolution of the tribal trust claims than the parties formally litigating these matters – a proposition with which counsel for the Community strongly disagrees. (See 6/25/07 Tr. at 10.) Eleven months later, however, it appears that not a single one of the 87 tribal trust cases referenced by Defendant's counsel in the Preliminary Status Conference has been settled. Indeed, when Plaintiff's counsel inquired about this subject during the May 14 meeting, government counsel failed to identify a single case that had been finally resolved by compromise since June 25, 2007. (Although counsel went on to say that in the government's view, "significant progress" had been made in certain unspecified ADR proceedings).

While that may be so, within the past 10 days the tribal plaintiff in another trust management case filed in this Court in 2002 has requested that the fiscal mismanagement claim referred to ADR more than five and one-half years ago be restored to the active litigation docket. In the Joint Status Report filed on May 12, 2008, in *Jicarilla Apache Nation v. United States*, No. 02-25L (attached as Exhibit D), plaintiff's counsel recited the various steps that had been taken in ADR to make "a detailed submission on the legal bases for and analysis of the Nation's claims relating to Defendant's investment of funds," including the calculation of the tribe's damages exceeding $300 million. See 5/12/08 Report at ¶¶ 2-6. Counsel for plaintiff further stated, however, that even though the tribe had participated in the ADR process in "good faith," it no longer believes "that claims of this magnitude can be settled, if at all, through an ADR process that is divorced from an ongoing pretrial process with a firm trial date." 5/12/08 Report at ¶ 7. Accordingly, plaintiff's counsel in *Jicarilla* urged on May 12, 2008 that the tribe's fiscal management claim be "restored to the active docket and proceed toward trial" – a request that Judge Allegra granted four days later.[9]

[9] Copies of the Joint Status Report in *Jicarilla Apache Nation* and Judge Allegra's May 16, 2008 order are attached hereto as Exhibits D and E, respectively.

In light of this recent development, the Community is more convinced than ever that moving ahead with the litigation represents the most effective means available to the parties to achieve resolution including by settlement. It has been and continues to be the experience of Plaintiff's counsel that litigation must be part of the dispute resolution process for any meaningful opportunity for settlement discussions to be presented. So too, as the United States has recently acknowledged in other tribal trust litigation, information derived from the discovery process may be expected to put both sides in a better position to assess their respective positions for settlement purposes down the road.[10]

**2. Defendant's Update.**

Defendant is willing to abide by the Court's order referring the parties to ADR Judge Marian Blank Horn. *See* Court's Order dated Dec. 29, 2006 (Dkt. # 3). Defendant believes that such a referral could be helpful in moving the parties toward settlement. In addition, the parties have discussed the possibility of settlement in this case. Defendant believes that the likelihood of settlement may increase after the exchange of information

---

[10] *See* Section V of the Supplemental Joint Status Report filed on February 14, 2008 by counsel for the parties in *Makah Indian Tribe v. United States*, No. 06-cv-889 at Section V (acknowledging that until further discovery per the Court's scheduling order is completed, "*both parties agree that meaningful Alternative Dispute Resolution or settlement discussions cannot take place* . . . .") (emphasis added) (attached as Exhibit F).

related to the tribal trust funds and assets. Defendant believes that it is possible to settle Plaintiff's trust fund and asset mismanagement claims through Alternative Dispute Resolution (ADR) processes if Plaintiff were agreeable to ADR. Defendant believes that it may be unlikely for the parties to settle this case so long as the parties are actively litigating.

### C. <u>Entry of a Proposed Protective Order.</u>

As reflected in the JPSR filed with the Court a year ago, Plaintiff-Beneficiary is aware that the United States routinely requests the entry of a protective order in tribal trust litigation, and the Community has advised the Court that it would not oppose a properly tailored order. *See* JPSR at 31-32. What counsel for the Community would not find acceptable, however, is any form of "umbrella" protection order that is so broad in scope as to permit materials to be identified as "confidential" without making any showing of "good cause" for such protection as is required per RCFC 26(c).

In July 2007, Judge Hewitt addressed this same issue in another trust mismanagement case pending before the Court (*Ak-Chin Community v. United States*, No. 06-932L (Fed. Cl.)) and entered a protective order intended to govern the production and handling of asserted confidential information in the case of pre-trial discovery. *See* 7/19/07 Protective Order in Ak-Chin (attached as Exhibit G).

Following the May 30, 2007 Preliminary Status Conference in Ak-Chin, Judge Hewitt directed counsel for the parties to confer regarding the terms of the proposed Rule 26(c) order, and imposed a time limit on counsel to reach agreement or report as to the differences preventing the agreement from being reached. With respect to their then remaining differences, counsel were required to submit memoranda addressing differences and proposing how they might be appropriately resolved without further delay.

The approach in *Ak-Chin* was successful – counsel for the parties reported that they had reached an agreement with respect to all but two provisions of the form of protective order thereafter presented for the Court's consideration and entry. And following a telephone conference on July 18, 2007 in which counsel addressed the remaining differences and how to resolve them, a protective order was entered by the Court the following day.

**1. Plaintiff's Proposal.**

The 7/19/07 Protective Order issued by Judge Hewitt in *Ak-Chin* is attached hereto as Exhibit G. To facilitate discovery in this case, the Community proposes that this same form of protective order be adopted for use here.

This was proposed to Defendant's attorneys during the May 14, 2008 meeting of counsel. Government counsel responded that the provisions of the *Ak-Chin* protective order would need to be further reviewed to determine whether Defendant may be in a position to join in the request for entry of the same form of protective order here.

### 2. **Defendant's Response.**

Defendant also recognizes the need for an appropriate protective order to govern discovery in this case. Defendant believes that the 7/19/07 Protective Order entered by Judge Hewitt is a good starting point for negotiation of a protective order in this case, but should not be entered in this matter in its current form. The United States has several objections to the protective order as drafted in *Ak-Chin* and would appreciate the opportunity to work with Plaintiff to see if we can come to a mutually agreeable modification of that order. In the event the parties are unable to come to an agreement, Defendant's would request the opportunity to present briefing to the Court on any remaining issues.

## IV. **THE PARTIES' JOINT REQUEST FOR AN "IN-PERSON" STATUS CONFERENCE TO FURTHER ADDRESS THESE MATTERS**

Counsel for the parties join in requesting that the Court schedule a Status Conference to consider the case management and discovery issues identified in this Report. Counsel believe it would be preferable for such a

conference to be held "in person" (as opposed to telephonically) in order to facilitate the further discussion and resolution of these issues.

To this end, Counsel have consulted their respective schedules and determined that the attorneys of record for each side would be available to participate in such a conference during the weeks of June 23-27 or July 21-25, 2008 (except for July 24th, when Judge Robertson has scheduled a hearing in the equitable accounting litigation which lead counsel for the parties in this case will be attending). It is therefore respectfully requested that one of these upcoming dates be selected for the "in-person" Status Conference requested by counsel – subject, of course, to the Court's own schedule and convenience.

## V. CONCLUSION

Undersigned counsel for the parties appreciate the opportunity to present their respective proposals for further case proceedings in this Joint Status Report, and they look forward to the opportunity to appear before the Court to address these matters further.

This 22nd day of May, 2008.

Respectfully submitted,

MATTHEW J. McKEOWN
Acting Assistant Attorney General

/s/ Keith Harper

/s/ Brian M. Collins

KEITH M. HARPER
Kilpatrick Stockton, LLP
607 14th Street, N.W., Suite 900
Washington, DC 20005
Tel: (202) 508-5844
Fax: (202) 585-0007

Attorney for Plaintiff
The Salt River Pima-Maricopa
Indian Community

Brian M. Collins
United States Department of
Justice
Environment Division
Natural Resources Division
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0258
Fax: (202) 353-2021

Attorney for Defendant
The United States of America

OF COUNSEL:

JOHN H. MARTIN
ANTHONY P. HOANG
United States Department of
Justice
Environment Division
Natural Resources Section
Washington, D.C. 20044-0663

PAUL SMYTH
TOM BARTMAN
Office of the Solicitor
Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON
Office of the Chief Counsel
Financial Management Service
Department of the Treasury
Washington, D.C. 20270

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | Case No. 06-943L |
| v. | ) | Judge Lawrence M. Baskir |
| | ) | Electronically Filed 05/22/08 |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing JOINT STATUS REPORT was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Brian M. Collins, Esq.
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663, PHB 3607
Washington, D.C. 20044-0663

This 22nd day of May, 2008.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com

Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiff*
The Salt River Pima-Maricopa
Indian Community