IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY,

Plaintiff,

v.

THE UNITED STATES OF AMERICA

Defendant.

) Case No. 06-943L
) Judge Lawrence M. Baskir
) Electronically Filed 06/10/08

## JOINT STATUS REPORT

Plaintiff Salt River Pima-Maricopa Indian Community ("the Community") and Defendant United States (collectively, "the parties"), through the undersigned counsel, hereby submit this Joint Status Report pursuant to the Court's orders dated April 24 and May 27, 2008.[1]

[1] The May 27 order struck the parties' 51-page submission of May 22, 2007 and directed counsel to prepare in its place a Joint Status Report which "inform[s] the Court of the parties' respective positions with regard to the material issues in the case" without briefing those positions or being argumentative. In accordance with the Court's instructions, the parties' "competing" introductory statements included in the prior Report have been eliminated; and their respective positions regarding discovery and other case management issues are outlined in Section II below. These changes have produced a Joint Status Report of 22 pages – less than half the length of the parties' May 22 submission.

# I. BACKGROUND AND SUMMARY OF PRIOR DEVELOPMENTS.

On December 29, 2006, the Community filed a four-count Complaint in this action setting forth claims for money damages arising from the United States' breach of trust duties. The Complaint alleged the breach of money-mandating fiduciary duties causing damage to the Community by Defendant's failing to appropriately (1) manage and collect proceeds from the Community's surface and mineral estates; (2) manage and collect proceeds from the Community's non-mineral estates including, but not limited to, easements, rights-of-way and leases; (3) manage and invest the Community's judgment funds; and (4) manage, deposit and invest the Community's trust funds.

The United States filed an answer denying liability on March 27, 2007. Among the defenses raised in its responsive pleadings, Defendant asserted that this action was barred under 28 U.S.C. § 1500 by the Community's having filed an action for an equitable accounting in the United States District Court for the District of Columbia on the same day that this action was initiated.

On April 24, 2008, this Court denied the United States' motion to dismiss on 28 U.S.C. § 1500 grounds. After reviewing the evidence of record regarding the sequence-of-filing issue, the Court concluded:

"Plaintiff has proved by a preponderance of the evidence that the CFC complaint was the first of the *Salt River* Complaints filed on December 29, 2006 . . . Section 1500 therefore does not apply and does not preclude our jurisdiction over Plaintiff's claims." *See* 4/24/08 Opinion and Order at 18.

With the United States' threshold jurisdictional challenge now resolved, the parties are in agreement that the necessary next step in this case is for the Court to enter an additional order permitting discovery as to their claims and defenses.[2] This and other case management issues are addressed in Section II of the Joint Status Report. In addition, developments regarding certain other issues inquired about by the Court during the June 25, 2007 Preliminary Status Conference in this case are addressed in Section III. And the Report concludes (in Section IV) with the joint request of the parties for an "in person" conference with the Court to

---

[2] The Court's June 26, 2007 order allowed discovery for the limited purpose of deciding the United States' jurisdictional challenge under 28 U.S.C. § 1500. Specifically, the Defendant was permitted to serve written discovery on the Community for the purpose of obtaining further information regarding the sequence in which the same-day filings in this Court and the District Court had been made on December 29, 2006. A schedule for the filing and briefing of Defendant's motion to dismiss on Section 1500 grounds was also established. Per the Court's Order, all other proceedings were held in abeyance until the Section 1500 issue was decided. *See* 6/27/07 Order at 1.

consider the parties' respective proposals for discovery and other case proceedings.[3]

## II. THE PARTIES' PROPOSALS FOR FURTHER PROCEEDINGS IN THIS CASE.

In the Joint Preliminary Status Report filed in this case thirteen months ago, counsel advised that the parties were sharply divided over how – or even whether – this litigation should proceed. *See* JPSR at 1. Since the entry of the Court's April 24, 2008 order, however, significant progress has been made toward resolving a number of the parties' differences. For ease of review, the parties have set out the proposed schedule in three stages. Importantly, the parties are now in complete agreement as to the next year. Some disagreement remains regarding Stage 2 and Stage 3 of the case.

### A. Stage 1: The Parties Jointly Propose a 360-Day Period For Factual Discovery.

The Community initially proposed a 270-day period for factual discovery (*see* the JPSR at 34-39). However, based on discussion of this issue during the May 14, 2008 meeting of counsel for the parties, and in recognition of Defendant's willingness to compromise on other points, the

[3] Proposed order reflecting the parties' case management proposals are attached hereto. *See* Exhibit A (Plaintiff's Proposed Order Governing Pre-Trial Discovery) and Exhibit B (Defendant's Proposed Order).

Community now joins the United States in proposing a 360-day period for the completion of such discovery. *See* Plaintiff's Proposed Order (Exh. A) at ¶ 2; *and* Defendant's Proposed Order (Exh. B) at ¶ 2.

In addition, the parties are in agreement that the 360-day period for factual discovery should include the taking of depositions as well as the other forms of pre-trial discovery permitted under the CFC's Rules. *See* Plaintiff's Proposed Order at ¶ 1; Defendant's Proposed Order (Exh. B) at ¶ 2.

The parties also now agree that presumptive limits on discovery should not apply to this case. The parties will attempt to reach agreement as to reasonable limits on discovery prior to the Status Conference in this case and will inform the Court of their joint proposal at the Status Conference. If the parties are unable to reach an agreement, they will submit separate proposals for the Court's consideration at the Status Conference.

**B. Stage 2: The Parties Differ as to What Should Occur After Initial Discovery.**

The parties disagree as to what should occur following the initial discovery period. The parties are in agreement that the period for expert discovery should not commence until after the 360-day period proposed for

factual discovery is completed. The parties have conflicting views, however, as to when expert discovery in this case should occur and when dispositive motions should be scheduled. Further, the parties differ as to whether, at this point, the Court should order that after initial discovery, Plaintiff be required to specify its claims in detail. As outlined below, Defendant believes Plaintiff should be required to file such a specification. In contrast, Plaintiff believes that following factual and expert discovery, a Post-Discovery Status Conference makes the most sense and at that time, the Court should consider the Defendant's request for Plaintiff's specification of claims.

The parties' positions are as follows:

**1. Plaintiff's Proposal.**

It is the Community's position that the period for expert discovery should commence as soon as the period for factual discovery has been completed. Under Plaintiff's proposed schedule, the Community then would have 30 days to make its expert disclosures pursuant to RCFC 26(a)(2), and the United States would have 30 days from the date of the Community's disclosures within which to make its expert disclosures. At that point, both sides then would be allowed an additional 60 days to conduct further discovery regarding their expert disclosures (including

deposing the other side's experts). *See* Plaintiff's Proposed Order (Exh. A) at ¶ 2.

The Community further proposes that following factual and expert discovery, the Court should hold a Post-Discovery Conference.[4] It is the Community's position that the scheduling of any future dispositive motions by either party be deferred until after the sixteen-month period for factual and expert discovery has been accomplished. It is Plaintiff's position that until such time as the additional discovery is completed, it would be premature for the Court to establish a schedule for the presentation of motions that a party may or may not be in a position to file depending on what the outcome of discovery reveals. By the time the Court holds the Post-Discovery Conference contemplated under Appendix A of the CFC Rules, both sides should have a more complete picture of the strengths and weaknesses of their respective positions and be in a better position to discuss what types of proceedings may be needed to resolve the legal and factual issues then remaining. The Community therefore proposes that the Court determine whether dispositive motions should be scheduled and briefed at the Post-Discovery Conference – in accordance with Appendix

[4] The Community does not oppose the Post-Discovery conference occurring after factual discovery and before expert discovery, provided that expert discovery precedes any dispositive motions.

A's case management procedures. *See* Plaintiff's Proposed Order (Exh. A) at ¶ 4.[5]

It is the contrary position of the United States that the Court should develop a case management schedule now, before discovery has even begun, that anticipates further jurisdictional challenges will be made to Plaintiff's trust mismanagement claims and that provides only for Defendant's motions to dismiss to be presented prior to any expert discovery.

**2. <u>Defendant's Proposal</u>.**

Defendant proposes that after the initial 360-day discovery period is complete, Plaintiff would be required to file a detailed specification of its claims within 90 days. *See* Defendant's Proposed Order at ¶¶ 3-7. It is Plaintiff's burden to establish jurisdiction in this Court with specificity, and Defendant's proposal would allow the Court to ensure that Plaintiff has met

[5] During the May 14 meeting, Defendant's counsel argued that in light of a Petition for Certiorari filed by the government in *United States v. Navajo Nation*, No. 07-1410, the law governing the Community's claims may well change in a year's time. This possibility noted by Defendant illustrates why it makes little sense to lock into a process where neither the Court nor the parties know the legal landscape or what discovery will uncover. At the close of the initial discovery period, the parties and the Court will be in a far superior position to decide what the appropriate next step should be.

its burden before engaging in protracted litigation involving claims that may eventually be dismissed.

The detailed specification of claims is central to Defendant's proposal because, from the face of Plaintiff's complaint it appears that Plaintiff may be claiming damages for every lease for every asset the tribe has ever held, as well as every investment decision ever made by the trustee going back over 100 years. The detailed specification of claims will benefit all parties to the litigation to establish as soon as possible precisely which claims merit further attention in this Court. Such an approach will give the Court an early opportunity to separate the wheat from the chaff of Plaintiff's claims, without needless expense of time and resources on claims that would eventually be dismissed in any event. To the extent that the Court has jurisdiction over any of Plaintiff's claims, Defendant believes that those narrowed claims would then be more easily resolved by dispositive motions or trial, maximizing the efficient use both the parties' and the Court's resources.

With regard to expert discovery, Defendant proposes that, as a matter of judicial and economic efficiency it is preferable for formal expert discovery to take place *after* the Court has decided the jurisdictional motions. *See* Defendant's Order at ¶ 10. Defendant seeks only to defer

the time and expense of formal expert disclosure and reports until after the jurisdictional motions have been decided. In Defendant's view, forcing the parties to engage in expert discovery before claims have been narrowed on jurisdictional bases would unnecessarily increase costs with experts analyzing claims that would eventually be dismissed.

Plaintiff, on the other hand, proposes that expert discovery begin immediately after fact discovery, well before the Court has had any opportunity to narrow Plaintiff's claims through appropriate motions to dismiss. Should the Court not adopt Defendant's proposal, Defendant's alternative would be to engage in jurisdictional motion practice in the midst of the initial discovery period, thus raising the likelihood of Plaintiff invoking RCFC 56(f), which would amount to essentially the same process as Defendant's original proposal.

Finally as to the relative timing of Defendant's expert disclosures, Defendant proposes additional time for its experts to respond to Plaintiff's expert disclosures whenever those disclosures occur. Plaintiff's proposal requires Defendant's experts respond to that report and provide their own reports in a mere 30 days. In Defendant's experience in tribal trust cases, given the complexity of the financial and historical facets of these cases, Defendant's experts will need at least 120 days to properly respond to

Plaintiff's expert disclosures because of the need to organize and analyze information on government actions spanning decades.

### C. Stage 3: Dispositive Motions.

The parties also disagree on how the Court should handle dispositive motions. As outlined in the JPSR, both sides anticipate that as the litigation proceeds, certain issues may be identified as appropriate for the Court's resolution by motion rather than by trial. *See* JPSR at 20 ("Following discovery, counsel for Plaintiff-Beneficiary anticipates being in a position to move for summary judgment as to the existence of money-mandating fiduciary duties and possibly as to liability") and at 22 ("Defendant anticipates raising additional jurisdictional defenses in a single dispositive motion pursuant to RCFC 12(b) or 56 at a later point in this case, after Plaintiff has specifically defined its issues and claims herein"). The parties also agree, however, that further discovery will be necessary before either side's dispositive motions will be ready to be presented.

The parties' positions on dispositive motions are as follows:

#### 1. Plaintiff's Proposal.

It is the Community's position that following factual and expert discovery, if the Court determines at the Post-Discovery Conference that dispositive motions are warranted, then all dispositive motions should be

presented at the same time and both Plaintiff and Defendant should be permitted to file them. It is the position of Defendant, however, that only jurisdictional challenges by Defendant be presented and decided before expert discovery is allowed to take place. Pursuant to Defendant's proposal, the Community would be required to make a detailed specification of its trust management claims following the completion of the 360-day period for factual discovery. Defendant then would be allowed 90 days to engage in additional discovery for the limited purpose of developing further support for motions to dismiss to be filed within 60 days of the close of this "phase two" discovery period. *See* Defendant's Proposed Order (Exh. B) at ¶¶ 3-7.

In the Community's view, by contrast, the existence and money-mandating nature of many of the duties upon which the Community's claims are based are well-established. *See* JPSR at 20. So too, most of the legal issues relevant to Defendant's asserted defenses have already been adjudicated in other tribal litigation and resolved in the tribal plaintiffs' favor. *See* JPSR at 24-26. Therefore, the Community anticipates being in a position to file a Motion for Summary Judgment at the close of factual and expert discovery as well and should be permitted to do so.

The parties also disagree over whether any such "specification of claims" requirement should be imposed on the Community prior to the completion of all case discovery (expert as well as factual); and whether the United States should thereafter be permitted an additional 90 days to engage in further discovery for the limited purpose of developing further support for possible jurisdictional challenges. Plaintiff objects to the schedule being proposed by Defendant as completely one-sided and prejudicial; and as a way of proceeding that would risk putting the Court in the position of having to address material issues relating to the parties' claims and defenses without the benefit of a fully developed case record including critical expert testimony.

**2. Defendant's Proposal.**

As discussed above, Defendant proposes that, after the initial fact discovery period, Plaintiff be required to file a detailed specification of its claims. After Plaintiff files its detailed claim specification, both parties will have 90 days to engage in discovery related strictly to the planned motions to dismiss on jurisdictional grounds. Defendant would then file any jurisdictional motions within 90 days of the close of jurisdictional discovery.

Once those jurisdictional motions have been decided, Defendant proposes that the Court conduct a joint status conference with the parties

and schedule further proceedings in this case, as appropriate, including but not limited to the scheduling of any remaining fact discovery, fact or RCFC 30(b)(6) depositions on any factual claims that survive Defendant's jurisdictional challenges, expert witness discovery, and a trial schedule.

The fact is that Plaintiff's claims may be barred by application of the statute of limitations at 28 U.S.C. § 2501 and the Indian Claims Commission Act. In addition, the Court may lack jurisdiction under the Tucker Act and Indian Tucker Act, 28 U.S.C. §§ 1491(a)(1), 1505, over those claims for which Plaintiff is unable to identify a substantive source of law, such as a statute, treaty, or regulation, that establishes a specific fiduciary money-mandating duty, or that was within the exclusive jurisdiction of the Indian Claims Commission. Further, depending on Plaintiff's description of its claims, Defendant intends to raise the defense of claim preclusion. In Defendant's view, none of these threshold jurisdictional issues require expert discovery, but they will require basic fact discovery about the specific leases, resources, and contracts at issue, before Defendant can determine which, if any, of Plaintiff's claims are time-barred, lack jurisdictional basis, or are precluded by res judicata, and, based on its determination, file an appropriate jursidictional motion. The parties and the Court will benefit from an early investigation of the

jurisdictional basis for Plaintiff's claims to identify those which do not merit further investigation.

Plaintiff's proposal seeks to blunt the inquiry into jurisdiction by forcing the Defendant to file jurisdictional motions without Plaintiff having specifically identified the bases for its claims. Consequently, Defendant's proposed discovery schedule maximizes judicial efficiency by saving detailed expert discovery and analysis for those claims for which Plaintiff has established jurisdiction. This will allow the parties and the Court to focus their efforts on only those claims that are properly before the Court.

Counsel for the parties look forward to providing the Court with further support for their respective positions regarding the foregoing issues at the Status Conference jointly requested by counsel in Section IV below.

## III. STATUS REPORT REGARDING OTHER ISSUES ADDRESSED IN THE PRELIMINARY STATUS CONFERENCE/THE JPSR.

The following issues also were discussed by counsel for the parties during their May 14, 2008 meeting. The updates provided below are intended to assist the Court in resolving the parties' differences in case management approach.

### A. Settlement Negotiations Discussions in Other Tribal Trust Cases.

During the Preliminary Status Conference, Defendant's counsel advised the Court that a total of 50 trust mismanagement suits had been filed by tribes against the United States in this Court, and that 37 accounting actions had been bought in the United States District Court for the District of Columbia (and all 37 actions had been assigned to Judge Robertson) (6/25/07 Tr. at 8-10.) The Court was further informed that "the government is in active settlement discussions with many of the tribes . . . ." (*Id*. at 10). With respect to those matters, government counsel described the "active settlement discussions" as including "informal discovery . . . and what would be the best and most efficient way to settle or resolve the tribe's various claims." (*Id*. at 12.)

**1. <u>Plaintiff's Update.</u>**

In the view of the Community, defense counsel's remarks were intended to convey the impression that informal settlement discussions offer a more promising avenue for the resolution of the tribal trust claims than the parties formally litigating these matters – a proposition with which counsel for the Community strongly disagrees. (*See* 6/25/07 Tr. at 10.) Eleven months later, however, it appears that not a single one of the 87 tribal trust cases referenced by Defendant's counsel in the Preliminary Status Conference has been settled. Indeed, when Plaintiff's counsel

inquired about this subject during the May 14 meeting, government counsel failed to identify a single case that had been finally resolved by compromise since June 25, 2007. (Although counsel went on to say that in the government's view, "significant progress" had been made in certain unspecified ADR proceedings).

Within the past month the tribal plaintiff in another trust management case filed in this Court in 2002 has requested that the fiscal mismanagement claim referred to ADR more than five and one-half years ago be restored to the active litigation docket. In the Joint Status Report filed on May 12, 2008, in *Jicarilla Apache Nation v. United States*, No. 02-25L, plaintiff's counsel recited the various steps that had been taken in ADR to make "a detailed submission on the legal bases for and analysis of the Nation's claims relating to Defendant's investment of funds," including the calculation of the tribe's damages exceeding $300 million. *See* 5/12/08 Report at ¶¶ 2-6. Counsel for plaintiff further stated, however, that even though the tribe had participated in the ADR process in "good faith," it no longer believed "that claims of this magnitude can be settled, if at all, through an ADR process that is divorced from an ongoing pretrial process with a firm trial date." 5/12/08 Report at ¶ 7. Accordingly, plaintiff's counsel in *Jicarilla* urged that the tribe's fiscal management claim be "restored to

the active docket and proceed toward trial" – a request that Judge Allegra promptly granted.[6]

In light of this recent development, the Community is more convinced than ever that moving ahead with the litigation represents the most effective means available to the parties to achieve resolution including by settlement. It has been and continues to be the experience of Plaintiff's counsel that litigation must be part of the dispute resolution process for any meaningful opportunity for settlement discussions to be presented. So too, information derived from the discovery process will put both sides in a better position to assess their respective positions for settlement purposes down the road.

**2. <u>Defendant's Update.</u>**

Unfortunately, Defendant is not at liberty to comment with specificity on pending settlement discussions in other cases, but, in some instances, settlement efforts have yielded progress in resolving tribal trust disputes. Defendant is willing to abide by the Court's order referring the parties to ADR Judge Marian Blank Horn. *See* Court's Order dated Dec. 29, 2006 (Dkt. # 3). Defendant believes that such a referral could be helpful in

[6] *See* Judge Allegra's May 16, 2008 order in *Jicarilla Apache Nation*, 02-25L.

moving the parties toward settlement. In addition, the parties have discussed the possibility of settlement in this case. Defendant believes that the likelihood of settlement may increase after the exchange of information related to the tribal trust funds and assets. Defendant believes that it is possible to settle Plaintiff's trust fund and asset mismanagement claims through Alternative Dispute Resolution (ADR) processes if Plaintiff were agreeable to ADR. Defendant believes that it may be unlikely for the parties to settle this case so long as the parties are actively litigating.

**B. Entry of a Proposed Protective Order.**

The Community is aware that the United States routinely requests the entry of a protective order in tribal trust litigation, and the Community has advised the Court that it would not oppose a properly tailored order. *See* JPSR at 31-32.

In July 2007, Judge Hewitt addressed this same issue in another trust mismanagement case pending before the Court (*Ak-Chin Community v. United States*, No. 06-932L (Fed. Cl.)) and entered a protective order intended to govern the production and handling of asserted confidential information in the case of pre-trial discovery. Following the May 30, 2007 Preliminary Status Conference in *Ak- Chin*, Judge Hewitt directed counsel for the parties to confer regarding the terms of the proposed Rule 26(c)

order, and imposed a time limit on counsel to reach agreement or report as to the differences preventing the agreement from being reached. With respect to their then remaining differences, counsel were required to submit memoranda addressing differences and proposing how they might be appropriately resolved without further delay.

The approach in *Ak-Chin* was successful – counsel for the parties reported that they had reached an agreement with respect to all but two provisions of the form of protective order thereafter presented for the Court's consideration and entry. And following a telephone conference on July 18, 2007 in which counsel addressed the remaining differences and how to resolve them, a protective order was entered by the Court the following day. To expedite the entry of a Protective Order and ease the discovery process, the parties are interested in exploring with the Court the possibility of imposing a schedule in this case, similar to the one in *Ak-Chin*.[7]

[7] During the June 25, 2007 Preliminary Status Conference in this case, the Court inquired about the status of the Community's action filed in the District Court to seek an equitable accounting with respect to the funds and assets the United States has been holding in trust over the past century for the Community. (Tr. At 13). The Court was advised that the government was seeking a remand of the Community's equitable accounting acclaim to the Department of Interior and a stay of the District Court litigation (Tr. At 13-15). While Judge Robertson proceeded to allow the government to

## IV. THE PARTIES' JOINT REQUEST FOR AN "IN-PERSON" STATUS CONFERENCE TO FURTHER ADDRESS THESE MATTERS.

Counsel for the parties join in requesting that the Court schedule a Status Conference to consider the case management and discovery issues identified in this Report. Counsel believe it would be preferable for such a conference to be held "in person" (as opposed to telephonically) in order to facilitate the further discussion and resolution of these issues.

To this end, Counsel have consulted their respective schedules and determined that the attorneys of record for each side would be available to participate in such a conference during the week of June 23-27. It is therefore respectfully requested that one of these upcoming dates be selected for the "in-person" Status Conference requested by counsel – subject, of course, to the Court's own schedule and convenience.

## V. CONCLUSION.

Undersigned counsel for the parties appreciate the opportunity to present their respective proposals for further case proceedings in this Joint Status Report, and they look forward to the opportunity to appear before the Court to address these matters further.

---

move for a remand and stay in all 37 of the tribal trust accounting cases assigned to his Honor, these requests were denied on December 19, 2007.

This 10th day of June, 2008.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General

/s/ Brian M. Collins
Brian M. Collins
United States Department of Justice
Environment Division
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0258
Fax: (202) 353-2021

Attorney for Defendant
The United States of America

/s/ Keith Harper
KEITH M. HARPER
Kilpatrick Stockton LLP
607 14th Street, N.W., Suite 900
Washington, DC 20005
Tel: (202) 508-5844
Fax: (202) 585-0007

Attorney for Plaintiff
The Salt River Pima-Maricopa Indian Community

OF COUNSEL:

JOHN H. MARTIN
ANTHONY P. HOANG
United States Department of Justice
Environment Division
Natural Resources Section
Washington, D.C. 20044-0663

PAUL SMYTH
TOM BARTMAN
Office of the Solicitor
Department of the Interior
Washington, D.C. 20240

TERESA E. DAWSON

Office of the Chief Counsel
Financial Management Service
Department of the Treasury
Washington, D.C. 20270

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE SALT RIVER PIMA-MARICOPA INDIAN COMMUNITY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 06-943L<br>Judge Lawrence M. Baskir<br>Electronically Filed 06/10/08 |
| THE UNITED STATES OF AMERICA | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing JOINT STATUS REPORT was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

Brian M. Collins, Esq.
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663, PHB 3607
Washington, D.C. 20044-0663

This 10th day of June, 2008.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com

CATHERINE F. MUNSON
Georgia Bar No. 529621
Email:cmunson@kilpatrickstockton.com
Kilpatrick Stockton LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiff*
The Salt River Pima-Maricopa
Indian Community